UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE META PIXEL TAX FILING CASES<br><br>This Document Relates to:<br><br>Case No. 3:22-cv-07557-SI, All Actions | Case No. 22-cv-07557-SI (VKD)<br><br>**ORDER RE DISPUTE RE PROTECTIVE ORDER**<br><br>Re: Dkt. No. 68 |

The parties ask the Court to resolve their disputes concerning a proposed protective order. Dkt. No. 68. The parties have stipulated to most of the terms of the proposed order but disagree on five matters: (1) the definition of Source Code and what materials are entitled to the protections of sections 7.5 and 8; (2) how the parties should exercise restraint and care in designating material confidential; (3) challenges to the number of lines of source code that may be included in a court filing, report, or exhibit; (4) note-taking during source code review; and (5) providing a redaction log. The Court finds these disputes suitable for resolution without oral argument. Civil L.R. 7-1(b).

**1.    Definition of "Source Code" (sec. 2.16)**

The parties disagree about how to define "source code" for purposes of the protective order. The Court adopts Meta's proposal which generally tracks the definition of "source code" in the Court's Model Order.[1] A body of caselaw has developed around the interpretation of the terms used in the Model Order that should guide the parties if disputes arise about whether something is or is not "source code." Plaintiffs' proposal veers in the opposite direction of the guidance the

---

[1] https://cand.uscourts.gov/wp-content/uploads/forms/model-protective-orders/ND_Cal_Patent_Highly_Sensitive_Model_Prot_Ord_Revised.docx

1  Court provided during the April 20, 2023 discovery conference, *see In re Meta Pixel Healthcare*

2  *Litig.*, Case No. 3:22-cv-03580-WHO, Dkt. No. 217 (Tr. at 20:25-22:19, 25:9-26:6), and

3  introduces a number of disputed sub-provisions the Court cannot possibly assess without more

4  information and context.

5        Accordingly, the Court adopts the following text for sections 2.8 and 2.16:

> 2.8   "<u>HIGHLY CONFIDENTIAL – SOURCE CODE</u>" Protected Material:  "Protected Material" representing or consisting of Source Code as defined in Section 2.16.
>
> 2.16  <u>Source Code</u>:  Extremely sensitive computer code and associated comments, revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms, computer code, or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

**2.     Exercise of Restraint and Care in Designation (sec. 5.1)**

13        The parties jointly propose several modifications to section 5.1 of the Model Order.  The

14  Model Order provision seeks to discourage indiscriminate designation of discovery material as

15  confidential, protected material.  The parties' most substantial changes to the Model Order

16  provision concern the handling of documents that include both Highly Confidential – Source Code

17  as well as other material that does not require the restrictive treatment that source code requires.

18        The parties disagree on two points:  (1) whether the protective order should state that a

19  party must take care to avoid designating material that does not warrant protection only "to the

20  extent practical" (as plaintiffs propose) or "to the extent practical and not unduly burdensome" (as

21  Meta proposes); and (2) whether source code that is redacted from a document that is otherwise

22  produced without source code restrictions must be made available automatically for inspection

23  without redactions in the source code review room (as plaintiffs propose) or only "upon reasonable

24  request" (as Meta proposes).

25        The language of section 5.1 on which the parties already agree, and which is part of the

26  Model Order provision, already addresses Meta's concerns about proportionality and undue

27  burden.  The Court sees no difference between "undue burden" and "not practical" in the context

28  of this provision.  For this reason, the Court adopts plaintiffs' proposal regarding the first dispute.

With respect to the second dispute, the Court agrees with plaintiffs that they should not have to affirmatively ask Meta to produce in unredacted form source code that is relevant and responsive to an outstanding discovery request, but that has been redacted from a document that has been produced without source code restrictions. At the same time, there is no reason for Meta to automatically disclose source code that is not relevant. For this reason, the Court declines to adopt either side's proposal and instead adopts an alternative solution: Meta need not unredact source code that is not relevant.

Accordingly, the Court adopts the following text for section 5.1, with revisions underlined:

> 5.1 Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates Disclosure or Discovery Material for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order. To the extent it is impractical to do so, the Designating Party shall identify with specificity the portions of the material that qualify for protection upon reasonable request by a Party. With respect to material designated HIGHLY CONFIDENTIAL-SOURCE CODE, the Designating Party shall identify the specific portions of a document that qualify for protection by providing a document that redacts the HIGHLY CONFIDENTIAL-SOURCE CODE material and is produced in the ordinary manner per the Stipulated ESI Protocol. To the extent the HIGHLY CONFIDENTIAL-SOURCE CODE material is relevant, a version of the produced document with the HIGHLY CONFIDENTIAL-SOURCE CODE material unredacted will be made available for inspection in PDF-searchable format in the source code review room per this Stipulated Protective Order; provided that HIGHLY CONFIDENTIAL-SOURCE CODE material that is not relevant may remain redacted. Any document produced with redacted HIGHLY CONFIDENTIAL-SOURCE CODE material may also be designated and produced with a lower designation as to the remainder of the document, as warranted.
>
> Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions.
>
> If it comes to a Designating Party's attention that Disclosure or Discovery Material that it designated for protection does not qualify for protection at all or

3

does not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other Parties that it is withdrawing or revising the mistaken designation.

