GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (admitted *pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (admitted *pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:  (212) 351-4000
Facsimile:   (212) 351-4035

ELIZABETH K. MCCLOSKEY (SBN 268184)
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA (SBN 301746)
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:  (415) 393-4622
Facsimile:   (415) 801-7389

ANDREW M. KASABIAN (SBN 313210)
akasabian@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071 USA
Telephone:  (213) 229-7311
Facsimile:   (213) 229-6311
*Attorneys for Defendant Meta Platforms, Inc.*

*Additional Attorneys in Signature Block*

GEORGE FELDMAN MCDONALD, PLLC
LORI G. FELDMAN
(admitted *pro hac vice*)
LFeldman@4-justice.com
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone: (917) 983-9321
Fax: (888) 421-4173

BURSOR & FISHER, P.A.
JOEL D. SMITH (SBN 244902)
jsmith@bursor.com
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700

*Steering Committee Co-Chairs for All
Plaintiffs in Consolidated Action*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL TAX FILING CASES | Master File No. 3:22-cv-07557-SI |
| | <u>PUTATIVE CLASS ACTION</u> |
| This Document Relates To: | **JOINT STATEMENT REGARDING COORDINATION OF DISCOVERY AND INTERIM DISCOVERY DEADLINES** |
| Case No. 3:22-cv-07557-SI, All Actions | |
| | Date: May 23, 2023 |
| | Time: 1:30 p.m. |
| | Courtroom: 2, 5th Floor |
| | Judge: Hon. Virginia K. DeMarchi |
| | Action Filed: December 1, 2022 |

In accordance with the Court's direction at the April 20, 2023 Discovery Conference, *see* Dkt. 57, the parties in *In re Meta Pixel Tax Filing Cases*, Case No. 3:22-cv-07557-SI (VKD), *In re Meta Pixel Healthcare Litigation*, Case No. 3:22-cv-3580-WHO (VKD), and *Gershzon v. Meta*, Case No. 3:23-cv-00083-SI (VKD), have continued to meet and confer regarding "(1) whether and to what extent aspects of discovery should be coordinated; and (2) whether any interim discovery deadlines [] should be set . . . ." *See* Dkt. 57. The Tax Plaintiffs' proposed order on coordination of discovery and interim deadlines is attached as Exhibit A.[1]

The parties to the above-captioned matter submit this Joint Statement in advance of the May 23, 2023 discovery conference.

## 1. COORDINATED DISCOVERY

***Plaintiffs' Statement:***

While there are indisputably common factual issues in the *Healthcare*, *Tax*, and *Gershzon* Cases (the "Three Cases"), there are factual issues unique to each of the Three Cases that can and should move forward *simultaneously* with any common discovery. Factual discovery tailored to the *Tax* Cases will include (i) discovery relating to the online tax-filing websites at issue in this consolidated action (H&R Block, TaxAct, TaxSlayer, and others), (ii) all aspects of the proposed class and class representatives in the *Tax* Cases and class certification discovery, (iii) discovery concerning Meta's internal documents and communications relating to online tax-filing website advertising, and (iv) Meta's receipt, sharing, handling, and other uses of class members' tax-filing information, including filing status, income, refunds, health savings account usage, dependents' names, and other confidential financial information prepared for or transmitted to the Internal Revenue Service or state-level tax authorities.

The ground rules established by the parties and the Court governing consistent clawback, protective, and ESI orders in each case will promote judicial economy and efficiency both in common discovery and/or discovery unique to each of the Three Cases. Going forward, however, Plaintiffs in the *Tax* Case oppose any proposal that undermines the rights and independence of the parties and the

---

[1] Because the Court did not direct the parties to include a Proposed Order with this Joint Statement, Meta will instead provide one after the May 23, 2023 conference, to the extent that would be helpful to the Court.

separate sets of lawyers handling the Three Cases by imposing strictures that would require plaintiffs in separate cases to rely on lawyers in other cases to conduct discovery on their behalf. It is paramount that discovery proceed in accordance with clear, yet flexible, guidelines that will promote efficiency *without* infringing upon the autonomy of each set of lawyers for the Plaintiffs. Accordingly, the *Tax* Plaintiffs propose the following framework for coordinating discovery.

