UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE META PIXEL TAX FILING CASES<br>This Document Relates To:<br>All Actions | Case No.  22-cv-07557-SI (VKD)<br><br>**ORDER RE DISPUTE RE ESI PROTOCOL**<br><br>Re: Dkt. No. 70 |

The parties ask the Court to resolve their disputes concerning a proposed ESI protocol. Dkt. No. 70.  They identify seven areas of disagreement concerning the following matters: (1) preservation, (2) search methodology, (3) content of privilege logs, (4) hyperlinked documents, (5) email threading, (6) technical feasibility, and (7) proprietary files.

The Court resolves some of the parties' disputes below, and will address others at the May 23, 2023 discovery conference.  The final ESI Protocol will be entered as an order after the May 23, 2023 discovery conference.

1. **Preservation of ESI (sec. 5)**

The parties have not complied with the Court's directions, or with the requirements of Rule 26(f)(2) and (3), regarding a protocol for the preservation of ESI.  *See* Dkt. No. 56; *see also In re Meta Pixel Healthcare Litig.*, Case No. 3:22-cv-03580-WHO, Dkt. No. 217 (Tr. pp. 53-71).  The Court is disappointed that Meta was not fully prepared to discuss potential sources of relevant and responsive ESI, or to explain to plaintiffs why certain categories of ESI need not be preserved (as Meta proposes), before the date the Court set for submission of the parties' proposals for an ESI protocol.  *See* Dkt. No. 57 at 2.  Likewise, it is unclear from the parties' submissions whether plaintiffs have made any disclosures to Meta about the potential sources of relevant and responsive

ESI and what sources plaintiffs will or will not preserve.

Meta requests a provision stating, in part, that "the Parties are not required to modify, on a going forward basis, the procedures used by them in the usual course of business to backup and archive data." *See* Dkt. No. 70, Ex. B (sec. 5(a), *Option II*). Meta also asks that the Court endorse a specific list of ESI data sources that need not be preserved because they are either "not reasonably accessible because of undue burden or cost" pursuant to Rule 26(b)(2)(B), or because their preservation and production would be disproportionate to the needs of the case. *See id.* (sec. 5(d)-(f), *Option II*). The Court declines to enter an order affirmatively relieving Meta (or any party) of whatever obligations it may otherwise have to preserve the specific data sources.

For their part, *Healthcare* plaintiffs' proposal (which other plaintiffs adopt) starts from the premise that all relevant evidence must be preserved unless a party moves for and obtains a protective order. *See* Dkt. No. 70, Ex. A (sec. 5). That proposal is fundamentally inconsistent with the cooperative approach contemplated by this District's ESI Guidelines. *See*, *e.g.*, ESI Guideline 2.01.

Accordingly, the Court declines to adopt any party's proposal for preservation (section 5), and instead orders as follows: If they have not done so already, the parties must confer about their respective sources of relevant and responsive ESI. If any party wishes to be relieved of whatever obligations it may otherwise have to preserve specific data sources or categories of ESI, that party must explain to the adverse party why those sources or categories need not be preserved. *The Court expects the parties to reach agreement on most, if not all, such sources or categories.* The conference(s) must take place no later than **May 22, 2023**, and the Court expects a report from the parties on what they have agreed upon and what remains in dispute regarding preservation during the **May 23, 2023 discovery conference**. *No party may file anything further on this point prior to the discovery conference.*

**2.      Search methodology (sec. 6)**

The parties have narrowed their disputes about search methodology, but they continue to disagree about most aspects of this part of the protocol. The parties principally dispute the provisions for identifying sources of ESI, identifying effective search terms, and the use of

2

technology assisted review. However, the redline for this section of the protocol shows that for other provisions where agreement should be possible (e.g., each party's right/obligation to review for responsiveness, exclusion of common system files, etc.), the parties have made no effort to reach agreement on the appropriate text. *See* Dkt. No. 70, Ex. C (sec. 6).

With respect to the principal disputes, the Court has considered the parties' respective proposals and intends to order a protocol addressing search methodology that follows the framework reflected in **Appendix A** to this order. The Court expects the parties to agree on text for the other aspects of section 6 that are not really in dispute.

### 3. Privilege logs (sec. 9)

The parties dispute some details of a provision governing the preparation of privilege logs; however, some of their disagreements are not explained, and *Healthcare* plaintiffs say the parties have agreed to address the format of privilege logs separately at a later date. For now, the parties should include in the ESI Protocol only those provisions on which they all agree, which appear to be the following:

(a) Communications involving trial counsel of record that post-date the filing of the complaint need not be placed on a privilege log.

(b) The Parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines. Privilege logs will be produced in Microsoft Excel.

(c) The Parties will negotiate interim and final deadlines for the production of privilege logs that permit any disputes about claims of privilege or work product protection to be addressed in advance of the close of fact discovery. If the parties are unable to agree on specific dates for interim and final deadlines for the production of privilege logs, the Parties may ask the Court to resolve the dispute.

