GIBSON, DUNN & CRUTCHER LLP
LAUREN GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, New York  10166-0193
Telephone:      212.351.4000
Facsimile:      212.351.4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:      415.229.7311
Facsimile:      415.801.7389

ANDREW M. KASABIAN, SBN 313210
akasabian@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:      213.229.7311
Facsimile:      213.229.6311

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:      415.693.2000
Facsimile:      415.693.2222

*Attorneys for Defendant Meta Platforms, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL TAX FILING CASES<br><br>This Document Relates To:<br><br>Case No. 3:22-cv-07557-SI, All Actions | MASTER FILE NO. 3:22-cv-07557-SI<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>CLASS ACTION<br><br>Date:  October 27, 2023<br>Time:  10:00 a.m.<br>Judge:  Hon. Susan Illston<br>Date Action Filed: December 1, 2022 |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 27, 2023, at 10:00 a.m., before the Honorable Susan Illston of the United States District Court for the Northern District of California, Courtroom 1, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Meta Platforms, Inc., will, and hereby does, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the complaint with prejudice.

The motion is based upon this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the request for judicial notice and accompanying declaration; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

Should the complaint be dismissed under Rule 12(b)(6) for failure to state a claim?

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

      A.     Meta's Pixel ...................................................................................................... 2

      B.     Meta's Policies ................................................................................................. 2

      C.     Meta's Filter .................................................................................................... 4

      D.     Plaintiffs' Allegations ..................................................................................... 5

LEGAL STANDARD ............................................................................................................... 5

ARGUMENT ............................................................................................................................. 6

I.     The Out-Of-State Claims Are Barred By The Choice-Of-Law Provision In Meta's Terms. .................................................................................................... 6

II.    The Complaint Fails To State Any Plausible Claim For Relief. .............................. 7

      A.     Plaintiffs Fail To State A Wiretapping Claim ................................................ 7

              1.     The Federal Wiretap Act And The Missouri Wiretap Act (Counts 6 And 5) .................................................................... 7

              2.     Section 631 Of The California Invasion Of Privacy Act (Count 1) ........................................................................................ 11

      B.     Plaintiffs Fail To State A Claim For Eavesdropping (Counts 2, 3, And 4) ................................................................................................................ 12

      C.     Plaintiffs Fail To State A Claim For Criminal Manufacturing Of A Spying Device (Counts 9 And 8) ................................................................... 13

      D.     Plaintiffs Fail To State A Consumer Fraud Claim ........................................ 15

              1.     California Legal Remedies Act And California Unfair Competition Law (Counts 14 And 16) ............................................ 15

              2.     Illinois Consumer Fraud And Deceptive Business Practices Act (Count 10) ........................................................................................ 18

              3.     Illinois And New York Deceptive Trade Practices Acts (Counts 11 And 12) ..................................................................................... 20

      E.     Plaintiffs Fail To State A Claim For Negligence (Count 13) ....................... 21

      F.     Plaintiffs Fail To State A Claim For Theft (Count 15) ................................. 23

      G.     Plaintiffs Fail To State A Claim For Unjust Enrichment (Count 7) ............. 23

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**
(*continued*)

Page

III.    At A Minimum, Claims Outside The Limitations Period Must Be Dismissed. ........24

CONCLUSION .................................................................................................................................25

NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:22-CV-07557-SI

# TABLE OF AUTHORITIES

**CASES**

*Al-Ahmed v. Twitter, Inc.*,
   2023 WL 27356 (N.D. Cal. Jan. 3, 2023) ................................................................. 25

*Andrews v. Int'l Bus. Machines Corp.*,
   456 F. Supp. 2d 104 (D.D.C. 2006) ......................................................................... 9

*In re Apple Inc. Device Performance Litig.*,
   386 F. Supp. 3d 1155 (N.D. Cal. 2019) ................................................................... 16

*In re Apple Processor Litig.*,
   2022 WL 2064975 (N.D. Cal. June 8, 2022) ............................................................ 24

*Armstrong v. Deere & Co.*,
   2017 WL 4168485 (S.D. Ind. Sept. 20, 2017) ......................................................... 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 5, 6, 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 5, 6, 11

*Bradshaw v. City of Los Angeles*,
   2023 WL 3400634 (C.D. Cal. Mar. 10, 2023) ......................................................... 17

*Brodsky v. Apple Inc.*,
   2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) ......................................................... 24

*Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc.*,
   94 Cal. App. 4th 151 (2001) .................................................................................... 24

*Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Assur. Co.*,
   62 Cal. App. 4th 1166 (1998) .................................................................................. 21

*Callaghan v. BMW of N. Am., LLC*,
   2014 WL 1340085 (N.D. Cal. Apr. 2, 2014) ............................................................ 21

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ...................................................................... 19

*Carreon v. Edwards*,
   2022 WL 4664569 (E.D. Cal. Sept. 29, 2022) ......................................................... 23

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) .................................................................... 13

*In re Cases Filed by DIRECTV, Inc.*,
   344 F. Supp. 2d 636 (D. Ariz. 2004) ....................................................................... 15

*Claridge v. RockYou, Inc.*,
    785 F. Supp. 2d 855 (N.D. Cal. 2011)..................................................................................17

*Cousineau v. Microsoft Corp.*,
    992 F. Supp. 2d 1116 (W.D. Wash. 2012) ...........................................................................13

*Darne v. Ford Motor Co.*,
    2015 WL 9259455 (N.D. Ill. Dec 18, 2015)........................................................................20

*Day v. GEICO Casualty Co.*,
    580 F. Supp. 3d 830 (N.D. Cal. 2022)..................................................................................24

*De Bouse v. Bayer AG*,
    922 N.E.2d 309 (Ill. 2009) ...................................................................................................19

*Dent v. Nat'l Football League*,
    902 F.3d 1109 (9th Cir. 2018) ..............................................................................................21

*Directv Inc. v. Little*,
    2004 WL 1811153 (N.D. Cal. Aug. 12, 2004).....................................................................14

*In re DIRECTV, Inc.*,
    2004 WL 2645971 (N.D. Cal. July 26, 2004).......................................................................15

*Dolce Int'l/San Jose, LLC v. City of San Jose*,
    2020 WL 5910066 (N.D. Cal. Oct. 6, 2020).......................................................................24

*In re DoubleClick Inc. Priv. Litig.*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....................................................................................9

*F.B.T. Prods., LLC v. Aftermath Records*,
    621 F.3d 958 (9th Cir. 2010) ................................................................................................12

*In re Facebook PPC Advert. Litig.*,
    2010 WL 3341062 (N.D. Cal. Aug. 25, 2010).....................................................................16

*In re Facebook Priv. Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011)............................................................................16, 17

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*,
    2015 WL 13273308 (C.D. Cal. July 29, 2015) ......................................................................9

*Fox v. Ethicon Endo-Surgery, Inc.*,
    35 Cal. 4th 797 (2005) .........................................................................................................25

*Freedline v. O Organics LLC*,
    445 F. Supp. 3d 85 (N.D. Cal. 2020) ...................................................................................23

*Gaidon v. Guardian Life Ins. Co. of Am.*,
    96 N.Y.2d 201 (2001) ...........................................................................................................24

*Gardiner v. Walmart Inc.*,
   2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ............................................................. 22

*Garrett v. RentGrow, Inc.*,
   2005 WL 1563162 (N.D. Ill. July 1, 2005) ............................................................... 19

*Gold v. Lumber Liquidators, Inc.*,
   2015 WL 7888906 (N.D. Cal. Nov. 30, 2015) ........................................................... 19

*In re Google Android Consumer Priv. Litig.*,
   2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ........................................................... 22

*In re Google Inc. Gmail Litig.*,
   2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ............................................................. 8

*Goshen v. Mut. Life Ins. Co.*,
   98 N.Y.2d 314 (2002) ............................................................................................... 21

*Guajardo v. Skechers USA, Inc.*,
   503 F. Supp. 3d 746 (C.D. Ill. 2020) ....................................................................... 19

*Guerrero v. Gates*,
   442 F.3d 697 (9th Cir. 2006) .................................................................................... 25

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................................................................... 24

*Hart v. TWC Prod. & Tech. LLC*,
   526 F. Supp. 3d 592 (N.D. Cal. 2021) ...................................................................... 19

*Hartford Cas. Ins. Co. v. Fireman's Fund Ins. Co.*,
   2015 WL 5168643 (N.D. Cal. Sept. 3, 2015) .............................................................. 9

*Haskins v. Symantec Corp.*,
   654 F. App'x 338 (9th Cir. 2016) ............................................................................. 16

*Herskowitz v. Apple Inc.*,
   940 F. Supp. 2d 1131 (N.D. Cal. 2013) .................................................................... 18

*Hexcel Corp. v. Ineos Polymers, Inc.*,
   681 F.3d 1055 (9th Cir. 2012) .................................................................................. 25

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) .................................................................................... 18

*Holmes v. Johnson & Johnson*,
   617 F. App'x 639 (9th Cir. 2015) ............................................................................. 18

*Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*,
   451 F. Supp. 2d 982 (N.D. Ill. 2006) ....................................................................... 20

Gibson, Dunn &
Crutcher LLP

*In re iPhone App. Litig.*,
  2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ....................................................... 16

*In re iPhone App. Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................. 22

*Javier v. Assurance IQ, LLC*,
  2023 WL 3933070 (N.D. Cal. June 9, 2023) ......................................................... 25

*Johnson v. Honeywell Int'l Inc.*,
  179 Cal. App. 4th 549 (2009) ............................................................................... 21

*Katz-Lacabe v. Oracle Am., Inc.*,
  2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ..................................................... 8, 19

*Kearney v. Salomon Smith Barney, Inc.*,
  39 Cal. 4th 95 (2006) ........................................................................................... 12

*Keilholtz v. Lennox Hearth Prod. Inc.*,
  2009 WL 2905960 (N.D. Cal. Sept. 8, 2009) ........................................................ 24

*Kellman v. Spokeo, Inc.*,
  599 F. Supp. 3d 877 (N.D. Cal. 2022) ................................................................. 17