**3.     Challenges to Number of Lines of Source Code (sec. 8(f))**

The parties disagree about how to handle disputes concerning the number of consecutive lines of source code plaintiffs may use in a pleading, other court filing, expert report, trial exhibit, demonstrative, deposition exhibit or transcript, or mediation brief. Plaintiffs propose requiring 7 days' advance notice of such use, with 3 days to object. Meta proposes requiring 14 days' advance notice, with 7 days to object. The Court finds both sides proposals unworkable, as they contemplate the Court's resolution of disputes about use of source code on short notice in advance of a deadline. For this reason, the Court will adopt Meta's version of section 8(f) but with additional text that sets a default for a permissible number of consecutive lines of code in an effort to discourage unreasonable and unnecessary disputes on this point. Once the parties have begun source code discovery, they should confer about any revisions to this provision that may be required to address the specific source code at issue.

The Court adopts the following text for section 8(f), with revisions underlined:

> 8(f). The Receiving Party shall maintain all paper copies of any printed portions of the Source Code in accordance with Section 8(j) below. The Receiving Party is prohibited from creating any electronic or other images or making electronic copies of the Source Code from any paper copy of the Source Code for use in any manner (including by way of example only, the Receiving Party may not scan the paper copy Source Code to a PDF or photograph the paper copy Source Code) and must not convert any of the Protected Material contained in the paper copies into any electronic format. Images or copies of Source Code must not be included in correspondence between the Parties (references to production numbers and/or line numbers must be used instead) and must be omitted from pleadings and other papers absent prior written consent from the Producing Party, which will not be unreasonably withheld, or an order from the Court. The Receiving Party may only request additional paper copies if such additional copies are (1) necessary to attach to court filings, pleadings, or other papers (including a testifying Expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case. The Receiving Party shall not request paper copies for the purposes of reviewing the Source Code other than electronically as set forth in Section 8(c) in the first instance. The Receiving Party may create paper printouts of, or images of, limited excerpts of Source Code in a pleading, court filing, expert report, trial exhibit, demonstrative, deposition exhibit/transcript, mediation brief, and drafts of these documents,

provided that the Receiving Party discloses to the Producing Party 14 business days in advance the number of consecutive lines of Source Code it intends to include in such a document.  <u>Unless otherwise ordered, if a given excerpt of Source Code does not exceed 50 consecutive lines of code, it may be included in a document pursuant to this section.</u>  The Producing Party may challenge the number of consecutive lines of Source Code the Receiving Party intends to include in a document pursuant to this section, and must do so within 7 business days of the Receiving Party's notice.  Any disputes about the number of consecutive lines of Source Code to be included in a document will be resolved by the Court if the parties are unable to reach agreement pursuant to the dispute resolution procedure and timeframes set forth in <u>Section</u> 6 whereby the Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of the dispute resolution.  Challenged consecutive lines of Source Code <u>in excess of 50 consecutive lines of code</u> may not be used in a document by the Receiving Party until the matter is resolved by the Court.  To the extent a dispute prevents the Receiving Party from timely filing a document, the Producing Party agrees to stipulate to an extension of time to file such document to allow for the dispute to be resolved.  To the extent a deposition is likely to involve Source Code, the Party taking the deposition shall provide at least seven (7) calendar days written notice of that fact, and the Producing Party will make a Source Code Computer available at the deposition, minimizing the need for additional paper copies of Source Code.  Any paper copies used during a deposition will be retrieved by the Producing Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual.

**4.    Limitations on Source-Code Review Note-Taking (sec. 8(i))**

The parties agree that a party reviewing source code may take notes on that review in electronic form.  They also agree on provisions for ensuring the security of and restricting access to such notes.  However, Meta proposes that plaintiffs report to Meta the number of pages of notes taken after each review session, so that Meta can challenge the volume of notes plaintiffs are taking if it feels the volume is excessive.  Plaintiffs object on the ground that the number of pages of notes they take on their review of Meta's source code is protected by the attorney work product doctrine, and they should not have to disclose this information to Meta.

Meta's proposal for reporting creates a burden that seems both unnecessary and unhelpful. It is not clear how Meta, or the Court, will be able to determine whether plaintiffs' attorneys and authorized experts are violating the protective order or doing something else improper based on the number of pages of notes they take.  For this reason, the Court adopts plaintiffs' proposal for section 8(i), without the reference to a source code "clean room":