### *(1) Progression of Discovery*

On Monday, May 15, 2023, the *Tax* Plaintiffs filed their Consolidated Class Action Complaint, Dkt. 71. Meta intends to move to dismiss that Complaint. On March 31, 2023, Meta filed its motion to dismiss the *Gershzon* case, which is set for hearing on June 9, 2023. Judge Illston has ordered that discovery will proceed in the *Gershzon* case during the pendency of motion practice. Likewise, the motion to dismiss the *Healthcare* case will be fully briefed by July 17, 2023, and Judge Orrick instructed that discovery will proceed during the pendency of that dismissal motion.

The *Tax* Plaintiffs' position is that discovery should proceed concurrently in the Three Cases per the common discovery orders across all cases, and that coordination should facilitate the progress of discovery but not cause or enable delays in one case due to developments in another. That is especially important to the *Tax* Plaintiffs, who anticipate that only a modest share of the documents and information they are seeking in discovery will be common across the Three Cases.[2]

### *(2) Coordination of Written Discovery and Document Production*

The plaintiffs in the Three Cases have each served Requests for Production ("RFPs") and the *Healthcare* and *Gershzon* Plaintiffs have also served initial sets of Interrogatories. Meta has only responded to the Healthcare Plaintiffs' RFPs and Interrogatories, in accordance with Judge Orrick's order allowing discovery to proceed in the *Healthcare* case. The *Tax* Plaintiffs understand that negotiations between the Healthcare Plaintiffs and Meta regarding these requests are ongoing.

Following several meet-and-confer sessions with Meta, the *Tax* Plaintiffs welcome Meta's retreat from seeking to require the plaintiffs in the Three Cases to coordinate regarding written discovery already issued in each case that might produce relevant documents in the other cases.

---

[2] To give an example, the *Tax* Plaintiffs' case principally involves a limited number of third-party websites run by H&R Block, Tax Slayer, Tax Act, and others, whereas the *Healthcare* Plaintiffs' case involves hundreds (if not thousands) of healthcare websites.

However, the *Tax* Plaintiffs do not believe requiring the plaintiffs to issue single sets of written discovery for all future "global" prompts would achieve any significant efficiencies where a "global" prompt would , and even if it did, such benefits would be substantially outweighed by the unacceptable loss of each set of plaintiffs' autonomy to conduct discovery. Instead, the *Tax* Plaintiffs are agreeable to identifying specific requests in the *Healthcare* and *DMV* cases' written discovery that request documents or information that is also discoverable in the *Tax* cases ("Common Discovery"), such that Meta will thereafter respond to or produce that Common Discovery to all Plaintiffs, subject to any valid objections by Meta that the requests so identified are not relevant to a particular case. Notwithstanding Meta's now pared-back proposal, it is the *Tax* Plaintiffs' position that cross-identification of discoverable information will naturally create workflow efficiencies for Meta in its collection and production of discoverable information. This will also reduce the burden on plaintiffs in each of the Three Cases to issue additional discovery requests that seek the same documents or information as their counterparts have already sought.

Notably, after meeting and conferring with Meta, it is clear that the "Global" discovery that Meta refers to in its proposal does not necessarily mean identical or even "common" to the Three Cases. Rather, "Global" means not only identical or substantially similar temporally and substantively (i.e., organizational charts requested in the Three Cases), but to Meta also means the same category or type of documents or data in Meta's perspective (based upon how this category or type of documents and data is stored, organized, and pulled for production by Meta) even if the documents are very different. When "global" does not mean common, it is a recipe for disaster.

Given the significant differences between the cases, the *Tax* Plaintiffs do not believe that identification and sharing of Common Discovery provides a reason for imposing numerical limits on the parties' case-specific written discovery requests as Meta demands. Rather, the *Tax* Plaintiffs urge the Court to recognize such limitations as premature and request that no limitations on written discovery be imposed beyond those set forth in the Federal Rules of Civil Procedure. Going forward, the *Tax* Plaintiffs urge that any written and document discovery limitations should be proposed, considered, and imposed by the Court on an individual-case basis.

To facilitate the effective coordination of written and document discovery, the *Tax* Plaintiffs also recognize the need for consistent document-production, privilege-log, and redaction-log deadlines in the Three Cases set well ahead of the close of discovery. Accordingly, the *Tax* Plaintiffs propose interim document-production deadlines for (1) final completion of production of all requested data about class representatives and proposed classes and subclasses, (2) substantial completion of document production with sufficient time for review prior to coordinated depositions, and (3) final document-production, with a reasonable amount of time left for the parties to brief and have the court hear final discovery-related motions. Furthermore, the *Tax* Plaintiffs propose that privilege- and redaction-log deadlines be set twenty-eight (28) days after each interim document-production deadline, in time for related disputes to be raised during discovery period without delays of coordinated depositions or trial.

### *(3) Coordination of Depositions*

The *Tax* Plaintiffs have not yet requested deposition dates of Meta fact witnesses, and they are still in the process of identifying persons with knowledge of facts relevant to their case. That being the case, and in recognition of their good working relationships with the *Healthcare* and *Gershzon* Plaintiffs, the *Tax* Plaintiffs propose that fact witnesses common to more than one case ("Common Witnesses") shall be deposed only once across the Three Cases where such scheduling is practicable would not cause delay. To give a non-exhaustive list of examples of where scheduling a single deposition would be impracticable or cause delay, the *Tax* Plaintiffs propose that a Common Witness could be deposed more than once, where one or more other sets of plaintiffs (a) have not received a substantial production of custodial documents for that witness, (b) have a pending discovery dispute pertaining to that witness or their documents, or (c) otherwise are not in a position to depose that witness given the state of document discovery in their case or cases.[3] At each such deposition where plaintiffs

---

[3] In response to these examples, Meta raises the specter of one case's plaintiffs taking advantage of another case's plaintiffs' being unprepared to take a particular Common Witness deposition by racing to take a solo deposition. Leaving aside the unlikelihood of that hypothetical, the Tax Plaintiffs note their agreement with the Court's skepticism about whether "it's useful to have depositions generally before there's substantial completion of the documents that related to those depositions." April 20, 2023 Hearing Tr. 142:13–15. Accordingly, it is the *Tax* Plaintiffs' position that if one set of plaintiffs is ready to take a Common Witness deposition and Meta's inadequate production of relevant witness-

from two or three cases question a Common Witness, the *Tax* Plaintiffs propose that each of the three plaintiffs' groups shall have the right to question the Common Witness using one lawyer per each plaintiffs' group. For all Common Witness depositions, the plaintiffs participating in the deposition shall coordinate with one another to issue a single notice of deposition designating mutually agreeable dates. To facilitate the identification of common witnesses, the *Tax* Plaintiffs request that the Court require the plaintiffs to disclose to one another every witness they intend to depose at or before the time they communicate their intention to depose that witness to Meta.

The *Tax* Plaintiffs are also agreeable to imposing some time limits on the depositions of Common Witnesses to reduce the time and expense of depositions, with the goal of enabling most depositions to conclude in two consecutive days or less. Accordingly, for Common Witness depositions, the *Tax* Plaintiffs propose that for Common Witnesses designated by plaintiffs in two cases, a total time limit of twelve (12) hours be imposed. Similarly, the *Tax* Plaintiffs propose a total time limit of fifteen (15) hours for Common Witnesses designated by plaintiffs of all three cases. The *Tax* Plaintiffs propose these limits—which will reduce the collective time limits on plaintiffs below the standard seven (7) hours per party permitted under the Federal Rules of Civil Procedure—to account for the efficiencies likely to result from the plaintiffs' opportunity to attend Common Witness depositions and use testimony from one another's questioning. However, the *Tax* Plaintiffs' position is that any further limiting of Common Witness deposition time would impose limitations greater than is appropriate given the anticipated differences of essential proof in each case. On the other hand, the *Tax* Plaintiffs urge the Court to set specific hour limits now, so the parties have clear guidelines governing Common Witness Depositions. It is the *Tax* Plaintiffs' position that Meta's proposal that the Court leave this matter unresolved so the parties across the Three Cases can "meet and confer on appropriate witness-specific limits on a case-by-case basis" would thwart coordination, not facilitate it. After all, waiting for the several sets of parties to agree on witness-specific time limits for each separate case could easily spend more time than unlimited, uncoordinated depositions conducted pursuant to the Federal Rules of Civil Procedure.

---

specific documents in one of the cases is preventing another set of plaintiffs from being ready, that Common Witness's deposition should not be delayed so that she is only deposed once.

The *Tax* Plaintiffs also join Meta's proposal to prohibit the deposition of an already-deposed witness by plaintiffs who earlier failed to designate that person as a Common Witness for their case, with the two caveats that (1) plaintiffs should be allowed to depose such a witness over Meta's objections for good cause shown; and (2) plaintiffs should be allowed to obtain the transcript and video of any fact-witness deposition they chose not to attend, unless good cause can be shown.

Though the *Tax* Plaintiffs appreciate Meta's withdrawal of its proposal to require the plaintiffs to elect a single lawyer to ask "global" questions about matters common to all cases, its proposal to require the plaintiffs' groups to coordinate to ensure they do not ask overlapping questions and topics imposes an almost equal imposition on their independence and autonomy. Even worse, it is no better than taking a more flexible approach where Meta can use objections to protect its witnesses. For example, Meta can make objections to questions that have been "asked and answered" earlier in the deposition, even if asked by other lawyers. This will lead to a more equitable, and likely easier and more cooperative, coordination of plaintiffs' deposition questioning. Perhaps most importantly, this more flexible approach will not foment disputes among the plaintiffs' groups, which could result in delays and even the need for the Court's intervention.

### *(4) Coordination of Discovery Disputes*

With respect to all written discovery and document production, it is the *Tax* Plaintiffs' position that lead counsel in each of the Three Cases must retain full control of their respective (1) written discovery requests; (2) negotiations with Meta over the scope of Meta's discovery responses and document production (including with respect to Meta's production of documents in each case pursuant to Common Discovery prompts); (3) negotiations with Meta regarding search terms; and (4) negotiations with Meta over custodians.[4] To enable coordination of any disputes common to more than one of the Three Cases, the *Tax* Plaintiffs propose that the Court require the plaintiffs in the Three Cases to inform one another in advance of raising with the Court any discovery disputes that involve Common Discovery or Common Witnesses, so they may file joint discovery motions or responses, or file joinders in whole or in part on the same.

---

[4] The *Tax* Plaintiffs' understanding is that lead counsel in the Three Cases are in agreement on this point.

The Tax Plaintiffs look forward to discussing its coordination proposals and proposed coordination order at the Court's upcoming hearing.

***Meta's Statement:***

In the Joint Statements submitted to this Court on April 13, 2023, Meta proposed a framework for coordinating discovery across *In re Meta Pixel Tax Filing Cases*, *In re Meta Pixel Healthcare Litigation*, and *Gershzon* (collectively, the "Pending Cases"). Dkt. 51. At the April 20, 2023 conference, the Court agreed that there are "efficiencies . . . to some coordination on discovery," April 20, 2023 Hearing Tr. 9:2–3, and directed the parties, prior to the May 23, 2023 conference, to "reflect on the discovery needs that are common to the three sets of cases," *id.* 8:2–4. The Court conveyed that its "goal"—and the parties' "goal as well"—should be "to avoid inefficiency and undue burden on any party." *Id.* 7:24–8:1.

As set forth below, Meta listened to the Court's specific guidance, and now proposes a reasonable but limited approach for discovery coordination. Meta believes that its coordination proposal will reduce inefficiencies and undue burden for both the Court and the parties.

To the extent it is helpful to the Court, Meta first provides a brief overview of the current status of each of the Pending Cases:

In the *Healthcare* case, Meta's motion to dismiss will be fully briefed on July 17, 2023, and the motion is set for hearing on August 16, 2023. Discovery in that case has started. To date, the *Healthcare* plaintiffs have served a first set of interrogatories and requests for production ("RFPs"), to which Meta has responded. The parties are in the process of negotiating the scope of those requests. On May 1, 2023, the parties filed three discovery dispute letters regarding Meta's responses to plaintiffs' discovery requests. Those disputes are set for hearing on May 23, 2023.

In *Gershzon*, Meta filed its motion to dismiss on March 31, 2023, and that motion is set for hearing on June 9, 2023. Discovery in *Gershzon* began on April 20, 2023. The *Gershzon* plaintiff has also served a first set of interrogatories and RFPs. Meta's responses and objections are due May 22, 2023.

In the *Tax* case, the plaintiff filed a consolidated complaint on May 15, 2023. Meta intends to move to dismiss that complaint. Although one plaintiff served requests for production prior to the filing of the consolidated complaint, discovery has not yet begun in earnest.

As instructed by this Court, the parties across the Pending Cases have negotiated a Clawback Order, a Protective Order, and an ESI Protocol. This Court has entered the Clawback Order, and ruled on the parties remaining disputes regarding the Protective Order, and the final disputes relating to the ESI Protocol are pending before the Court.

Taking into account this Court's guidance, and the status of each of the Pending Cases, Meta's proposal for coordinating discovery across the cases, as it relates to depositions, discovery disputes, and requests for production is as follows:

### *(1) Coordinated depositions*

At the April 20, 2023 conference, the Court directed the parties to "do something about coordinating depositions so that the same person doesn't have to testify on three different occasions to the same material." April 20, 2023 Hearing Tr. 8:14–16. Consistent with the Court's guidance, Meta proposes that fact witnesses be deposed only once across the Pending Cases.

Meta proposes that depositions of Meta witnesses proceed as follows: The plaintiffs' group will together decide on the Meta witnesses whose testimony is relevant to more than one case, issuing a single notice or subpoena for each witness. The plaintiffs' group must also coordinate depositions of third-party witnesses, where the interest in minimizing burden on witnesses is even stronger. However, Meta has no objection to Tax Plaintiffs' proposal that the plaintiffs' group may issue multiple subpoenas to third-party witnesses, so long as those subpoenas are coordinated such that a witness is only deposed once across the Pending Cases. This logical coordination amongst the plaintiffs' group, as this Court has directed, *id.*, will avoid the hypothetical Tax Plaintiffs have raised in which one set of plaintiffs seeks to depose a witness before another set of plaintiffs is ready.[5]

---

[5] Plaintiffs' baseless suggestion that "inadequate production" of documents from Meta in one case could impact plaintiffs' ability to coordinate on depositions only underscores why discovery should be coordinated across the Pending Cases. Meta will do its part to identify overlapping and duplicative discovery, but plaintiffs in the Pending Cases should also do their part to talk to one another and coordinate so that—for example—a witness is not deposed multiple times in the Pending Cases.

The plaintiffs' group can determine among themselves which counsel will ask global questions that apply to issues relevant to two or more of the Pending Cases; Meta does not object to more than one lawyer asking global questions, but the plaintiffs should coordinate so that different lawyers are not covering the same topics.[6] Counsel for Meta would then have an opportunity to ask redirect questions on global issues. The questions and answers during this portion of each deposition would be treated as if taken in all of the Pending Cases.

After the global portion, counsel representing plaintiffs in each of the individual Pending Cases would have the opportunity to ask the witness case-specific questions (one attorney per case) outside the presence of counsel for the other plaintiffs. Counsel for Meta would then have an opportunity to ask redirect questions on case-specific issues. The questions and answers during these sections of each deposition would be treated as if taken in the individual case to which that section applies.

Depositions will proceed most efficiently for both the witness and for all parties if the plaintiffs' group coordinates to avoid asking the same questions multiple times. If, as Tax Plaintiffs propose, the plaintiffs' group merely splits their time allocation without coordinating in advance on global topics and questions, Meta will be forced object during the deposition to questions asked more than once. A primary goal of coordinating depositions is to avoid having the same witness address the same questions and topics multiple times. Tax Plaintiffs' proposal does not advance that goal.

The plaintiffs' group should also coordinate the time allocation between the "global" questioning and the case-specific questioning described above. Meta anticipates that, while the standard 7-hour period will be appropriate for certain witnesses, in some circumstances where a witness is deposed on both "global" and case-specific issues, the parties will work together to schedule an adequate amount of on-the-record time in excess of the time limits established by Fed. R. Civ. P. 30(d)(1). Meta believes it is premature to set specific hour-limits now, as different witnesses will require different amounts of questioning, and Meta expects that the parties can meet and confer on

---

[6] Requiring that plaintiffs in the Pending Cases coordinate in advance of a deposition will ensure the questioning is coordinated and non-duplicative. In contrast, relying on Meta to interpose "asked and answered" objections to police plaintiffs' duplicative questioning would not be efficient.

appropriate witness-specific limits on a case-by-case basis.[7] Further, Meta is skeptical that the plaintiffs' group will require 15 hours of deposition testimony with any witness in these matters, as Tax Plaintiffs propose.

The parties may also take depositions that are relevant only to a single case, so long as all parties agree that the witness may not later be deposed a second time in any of the Pending Cases. In this situation, the deposition would proceed in a standard fashion, with the deposition being treated as taken only in that specific case, and with only the relevant parties present.

Meta disagrees with the Tax Plaintiffs' proposal regarding depositions that they argue need not be coordinated, where "plaintiffs (a) have not received a substantial production of custodial documents for that witness, (b) have a pending discovery dispute pertaining to that witness or their documents, or (c) otherwise are not in a position to depose that witness given the state of document discovery in their case or cases." Ex. A. These proposed criteria could lead to a race among plaintiffs to depose witnesses in one case before the plaintiffs in another case are similarly situated according to Tax Plaintiffs; this is the opposite of coordination, and it would only lead to duplicative questioning and inconvenience to witnesses, among other things.

### *(2) Discovery Disputes*

Meta is mindful of the Court's guidance that if it is "going to get discovery disputes, [it] would rather not have to deal with the same or similar issues on three different occasions." April 20, 2023 Hearing Tr. 8:21–23. Meta agrees with Tax Plaintiffs' proposal for the Court to direct the parties to make all reasonable efforts to coordinate on the filing of any discovery dispute briefs. Given the obvious "overlap . . . in terms of discovery" between the Pending Cases, *id.* 7:22–23, if one plaintiff intends to bring a dispute to the Court, it should be required to confer with the other plaintiffs, so that any interested plaintiff can participate in filing a joint discovery dispute brief or motion. This direction will be important to reduce the overall volume of motion practice across the Pending Cases.

---

[7] Meta does not agree that conferring as to deposition time limits for specific witnesses "could easily spend more time than unlimited, uncoordinated depositions." However, if time limits do become a frequent point of contention once discovery progresses, Tax Plaintiffs are free to seek an order at that time, with the benefit of a better understanding of the necessary scope of discovery in this case and input from plaintiffs in the other Pending Cases.

### (3) Coordinated written discovery

Prior to the April 20, 2023 conference, Meta proposed a framework for coordinating written discovery across the Pending Cases. At the April 20, 2023 conference, the Court did not address Meta's specific proposal on written discovery, but directed the parties to consider "whether, for example, some of Meta's document production can be shared across all cases. So maybe it occurs in the first instance in the healthcare party case because that case is ahead of the others . . . ." April 20, 2023 Hearing Tr. 8:5–10. Meta now proposes a framework it believes adheres to this guidance.

Meta is not now re-proposing that all written discovery be coordinated across the Pending Cases. Rather, Meta has significantly narrowed its proposal, including to take into account plaintiffs' vehement opposition to coordinating written discovery. Meta believes that the greatest efficiency to be gained is by coordinating any further requests for production (rather than going back now to identify which already-served requests are global in nature).

Meta thus proposes that, to the extent plaintiffs intend to seek any further requests for production on issues relevant to two or more cases, the plaintiffs' group will work together to issue and serve coordinated, written "global" discovery requests. The plaintiffs' group will issue one copy of written discovery requests to Meta on these "global" issues, rather than issuing duplicative requests covering overlapping topics across the three cases. Meta may do the same to the extent there are efficiencies to be gained by issuing a single set of requests to all plaintiffs at once. Meta's responses to any "global" request will be produced to all parties (once discovery is underway in all cases), and any documents will be treated as having been obtained through discovery in each of the Pending Cases and produced to all plaintiffs, except to the extent Meta determines a "global" request implicates case-specific documents, in which case documents specific to each case will be produced to the relevant plaintiffs. Meta believes this compromise proposal addresses Plaintiffs' concern regarding delays arising over what constitutes a "global" request.

Plaintiffs in individual cases may also serve further case-specific written discovery requests on Meta, up to certain numerical limits agreed to by the parties or ordered by the Court. To be clear, Meta is not proposing that the service of case specific requests be sequenced after "global" requests; rather, both "global" and case-specific requests can proceed simultaneously.

Meta's responses to case-specific requests, and any documents Meta produces for case-specific requests, will be sent only to the plaintiffs that issued the request and will be treated only as having been obtained in that particular case.

Meta does not, however, agree with Tax Plaintiffs' proposal, which would permit the plaintiffs' group to serve unlimited "global" discovery requests *and* join case-specific requests served by other plaintiffs with no impact on the numerical limits for case-specific requests set by the Federal Rules. Such a proposal does not serve the Court's stated goals in recommending discovery coordination, namely, "to avoid inefficiency and undue burden on any party." April 20, 23 Hearing Tr. 7:24–8:1.

### *(4) Conclusion*

As discussed above, this Court has already identified benefits of coordinated discovery, specifically as to depositions, discovery disputes, and document production, and Meta's proposal focuses narrowly on the efficiencies to be gained through coordinated discovery. *See also Pieterson v. Wells Fargo Bank*, N.A., 2019 WL 1465355, at *2 (N.D. Cal. Feb. 8, 2019) ("[c]oordination is an inherently flexible practice and may be accomplished in many ways," including by "taking care to avoid duplicative discovery").

Meta recognizes that there are some differences between the Pending Cases, which is why its revised proposal contemplates that the plaintiffs in each case maintain the already-served requests for production that pre-date any coordination and can continue to make case-specific written discovery requests, in addition to any future global requests. *See, e.g.*, Manual for Complex Litigation, Fourth, § 20.14 (directing judges to "encourage techniques that coordinate discovery and avoid duplication" in coordinating several cases); *see id.* §§ 11.423, 11.443, 11.452, and 11.464. The same is true for depositions: Meta's proposal contemplates that the parties will work together to arrange depositions to cover both global *and* case-specific issues, while avoiding unnecessary duplication of effort and burden to witnesses. *See In re Telescopes Antitrust Litig.*, 2021 WL 1541692, at *2 (N.D. Cal. Apr. 20, 2021) (DeMarchi, J.) (requiring parties in separate cases to coordinate on taking depositions of witnesses relevant to both matters, and noting "the Court's authority to manage discovery and to require coordination in the interest of justice"); *Tawnsaura Grp., LLC v. Maximum Human Performance, LLC*, 2012 WL 12331032, at *3 (C.D. Cal. Nov. 7, 2012) (coordinating discovery such that witnesses would

be deposed only once and "scheduled for enough time to cover all [] individual issues, with common issues handled in a coordinated and nonduplicative manner," and further requiring the parties to "agree on a number of common discovery requests . . . with a small number of additional requests").

Meta has thus proposed a framework that balances the discovery already underway and the efficiencies that can be gained by coordinated discovery going forward as this Court directed.

### 2. INTERIM DISCOVERY DEADLINES

***Plaintiffs' Statement:***

The *Tax* Plaintiffs agree with the Court that the parties need interim deadlines to ensure document production is completed on a timely basis in this case, particularly if depositions are to be coordinated across the Three Cases. Furthermore, unless concrete deadlines are set, the parties will be left without milestones from the Court that, when missed, provide the parties opportunities to bring their unquestionably ripe disputes before the Court in a coordinated manner (*i.e.*, fewer separate hearings). Accordingly, the *Tax* Plaintiffs propose that the following interim document-production deadlines: (1) final completion of all requested data about class representatives and proposed classes and subclasses due ninety (90) days from the date of the entry of the scheduling order, (2) substantial completion of document production due one hundred twenty (120) days from the date of the entry of the scheduling order, and (3) final completion of document production be due ninety (90) days before the close of discovery. The *Tax* Plaintiffs also propose that the coordination order include a requirement that the parties enter a stipulation authenticating all documents produced so that the parties need not spend deposition time authenticating documents.

The *Tax* Plaintiffs disagree with Meta that the interim-deadlines approach generally suggested by the Court and incorporated into a specific proposal would favor speed over substance. To the contrary, substance and speed are not at cross purposes in discovery; indeed, in aggregate litigation like this, setting interim deadlines may be the only way to ensure document production will be complete in substance before the close of discovery. The *Tax* Plaintiffs also disagree that its interim deadlines are unrealistic, given that they provide Meta much more time to complete its document production than the 30-day default provided by the Federal Rules of Civil Procedure. Should Meta fail to meet its document-production deadlines for excusable reasons, it will have the opportunity to explain that to

the *Tax* Plaintiffs when they are required to meet and confer, and, if such dispute is not resolved then, it will have the opportunity to be heard by this Court if and when the time comes.

The Tax Plaintiffs have been directed to participate in discovery planning activities—and have done so quickly and substantively—since Judge Illston referred the *Tax* Cases to this Court for discovery. Meta's position that the *Tax* Cases should not have interim deadlines undermines Judge Illston's referral and the hard work of this Court and the parties.

***Meta's Statement:***

No case schedule has been set in this matter. Plaintiff's Consolidated Complaint was filed on May 15, 2023. The parties have not held a Rule 26(f) conference. Meta believes, as to the *Tax* matter, that it makes the most sense for the Court and the parties to address interim discovery deadlines once the Court has determined to what extent discovery across *Healthcare, Tax*, and *Gershzon* should be coordinated. In any event, the interim deadlines proposed by Tax Plaintiffs are simply not realistic for an action of this complexity. For example, Tax Plaintiffs propose that substantial completion of document production occur only 120 days after entry of a scheduling order. These deadlines would deprive the parties of the time and flexibility necessary to complete discovery, prioritizing speed over substance in a manner that could undermine the very coordination the Court has directed the parties to consider. Meta's proposal allows the parties to confer further, after the Court has weighed in on how best to coordinate discovery across the Pending Cases.

Dated: May 16, 2023

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Lauren R. Goldman*
        Lauren R. Goldman

LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY (SBN 268184)
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA (SBN 301746)
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:    (415) 393-8200
Facsimile:    (415) 393-8306

ANDREW M. KASABIAN (SBN 313210)
akasabian@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:    (213) 229-7311
Facsimile:    (213) 229-6311

COOLEY LLP
MICHAEL G. RHODES (SBN 116127)
rhodesmg@cooley.com
KYLE C. WONG (SBN 224021)
kwong@cooley.com
CAROLINE A. LEBEL (SBN 340067)
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000

*Attorneys for Defendant Meta Platforms, Inc.*

Dated: May 16, 2023

GEORGE FELDMAN MCDONALD, PLLC

By: */s/ Lori G. Feldman*
　　　Lori G. Feldman

Lori G. Feldman (admitted *pro hac vice*)
LFeldman@4-justice.com
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Telephone: (917) 983-9321
Facsimile: (888) 421-4173

BURSOR & FISHER, P.A.

By: *Joel D. Smith*
　　　Joel D. Smith

Joel D. Smith (SBN 244902)
jsmith@bursor.com
Neal J. Deckant (SBN 322946)
ndeckant@bursor.com
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700

GEORGE FELDMAN MCDONALD, PLLC
David J. George. (*pro hac vice* forthcoming)
DGeorge@4-Justice.com
Brittany L. Brown. (*pro hac vice* forthcoming)
BBrown@4-justice.com
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Telephone: (561) 232-6002
Facsimile: (888) 421-4173

*Plaintiffs' Steering Committee Co-Chairs*

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

Rebecca A. Peterson (SBN 241858)
rapeterson@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

FOSTER YARBOROUGH, PLLC

Patrick Yarborough (admitted *pro hac vice*)
patrick@fosteryarborough.com
917 Franklin Street, Suite 220
Houston, TX 77002
Telephone: (713) 331-5254

THE HODA LAW FIRM, PLLC

Marshal J. Hoda (admitted *pro hac vice*)
marshal@thehodalawfirm.com
12333 Sowden Road, Suite B, PMB 51811
Houston, TX 77080
Telephone: (832) 848-0036
Facsimile: (832) 201-0364

*Plaintiffs' Steering Committee Members*

## CIVIL L.R. 5-1(h)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I, Patrick Yarborough, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: May 16, 2023            By:     */s/ Patrick Yarborough*