### 4. Hyperlinked documents (App. 1, sec. 1)

The parties dispute whether hyperlinked documents should be treated like email

3

1  attachments and produced together with the document to which they are hyperlinked.  Meta says it
2  has not had an adequate opportunity to consider and respond to the May 9, 2023 declaration of
3  *Healthcare* plaintiffs' consultant on this point.  Presumably, Meta has been investigating this issue
4  since receiving the declaration, and should now be in a position to address it.

Accordingly, the parties must be prepared to discuss this issue at the **May 23, 2023 discovery conference**.  *No party may file anything further on this point prior to the discovery conference.*

### 5. Email threading (sec. 7(b))

As a starting point, the Court adopts Meta's proposal regarding "email threading."  *See* Dkt. No. 70, Ex. B (sec. 7(b)).  *DMV* plaintiffs suggest that Meta is able to produce metadata for relevant fields for each email thread member contained with the Last In Time E-mail without undue burden.  If this is so, the Court will require Meta (or any other party) to produce this metadata.

Meta says it has not had an adequate opportunity to evaluate whether it could produce this metadata.  Meta should now be in a position to address this issue, and should be prepared to discuss it at the **May 23, 2023 discovery conference**.  *No party may file anything further on this point prior to the discovery conference.*

### 6. "Technical feasibility"

The ESI Protocol should not include provisions that state that a party will only comply "to the extent it is reasonably and technically feasible."  This invites mischief.  While the Court hopes and expects that the ESI Protocol will not require any party to undertake obligations that are not "reasonably and technically feasible," a party that encounters unexpected difficulties in comply with the protocol should alert the adverse party about the problem and propose a solution.

### 7. Proprietary files (App. 1, sec. 12/13)

The Court adopts Meta's proposed language to address this issue.  *See* Dkt. 70, Ex. B

///

///

///

United States District Court
Northern District of California

(App. 1, sec. 12).

**IT IS SO ORDERED.**

Dated: May 18, 2023

                                                              VIRGINIA K. DEMARCHI
                                                              United States Magistrate Judge

# APPENDIX A

**6.    SEARCH**

<u>ESI Data Sources</u>:

The party producing ESI must identify and disclose to the requesting party the custodial and non-custodial ESI data sources it reasonably believes contain information that is relevant to the claims and defenses asserted in the action and proportional to the needs of the case, taking into account the requests for discovery the producing party has received, as well as the type of ESI (e.g., email, database, etc.) for each data source.[1]

No later than __ days after receiving the producing party's identification of data sources and type of ESI, the requesting party may propose to the producing party additional or alternative custodial or non-custodial data sources it reasonably believes contain information that is relevant to the claims and defenses asserted in the action and proportional to the needs of the case.

The parties must confer within __ days of the requesting party's proposal to resolve any disputes about the producing party's data sources.

<u>Use of Search Terms</u>:

A producing party may, but is not required to, use search terms to locate or identify potentially relevant ESI. If a producing party elects to use search terms in connection with its collection, review, or production of ESI from a data source, the producing party must disclose the search terms it intends to use to the requesting party.[2] At the time it makes this disclosure, the producing party must provide a hit report (to include unique hits, hits with families, and total number of documents hit) for the search terms applied to each data source. In preparing its proposed search terms, a producing party may review a "null set sample" for each data source. The "null set sample" is a statistically valid (95% ±5), randomly generated sample set of documents from a given data source that do not hit on any search terms, which the producing party

---

[1] The Court anticipates setting a deadline for the producing party's identification of data sources after the May 23, 2023 discovery conference.

[2] The Court anticipates setting a deadline for the producing party's identification of search terms after the May 23, 2023 discovery conference.

United States District Court
Northern District of California

reviews for relevant, responsive, and non-privileged documents. At the time the producing party discloses its proposed search terms to the receiving party, it may provide the results of its review of the "null set sample"—i.e., a disclosure of how many relevant, responsive, and non-privileged documents from null set sample were not captured by the proposed search terms—to demonstrate the effectiveness of its proposed search terms.

No later than __ days after receiving the producing party's disclosure of proposed search terms and accompanying information, the requesting party may propose to the producing party additional or alternative search terms for one or more data sources, and may request that the producing party provide hit reports for the additional or alternative search terms for one or more data sources.

The producing party shall promptly assess the requesting party's proposed additional or alternative search terms, including by running the requested hit reports, reviewing additional "null set samples," or performing any other analyses the producing party believes would assist the parties in evaluating the effectiveness of the proposed search terms. The producing party must provide the hit reports requested by the requesting party, but may also provide other information.

The parties must confer within __ days of the requesting party's proposal to resolve any disputes about the search terms to be applied to the producing party's data sources.

<u>Use of Technology Assisted Review</u>:

A producing party may, but is not required to, use technology assisted review or similar advance analytics ("TAR") to filter out or exclude from review and production non-responsive documents. If a producing party elects to use TAR for this purpose, the producing party must disclose the following information in advance to the requesting party: (1) the custodial and non-custodial data sources against which TAR will be run; (2) the TAR tool being used and the name of the vendor; and (3) the measure(s) used to validate the results of the TAR methodology.

A producing party need not disclose whether it is using TAR, Continuous Active Learning ("CAL"), or other predicting coding tool merely to prioritize the review of ESI.