*Kurowski v. Rush Sys. for Health*,
  2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) .......................................................... 20

*In re Lenovo Adware Litig.*,
  2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ....................................................... 15

*Letizia v. Facebook Inc.*,
  267 F. Supp. 3d 1235 (N.D. Cal. 2017) ................................................................ 24

*Licea v. Am. Eagle Outfitters, Inc.*,
  2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) ........................................................ 11

*Loo v. Toyota Motor Sales, USA, Inc.*,
  2019 WL 7753448 (C.D. Cal. Dec. 20, 2019) ...................................................... 17

*Martin v. Meredith Corp.*,
  2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023) ....................................................... 21

*Martin v. Sephora USA, Inc.*,
  2023 WL 2717636 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, 2023 WL
  3061957 (E.D. Cal. Apr. 24, 2023) ...................................................................... 11

*McDonald's Corp. v. Levine*,
  439 N.E.2d 475 (Ill. Ct. App. 1982) ..................................................................... 24

Gibson, Dunn &
Crutcher LLP

*In re Meta Pixel Healthcare Litig.*,
  2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ...............................................8, 20, 22

*Meyer v. Spring Spectrum L.P.*,
  45 Cal. 4th 634 (2009) ...................................................................................... 16

*Mihalich v. Johnson*,
  2015 WL 9455559 (S.D. Ill. Dec. 28, 2015).......................................................... 19

*Modisette v. Apple Inc.*,
  30 Cal. App. 5th 136 (2018) ........................................................................ 21, 22

*In re Nexus 6P Prod. Liab. Litig.*,
  293 F. Supp. 3d 888 (N.D. Cal. 2018)...................................................................7

*O'Connor v. Uber Techs., Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) .................................................................. 12

*O'Neil v. Peak*,
  2009 WL 10725459 (W.D. Wash. Nov. 10, 2009).................................................... 24

*Palomino v. Facebook, Inc.*,
  2017 WL 76901 (N.D. Cal. Jan. 9, 2017)........................................................... 6, 7

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1190 (N.D. Cal. 2014)................................................................. 16

*In re Pharmatrak, Inc.*,
  329 F.3d 9 (3d Cir. 2003)....................................................................................7

*Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*,
  771 F.3d 391 (7th Cir. 2014) ............................................................................. 18

*Phillips v. Am. Motorist Ins. Co.*,
  996 S.W.2d 584 (Mo. Ct. App. 1999) ...................................................................8

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
  51 F.4th 1125 (9th Cir. 2022) ..............................................................................8

*Pruchnicki v. Envision Healthcare Corp.*,
  845 F. App'x 613 (9th Cir. 2021) ....................................................................... 19

*Rehaif v. United States*,
  139 S. Ct. 2191 (2019) ..................................................................................... 13

*Rodriguez v. Google LLC*,
  2021 WL 2026726 (N.D. Cal. May 21, 2021) .................................................... 8, 16

*Seismic Reservoir 2020, Inc. v. Paulsson*,
  785 F.3d 330 (9th Cir. 2015) ...............................................................................6

ix

Gibson, Dunn &
Crutcher LLP

*Sharma v. Volkswagen AG*,
   524 F. Supp. 3d 891 (N.D. Cal. 2021) ..................................................................... 23

*Silver v. Stripe Inc.*,
   2021 WL 3191752 (N.D. Cal. July 28, 2021) .................................................. 12, 23

*Smith v. Facebook, Inc.*,
   745 F. App'x 8 (9th Cir. 2018) ............................................................ 1, 6, 12, 14

*Song Fi, Inc. v. Google, Inc.*,
   2016 WL 1298999 (N.D. Cal. Apr. 4, 2016) ........................................................ 17

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ................................................................................. 17

*State v. Anderson*,
   5 P.3d 1247 (Wash. 2000) ..................................................................................... 13

*State v. Blake*,
   481 P.3d 521 (Wash. 2021) ................................................................................... 13

*State v. Smith*,
   405 P.3d 997 (Wash. 2017) ................................................................................... 13

*Sullivan v. Oracle Corp.*,
   51 Cal. 4th 1191 (2011) ........................................................................................ 12

*Sussman v. Am. Broadcasting Cos.*,
   186 F.3d 1200 (9th Cir. 1999) ................................................................................. 8

*Switzer v. Wood*,
   35 Cal. App. 5th 116 (2019) .................................................................................. 23

*Terpin v. AT&T Mobility, LLC*,
   399 F. Supp. 3d 1035 (C.D. Cal. 2019) ................................................................ 18

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2015) ............................................................................ 9, 15

*United States v. Flores*,
   901 F.3d 1150 (9th Cir. 2018) ............................................................................... 23

*United States v. Lande*,
   968 F.2d 907 (9th Cir. 1992) ................................................................................. 14

*United States v. McTiernan*,
   695 F.3d 882 (9th Cir. 2012) ................................................................................... 8

*United States v. Schweihs*,
   569 F.2d 965 (5th Cir. 1978) ................................................................................. 14

Gibson, Dunn &
Crutcher LLP

x

*Vanzant v. Hill's Pet Nutrition, Inc.*,
    934 F.3d 730 (7th Cir. 2019) ................................................................................................. 18

*Wash. Mut. Bank, FA v. Superior Ct.*,
    24 Cal. 4th 906 (2001) ..................................................................................................... 6, 7

*Weiner v. Snapple Beverage Corp.*,
    2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ......................................................................... 21

*Williams v. Facebook, Inc.*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) ........................................................................... 7, 21

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ................................................................ 16, 17

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........................................................................... 14, 15

*Zapata Fonseca v. Goya Foods Inc.*,
    2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ...................................................................... 17

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
    525 F. Supp. 3d 1017 (N.D. Cal. 2021) ............................................................................. 16

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ..................................................................................... 10, 11

**STATUTES**

18 U.S.C. § 2510(4) ............................................................................................................. 10

18 U.S.C. § 2510(8) ............................................................................................................. 10

18 U.S.C. § 2511(1)(a) ........................................................................................................ 7, 9

18 U.S.C. § 2511(2)(d) ........................................................................................................ 7, 8

18 U.S.C. § 2512(1)(b) .......................................................................................................... 14

18 U.S.C. § 2520(e) .............................................................................................................. 24

18 U.S.C. § 25212(1)(b) ........................................................................................................ 14

720 Ill. Comp. Stat. 5/14-2(a) ........................................................................................ 12, 13

815 Ill. Comp. Stat. 505/10a ................................................................................................ 19

815 Ill. Comp. Stat. 505/2 .................................................................................................... 18

815 Ill. Comp. Stat. 510/2(a) ............................................................................................... 20

NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:22-CV-07557-SI

Gibson, Dunn &
Crutcher LLP

815 Ill. Comp. Stat. Ann. 505/10a(e) ................................................................................ 24

Cal. Bus. & Prof. Code § 17200 ....................................................................................... 16

Cal. Bus. & Prof. Code § 17204 ....................................................................................... 16

Cal. Bus. & Prof. Code § 17208 ....................................................................................... 24

Cal. Civ. Code § 1761(d) .................................................................................................. 17

Cal. Civ. Code § 1770 ....................................................................................................... 15

Cal. Civ. Code § 1770(a) .................................................................................................. 17

Cal. Civ. Code § 1780(a) .................................................................................................. 16

Cal. Civ. Code § 1783 ....................................................................................................... 24

Cal. Civ. Proc. Code § 335.1 ........................................................................................... 24

Cal. Civ. Proc. Code § 338(c) .......................................................................................... 24

Cal. Penal Code § 484(a) .................................................................................................. 23

Cal. Penal Code § 630 ...................................................................................................... 12

Cal. Penal Code § 631(a) ............................................................................................ 11, 12

Cal. Penal Code § 632(a) ............................................................................................ 12, 13

Cal. Penal Code § 635(a) .................................................................................................. 14

Cal. Penal Code § 637.2(a) ............................................................................................... 15

Mo. Ann. Stat. § 516.400 ................................................................................................. 24

Mo. Ann. Stat. § 542.400(3) ............................................................................................ 10

Mo. Ann. Stat. § 542.400(6) ............................................................................................ 10

Mo. Ann. Stat. § 542.402.1(1) ......................................................................................... 10

Mo. Ann. Stat. § 542.402.2(3) ........................................................................................... 8

Mo. Ann. Stat. § 562.016.3(2) ......................................................................................... 10

N.Y. Gen. Bus. Law § 349(a) .......................................................................................... 20

Wash. Rev. Code § 9.73.030(1)(a) .............................................................................. 12, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs incorrectly assert that *Meta* broke the law when third-party tax websites allegedly used Meta's Pixel tool to send financial information that Meta both contractually prohibited them from sending and attempted to filter out. The consolidated complaint asserts sixteen causes of action based on Meta's alleged *receipt* of this information, even though the complaint's own allegations indisputably confirm that Meta neither wanted nor intended to receive this information in the first place.

Plaintiffs face three fundamental problems that infect all of their claims. *First*, there is nothing inherently unlawful about Meta's Pixel, which is a version of a commonplace internet analytics tool that third-party web developers can use to improve their online services. *Cf. Smith v. Facebook, Inc.*, 745 F. App'x 8, 8–9 (9th Cir. 2018) (rejecting challenge to similar technology). This technology is useful: it helps web developers measure certain actions users take on their websites—*e.g.*, the pages they view and the products they purchase—and use that information to grow their businesses and improve online user experiences. It is also ubiquitous: pixel tools are offered by numerous companies (not just Meta) to web developers spanning numerous industries (not just tax providers). Online tax providers—just like other companies that receive both sensitive and non-sensitive information about their users—can use the Pixel in any number of legitimate ways.

*Second*, as the consolidated complaint acknowledges, web developers, not Meta, choose whether, where, and how they will use the Meta Pixel. Meta's Business Tools Terms—discussed in the complaint and contractually binding on all web developers that use the Pixel—(1) require web developers to confirm they have the proper permissions and legal right to share any data they choose to send, and (2) tell web developers not to send *any* "financial" or other sensitive information to Meta. But it is ultimately the web developer, not Meta, that controls the code on its own website and chooses what information to send. Those developers can use the Pixel without sending any sensitive information to Meta, and they are expected to do so in compliance with Meta's terms.

*Third*, plaintiffs' conclusory and implausible allegation that Meta intended to receive sensitive financial information, which is an element of most of their claims, is contradicted by the other allegations in the complaint. Those allegations establish that Meta's terms *prohibit* developers from

sending it this information. Plaintiffs also rely on materials showing Meta takes measures to *filter out* even *potentially* sensitive financial information developers send in violation of those terms.

Offering a standard tool is not enough to impose liability merely because some third parties might misuse it. *None* of the plaintiffs' sixteen causes of action—ranging from "wiretap" violations to "theft"—fits their theory of the case: that *Meta* should be held liable for certain *tax filing websites'* alleged misuse of a publicly available tool. This Court should dismiss the complaint with prejudice.

## BACKGROUND

### A.   Meta's Pixel

This case centers on a common analytics tool offered by numerous companies and used across industries called "Pixel."[1] Meta's Pixel is a free, publicly available tool that "website owners can install on their websites to measure certain actions taken by users on their own websites, such as online purchases." Compl. ¶ 27; *see id.* ¶¶ 2, 26, 28, 49. Web developers choose whether and how to install the Pixel on their websites. *Id.* ¶¶ 27, 32. When "someone takes an action that the website developer has chosen to measure on its website, the Meta Pixel is triggered and sends Meta certain data." *Id.* ¶ 32 (quotation marks and emphasis omitted). The web developer "can then choose to show ads to users who have taken a certain action on their own website." *Id.* The Pixel helps online businesses improve their online services, better understand how people interact with the products and services they offer, and better communicate with people who may be interested in their products and services. *Id.* ¶ 26.

### B.   Meta's Policies

When users sign up for a Facebook account, they agree to Meta's Terms of Service, Privacy Policy (previously called the "Data Policy"), and Cookies Policy, all of which are discussed and incorporated by reference in the consolidated complaint. *See* Compl. ¶¶ 64–67; Meta RJN Exs. 1–3. Those policies provide disclosures about Meta's collection and use of data, including through the Pixel.

---

[1] Plaintiffs also refer to two other tools they allege "function the same" as the Pixel—the Facebook SDK and the Conversions API—but their allegations about how or whether H&R Block, TaxAct, or TaxSlayer used those tools are sparse. Compl. ¶¶ 51–52; *see also id.* ¶¶ 5–12 (alleging H&R Block, TaxAct, and TaxSlayer used the Pixel, but not mentioning Facebook SDK and making hypothetical allegations "[t]o the extent [H&R Block, TaxAct, and TaxSlayer] utilized Meta's Conversions API"). In addition, the Facebook SDK is used for mobile applications, and plaintiffs only allege use of tax providers' websites. *Id.* ¶¶ 5–12. As a result, this motion focuses exclusively on the Pixel, without conceding that these other tools "function the same."

Similarly, third-party web developers who use Meta's tools (including the Pixel) must agree to Meta's Business Tools Terms, which impose requirements and restrictions on how they may use the Pixel. *See* Compl. ¶ 69; Meta RJN Ex. 4. All of these policies are discussed in the complaint and incorporated by reference. *See* Compl. ¶¶ 64–67, 69; Meta RJN Exs. 1–4.

**Terms of Service.** Meta's Terms of Service "govern [the] use of Facebook, Messenger, and the other products, features, apps, services, technologies, and software we offer." Meta RJN Ex. 1; *see* Compl. ¶¶ 64–65. The Terms explain that "businesses and organizations, and other persons pay us to show you ads for their products and services," and users must "agree that [Meta] can show you ads that we think may be relevant to you and your interests." Meta RJN Ex. 1. Meta "use[s] your personal data to help determine which personalized ads to show you," and the Terms link to the Privacy Policy to "explain[] how we collect and use your personal data to determine some of the ads you see." *Id.*

**Privacy Policy.** The Privacy Policy details "what information [Meta] collect[s], and how we use and share it." Meta RJN Ex. 2; *see* Compl. ¶¶ 64, 66. It tells users that third parties can use the tools and other products Meta offers—including "the Meta Pixel"—to "advertise or support their products" and "understand and measure how people are using their products and services and how well their ads are working." Meta RJN Ex. 2. It also specifically discloses that Meta "collect[s] and receive[s] information" from those third parties "about a variety of your information and activities on and off our Products," including "device information," "[p]urchases and transactions you make," "[h]ow you use [third parties'] products and services, online or in person," and "[w]ebsites you visit and cookie data, like through Social Plugins or the Meta Pixel." *Id.* Meta receives "information like your email address, cookies and advertising device ID" that "helps [Meta] match your activities with your account, if you have one." *Id.* The Privacy Policy explains third parties "collect your information when you visit their site or app or use their services," and that Meta requires those parties "to have the right to collect, use and share your information before giving it to us." *Id.*

**Cookies Policy.** The Cookies Policy discloses that Meta uses cookies—small pieces of text that allow a website to recognize a browser it has interacted with before—to "enable Meta to offer the Meta Products to you and to understand the information that we receive about you, including information about your use of other websites and apps, whether or not you are registered or logged in." Meta RJN

Ex. 3; *see* Compl. ¶¶ 64, 67. Cookies also allow Meta to "provide insights about . . . the people who interact with the ads, websites and apps of our advertisers and the businesses that use" the products and tools Meta offers. Meta RJN Ex. 3. The Cookies Policy discloses that third-party websites may "choose to share information with Meta from cookies set in their own websites' domains," and specifically mentions the cookie used to enable the Meta Pixel ("_fbp"). *Id.*

**Business Tools Terms.** Any web developer who chooses to use the Pixel must agree to Meta's Business Tools Terms. Meta RJN Ex. 4. These Terms require web developers to "represent and warrant that you (and any data provider that you may use) have all of the necessary rights and permissions and a lawful basis (in compliance with all applicable laws, regulations and industry guidelines) for the disclosure and use of Business Tool Data." *Id.* § 1(e). They further forbid developers from sharing any "sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines)"—even if the developer *does* have the legal right to share it—and specifically forbid sending "financial information." *Id.* § 1(h). The Business Tools Terms also require web developers to provide "robust and sufficiently prominent notice" to users about their data collection, including "clear and prominent notice on each web page where our pixels are used" that discloses details and how users can opt out.

### C.     Meta's Filter

As plaintiffs explain, Meta's Business Help Center includes an article titled "About restricted Meta Business Tools Data," which states that Meta does not "want websites or apps sending us certain restricted information about people," including "any information defined as sensitive under applicable laws, regulations and applicable industry guidelines." Compl. ¶ 69; Meta RJN Ex. 5. "Advertisers should not share [Pixel] data with Meta that they know or reasonably should know . . . includes . . . financial information or other categories of sensitive information," and Meta's "system is designed to filter out potentially sensitive data it detects." Meta RJN Ex. 5. This article also includes a link to "Learn more" "[a]bout sensitive financial information." *Id.* The "Learn more" page reiterates that Meta does not want financial data, including social security numbers and "[i]nformation about an individual's financial account or status," and explains that "[i]f Meta's signals filtering mechanism detects that a business is sending potentially sensitive financial data about an individual from their app

or website . . . that data will be removed before it can be stored and used in [Meta's] ads ranking and optimization systems." Meta RJN Ex. 6. Meta sends notifications to website developers when it detects potentially sensitive financial information from those developers, which include actions the developers can take to comply with Meta's Business Tools Terms. *Id.*

### D.     Plaintiffs' Allegations

Plaintiffs are eight Facebook users from California, Illinois, New York, Washington, and Missouri. Compl. ¶¶ 5–12. They allege that they used online tax filing websites offered by H&R Block, TaxAct, and TaxSlayer, and that those websites used Meta's Pixel tool. *Id.*

Plaintiffs allege generally that H&R Block, TaxAct, and TaxSlayer installed the Meta Pixel on their websites. *See* Compl. ¶¶ 5–12. They further allege that as a result of how H&R Block, TaxAct, and TaxSlayer configured the Pixel on their own websites, they "have been quietly transmitting sensitive financial information to Meta when Americans file their taxes online," and plaintiffs allege the "type of data includes names and email addresses, data on users' income, filing status, refund amounts, and dependents' college scholarship amounts." *Id.* ¶¶ 53, 56. Plaintiffs claim Meta "intercepts each page a user visits, what buttons they click, as well as specific information they input into the website," including "financial and tax-filing information." *Id.* ¶¶ 36–37; *see also id.* ¶¶ 1, 57–60.

Plaintiffs allege H&R Block, TaxAct, and TaxSlayer sent data about them to Meta when they used those websites to prepare their tax filings. *Id.* ¶ 62. Critically, however, they do not specify what "tax and financial" information was allegedly sent to Meta about each plaintiff. Instead, they vaguely allege that this data included "the information needed to prepare their tax filings." *See id.* ¶¶ 5–12, 62.

Plaintiffs sued Meta based on its alleged receipt of information from the tax filing websites. The consolidated complaint asserts sixteen counts under federal and state law, with legal theories ranging from wiretapping to negligence to theft. *Id.* ¶¶ 96–254.

## LEGAL STANDARD

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a motion to dismiss, the Court must first separate the complaint's legal conclusions—which are disregarded—from its factual allegations. *Id.* at 678–79. The

1    remaining factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550

2    U.S. at 555. If the complaint pleads facts that are "'merely consistent with' a defendant's liability, it

3    'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at

4    678 (quoting *Twombly*, 550 U.S. at 556). Claims also may be dismissed based on a dispositive issue of

5    law. *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015).

## ARGUMENT

7    Plaintiffs present a grab-bag of sixteen counts and a broad range of legal theories. *None* of those

8    theories provides a valid legal basis to hold *Meta* liable for how *third-party tax filing services* chose to

9    configure their own websites, in violation of Meta's terms and policies. There is nothing inherently

10    unlawful about Meta's Pixel, which is a commonplace internet analytics tool that third parties,

11    including tax providers, can use for legitimate reasons. *Cf. Smith v. Facebook, Inc.*, 745 F. App'x 8, 8–

12    9 (9th Cir. 2018) (rejecting challenge to similar technology). Each of plaintiffs' claims fails on multiple

13    independent grounds, and this Court should dismiss the complaint in its entirety with prejudice.

## I.    The Out-Of-State Claims Are Barred By The Choice-Of-Law Provision In Meta's Terms.

15    The non-California plaintiffs allege various claims under the laws of their home states: the

16    Illinois Eavesdropping Act, Compl. ¶¶ 113–20; the Washington Privacy Act, *id.* ¶¶ 121–26; the

17    Missouri Wiretap Act, *id.* ¶¶ 127–31; the Illinois Consumer Fraud and Deceptive Business Practices

18    Act, *id.* ¶¶ 167–83; the Illinois Uniform Deceptive Trade Practices Act, *id.* ¶¶ 184–93; and the New

19    York Deceptive Practices Act, *id.* ¶¶ 194–202. In addition to their failures on the merits, *see infra* 7–

20    13, 18–21, those claims are foreclosed by the choice-of-law provision in Meta's Terms of Service.

21    At all relevant times, Meta's Terms have included a clear California choice-of-law clause. Meta

22    and each of its users "agree . . . that the laws of the State of California will govern these Terms and any

23    claim, cause of action, or dispute without regard to conflict of law provisions." Meta RJN Ex. 1.

24    "California has a strong policy favoring enforcement of choice-of-law provisions." *Palomino v.*

25    *Facebook, Inc.*, 2017 WL 76901, at *3 (N.D. Cal. Jan. 9, 2017) (quotation marks omitted). If "the

26    chosen state has a substantial relationship to the parties or their transaction," or if a "reasonable basis

27    otherwise exists for the choice of law," the provision "generally will be enforced." *Wash. Mut. Bank,*

28    *FA v. Superior Ct.*, 24 Cal. 4th 906, 917 (2001). An exception applies only when "application of

California law would violate [a] fundamental" policy of a state with a materially greater interest in the determination of the issue. *Palomino*, 2017 WL 76901, at *3; *see also Wash. Mut. Bank*, 24 Cal. 4th at 917; *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1056 (N.D. Cal. 2018).

Here, California has an "obvious substantial relationship to the parties and a reasonable basis to enforce its choice of law considering Facebook is a California corporation with its principal place of business located at Menlo Park, California." *Williams*, 384 F. Supp. 3d at 1056 (quotation marks omitted). And applying California law to plaintiffs' claims would not violate any fundamental policy of plaintiffs' home states, because California and federal law provide robust statutory and common-law privacy protections—which is why courts have repeatedly enforced California choice-of-law provisions in cases involving some of the very same out-of-state claims at issue here. *See, e.g.*, *Williams*, 384 F. Supp. 3d at 1055–56 (dismissing same New York claim plaintiffs allege here based on Facebook's choice-of-law clause); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 934–35 (N.D. Cal. 2018) (dismissing claims under laws of five other states, including both Illinois laws at issue here, based on Google's choice-of-law clause); *Palomino*, 2017 WL 76901, at *3–4 (dismissing New Jersey claim based on Facebook's choice-of-law clause). Nor is it enough that one state's laws might "afford[] different rights and remedies." *Palomino*, 2017 WL 76901, at *4; *see also Williams*, 384 F. Supp. 3d at 1056. Plaintiffs' claims under other states' laws must be dismissed.

**II.      The Complaint Fails To State Any Plausible Claim For Relief.**

**A.      Plaintiffs Fail To State A Wiretapping Claim**

Plaintiffs allege wiretapping claims under the federal Wiretap Act, the Missouri Wiretap Act, and the California Invasion of Privacy Act. Those claims all fail because plaintiffs have not plausibly alleged lack of consent, scienter, or that Meta received the "contents" of their communications.

**1.      The Federal Wiretap Act And The Missouri Wiretap Act (Counts 6 And 5)**

All of the plaintiffs bring a claim under § 2511 of the federal Wiretap Act, which forbids the (1) intentional (2) interception of (3) the contents of (4) electronic communications (5) using a device, unless one of the parties to the communication has given consent. 18 U.S.C. § 2511(1)(a), (2)(d); *see In re Pharmatrak, Inc.*, 329 F.3d 9, 18–19 (3d Cir. 2003); Compl. ¶¶ 132–44. The Missouri plaintiff also brings a claim under the Missouri Wiretap Act, which was "modeled after the Federal Wiretap

Act." *Phillips v. Am. Motorist Ins. Co.*, 996 S.W.2d 584, 589 (Mo. Ct. App. 1999); *see* Compl. ¶¶ 127–31. Both of these claims fail for each of several independent reasons.

***One-party consent.*** The federal Wiretap Act and the Missouri Wiretap Act are one-party consent statutes: so long as one of the parties to a communication agreed to share the information with Meta, there is no violation. 18 U.S.C. § 2511(2)(d); Mo. Ann. Stat. § 542.402.2(3). Here, the online tax providers "install[ed] [the Pixel] on their websites to measure certain actions taken by users on their own websites" and sent Meta data "[w]hen someone [took] an action that the [website] developer ha[d] chosen to measure." Compl. ¶¶ 27–32. As a matter of law, these tax providers consented to any alleged interceptions. *See Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *10 (N.D. Cal. Apr. 6, 2023); *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *12 (N.D. Cal. Dec. 22, 2022).

There is an exception to this one-party consent rule: the "crime-tort exception." But it is inapplicable here; it applies only when a defendant intercepts a communication "for the purpose of committing" an *unrelated* "criminal or tortious act" beyond the interception itself. 18 U.S.C. § 2511(2)(d); Mo. Ann. Stat. § 542.402.2(3). The criminal or tortious purpose "must be *separate and independent* from the act" of intercepting the data. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (emphasis added). The "focus is *not* upon whether the interception itself violated [the] law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Id.*; *see also United States v. McTiernan*, 695 F.3d 882, 890 (9th Cir. 2012); *Sussman v. Am. Broadcasting Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999).

Here, plaintiffs do not plausibly allege an independent criminal or tortious purpose. The entire complaint focuses on Meta's receipt of the data—the alleged interception itself—rather than any tortious purpose for that data. *E.g.*, Compl. ¶ 142 (alleging "[t]he interception by Meta were [sic] unlawful and tortious"). And while plaintiffs baldly assert that "Meta's intent to unlawfully utilize the confidential information it obtained was separate and independent from its intent to violate the Federal Wiretap Act," *id.* ¶ 77, numerous cases have held that the crime-tort exception does not apply where the defendant's purpose was "to make money." *Katz-Lacabe*, 2023 WL 2838118, at *10 (quotation marks omitted); *see also, e.g.*, *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014);

8

1    *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001).

2           **Scienter.** The federal Wiretap Act imposes liability only where a defendant intercepts

3    communications "intentionally"—"consciously and deliberately with the goal of intercepting wire

4    communications." *United States v. Christensen*, 828 F.3d 763, 791 (9th Cir. 2015); *see* 18 U.S.C.

5    § 2511(1)(a). Plaintiffs have not plausibly alleged that Meta's "goal" was to intercept their sensitive

6    financial information. Web developers, not Meta, choose what information to send to Meta, Compl.

7    ¶¶ 27, 32, and Meta's Business Tools Terms expressly *forbid* developers from sending any "sensitive

8    information" (including "financial information"). Meta RJN Ex. 4 § 1(h); *see Hartford Cas. Ins. Co. v.*

9    *Fireman's Fund Ins. Co.*, 2015 WL 5168643, at 3 (N.D. Cal. Sept. 3, 2015) (courts "need not accept

10   as true allegations that contradict matters properly subject to judicial notice or by exhibit") (Illston, J.)

11   (quotation marks omitted). Those terms also require web developers to "have all of the necessary rights

12   and permissions and a lawful basis" to share any information they send, and to prominently post notice

13   and opt-out instructions regarding the website's use of the Pixel. Meta RJN Ex. 4 §§ 1(e), 3(c)(i).

14          Plaintiffs try to get around this problem by asserting Meta's prohibition on sensitive data is a

15   "sham" and that Meta secretly *wants* developers to send sensitive data that it has forbidden them to

16   send. As support, plaintiffs allege Meta "usually does not take enforcement action" against web

17   developers who violate its terms. Compl. ¶ 75. That conclusory allegation does not save plaintiffs'

18   wiretapping claim. As a matter of law, an alleged failure to "take enforcement action" is insufficient to

19   establish intent where the defendant has affirmatively instructed the sender *not* to share the information

20   in question. *Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, 2015 WL 13273308, at

21   *7 (C.D. Cal. July 29, 2015) (party who sold and installed recording system, and provided instructions

22   for use, not liable for misuse); *see also Andrews v. Int'l Bus. Machines Corp.*, 456 F. Supp. 2d 104,

23   110 (D.D.C. 2006) ("If the attacks were not authorized by IBM, there are no grounds whatsoever for

24   bringing an action against IBM."). That is especially true in light of Meta's efforts to filter out any

25   potentially sensitive data developers send (and its policy of alerting developers when it detects such

26   data). *See* Meta RJN Exs. 5–6.

27          For much the same reasons, plaintiffs have failed to meet the scienter requirement of the

28   Missouri Wiretap Act, which imposes liability only if a defendant acted "knowingly." The statute

defines "knowingly" to require awareness that the defendant's conduct is "practically certain to cause" the challenged result. Mo. Ann. Stat. §§ 542.402.1(1), 562.016.3(2). Plaintiffs make two attempts to allege Meta knew it was receiving sensitive financial information, but neither is sufficient.

*First*, plaintiffs allege "Meta monitors and analyzes all data that comes to it, because data collection is at the core of its business." Compl. ¶ 74; *see also id.* ¶¶ 78–79 (alleging willful blindness). But that conclusory assertion does not plausibly allege that Meta would have *known* developers would send sensitive financial information despite Meta's contractual prohibition on doing so—and if developers did, it would be a result of *their own* failure to abide by Meta's contractual requirements, not any conduct by Meta. *See* Mo. Ann. Stat. § 562.016.3(2) (person acts knowingly when "aware that *his or her conduct* is practically certain to cause that result" (emphasis added)).

*Second*, plaintiffs allege "Meta employs account managers to help website developers and owners use the Meta pixel and other tools." Compl. ¶ 74. But plaintiffs do not allege that any of the tax filing services they used actually had an account manager, that the account manager analyzed the data the tax services were sending and determined that it constituted sensitive financial information, or that any such knowledge by the account manager was communicated or should be imputed to Meta. And tax filing websites—just like any other website that collects both sensitive and non-sensitive information about its users—can (and under Meta's policies, must) use the Pixel *without* sending any sensitive information to Meta, so alleging that Meta "help[s] website developers and owners use the Meta pixel," *id.*, does not allege any unlawful conduct.

***Contents of a communication.*** Plaintiffs' wiretapping claims require them to allege that Meta intercepted the "contents" of their communications—*i.e.*, "the intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see* 18 U.S.C. § 2510(4), (8); Mo. Ann. Stat. § 542.400(3), (6). The complaint fails to satisfy that requirement, because it does not identify *any* specific communications between plaintiffs and the tax sites that were allegedly "intercepted" by Meta: while they vaguely allege the tax websites sent Meta "the information needed to prepare their tax filings," plaintiffs never describe what specific "tax and financial" information Meta allegedly received about them. *See* Compl. ¶¶ 5–12, 62. Information that is not "the intended message" of a communication—even sensitive information and "personally identifiable

information"—is not "content." *Zynga*, 750 F.3d at 1106–08. The inquiry is necessarily contextual: a person's name, for example, would be "the intended message" of a response to the question "What is your name?", but would *not* be the intended message if it appeared in the "from" line of an email. Much of the information Meta receives through the Pixel—for example, a user's IP address—clearly is not content, and plaintiffs fail to allege any communications that *would* qualify under this contextual analysis. Because it is not enough to plead facts that are "'merely consistent with' a defendant's liability," plaintiffs' failure to allege the nature of any intercepted communications requires dismissal of their wiretapping claims. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## 2.     Section 631 Of The California Invasion Of Privacy Act (Count 1)

Plaintiffs allege Meta violated § 631 of the California Invasion of Privacy Act (CIPA) by "willfully" obtaining the "contents or meaning" of their electronic communications. Cal. Penal Code § 631(a); Compl. ¶¶ 96–104.[2] This claim fails because, as discussed above, plaintiffs have not established that Meta *willfully* engaged in wiretapping or that it intercepted the "*contents or meaning*" of a communication. *Supra* 9–11. This CIPA claim has several other flaws as well.

***Shotgun pleading.*** Plaintiffs' allegations for this claim largely parrot the statute, and fail to allege specific facts for each part of the claim. Another California federal court recently dismissed a § 631 claim that similarly lodged "conclusory" allegations and "fail[ed] to identify which specific facts are allocated to which claim," resulting in a "shotgun pleading." *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *5 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023). The same result is warranted here.

***All-party consent.*** CIPA (unlike the federal and Missouri statutes described above) requires consent from "all parties to the communication." Cal. Penal Code § 631(a). The complaint establishes as a matter of law that the tax filing services consented to sharing information with Meta. *Supra* 8. The complaint likewise establishes that plaintiffs consented. All the plaintiffs allege they are Facebook users, and Facebook's policies (which every user must agree to when they sign up for an account)

---

[2] Plaintiffs also briefly allege a violation of § 631's first clause, which prohibits "intentional[]" wiretapping, but "[c]ourts have consistently interpreted this clause as applying only to communications over telephones and not through the internet." *Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *4 (C.D. Cal. Mar. 7, 2023).

contain clear, broad, and explicit disclosures about Meta's collection of information about activity on third-party websites (with specific disclosures about the Pixel). *Supra* 2–4. "A reasonable person viewing those disclosures would understand that Facebook maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes," and "[k]nowing authorization of the practice constitutes Plaintiffs' consent." *Smith*, 745 F. App'x at 8–9. And a "contractual term is not ambiguous just because it is broad." *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 964 (9th Cir. 2010). Plaintiffs' agreement to these policies establishes consent. *See, e.g.*, *Silver v. Stripe Inc.*, 2021 WL 3191752, at *4–5 (N.D. Cal. July 28, 2021) (dismissing where policy disclosed defendant may "collect data concerning users' activities across websites").

  ***Extraterritoriality.*** The non-California plaintiffs cannot bring a CIPA claim. "Under California law, a presumption exists against the extraterritorial application [of] state law." *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1004 (N.D. Cal. 2014). Courts will not apply California statutes to "occurrences outside the state" unless "such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (quotation marks omitted). No such intent is evident here—to the contrary, "there can be no question but that the principal purpose of section 632 is to protect the privacy of confidential communications of *California residents* while they are *in California*." *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119–20 (2006) (emphases added); *see also* Cal. Penal Code § 630 (stating purpose "to protect the right of privacy of the *people of this state*") (emphasis added); *id.* § 631(a) (data must be "sent from, or received at any place within this state").

  **B.**  **Plaintiffs Fail To State A Claim For Eavesdropping (Counts 2, 3, And 4)**

  All the plaintiffs bring a claim under § 632 of CIPA, which forbids "intentionally" using "an electronic amplifying or recording device" to eavesdrop on or record a "confidential communication" without "the consent of all parties." Cal. Penal Code § 632(a); *see* Compl. ¶¶ 105–12. The Illinois and the Washington plaintiffs also bring claims under the Illinois Eavesdropping Statute and the Washington Privacy Act, which proscribe similar conduct. *See* 720 Ill. Comp. Stat. 5/14-2(a); Wash. Rev. Code § 9.73.030(1)(a); Compl. ¶¶ 113–26. For similar reasons, all of these claims fail.

  ***CIPA § 632.*** This claim fails because all parties consented to sharing information with Meta

Gibson, Dunn &
Crutcher LLP

(*see supra* 11–12) and because plaintiffs have not alleged Meta "intentionally" received their sensitive financial information (*see supra* 9–10; Cal. Penal Code § 632(a)). And it is unavailable for the non-California plaintiffs because CIPA does not apply extraterritorially. *Supra* 12.

***Illinois Eavesdropping Statute.*** This claim fails because (1) plaintiffs consented and (2) they have not plausibly alleged Meta engaged in intentional misconduct. *Supra* 9–12; *see* 720 Ill. Comp. Stat. 5/14-2(a); *id.* 5/14-2(a). It also fails because plaintiffs have not plausibly alleged Meta intended to intercept any communications "in a surreptitious manner." 720 Ill. Comp. Stat. 5/14-2(a). Meta requires websites to post prominent notice on each page the Pixel is used, and discloses the use of Pixel to users in its policies. RJN Ex. 4 § 3(c)(i); *supra* 2–4. That is the *opposite* of surreptitious conduct.

***Washington Privacy Act.*** This claim, too, fails based on consent and the failure to plausibly allege intent. *Supra* 9–12; *see* Wash. Rev. Code § 9.73.030(1)(a).[3] It also fails because the Washington Privacy Act is limited to private communications "between two or more individuals." Wash. Rev. Code § 9.73.030(1)(a); *see Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012) (this requirement is "unlike the federal . . . Wiretap Act"). There is no liability for automatic electronic communications between *systems*; the statute is limited to communications between natural persons. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1093 (N.D. Cal. 2015). Plaintiffs do not allege Meta intercepted any communication directed to another *individual*; their alleged communications were directed to an automated system (the tax filing websites). *E.g.*, Compl. ¶¶ 1, 56–60.

**C.    Plaintiffs Fail To State A Claim For Criminal Manufacturing Of A Spying Device (Counts 9 And 8)**

All plaintiffs bring claims under 18 U.S.C. § 2512 and CIPA § 635, which impose *criminal* penalties on "any person who intentionally . . . manufactures . . . any electronic, mechanical, or other

---

[3] Unlike the California and Illinois laws, Washington's statute does not expressly specify a scienter requirement. *See* Wash. Rev. Code § 9.73.030(1)(a). And, in the context of an evidence-suppression case, the Washington Supreme Court has stated that "an inadvertent recording of a private conversation falls within the purview of the act." *State v. Smith*, 405 P.3d 997, 1001 (Wash. 2017) (en banc). But there is a "presumption in favor of scienter even when Congress does not specify any scienter in the statutory text." *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019); *see State v. Anderson*, 5 P.3d 1247, 1252–53 (Wash. 2000) (en banc). Indeed, especially because the Washington Privacy Act is a criminal statute, dispensing with a scienter requirement would create constitutional problems. *Cf. State v. Blake*, 481 P.3d 521 (Wash. 2021) (en banc) (invalidating strict liability drug possession statute).

Gibson, Dunn & Crutcher LLP

13

device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications." 18 U.S.C. § 25212(1)(b); *see* Cal. Penal Code § 635(a); Compl. ¶¶ 153–66. These claims are frivolous.

**The Pixel is not inherently unlawful.** Plaintiffs have not alleged that "the design of [the Pixel] renders it *primarily* useful for the purpose of the *surreptitious* interception of wire, oral, or electronic communications." 18 U.S.C. § 2512(1)(b) (emphases added); *see* Cal. Penal Code § 635(a) ("primarily or exclusively designed or intended for eavesdropping"). Section 2512, like its state-law analogue, is "narrowly drawn": it reflects "a careful and studied congressional decision to leave untouched the production, distribution, and possession of electronic equipment designed for regular use in varied nonsurreptitious activities, even though the equipment is capable of being used in a surreptitious manner." *United States v. Schweihs*, 569 F.2d 965, 968 (5th Cir. 1978). It bans only "a narrow category of devices," such as "martini olive transmitters, spike mikes, and microphones disguised as wristwatches and fountain pens, without prohibiting possession of a legitimate electronic device merely because it is small or may be used for wiretapping or eavesdropping." *Id.*

The Pixel—Meta's version of a commonplace internet analytics tool offered by many companies and used across industries—does not fit that description. The vast majority of Pixel uses are indisputably legitimate. *Cf., e.g.*, *Smith*, 745 F. App'x at 8–9 (affirming dismissal of claims regarding similar technology that tracked users' web browsing). This is therefore not a case where it "is difficult to imagine any purpose for [the technology] other than the unauthorized interception" of communications. *United States v. Lande*, 968 F.2d 907, 910 (9th Cir. 1992); *see also Directv Inc. v. Little*, 2004 WL 1811153, at *8 (N.D. Cal. Aug. 12, 2004) (denying plaintiff's summary judgment motion where "companies engaged in legitimate business" used challenged technology). Calling the Pixel "primarily useful" for spying is like calling a car "primarily useful" for bank heists.

**No private right of action.** There is no private right of action for violations of 18 U.S.C. § 2512. "By its plain terms, § 2512(1) of the Wiretap Act does not provide for a private right of action." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1084 (C.D. Cal. 2021). And the section of the federal Wiretap Act authorizing a private cause of action (§ 2520) provides a cause of action for unlawful *interceptions* under § 2511—which is why plaintiffs may bring an action for wiretapping—but it does

*not* provide a cause of action for alleged violations of § 2512, as "the three circuit courts that have considered the question have all concluded." *Id.* (quotation marks omitted); *see also, e.g.*, *In re Lenovo Adware Litig.*, 2016 WL 6277245, at *7 (N.D. Cal. Oct. 27, 2016); *In re DIRECTV, Inc.*, 2004 WL 2645971, at *8, 12 (N.D. Cal. July 26, 2004); *In re Cases Filed by DIRECTV, Inc.*, 344 F. Supp. 2d 636, 644–45 (D. Ariz. 2004). Thus, "there is no private right of action for the violation of § 2512(1) of the Wiretap Act." *Yoon*, 549 F. Supp. 3d at 1085.

Nor is there any private right of action under California's analogue, CIPA § 635. *Yoon*, 549 F. Supp. 3d at 1085. The analysis here is even "more straightforward": "[O]nly a person 'who has been injured by a violation of this chapter' may assert a civil claim." *Id.* (quoting Cal. Penal Code § 637.2(a)). Plaintiffs do not allege they were injured by Meta's *creation* of the Pixel, but rather by the tax filing websites' improper *use* of the Pixel. "For that reason, CIPA § 637.2 does not provide [plaintiffs] with a private right of action to enforce CIPA § 635." *Yoon*, 549 F. Supp. 3d at 1085.

*Scienter.* Even if plaintiffs had plausibly alleged the Pixel is designed to be primarily useful for surreptitious wiretapping or eavesdropping, they do not plausibly allege Meta *knew* or *intended* that result. "The crime lies in intentionally manufacturing the device, *knowing that it could be primarily used for wiretapping.*" *Christensen*, 828 F.3d at 792 (emphasis added). Meta discloses in its own user-facing policies that third parties send it data through the Pixel, and requires third parties who use the Pixel to also make prominent disclosures in their own policies, *supra* 2–4—so any allegation that Meta intended the Pixel to be "surreptitious" is simply implausible.

### D.      Plaintiffs Fail To State A Consumer Fraud Claim

Repackaging their allegations, plaintiffs assert a variety of "consumer fraud" claims under California, Illinois, and New York law. But plaintiffs never allege (much less with the particularity Rule 9(b) requires) that anyone was actually deceived; that they suffered the sort of harms these statutes address; or that they can satisfy numerous other requirements for consumer fraud claims.

#### 1.      California Legal Remedies Act And California Unfair Competition Law (Counts 14 And 16)

All of the plaintiffs bring claims under the California Consumer Legal Remedies Act (CLRA) and the California Unfair Competition Law (UCL). Compl. ¶¶ 217–27, 238–54; *see* Cal. Civ. Code

§ 1770; Cal. Bus. & Prof. Code § 17200. Those claims fail for a long list of reasons.

***Facebook is free.*** Both claims fail because Facebook is free, and courts regularly dismiss claims under the UCL and CLRA where plaintiffs "do not allege that they paid fees for [a defendant's] services." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715, 717 (N.D. Cal. 2011) (rejecting argument that "personal information constitutes a form of 'payment'"); *see also, e.g.*, *Rodriguez*, 2021 WL 2026726, at *8; *In re iPhone App. Litig.*, 2011 WL 4403963, at *10, 14 (N.D. Cal. Sept. 20, 2011).

***Harm.*** The UCL requires plaintiffs to plead a loss of "money or property." Cal. Bus. & Prof. Code § 17204. Plaintiffs allege the "disclosure of their tax filing data" to Meta "diminished" its "value." Compl. ¶ 248. That conclusory allegation does not suffice. *See infra* 19–20. The CLRA allows suit if a consumer has suffered "any damage," Cal. Civ. Code § 1780(a), but the California Supreme Court interprets that provision to require "some kind of *tangible increased cost or burden* to the consumer." *Meyer v. Spring Spectrum L.P.*, 45 Cal. 4th 634, 643 (2009) (emphasis added). Plaintiffs' naked assertions of harm, *see* Compl. ¶¶ 225–26, do not include any facts that could satisfy this requirement.

***Particularity and reliance.*** Both claims also fail because plaintiffs do "not allege that [they] read and relied on a specific misrepresentation." *Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016); *see Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219–20 (N.D. Cal. 2014). These claims are subject to Rule 9(b)'s heightened pleading requirements, *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1175–76 (N.D. Cal. 2019), and plaintiffs cannot satisfy that high bar. Plaintiffs allege Meta "fail[ed] to disclose that [it] was secretly collecting and using tax filing and other financial data for its own advertising and other business purposes." Compl. ¶ 222; *see also id.* ¶¶ 223–24, 243. But they do not identify any specific statement that was made misleading by this alleged omission, or that they actually heard or saw any such statement or acted in reliance upon it. These failures are fatal. *See, e.g.*, *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1046 (N.D. Cal. 2021) (dismissing UCL claim where plaintiffs "fail[ed] to allege *who* actually saw *what* misrepresentations/omissions and *when* and *where* they saw the misrepresentations or omissions") (quotation marks omitted); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *30 (N.D. Cal. Aug. 30, 2017); *In re Facebook PPC Advert. Litig.*, 2010 WL 3341062, at *10 (N.D. Cal. Aug. 25, 2010).

*Adequate remedy at law.* Plaintiffs "must establish that [they] lack[] an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). This claim is foreclosed because plaintiffs are seeking monetary damages for precisely the same conduct, demonstrating that restitution "is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *Loo v. Toyota Motor Sales, USA, Inc.*, 2019 WL 7753448, at *13 (C.D. Cal. Dec. 20, 2019); *see also, e.g.*, *Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *7–8 (N.D. Cal. Sept. 8, 2016). Nor have plaintiffs alleged that Meta took their money or that they are entitled to an ownership interest in Meta's allegedly improper profits—additional prerequisites for this claim. *See In re Yahoo!*, 2017 WL 3727318, at *31; *Bradshaw v. City of Los Angeles*, 2023 WL 3400634, at *18–19 (C.D. Cal. Mar. 10, 2023).

*Consumers.* To bring a CLRA claim, a plaintiff must be a "consumer"—which requires an allegation that the plaintiff purchased or leased goods or services *from the defendant.* Cal. Civ. Code § 1761(d); *see id.* § 1770(a). Plaintiffs do not allege they purchased or leased goods or services from Meta, so their CLRA claim fails. *In re Facebook Priv. Litig.*, 791 F. Supp. 2d at 717 (dismissing claim against Facebook on this basis), *aff'd*, 572 F. App'x 494 (9th Cir. 2014); *Song Fi, Inc. v. Google, Inc.*, 2016 WL 1298999, at *12 (N.D. Cal. Apr. 4, 2016) (same, against Google); *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 864 (N.D. Cal. 2011) (same, against Facebook app developer); *see also, e.g.*, *In re Yahoo!*, 2017 WL 3727318, at *32–33 (defendant's profit from plaintiff's use of free email service did not satisfy the "purchase or lease" requirement).

*Unlawful and unfair.* In addition to the fraud-by-omission allegations, plaintiffs' UCL claim rests on allegations that Meta engaged in "unlawful" and "unfair" conduct. Compl. ¶¶ 241–42, 245. The "unlawful" allegation reprises plaintiffs' theft, CIPA, and federal Wiretap Act claims, and thus fails because those claims themselves fail. *See Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 896 n.5 (N.D. Cal. 2022) (unlawful claim "rises or falls" with predicate violations); Compl. ¶ 242.[4] The "unfair" allegation is based on the same underlying facts as the fraud allegations, *see* Compl. ¶¶ 243,

---

[4] Plaintiffs also recite a catch-all for "all other statutory and common law claims asserted in this complaint." Compl. ¶ 242. That drive-by allegation is far too conclusory and indefinite to sustain a claim, but in any event, it is insufficient because *all* of the claims alleged in the complaint fail.

17

Gibson, Dunn &
Crutcher LLP

245, so it is likewise subject to Rule 9(b)'s heightened requirements and fails for the same reasons. *See Holmes v. Johnson & Johnson*, 617 F. App'x 639, 644 (9th Cir. 2015); *supra* 16.

This claim also fails the UCL's "balancing" and "tethering" tests. The "balancing" test is unsatisfied because plaintiffs do not identify any conduct by Meta that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" (especially in light of plaintiffs' own consent and Meta's efforts to *avoid* receiving any sensitive financial information) or any facts to show their alleged harm outweighs the utility of Meta's conduct. *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145–46 (N.D. Cal. 2013) (citation omitted). Plaintiffs fail the "tethering" test because their conclusory assertion that Meta "impaired competition," Compl. ¶ 247, does not plausibly establish a "close nexus" with a violation of the law. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018).

**Extraterritoriality.** "California law presumes that the legislature did not intend the statutes of this state to have force or operation beyond the boundaries of the state"; "[t]his includes claims under the UCL and CLRA." *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1047 (C.D. Cal. 2019) (quotation marks omitted). These claims are thus unavailable "where the injuries occur outside of California," *id.*, which requires dismissal for each of the non-California plaintiffs.

### 2.     Illinois Consumer Fraud And Deceptive Business Practices Act (Count 10)

The Illinois plaintiffs bring a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, which prohibits "unfair or deceptive acts or practices . . . in the conduct of any trade or commerce." *Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (quoting 815 Ill. Comp. Stat. 505/2); *see* Compl. ¶¶ 167–83. Because this claim "rests on allegations of deceptive conduct," "Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). Plaintiffs fail to clear that high bar for several reasons.

**Specific statement.** Plaintiffs assert Meta "fail[ed] to disclose that the Facebook Pixel is being improperly used on tax preparation websites," "fail[ed] to disclose that [Meta] had no reasonable security measures that would have prevented online tax filing websites from sharing confidential tax filing information with Meta," and "represent[ed] through its practices that it does not collect sensitive financial information from its users, when it, in fact, did." Compl. ¶¶ 172–74. But plaintiffs cannot

Gibson, Dunn &
Crutcher LLP

simply allege Meta failed to disclose something; this claim requires "a direct statement with a material omission." *Guajardo v. Skechers USA, Inc.*, 503 F. Supp. 3d 746, 755 (C.D. Ill. 2020); *see also, e.g.*, *Armstrong v. Deere & Co.*, 2017 WL 4168485, at \*5–6 (S.D. Ind. Sept. 20, 2017); *Mihalich v. Johnson*, 2015 WL 9455559, at \*5 (S.D. Ill. Dec. 28, 2015). Accordingly, plaintiffs must—but failed to—point to a specific statement Meta *did* make that was rendered misleading by these alleged omissions.

**Actual deception and proximate cause.** Plaintiffs also must allege they "actually saw and w[ere] deceived by the statements in question." *De Bouse v. Bayer AG*, 922 N.E.2d 309, 315 (Ill. 2009) (quotation marks omitted); *see also id.* at 316 ("If there has been no communication with the plaintiff, there have been no statements and no omissions."). Given Meta's disclosures, plaintiffs have not plausibly alleged any deception at all. But even if they had, they still must allege they actually "s[aw] or heard any such statement"—because otherwise, they "cannot have relied on the statement and, consequently, cannot prove proximate cause." *Id.* at 316; *see supra* 16. Plaintiffs do not allege at all (let alone with particularity) that they actually read any of the statements in Meta's policies; rather, they imply users would *not* read those policies. *See* Compl. ¶ 64. This is fatal to their claim.

**Intent.** Plaintiffs must further plausibly allege Meta *intended* to "deceive, defraud, or be unfair" to them. *Garrett v. RentGrow, Inc.*, 2005 WL 1563162, at \*4 (N.D. Ill. July 1, 2005); *see also, e.g.*, *Gold v. Lumber Liquidators, Inc.*, 2015 WL 7888906, at \*12 (N.D. Cal. Nov. 30, 2015). Given Meta's Business Tools Terms and filtration efforts, plaintiffs cannot plausibly allege intent. *Supra* 4–5.

**Actual damages.** Illinois law requires plaintiffs to plead "actual damages" to bring a claim, and plaintiffs have failed to allege any actual damages in their complaint. 815 Ill. Comp. Stat. 505/10a. But "the 'mere misappropriation of personal information' does not establish compensable damages." *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021) (citation omitted); *see also Katz-Lacabe*, 2023 WL 2838118, at \*8 (collecting cases). Nor does any "external value" of plaintiffs' data establish that plaintiffs "personally lost money or property," even assuming Meta "may have gained money through its sharing or use of the plaintiffs' information." *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) (quotation marks omitted); *see also, e.g.*, *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (rejecting argument that plaintiffs "have a property interest in their personal information"); *contra* Compl. ¶¶ 175–76, 182. Indeed, a

1    recent decision squarely held that "[t]here is no basis under Illinois law to suggest" that a "privacy

2    injury" can serve as a predicate for a claim under the statute. *Kurowski v. Rush Sys. for Health*, 2023

3    WL 2349606, at *8 (N.D. Ill. Mar. 3, 2023) (dismissing claim based on healthcare providers' disclosure

4    of patient data to Facebook and Google). Without any actual damages, plaintiffs' claim fails.

5             **3.     Illinois And New York Deceptive Trade Practices Acts (Counts 11 And 12)**

6             The Illinois and New York plaintiffs bring claims under their states' respective Deceptive Trade

7    Practices statutes. 815 Ill. Comp. Stat. 510/2(a); N.Y. Gen. Bus. Law § 349(a) ("[d]eceptive acts or

8    practices"); *see* Compl. ¶¶ 184–202. Both claims fail.

9             *Illinois claim.* The Illinois plaintiffs' claim is based on the same underlying facts as their claim

10   under the Illinois Consumer Fraud and Deceptive Business Practices Act, and thus fails for similar

11   reasons. *Supra* 18–20; *see* Compl. ¶¶ 172–74, 187, 189. This claim also fails because the statute

12   provides for injunctive relief only. "A consumer must allege the requisite elements that would entitle

13   it to injunctive relief, including facts which would indicate that [it] is likely to be damaged in the

14   future." *Darne v. Ford Motor Co.*, 2015 WL 9259455, at *12 (N.D. Ill. Dec 18, 2015) (quotation marks

15   omitted). As explained above, plaintiffs have failed to allege they lack adequate legal remedies; that

16   alone defeats this claim. *Supra* 17. Additionally, the crux of this claim is that plaintiffs were *deceived*

17   about tax filing websites' use of the Pixel; whatever the merit of that claim, plaintiffs cannot allege

18   *future* harm after being put on notice. This is a common basis for dismissal: "In consumer actions,

19   proving the likelihood of future harm is difficult because once the consumer has knowledge about the

20   defendant's actions, it can easily protect itself in the future by avoiding the harm." *Int'l Star Registry*

21   *of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 991 (N.D. Ill. 2006).

22            In addition, Meta already requires third-party developers who use the Pixel to post prominent

23   notice on each page it is used, to have legal rights to share information, and to refrain from sending

24   sensitive financial information. Meta also attempts to filter out even potentially sensitive data that is

25   sent to it in violation of these policies. Accordingly, it is unclear what else any injunction would order

26   *Meta* (as opposed to the tax filing websites) to do. *See* Meta RJN Ex. 4 §§ 1(e), 1(h), 3(c)(i); *cf. In re*

27   *Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *20 (denying preliminary injunction because

28   "Meta has designed and implemented the systems which it believes are the most effective and feasible

methods to address the receipt of sensitive information") (quotation marks omitted).

***New York claim.*** Plaintiffs' analogous New York claim fails for similar reasons. Under New York law, plaintiffs "must show that the defendant's 'material deceptive act' caused the injury." *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *5 (S.D.N.Y. Aug. 5, 2010) (citation omitted). Plaintiffs have not plausibly alleged any deception, let alone identified any specific statement that caused an injury. *See supra* 16, 18–19. In another Pixel case, a court recently dismissed a claim under this law because the plaintiff did "not explain how any of the defendants engaged in any materially misleading conduct through People.com's use of the Facebook Pixel." *Martin v. Meredith Corp.*, 2023 WL 2118074, at *6 (S.D.N.Y. Feb. 17, 2023). New York law also requires plaintiffs to allege "deprivation of income or actual loss," and "courts have historically dismissed complaints averring an unquantifiable injury to a privacy interest." *Williams*, 384 F. Supp. 3d at 1050 (quotation marks omitted). Plaintiffs have not made and cannot make any such allegation. *Supra* 16, 19–20. Nor do plaintiffs allege that any "deception . . . occur[red] in New York," another requirement for this claim. *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 325 (2002); *see also, e.g.*, *Callaghan v. BMW of N. Am., LLC*, 2014 WL 1340085, at *4 (N.D. Cal. Apr. 2, 2014) (dismissing on this ground).

## E.  Plaintiffs Fail To State A Claim For Negligence (Count 13)

All of the plaintiffs bring a claim for negligence under California law. Compl. ¶¶ 203–16. But plaintiffs fail to plausibly allege that *Meta* breached any duty of care or caused any harm.[5]

***Duty.*** Plaintiffs come nowhere close to plausibly alleging a duty of care. They merely assert "Meta owed a duty to [them] to exercise reasonable care in protecting their confidential tax and financial information from unauthorized disclosure to Meta." Compl. ¶ 205. But just like a cell phone manufacturer does not owe a general duty to anyone injured by a distracted driver (even if the manufacturer "had available the technology to disable use of the phone while the user is driving"), Meta does not owe a duty to prevent every potential misuse of the Pixel tool. *Modisette v. Apple Inc.*,

---

[5] Plaintiffs style this claim as for "Negligence / Negligence Per Se." But "negligence per se is a doctrine, not an independent cause of action," *Dent v. Nat'l Football League*, 902 F.3d 1109, 1117 (9th Cir. 2018), and it does not confer a "private right of action for violation of a statute," *Johnson v. Honeywell Int'l Inc.*, 179 Cal. App. 4th 549, 556 (2009). Plaintiffs must independently allege "an underlying negligence action." *Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Assur. Co.*, 62 Cal. App. 4th 1166, 1177 (1998).

Gibson, Dunn &
Crutcher LLP

30 Cal. App. 5th 136, 151–52 (2018). As plaintiffs acknowledge, *third-party developers*—not Meta—decide whether, where, and how to configure the Pixel, and Meta contractually bars them from sending confidential tax and financial information. *See* Compl. ¶¶ 2, 26–28, 32, 69. Web developers stretch "across many industries." *Id.* ¶ 49. It would make little sense to impose a duty on *Meta* to control the conduct of *third parties*; doing so would effectively require Meta to be an expert on the legal and regulatory restrictions applicable in countless industries—rather than placing the duty of compliance on the parties who are actually *in* those industries.

**Breach.** Meta takes numerous steps to ensure third parties do *not* send it information without the legal right to do so (or any sensitive financial information at all). *See* Meta RJN Ex. 4 §§ 1(e), 1(h), 3(c)(i); *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *20 (noting "Meta has designed and implemented the systems which it believes are the most effective and feasible methods to address the receipt of sensitive information") (quotation marks omitted). Plaintiffs' conclusory assertion that "Meta knew or should have known that its business practices did not safeguard against the disclosures at issue in this case," Compl. ¶ 210, is not sufficient to allege a lack of reasonable care in light of Meta's efforts. Nor can plaintiffs establish a presumption of negligence per se simply by asserting Meta "had an obligation to comply" with a list of laws and asserting that Meta "violated these laws." *Id.* ¶ 211.

**Causation.** Plaintiffs have not plausibly alleged Meta *caused* any harm they suffered through third parties' use of the Pixel. A party is not liable when it "did nothing more than create the condition that made Plaintiffs' injuries possible." *Modisette*, 30 Cal. App. 5th at 154. Third-party developers—not Meta—are responsible for their configuration, or any misuse, of the Pixel tool. *See* Compl. ¶¶ 2, 26–28, 32. Any harm to plaintiffs was caused by the third-party developers, not by Meta.

**Harm.** This claim also fails because the economic loss rule bars negligence claims where plaintiffs allege only losses related to the "disclosure" of their "personal data." *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012); *see also, e.g.*, *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *8–9 (N.D. Cal. Mar. 5, 2021); *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236, at *12–13 (N.D. Cal. Mar. 26, 2013). Plaintiffs' allegation that Meta failed to "prevent disclosure of their confidential information," Compl. ¶ 208, falls squarely within the rule.

### F.     Plaintiffs Fail To State A Claim For Theft (Count 15)

All of the plaintiffs bring a claim for "theft" of their personal information. Compl. ¶¶ 228–37. This claim is as much a misfit in this data-privacy case as it sounds.

***"Theft."*** "Theft" means to "feloniously steal, carry, lead, or drive away the personal property of another, . . . or . . . knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property." Cal. Penal Code § 484(a). The conduct plaintiffs allege here fails to fit that definition on multiple fronts. *First*, plaintiffs' personal information is not "money, labor or real or personal property." *Supra* 16, 19–20. *Second*, none of Meta's conduct was "felonious[]," "false," or "fraudulent," because plaintiffs have not plausibly alleged any deception by Meta. *Supra* 16, 18–19. *Third*, Meta's passive receipt of information that plaintiffs voluntarily provided to third parties is a far cry from the active conduct prohibited in the theft statute—"steal," "carry," "lead," "drive away," or "defraud." *Cf. United States v. Flores*, 901 F.3d 1150, 1160 (9th Cir. 2018) (theft statute "does not cover someone whose role was limited to that of an accessory after the fact") (quotation marks omitted). Nor does a "misrepresentation or breach of contract made innocently or inadvertently . . . amount to theft." *Carreon v. Edwards*, 2022 WL 4664569, at *5 (E.D. Cal. Sept. 29, 2022).

***Scienter.*** Plaintiffs must allege Meta "knew the property was so stolen or obtained." *Switzer v. Wood*, 35 Cal. App. 5th 116, 126 (2019). Plaintiffs have not plausibly alleged that Meta knew it was receiving sensitive financial information, much less "stolen" information. *Supra* 9–10.

### G.     Plaintiffs Fail To State A Claim For Unjust Enrichment (Count 7)

All of the plaintiffs bring an unjust enrichment claim under California law. Compl. ¶¶ 145–52. This theory fails at the outset, because unjust enrichment is "not an independent claim" under California law. *Freedline v. O Organics LLC*, 445 F. Supp. 3d 85, 92 (N.D. Cal. 2020); *see also, e.g.*, *Silver*, 2021 WL 3191752, at *8 (same, and collecting cases). The claim also fails on the merits.

***Adequate remedy at law.*** As with the CLRA and UCL, plaintiffs fail to plead they lack an adequate remedy at law. *Supra* 17. The allegations for this claim are even less detailed than those for the CLRA and UCL claims, and fail to explain why a legal remedy would be inadequate. *See* Compl. ¶ 152. That is fatal. *See Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 909 (N.D. Cal. 2021).

Gibson, Dunn & Crutcher LLP

***Barred by contract.*** A "quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights." *Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001); *see also, e.g.*, *Day v. GEICO Casualty Co.*, 580 F. Supp. 3d 830, 841 (N.D. Cal. 2022); *Dolce Int'l/San Jose, LLC v. City of San Jose*, 2020 WL 5910066, at *2–3 (N.D. Cal. Oct. 6, 2020); *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1253–54 (N.D. Cal. 2017). Meta's policies with its users—the Terms of Service, Privacy Policy, and Cookies Policy—squarely address Meta's data-collection practices and preclude any unjust enrichment claim.

***Actionable wrong.*** A "restitution claim based on fraud or consumer protection claims must . . . be dismissed if the plaintiff fails to sufficiently plead an actionable misrepresentation or omission." *In re Apple Processor Litig.*, 2022 WL 2064975, at *12 (N.D. Cal. June 8, 2022); *see also, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1096 (N.D. Cal. 2022). As already explained, plaintiffs have not adequately alleged any misrepresentation or omission. *Supra* 16, 18–19.

## III. At A Minimum, Claims Outside The Limitations Period Must Be Dismissed.

Plaintiffs allege the Pixel "has been available to website developers since at least October 14, 2015." Compl. ¶ 50; *see also id.* ¶¶ 5–12. But they did not file their complaint until December 1, 2022, and the longest limitations period for any of the claims is five years; the shortest is just one year. All claims outside the applicable limitations periods must be dismissed.[6]

Plaintiffs assert the limitations periods were "tolled as a result of Meta's knowing and active concealment of its conduct," Compl. ¶ 88, but they fail to allege facts to support that assertion. To invoke the discovery rule, plaintiffs must plausibly allege "(1) the time and manner of discovery and

---

[6] The applicable limitations periods are: five years for the Illinois Eavesdropping Statute; four years for the UCL; three years for the Missouri Wiretap Act, Washington Privacy Act, Illinois Consumer Fraud and Deceptive Business Practices Act, New York General Business Law, theft, the CLRA, and unjust enrichment; two years for the federal Wiretap Act and negligence; and one year for CIPA. *See McDonald's Corp. v. Levine*, 439 N.E.2d 475, 485 (Ill. Ct. App. 1982) (Illinois Eavesdropping Act); Cal. Bus. & Prof. Code § 17208 (UCL); Mo. Ann. Stat. § 516.400 (Missouri Wiretap Act); *O'Neil v. Peak*, 2009 WL 10725459, at *2 (W.D. Wash. Nov. 10, 2009) (Washington Privacy Act); 815 Ill. Comp. Stat. Ann. 505/10a(e) (Illinois Consumer Fraud and Deceptive Business Act); *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001) (New York General Business Law); Cal. Civ. Proc. Code § 338(c) (theft); Cal. Civ. Code § 1783 (CLRA); *Keilholtz v. Lennox Hearth Prod. Inc.*, 2009 WL 2905960, at *3 (N.D. Cal. Sept. 8, 2009) (unjust enrichment); 18 U.S.C. § 2520(e) (federal Wiretap Act); Cal. Civ. Proc. Code § 335.1 (negligence); *Brodsky v. Apple Inc.*, 2019 WL 4141936, at *11 (N.D. Cal. Aug. 30, 2019) (CIPA).

Gibson, Dunn &
Crutcher LLP

(2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005). To invoke fraudulent concealment, plaintiffs must allege with particularity (under Rule 9(b)) that (1) they were affirmatively misled by Meta, (2) they lacked "actual or constructive knowledge of the facts giving rise to" their claims, and (3) they exercised due diligence to attempt to discover the facts. *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). In "assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to show diligence," and "[f]ormal averments or general conclusions to the effect that the facts were not discovered until a stated date, and that plaintiff could not reasonably have made an earlier discovery, are useless." *Al-Ahmed v. Twitter, Inc.*, 2023 WL 27356, at *8 (N.D. Cal. Jan. 3, 2023) (quotation marks omitted). Plaintiffs have not met their burden.

*First*, plaintiffs do not allege *any* facts to establish diligence. Meta's policies put plaintiffs on notice that third parties could use the Pixel to send information to Meta. *See Javier v. Assurance IQ, LLC*, 2023 WL 3933070, at *2–3 (N.D. Cal. June 9, 2023) (rejecting discovery rule in light of privacy policy). Plaintiffs also cite a 2019 report indicating "Facebook was receiving sensitive user health data from at least 11 popular mobile apps." Compl. ¶ 51. And while plaintiffs assert that discovery of the Pixel would have "required the expert analysis of computer scientists to uncover," *id.* ¶ 93, they do not allege *any diligence or any attempt whatsoever* to learn whether the Pixel was present on the tax filing services' websites. That lack of diligence precludes application of any tolling doctrine.

*Second*, plaintiffs have not plausibly alleged any specific misleading statement that they actually heard or read. *Supra* 16, 18–19; *see Guerrero v. Gates*, 442 F.3d 697, 706–07 (9th Cir. 2006).

*Third*, while plaintiffs assert that information about tax filing services' use of the Pixel "did not become publicly known until approximately November 22, 2022, when various news agencies began reporting on the subject," Compl. ¶ 93, they do not say whether that is how *they* learned this information—and thus fail to allege *their* "time and manner of discovery." *Fox*, 35 Cal. 4th at 806.

## CONCLUSION

The Court should dismiss the complaint with prejudice.

1    DATED: July 27, 2023                **GIBSON, DUNN & CRUTCHER LLP**

2

3    By:  */s/ Lauren R. Goldman*
         Lauren R. Goldman

4

5    **COOLEY LLP**

6    By:  */s/ Michael G. Rhodes*
         Michael G. Rhodes

7

8    *Attorneys for Defendant Meta Platforms, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CIVIL L.R. 5-1(h)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I, Lauren R. Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

DATED: July 27, 2023                                   **GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
     Lauren R. Goldman

Gibson, Dunn &
Crutcher LLP