(i) The Receiving Party's Outside Counsel and/or Experts qualified under Section 7.5(b) shall be entitled to take notes (handwritten or electronic) relating to the Source Code, but may not copy the Source Code into such notes.  To the extent the Receiving Party desires to take notes electronically, the Producing Party shall provide a notetaking computer (e.g., a computer, which is distinct from the Source Code computer, that is not linked to any network, including a local area network ("LAN"), an intranet, or the Internet, and has image making functionality of any type disabled, including but not limited to camera and video functionality) ("note-taking computer") with a current, widely used word processing program in the Source Code review room for the Receiving Party's use in taking such notes.  The note-taking computer shall have disk-encryption and be password protected.  The note-taking computer shall be used for the sole purpose of note-taking and shall be retained by the Producing Party.  The Producing Party will instruct the Receiving Party on how to start, log on to, and operate the notetaking computer.  The Receiving Party will save any notes taken on the note-taking computer to a folder labeled "Source Code Notes."  All notes relating to Source Code created as provided in this section shall be designated as and treated as HIGHLY CONFIDENTIAL – SOURCE CODE material, and shall be treated as copies of Source Code except as set forth in Sections 8(c), 8(d), and 8(f), and except that for electronic notes relating to Source Code at the end of each day of Source Code inspection, under the supervision of the Producing Party, such notes shall be saved on a removable encrypted and password protected drive supplied by the Producing Party and given to the Receiving Party to retain.  The Receiving Party will thereafter delete or destroy the electronic notes on the note-taking computer and show the Producing Party the empty "Source Code Notes" folder on the note-taking computer to confirm the electronic notes on the note-taking computer have been deleted or destroyed.  The note-taking computer shall have no features that will hinder the complete clearing of the Receiving Party's notes after such notes have been printed or downloaded.  The Producing Party will not open the folder labeled "Source Code Notes" on the note-taking computer, will not review the Source Code Notes, will not log key strokes with respect to the note taking, and will not otherwise attempt to discover the Receiving Party's work product related to the Source Code review.  Except as provided expressly in this paragraph, use or possession of any recordable media or recordable devices during the inspection by anyone other than the Producing Party is prohibited.

Any notes related to Source Code shall not include copies or reproductions of the Source Code, but may refer to function names, variable names, filenames, and line numbers.  The Receiving Party will be entitled to password protect the electronic Source Code Notes folder and/or Word documents contained therein.

Any Source Code notes taken electronically may be stored with a secure eDiscovery/litigation support site in order to allow for such notes to be viewed by the Receiving Party's Outside Counsel and/or Experts qualified under Section 7.5(b) of this Order.  Before being transmitted to the eDiscovery/litigation support site, an electronic Source Code notes file must be password protected.  The transmission of any and all Source Code notes to the eDiscovery/litigation support site shall be via a secure, password-protected transmission that aligns with standard industry practices regarding data security.  Access to such notes via the

secure eDiscovery/litigation support site will be restricted to the Receiving Party's Outside Counsel and/or Experts qualified under Section 7.5(b) of this Order, and functions allowing for duplication of such notes, including but not limited to printing, emailing, downloading, and saving, will be disabled. The Receiving Party is otherwise prohibited from creating any copies (physical or electronic) or images of Source Code notes taken electronically.

With respect to handwritten notes related to Source Code, the Receiving Party is prohibited from creating any physical copies of the Source Code notes, and the Receiving Party is prohibited from creating any electronic or other images or making electronic copies of the Source Code notes from any paper copy of the Source Code notes for use in any manner (including by way of example only, the Receiving Party may not scan the paper copy Source Code notes to a PDF or photograph the paper copy Source Code notes) and must not convert any of the Protected Material contained in the paper copies of the Source Code notes into any electronic format. This paragraph does not limit the Receiving Party's ability to store handwritten notes related to Source Code with the secure eDiscovery/litigation support site referenced above.[2]

Nothing in this Section 8(i) prevents an Expert qualified under Section 7.5(b) from using notes related to Source Code (whether taken by hand or electronically) in the preparation of their expert report.

The Parties agree that if any disputes arise that implicate the Receiving Party's notes relating to Source Code taken pursuant to this Section 8(i), all relevant notes relating to Source Code taken by the Receiving Party pursuant to this Section 8(i) that may be reviewed by the court to resolve the dispute shall be subject to *in camera* review, and will not be filed in the public record for any reason, to ensure compliance with this Protective Order.

### 5. Providing a Redaction Log (sec. 13.5)

Plaintiffs anticipate that Meta will produce a large volume of documents with unexplained redactions. Plaintiffs in the Tax cases propose that the parties prepare a "redaction log" that identifies any redactions made to production documents and the reasons for the redactions. The other plaintiffs either support or do not oppose this proposal. Meta responds that the proposed text is unnecessary, as redactions of source code will include a label in the redacted document itself that reflects the reason for the redaction, e.g. "redacted – source code," and that redactions for privilege will be addressed separately when the parties memorialize their agreement regarding privilege logs.

---

[2] The parties say they will "submit an addendum regarding the process by which handwritten notes are transmitted to the security eDiscovery /litigation support site."

7

1  The Court agrees with Meta that it is unnecessary at this time to require the parties to
2  produce a log of redactions for purposes other than privilege, particularly given Meta's
3  representations about how it will implement source code-related redactions and the Court's
4  resolution of the dispute regarding section 5.1, above. For this reason, the Court declines to adopt
5  the Tax plaintiffs' proposed text for section 13.5.

\*\*\*

7  The Court will enter a protective order that conforms to this order separately on the docket.
8  **IT IS SO ORDERED.**
9  Dated: May 16, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge