**BURSOR & FISHER, P.A.**
Joel D. Smith (State Bar No. 244902)
Neal Deckant (State Bar No. 320783)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: jsmith@bursor.com
　　　　ndeckant@bursor.com

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman (*pro hac vice*)
102 Half Moon Bay Drive
Croton-on-Hudson, NY  10520
Telephone: (917) 983-9321
E-mail: lfeldman@4-justice.com
　　　　e-service@4-justice.com

*Attorneys for Plaintiffs and the Proposed Class*

*Additional Attorneys on Signature Page*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE META PIXEL TAX FILING CASES<br><br>This document relates to:<br><br>All actions | Master File No. 3:22-cv-07557 (SI) (VD)<br><br>**OPPOSITION TO MOTION TO DISMISS**<br><br>Date:　　　　　　　October 27, 2023<br>Time:　　　　　　　10:00 a.m.<br>Judge:　　　　　　　Hon. Susan Illston<br>Date Action Filed:  Dec. 1, 2022 |

# TABLE OF CONTENTS

PAGE(S)

I.  INTRODUCTION ...........................................................................................1

II.  ARGUMENT ...............................................................................................1

    A.  Meta's Global Arguments For Dismissal Lack Merit ............................1

        1.  *Gershzon* and *Healthcare Litigation* Rejected The Same Arguments That Meta Makes Here About Consent .....................1

        2.  Non-California Plaintiffs May Pursue Claims Under The CIPA, UCL, And CLRA ...........................................................2

        3.  Plaintiffs Adequately Allege Scienter and Intent .......................4

            a.  The Allegations Meet The Low Pleading Requirements For Scienter And Intent .............................4

            b.  Meta's Arguments About Scienter And Intent Rest On Factual Disputes And Inapposite Authorities .....................5

        4.  Meta's Timeliness Arguments Are Misguided ...........................7

    B.  Plaintiffs Sufficiently Allege Statutory Wiretapping Claims ...............7

        1.  CIPA § 631 (Count I) ...............................................................7

        2.  CIPA § 632 (Count II) ..............................................................8

        3.  Illinois Eavesdropping Statute (Count III) ................................8

        4.  Washington Privacy Act (Count IV) .........................................8

        5.  Federal Wiretapping Act § 2511 And Missouri Wiretapping Act (Counts V and VI) ............................................................9

        6.  CIPA § 635 And Federal Wiretap Act § 2512 (Counts VIII and IX) ...................................................................................11

    C.  Plaintiffs Sufficiently Allege Common Law Claims ...........................12

        1.  Unjust Enrichment (Count VII) ...............................................12

        2.  Negligence And/Or Negligence Per Se (Count XIII)................14

    D.  Plaintiffs Sufficiently Allege Statutory Consumer Protection Claims ....18

        1.  California's CLRA and UCL (Counts XIV and XVI)................18

        2.  Illinois Consumer Fraud And Deceptive Business Practices Act (Count X) ......................................................................22

        3.  Illinois UDTPA (Count XI) .....................................................22

        4.  New York's GBL § 349 (Count XII) .........................................23

    E.  Plaintiffs Sufficiently Allege Theft Under Cal. Penal Code § 496 (Count XV)..........................................................................................24

III.  CONCLUSION ...........................................................................................25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Abeyta v. DMCG, Inc.*,
2023 WL 3047054 (N.D. Cal. Apr. 20, 2023) ........................................................................ 21, 22

*Am. Life Ins. Co. v. Stewart*,
300 U.S. 203 (1937) .................................................................................................................... 20

*Am. Master Lease LLC v. Idanta Partners, Ltd.*,
225 Cal. App. 4th 1451 (2014) .................................................................................................... 13

*Ash v. PSP Distribution, LLC*,
2023 IL App (1st) 220151 (Ill. App. June 12, 2023) .................................................................... 22

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ....................................................................................................... 12

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ........................................................................... 15, 16, 17

*BBL, Inc. v. City of Angola*,
809 F.3d 317 (7th Cir. 2015) ......................................................................................................... 7

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
2016 WL 3543699 (S.D. Cal. June 29, 2016) ............................................................................... 3

*Brosnan v. Experian Holdings, Inc.*,
2017 WL 565077 (N.D. Cal. Feb. 13, 2017) ................................................................................. 1

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. Mar. 12, 2021) ..................................................................... 9, 10

*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ......................................................................... 18, 19

*Brown v. Google LLC*,
2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) .................................................................... 2, 9, 18

*Bruton v. Gerber Prods. Co.*,
703 F. App'x 468 (9th Cir. 2017) ................................................................................................. 12

*Butera & Andrews v. Int'l Bus. Machines Corp.*,
456 F. Supp. 2d 104 (D.D.C. 2006) ............................................................................................... 6

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ..................................................................................... 18, 24

*Carreon v. Edwards*,
   2022 WL 4664569 (E.D. Cal. Sept. 29, 2022) ............................................................... 24

*Carrese v. Yes Online Inc.*,
   2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) ................................................................. 3

*Clay v. CytoSport, Inc.*,
   2018 WL 4283032 (S.D. Cal. Sept. 7, 2018) ................................................................. 4

*Coleman v. Mondelez Int'l Inc.*,
   554 F. Supp. 3d 1055 (C.D. Cal. 2021) ................................................................. 20, 21

*Craven v. Robertson*,
   2023 WL 2632211 (N.D. Cal. Mar. 24, 2023) ............................................................... 14

*Crown Cell Inc. v. Ecovacs Robotics, Inc.*,
   2022 WL 17082670 (N.D. Cal. Nov. 18, 2022) ............................................................. 12

*Daniel v. Tootsie Roll Indus., LLC*,
   2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018) ................................................................. 23

*Darne v. Ford Motor Co.*,
   2015 WL 9259455 (N.D. Ill. Dec. 18, 2015) ................................................................. 23

*Effinger v. Ancient Organics LLC*,
   2023 WL 2214168 (N.D. Cal. Feb. 24, 2023) ............................................................... 4

*Ehret v. Uber Technologies, Inc.*,
   68 F. Supp. 3d 1121 (N.D. Cal. 2014) ................................................................. 4

*Elgindy v. AGA Service Co.*,
   2021 WL 1176535 (N.D. Cal. Mar. 29, 2021) ............................................................... 20

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*,
   2015 WL 13273308 (C.D. Cal. July 29, 2015) ............................................................... 6

*Flores-Mendez v. Zoosk, Inc.*,
   2021 WL 308543 (N.D. Cal. Jan. 30, 2021) ............................................................... 16, 17

*Gershzon v. Meta Platforms, Inc.*,
   2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ............................................................... passim

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ................................................................. 5

*Grouse River Outfitters, Ltd. v. Oracle Corp.*,
   848 F. App'x 238 (9th Cir. 2021) ................................................................. 24

*Guzman v. Polaris Indus., Inc.*,
   49 F.4th 1308 (9th Cir. 2022) ................................................................. 25

*Hall v. Marriott Int'l., Inc.*,
   2020 WL 4727069 (S.D. Cal. Aug. 2020)................................................................................ 13

*Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*,
   353 P.3d 319 (Cal. 2015)......................................................................................................... 12

*Huynh v. Quora, Inc.*,
   508 F. Supp. 3d 633 (N.D. Cal. 2020)..................................................................................... 17

*In re Anthem, Inc. Data Breach Litig.*,
   2016 WL 3029783 (N.D. Cal. May 27, 2016)..................................................................... 19, 20

*In re Bang Energy Drink Marketing Litig.*,
   2020 WL 4458916 (N.D. Cal. Feb. 6, 2020)............................................................................ 12

*In re Blackbaud, Inc. Customer Data Breach Litig.*,
   2021 WL 3568394 (D.S.C. Aug 12, 2021)............................................................................... 23

*In re California Gasoline Spot Mkt. Antitrust Litig.*,
   2021 WL 1176645 (N.D. Cal. Mar. 29, 2021) ......................................................................... 13

*In re Facebook Priv. Litig.*,
   791 F. Supp. 2d 705 (N.D. Cal. 2011)..................................................................................... 18

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009)..................................................................................... 9

*In re Google Android Consumer Priv. Litig.*,
   2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ......................................................................... 18

*In re Google Asst. Priv. Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020).................................................................................. 6, 11

*In re Google, Inc.Privacy Pol'y Litig..*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014)....................................................................................... 21

*In re iPhone App. Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012)............................................................................. 17, 18

*In re iPhone App. Litig.*,
   2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........................................................................ 18

*In re Meta Pixel Healthcare Litig.*,
   2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ................................................................. passim

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) ..................................................................................... 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2011 WL 4501223 (N.D. Cal. Sept. 28, 2011) ................................................................. 12, 13

*In re Vizio, Inc., Consumer Privacy Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................ 20

*In re Zynga Privacy Litigation*,
   750 F.3d 1098 (9th Cir. 2014) ............................................................................... 10

*Katz-Lacabe v. Oracle Am., Inc.*,
   2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) .......................................................... 10

*Kearny v. Salomon Smith Barney, Inc.*,
   39 Cal. 4th 95 (2006) ............................................................................................... 3

*Kesner v. Superior Ct.*,
   1 Cal. 5th 1132 (2016) ...................................................................................... 15, 16

*Kwikset Corp. v. Super. Ct.*,
   246 P.3d 877 (Cal. 2011) ....................................................................................... 19

*Levy v. Irvine*,
   66 P. 953 (Cal. 1901) ............................................................................................... 5

*Lopez v. Apple, Inc.*,
   519 F. Supp. 3d 672 (N.D. Cal. 2021) ..................................................................... 6

*Luis v. Zang*,
   833 F.3d 619 (6th Cir. 2016) .................................................................................. 12

*Mehta v. Robinhood Fin. LLC*,
   2021 WL 6882377 (N.D. Cal. May 6, 2021) .......................................................... 17

*Molsbergen v. U.S.*,
   757 F.2d 1016 (9th Cir. 1985) .......................................................................... 13, 21

*Nava v. Kobe Steel, Ltd.*,
   2019 WL 5173767 (N.D. Cal. Oct. 8, 2019) .......................................................... 12

*Nguyen v. Barnes & Noble, Inc.*,
   763 F.3d 1171 (9th Cir. 2014) .................................................................................. 2

*OMRLV Prop., LLC v. Courtney*,
   2009 WL 10693479 (D. Nev. Apr. 20, 2009) ......................................................... 13

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   214 F. Supp. 3d 808 (N.D. Cal. 2016) ..................................................................... 9

*Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.*,
   29 Cal. App. 5th 230 (2018) ................................................................................... 13

*Revitch v. New Moosejaw*, LLC,
   2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ................................................... 11, 12

*Rodriguez v. Google LLC*,
  2021 WL 2026726 (N.D. Cal. May 21, 2021) ................................................................... 18

*Roney v. Miller*,
  705 F. App'x 670 (9th Cir. 2017) ...................................................................................... 25

*Saleh v. Nike, Inc.*,
  562 F. Supp. 3d 503 (C.D. Ca. 2021) ................................................................................ 12

*Schmitt v. SN Servicing Corp.*,
  2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) .................................................................... 17

*Smith v. Facebook, Inc.*,
  262 F. Supp. 3d 943 (N.D. Cal. 2017) ................................................................................ 2

*Tarin v. Pellonari*,
  625 N.E.2d 739 (Ill. App. Ct. 1993) ................................................................................. 23

*Terpin v. AT&T Mobility*,
  399 F. Supp. 3d 1035 (C.D. Cal. 2019) .............................................................................. 4

*Terraza v. Safeway, Inc.*,
  241 F. Supp. 3d 1057 (N.D. Cal. 2017) .............................................................................. 8

*United States v. Christensen*,
  828 F.3d 763 (9th Cir. 2015) .............................................................................................. 6

*United States v. Flores*,
  901 F. 3d 1150 (9th Cir. 2018) .................................................................................... 24, 25

*Valentine v. NebuAd, Inc.*,
  804 F. Supp. 2d 1022 (N.D. Cal. 2011) ........................................................................... 3, 4

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021) .............................................................................. 2

**STATUTES**

18 U.S.C. § 2511(d)(2) ............................................................................................................ 9

28 U.S.C. § 721(6)(a) ............................................................................................................ 14

815 Ill. Comp. Stat. Ann. § 510/2(a) .................................................................................... 23

815 Ill. Comp. Stat. Ann. § 510/2(a)(9) ............................................................................... 23

Cal. Bus. & Prof. Code § 17500 ............................................................................................. 4

Cal. Civ. Code § 1761 ........................................................................................................... 21

Cal. Civ. Code § 1770(a) ............................................................................................. 21

Cal. Penal Code § 484(a) ............................................................................................. 24

Cal. Penal Code § 496 .............................................................................................. 1, 24

Cal. Penal Code § 502 ................................................................................................... 9

Cal. Penal Code § 635 ................................................................................................. 11

Wash. Rev. Code § 9.73.030 ......................................................................................... 8

**RULES**

Fed. R. Civ. P. 8 ............................................................................................................ 5

Fed. R. Civ. P. 9(b) ............................................................................................... 4, 5, 7

Fed. R. Evid. 201 .......................................................................................................... 5

**OTHER AUTHORITIES**

Restatement (Third) of Restitution, § 4(2) (2011) ...................................................... 12

## I.     INTRODUCTION

In its motion to dismiss, Meta largely rehashes arguments that this Court and Judge Orrick rejected in the coordinated *Gershzon* and *Healthcare Litigation* matters. *See Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) (J. Illston); *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ("*Healthcare Litigation*"); *Doe v. Meta Platforms, Inc.*, N.D. Cal. Case No. 22-cv-03580-WHO, Sept. 7, 2023 MTD Order (ECF No. 316) ("*9/7/23 Doe Order*").[1] Those cases survived motions to dismiss, and this case should too.

## II.    ARGUMENT

### A.     Meta's Global Arguments For Dismissal Lack Merit

Meta makes several global arguments concerning consent, extraterritoriality, intent and/or scienter, and timeliness. To avoid repetition, those arguments are rebutted below.

#### 1.     *Gershzon* and *Healthcare Litigation* Rejected The Same Arguments That Meta Makes Here About Consent

Meta argues its policies contain "explicit disclosures about Meta's collection of information about activity on third party websites" (MTD 12:1-2), and seeks dismissal of six causes of action based on consent: CIPA § 631(a) (Count I), CIPA § 632 (Count II), Illinois Eavesdropping Statute (Count III), Washington Privacy Act (Count IV), CLRA (Count XIV), and the UCL (Count XVI).[2] The *Gershzon* and *Healthcare Litigation* courts rejected this argument, and the same result is warranted here. *See Gershzon*, 2023 WL 5420234 at *9, 11; *Healthcare Litigation*, 2022 WL 17869218, at *9.

<u>First</u>, Plaintiffs allege they did not consent to Meta obtaining their tax filing information. Compl., ¶¶ 1, 65-70, 103. As in *Gershzon*, Meta challenges those allegations by asking the Court to take judicial notice of various documents and draw inferences from those documents in Meta's favor. That argument has no more merit here than it did in *Gershzon*. *See Gershzon*, 2023 WL 5420234 at

---

[1] The *9/7/23 Doe Order* is attached as Exhibit 1 to this brief. Plaintiffs ask the Court to take judicial notice of the order. *See Brosnan v. Experian Holdings, Inc.*, 2017 WL 565077 at *1 n.1 (N.D. Cal. Feb. 13, 2017) (Illston, J.) (taking judicial notice of another district court decision).

[2] Meta's argument that the one-party consent rule bars the Federal and Missouri Wiretap Act claims is addressed separately in Section II.B.5 below.

*9 n.3 ("The Court will not consider documents beyond the pleadings and draw inferences from those documents in Meta's favor."). Meta must show that Plaintiffs took "affirmative action to demonstrate assent" to the documents Meta cites, but it has not done so. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). Merely arguing that privacy policies or other terms existed without offering proof of actual assent is insufficient to meet that burden. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021). What is more, Meta's documents are dated from April 2023 forward, except for the Terms of Service, which is dated July 2022. *See* Meta's RJN (ECF No. 107-2) at p. 1. But Plaintiffs' financial information was disclosed before those dates. *See* Compl., ¶¶ 5-12. So, as in *Gershzon*, Meta's arguments raise factual questions about what the policies and Terms of Service said during the relevant period, and whether Plaintiffs ever agreed to them.

<u>Second</u>, Plaintiffs allege that Meta's Terms of Service and other policies "never specifically indicated that Meta may acquire confidential tax information" from third party websites, and instead said the opposite: that third party websites will not share "*financial* or other categories of sensitive information." Compl., ¶¶ 65-67, 69(A) (emphasis added). In *Healthcare Litigation*, Judge Orrick correctly held, based on nearly identical allegations, that there is no basis to rule that Facebook users consented to the disclosure of sensitive information—especially given that Meta expressly said it would *not* collect that information. *See Healthcare Litigation*, 2022 WL 17869218, at *9-10 and n.3. Hence, "the nature of the data collection that plaintiffs agreed to is akin to the general internet browsing at issue in *Smith*; the collection of protected [tax information] from a [tax filing service] is a different matter entirely." *Id*. at *10 (distinguishing *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd,* 745 F. App'x 8 (9th Cir. 2018)); *see also Brown v. Google LLC*, 2023 WL 5029899 at *9 (N.D. Cal. Aug. 7, 2023) ("*Brown II*") (Google could not establish consent to its data collection practices based on a "general disclosure" that was inconsistent with Google's other statements about the privacy features of its Incognito mode).

### 2.   Non-California Plaintiffs May Pursue Claims Under The CIPA, UCL, And CLRA

Meta advances a heads-I-win-tails-you-lose argument when it first contends that under a choice-of-law provision in Meta's current Terms of Service, the non-California plaintiffs cannot

pursue statutory claims under their own state laws, but instead must pursue claims under California's CIPA, UCL, and CLRA. MTD, 7:8. But Meta later argues that the CIPA, UCL, and CLRA do not protect non-Californians, leaving those Plaintiffs with no statutory claims at all. Meta seeks dismissal of six causes of action based on this theory.[3] Meta's position lacks merit for three reasons.

First, as shown in Section II.A.1 above, Meta submitted no evidence of what the Terms of Service said during the relevant period, or that Plaintiffs ever agreed to them. Meta's choice-of-law argument is therefore premature. *See* Exhibit 1, *9/7/23 Doe Order*, at 8:17 (Meta's extraterritoriality argument premature on a motion to dismiss).

Second, if California law governs, as Meta contends is the case, then the non-California plaintiffs may pursue claims under the CIPA. Numerous courts—including in the most recent decision in the coordinated *Healthcare* matter—have held that the CIPA applies to non-California plaintiffs who were surveilled by a California defendant. *See*, *e.g.*, Exhibit 1, *9/7/23 Doe Order*, at 8:22-9:5; *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) (CIPA governs California defendants who wiretap non-California plaintiffs); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016) (following *Valentine*); *Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *4 (C.D. Cal. Oct. 13, 2016) (same). Here, Meta admits that "California has an obvious substantial relationship to the parties" and that it is headquartered in California. MTD, 7:4-6. Further, Plaintiffs allege that the data is "received" and "stored" in California. *Id.* at ¶ 30. The reasonable inference from other allegations is that Meta's technology was developed in California and that Meta uses tax data while in California. *See id.* at ¶¶ 26-79.

The only case that Meta cites, *Kearny v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006), does not support Meta's position. In *Valentine*, the court rejected the same argument Meta makes here, explaining that *Kearny* was "of limited value" because it only addresses whether CIPA protects California residents harmed by out-of-state defendants; *Kearny* does not address the opposite scenario where a California company wiretaps out-of-state plaintiffs. *See Valentine*, 804 F. Supp. 2d

---

[3] Specifically, Meta directs this argument at the Illinois Eavesdropping Act (Count III); the Washington Privacy Act (Count IV); the Missouri Wiretap Act (Count V); the Illinois Consumer Fraud and Deceptive Business Practices Act (Count X); the Illinois Uniform Deceptive Trade Practices Act (Count XI); and the New York Deceptive Practices Act (Count XII).

at 1027. As *Valentine* explained, adopting Meta's interpretation "would mean the California Legislature intended to allow California residents to violate the CIPA and the CCCL with impunity with respect to out-of-state individuals and entities, a result this Court declines to reach." *Id.*

Third, a similar analysis applies to the UCL and CLRA. "California courts have concluded that '[the UCL and CLRA] may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California.'" *Effinger v. Ancient Organics LLC*, 2023 WL 2214168, at *7 (N.D. Cal. Feb. 24, 2023); *see also Ehret v. Uber Technologies, Inc.*, 68 F. Supp. 3d 1121, 1130-31 (N.D. Cal. 2014) (collecting authorities). In fact, the text of the UCL expressly applies in that circumstance. *See* Cal. Bus. & Prof. Code § 17500 (prohibiting unlawful conduct "disseminated from this state before the public *in any state* ….") (emphasis added); *Clay v. CytoSport, Inc.*, 2018 WL 4283032 at *16-17 (S.D. Cal. Sept. 7, 2018) (text of UCL supported nationwide application of the UCL). The sole contrary decision Meta cites, *Terpin v. AT&T Mobility*, 399 F. Supp. 3d 1035, 1047 (C.D. Cal. 2019), is distinguishable because the case had little connection to California.

### 3.   Plaintiffs Adequately Allege Scienter and Intent

#### a.   The Allegations Meet The Low Pleading Requirements For Scienter And Intent

Meta seeks dismissal of ten causes of action for failure to sufficiently allege intent and/or scienter.[4] This Court rejected the same arguments regarding Meta's intent in *Gershzon*, and Judge Orrick did so too in the *Healthcare* matter. *See Gershzon*, 2023 WL 5420234 at *11; Exhibit 1, *9/7/23 Doe Order* at 9:17-26. Intent and knowledge "may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs allege that Meta's entire business model is based on surveillance and "***gunning hard to get lots and lots of third-party data about its users into its database***." Compl. ¶ 19 (bold in original); *see also id.* at ¶¶ 16-25. Plaintiffs then allege how Meta technology is designed to further Meta's business model by collecting that data. *Id.* at ¶¶ 26-52. After setting that background, Plaintiffs allege

---

[4] Meta directs these arguments at the following causes of action:  CIPA § 632 (Count II); the Illinois Eavesdropping Statute (Count III); the Wash. Privacy Act (Count IV); Missouri Wiretap Act (Count V); § 2512 and § 2510 of the Federal Wiretap Act § 2512 (Counts VI and IX); CIPA § 635 (Count VIII); the Illinois Consumer Fraud and Deceptive Business Practices Act (Count X), and theft (Count XV).  Meta also directs these arguments to the first prong of CIPA § 631(a), but Plaintiffs do not allege a cause of action under that prong.

1   that Meta's collection of financial information was intentional and consistent with its business model;

2   explaining, for example, that financial information is highly valuable. *Id.* at ¶¶ 71-79. These

3   allegations far exceed the "short," "plain," and "general" allegations required by Rules 8 and 9(b).

4          Plaintiffs also allege in the alternative that Meta was willfully blind to the fact that it was

5   receiving and using tax information, because it had a financial incentive to turn a blind eye to the

6   problem. Compl., ¶¶ 78-79. Willful blindness is equivalent to actual knowledge. *See Glob.-Tech*

7   *Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) (defendants who "deliberately shield[]

8   themselves from clear evidence of critical facts that are strongly suggested by the circumstances . . .

9   are just as culpable as those who have actual knowledge"); *Levy v. Irvine*, 66 P. 953, 956 (Cal.

10  1901) (defendant could not "willfully shut his eyes to the means of information which he knows is

11  at hand, and if he does so his willing ignorance is to be regarded as equivalent to actual knowledge").

12  As permitted by Rule 9(b), the Complaint includes general allegations concerning Meta's willful

13  blindness (Compl., ¶¶ 78-79), which are bolstered by the detailed allegations described above about

14  Meta's business model and technology. *See generally* Compl., ¶¶ 16-62, 71-79.

### b.      Meta's Arguments About Scienter And Intent Rest On Factual Disputes And Inapposite Authorities

15

16

17         <u>First</u>, Meta argues that its efforts to filter out tax information defeat the scienter or intent

18  requirements. *E.g.* MTD 9:25-26. But the Complaint says nothing about a filter. Instead, Meta asks

19  the Court to take judicial notice of two documents that make a fleeting reference to some form of a

20  filter, but with scant details. *See* ECF Nos. 107-7 and 107-8. Does the filter apply to tax filing

21  information? Does it perform as intended? How long has it existed? Meta conspicuously doesn't say.

22  The bottom line, however, is that even if the Court could take judicial notice of the *existence* of the

23  two documents Meta cites, Fed. Rule of Evidence 201 does not permit the Court to accept the

24  *contents* of those documents as true, much less Meta's arguments about the filter referenced in those

25  documents. *See Gershzon*, 2023 WL 5420234 at *9, n.3 (denying Meta's request for judicial notice

26  and declining to "draw inferences from those documents in Meta's favor."); Exhibit 1, *9/7/23 Doe*

27  *Order*, at 9:20-22 (whether Meta's purported filter negates intent cannot be resolved on a motion to

28  dismiss).

1   <u>Second</u>, Meta blames the website owners, who, according to Meta, control what information

2   is sent from their websites and are "forbidden" by Meta from sending tax information. MTD, 9:6-8.

3   This Court already rejected that same argument. *See Gershzon*, 2023 WL 5420234 at *11. As in

4   *Gershzon*, Plaintiffs here allege "far more than inadvertent receipt of information." *Gershzon*, 2023

5   WL 5420234 at *11; *see also* Section II.A.3.a above. As in *Gershzon*, Meta is relying on factual

6   assertions outside the pleadings, because there are no allegations that website owners have *exclusive*

7   control over what data is transmitted. Also, Meta's argument that it "forbids" website owners from

8   sending sensitive data contradicts allegations that Meta's policies are a sham. Compl., ¶¶ 69, 75.

9   <u>Third</u>, none of Meta's authorities support its position. Meta cites *Federated University Polic*

10  *Officers* and *Andrews* for the proposition that "as a matter of law, an alleged failure to 'take

11  enforcement action' is insufficient to establish intent where the defendant has affirmatively

12  instructed the sender *not* to share the information in question." MTD, 9:18-19 (emphasis in original).[5]

13  Neither opinion stands for the proposition that Meta cites it for, and worse, neither includes the

14  statement that Meta misquoted in its brief. In contrast, courts have held that knowingly allowing

15  wiretapping to occur while failing to take effective action against it supports an inference of

16  knowledge or intent—which is consistent with the willful blindness alleged here. *See In re Google*

17  *Asst. Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020) ("*In re Google*") (collecting authorities).

18  Relatedly, Meta relies on *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015), for

19  the proposition that the wiretapping must be deliberate, rather than as a result of accident or mistake.

20  *Christensen* is inapposite because Plaintiffs do not allege that the wiretapping was the result of an

21  accident or mistake. Further, courts have distinguished *Christensen* and "rejected a defendant's claim

22  that the interception was inadvertent where the defendant was aware it was occurring" and

23  nonetheless used the intercepted information for its own benefit. *See In re Google*, 457 F. Supp. 3d

24  at 815 (distinguishing *Christensen* because Google allegedly used the intercepted data "for

25  personalized advertising or to improve the functionality of the Google Assistant"); *see also Lopez v.*

26  *Apple, Inc.*, 519 F. Supp. 3d 672, 684 (N.D. Cal. 2021) (distinguishing *Christensen* based on similar

27  ---

    [5] Citing *Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, 2015 WL 13273308, at
    *7 (C.D. Cal. July 29, 2015) and *Butera & Andrews v. Int'l Bus. Machines Corp.*, 456 F. Supp. 2d

28  104, 110 (D.D.C. 2006).

allegations that Apple used the data it obtained). Under this line of cases, even if Meta's failure to prevent the receipt of tax information was due to "accident or mistake," the allegations that Meta nonetheless exploited that information for its own business purposes supports an inference of intent. *See* Compl., ¶¶ 46, 54, 62, 79 (alleging Meta utilizes the data it collects from third party websites).[6]

### 4.    Meta's Timeliness Arguments Are Misguided

Meta argues that "[a]ll of [Plaintiffs'] claims outside the applicable limitations periods must be dismissed." MTD, 24:16-17. Meta does not, however, ask the Court to dismiss any particular cause of action on timeliness grounds. Instead, Meta asks the Court to *narrow* Plaintiffs' claims insofar as they sweep in conduct outside of various limitations periods. *See* MTD, 24:13–25:24.

The Court rejected precisely the same argument in *Gershzon*, and it should do so here for the same reasons. *See Gershzon*, 2023 WL 5420234 at *13. Here, just as in *Gershzon*, Plaintiffs allege tolling due to Meta's concealment of its activities and application of the discovery rule due to the computer-science expertise required to uncover its misconduct. *See* Compl., ¶¶ 88-95 (setting out tolling, estoppel, and discovery-rule allegations). These fact-bound issues require discovery—not piecemeal line-drawing at the pleading stage. *Gershzon*, 2023 WL 5420234 at *13 (recognizing that these are "factual question[s] that require[] discovery," and ruling that "the question of tolling cannot be decided on the pleadings"); *see also BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissal of *parts* of claims" and that factual issues should be resolved at the summary-judgment stage). Meta's attempt to narrow Plaintiffs' claims on timeliness grounds should be denied.

### B.    Plaintiffs Sufficiently Allege Statutory Wiretapping Claims

### 1.    CIPA § 631 (Count I)

***Shotgun pleading***.  Meta argues the Complaint fails to "allege specific facts for each part of the claim" under § 631(a). MTD, 11:15-20. That is wrong. Plaintiffs allege a claim under the second,

---

[6] Meta makes two other arguments that are easily rejected. First, Meta argues the allegation that "Meta monitors and analyzes all data that comes to it" does not establish that Meta knew that website owners were violating Meta's policies. MTD, 10:4-10. That argument makes no sense: the obvious inference is that the monitoring would have revealed such violations. Second, Meta argues that allegations about account managers helping website developers set up the Pixel lack detail. *Id.* at 10:11-19. Not details are required because Rule 9(b) permits "general" allegations of knowledge.

third, and fourth prongs of § 631(a), and the Complaint includes allegations supporting each prong, including: lack of consent (¶¶ 63-70); attempting to read the contents of communications (¶¶ 26-34, 52-62); "in transit" and related allegations (¶¶ 30, 34-35, 60, 62); using information obtained (¶¶ 16-25, 41, 46-48, 54, 72); and aiding liability (¶¶ 3, 26-27, 46, 50). If Meta's argument is that the allegations must be organized under the section titled Count I, pertaining to the claim under § 631(a), then the argument ignores the rule that "[t]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Terraza v. Safeway, Inc.*, 241 F. Supp. 3d 1057, 1081 (N.D. Cal. 2017) (internal quotation omitted). In any event, any purported deficiencies can be cured via amendment.

   ***Consent and Extraterritoriality***. *See* Sections II.A.1 and 2 above.

### 2.    CIPA § 632 (Count II)

   Meta repeats its arguments about consent, intent, and whether non-California plaintiffs may pursue a claim under CIPA § 632. Each argument is rebutted in Section II.A above.

### 3.    Illinois Eavesdropping Statute (Count III)

   ***Surreptitious Conduct***. Meta argues its conduct was not surreptitious (as required by the statute) because Meta requires website owners "to post prominent notice on each page the Pixel is used." MTD, 13:-79. This is another fact-based argument. *See* Section II.A.3.b above. Plaintiffs allege that Meta's policies are a sham (Compl., ¶¶ 69-70, 75), and there is no basis to conclude that such notice was on the tax preparation websites at issue here—or for that matter any other website.

   ***Consent and Intent***.  *See* Section II.A above.

### 4.    Washington Privacy Act (Count IV)

   ***Automatic electronic communications***. Meta argues that under the Washington Privacy Act, "there is no liability for automatic electronic communications between *systems*; the statute is limited to communications between natural persons." MTD, 13:14-15 (emphasis in original). <u>First</u>, there are no allegations about "automatic electronic communications between systems." Instead, human website users input their information on tax preparation websites. *See* Compl., ¶¶ 34, 36, 60, 62. <u>Second</u>, the statute does not use the term "natural persons" (*see* Wash. Rev. Code § 9.73.030), and Meta cites no case holding that communications between a person and a

corporation (or its website) are excluded from the statute.

  ***Consent and Intent***.  *See* Section II.A above.

    **5.**  **Federal Wiretapping Act § 2511 And Missouri**
      **Wiretapping Act (Counts V and VI)**

  ***One-Party Consent.*** Meta argues that the claims based on the § 2511 of the Federal Wiretap Act and the Missouri Wiretap Acts must be dismissed because they are "one-party" consent statutes, and the third-party tax providers presumably consented to any interceptions, even if Plaintiffs did not. MTD, 8:3-10. That argument fails for three reasons. First, Judge Orrick rejected Meta's argument last week, and the reasoning is equally applicable here. *See* Exhibit 1, *9/7/23 Doe Order*, at 6:9-8:6. Meta bears the burden of proving that the tax preparation websites were fully informed and consented to the disclosure of the sensitive tax filing information at issue here. *See Brown II*, 2023 WL 5029899 at \*13 ("[T]he burden is on [defendant] to prove consent"). Meta's general disclosures are not sufficient. *See Healthcare Litigation*, 2022 WL 17869218, at \*9. So, accepting Meta's argument requires drawing an inference in *Meta's* favor that website owners were fully informed of the consequences of installing the Pixel on their websites. Drawing inferences in Meta's favor, however, is the "antithesis" of Rule 12(b)(6)'s standard. *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1145 (N.D. Cal. 2009); *accord Gershzon*, 2023 WL 5420234 at \*9, n.3.

  Second, the one-party consent defense does not apply if the "communication is intercepted for the purpose of committing any criminal or tortious act" under federal or state law. 18 U.S.C. § 2511(d)(2). In *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. Mar. 12, 2021) ("*Brown I*"), "consent [was] not a defense to Plaintiff's Wiretap Act claims" because the plaintiffs alleged that the wiretapping was done for the purpose of violating Cal. Penal Code § 502 and invading users' privacy. *See also Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016) (one-party consent rule inapplicable for similar reasons stated in *Brown*). Similar to *Brown I*, Plaintiffs here allege Meta's wiretapping is done to "violat[e] laws prohibiting the unlawful review and use of tax and other confidential information," and that this intent "was separate and independent from its intent to violate the Federal Wiretap Act." Compl., ¶ 77; *see also id.* at ¶ 130. Hence, Meta's consent defense fails.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Third</u>, Meta argues the crime-tort exception "does not apply where the defendant's purpose was to make money." MTD, 8:25-26. In *Brown I*, however, the court distinguished the same cases Meta cites here when it held that allegations that Google intercepted communications so it could associate data with pre-existing user profiles supported the crime-tort exception. *Brown I*, 525 F. Supp. 3d at 1067. Similarly, here, Plaintiffs allege that "Meta's pixel and other business tools at issue here connect a particular user to particular tax-related information, which falls within the ambit of information protected against disclosure by federal law." Compl., ¶ 61; *see also id.* at ¶ 62 ("Meta's system then matched that [tax] information to Plaintiffs' Facebook accounts…"). Therefore, application of the crime-tort exception here is consistent with *Brown I* and *Planned Parenthood*.

**Contents of a communication.** This Court in *Gershzon* and Judge Orrick in *Healthcare Litigation* rejected Meta's argument that its technology does not transmit "content." *See Gershzon*, 2023 WL 5420234 at *12-13; *Healthcare Litigation*, 2022 WL 17869218, at *11. Tax return information is just as "substantive and personal" as the application for a disability placard or the health information disclosed in those two cases. *See*, *e.g.*, *Gershzon*, 2023 WL 5420234 at 13.

The term "content" includes information entered into website form fields, because that information is "the intended message conveyed" by the act of entering the information. *See In re Zynga Privacy Litigation*, 750 F.3d 1098, 1107 (9th Cir. 2014) (explaining the First Circuit "correctly concluded" that website form field entries were "content" within the meaning of the statute); *Gershzon*, 2023 WL 5420234 at *12 (explaining name and contact information "may be contents when it is part of the substance of the message conveyed to the recipient"); *Healthcare Litigation*, 2022 WL 17869218, at *11 ("contact information provided as part of a sign-up process constitutes 'content' because this information is the subject of the communication"); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118 at *9 (N.D. Cal. Apr. 6, 2023) (form field entries are "contents").

Here, Plaintiffs allege the following:

The financial information that was transmitted to Meta from the tax filing websites included form field information and/or information affirmatively provided by the website user to the website. Website users intended to convey information to the tax filing websites about their contact information, filing status, gross income, dependents, social security numbers, and other tax filing and financial information ….

Compl., ¶ 60. The Complaint includes other allegations that Meta intercepted form field information, login information, and button clicks generated by website users when preparing their taxes. *See id.* at ¶ 36 (Meta intercepted "what buttons they click[ed], as well as specific information they input into the website" when preparing their taxes; ¶ 62 ("when each Plaintiff entered the information needed to prepare their tax filings, the pixel caused that information to be transmitted in real time to Meta."); ¶ 34 (Meta collects login information). Similar to *Gershzon*, Plaintiffs also allege that the Pixel "gathers information about what URLs users visit and what they search for." *Id.* at ¶ 157.

Meta argues the above-described allegations are insufficient because they do not include details about the tax information transmitted. *See* MTD 10:25-26. However, a plaintiff alleging privacy violations or wiretapping is not required to disclose in the pleadings the specific communications that were recorded or surveilled. *See In re Google*, 457 F. Supp. 3d at 816 ("the Court rejects Defendants' suggestion that Plaintiffs must identify specific communications that …were wrongly recorded.").

**Scienter.** *See* Section II.A.3 above.

### 6. CIPA § 635 And Federal Wiretap Act § 2512 (Counts VIII and IX)

In *Revitch v. New Moosejaw*, LLC, 2019 WL 5485330 at *3 (N.D. Cal. Oct. 23, 2019), Judge Chhabria denied a motion to dismiss a cause of action under § 635, and this Court should too. Section 635 imposes liability on "[e]very person who … possesses … or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping." Cal. Penal Code § 635 (emphasis added). In turn, § 637.2(b) permits any person to "bring an action to enjoin and restrain *any violation of this chapter* …." *Id.* at § 637.2(b) (emphasis added). Hence, the statute expressly permits a cause of action under § 635. Plaintiffs allege they were injured as a result of Meta furnishing its surveillance technology, which allowed the wiretapping to occur. Compl., ¶¶ 156-58.

Meta once again relies on factual assertions outside the pleadings when it argues that its Pixel is not primarily useful for secretly intercepting communications. MTD, 13:4-23. Judge Chhabria also rejected the same argument in *Revitch*, explaining "the Court must assume the truth of [plaintiff's]

allegation that [defendant's] code is a 'device ... primarily or exclusively designed or intended for eavesdropping upon the communication of another.'" *Revitch*, 2019 WL 5485330 at *3.

Finally, Meta's argument that there is never a private right of action for violating § 2512 of the Federal Wiretap Act was rejected by the Sixth Circuit in *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016), a similar case involving internet spyware. The *Luis* court distinguished Meta's authorities because in those cases, "the courts were focused on whether a defendant's possession of a wiretapping device, without more, was sufficient to support a private cause of action." *Id.* at 637. But where, as here, a defendant not only possesses and markets spyware, but also "plays an active role" in using the spyware to intercept communications, then that defendant "is subject to a private suit under § 2520." *Id.*; *but see Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 523 (C.D. Ca. 2021).

## C.    Plaintiffs Sufficiently Allege Common Law Claims

### 1.    Unjust Enrichment (Count VII)

***No cause of action.*** Meta's argument that there is no cause of action for unjust enrichment has been rejected by this Court and numerous other courts in this District because it is contrary to the Ninth Circuit's decision in *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). *See*, *e.g.*, *Crown Cell Inc. v. Ecovacs Robotics, Inc.*, 2022 WL 17082670, at *4 (N.D. Cal. Nov. 18, 2022) (Illston, J.). Furthermore, after *Astiana*, the Ninth Circuit held that unjust enrichment *is* a cause of action and reversed dismissal of that claim based on a then-recent decision of the California Supreme Court. *See Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (following *Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*, 353 P.3d 319 (Cal. 2015)).[7]

***Adequate remedy at law.*** Meta's adequate remedy at law argument fails for three separate reasons. <u>First</u>, under the Restatement, "[a] claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law." Restatement (Third) of Restitution, § 4(2). California and federal courts—including this Court—follow the Restatement of Restitution. *See In re TFT-LCD (Flat*

---

[7] *See also*, *e.g.*, *In re Bang Energy Drink Marketing Litig.*, 2020 WL 4458916, at *10 (N.D. Cal. Feb. 6, 2020) (citing *Hartford* when holding, "Plaintiffs have sufficiently established that unjust enrichment is an independent cause of action in California."); *Nava v. Kobe Steel, Ltd.*, 2019 WL 5173767, at *1 (N.D. Cal. Oct. 8, 2019) (citing *Bruton* and *Hartford* for the proposition that unjust enrichment "is an independent cause of action in California").

*Panel) Antitrust Litig.*, 2011 WL 4501223, at *7 (N.D. Cal. Sept. 28, 2011) (Illston, J.) ("*In re TFT-LCD*") (applying Restatement of Restitution in multi-state litigation).[8]

    Second, even if there were an inadequate remedy at law requirement, it is satisfied here. As Judge Corley correctly held, non-restitutionary disgorgement of profits is not the same as legal damages, and so an unjust enrichment claim that seeks that relief is not subject to dismissal under the adequate remedy at law doctrine. *See In re California Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645 at *8 (N.D. Cal. Mar. 29, 2021). Here, Plaintiffs seek non-restitutionary disgorgement of profits, and the allegations in their Complaint are largely the same as those that survived the 12(b)(6) motion in *In re California Gasoline. See* Compl., ¶ 152.

    Third, Meta's argument is premature. As this Court has explained, at this stage of the proceedings "there is no evidence before the Court concerning the degree to which the remedies available under plaintiffs' unjust enrichment claim are identical to the legal remedies plaintiffs seek." *In re TFT-LCD*, 2011 WL 4501223 at *14. Nor can Meta legitimately argue that the fact that Plaintiffs seek legal remedies in the alternative is tantamount to an admission that there is an adequate remedy at law. *See*, *e.g.*, *Molsbergen v. U.S.*, 757 F.2d 1016, 1019 (9th Cir. 1985) (holding one claim cannot be "invoked as an admission against an alternative or inconsistent claim"); *see also OMRLV Prop., LLC v. Courtney*, 2009 WL 10693479 at *11 (D. Nev. Apr. 20, 2009) (applying rule in *Molsbergen* to unjust enrichment claim pursued in the alternative to legal claims).

    **Barred by contract**. Meta's argument that the unjust enrichment claim is barred by contract fails for two reasons. First, the argument is premature because, as argued above, there is no legal basis to conclude at this juncture that any Plaintiff agreed to the Terms of Service that Meta relies on. Second, the existence of a contract is not a per se bar to a claim for unjust enrichment if the plaintiff alleges the defendant obtained a benefit by "fraud … conversion, or similar conduct." *Hall v. Marriott Int'l., Inc.* 2020 WL 4727069 at *13 (S.D. Cal. Aug. 2020) (collecting authorities); *cf. Professional Tax Appeal.*, 29 Cal. App. 5th at 240 ("California law on unjust enrichment is not

---

[8] *See also*, *e.g.*, *Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.*, 29 Cal. App. 5th 230, 240 (2018) ("California courts have long relied on the American Law Institute's Restatements for guidance"); *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1487 (2014) (following Restatement (Third) of Restitution).

narrowly and rigidly limited to quasi-contract principles."). Here, Plaintiffs' unjust enrichment claim is not based on breach of contract. It is primarily based on Meta secretly collecting tax information and using that information for its own benefit. *See* Compl., ¶¶ 148-49.

**Actionable wrong.** Meta argues "plaintiffs have not adequately alleged any misrepresentation or omission." MTD, 22:12. That argument fails because the unjust enrichment claim is primarily based on Meta's wrongful acquisition and use of tax information, rather than a misrepresentation or omission, and Meta offers no arguments on that point with respect to unjust enrichment. *See* Compl., ¶¶ 148-151. It cannot do so for the first time on reply. *See Craven v. Robertson*, 2023 WL 2632211 at *4 n.2 (N.D. Cal. Mar. 24, 2023) (Illston, J.) (rejecting arguments made for the first time on reply).[9]

### 2. Negligence And/Or Negligence Per Se (Count XIII)

Plaintiffs allege that Meta failed to prevent the transfer of taxpayers' sensitive financial information (*see* Compl. ¶¶ 63-70), which information was harvested by Meta. This taxation information has specific protections under the law including regulatory protections. *See* Compl. ¶¶ 3, 211. Federal law prohibits the disclosure of "any information furnished to him for, or in connection with, the preparation of any such return" or use "any such information for any purpose other than to prepare, or assist in preparing such return." 28 U.S.C. 721(6)(a). Meta's collection and use of taxpayer's information from taxation websites through the Meta Pixel amounted to negligence per se and/or negligence. Negligence *per se* connotes that acts are negligent because they violate laws enacted to protect the public from harm. The IRS privacy laws that Meta violates by collecting and using tax return information are just the type of laws put in place to protect taxpayers from harm. This claim does not require Plaintiffs to prove duty or an independent breach of that duty. As set forth below, Meta's failure to exercise due care also satisfies Plaintiffs' negligence claim.

**Duty:** Plaintiffs' allegations establish that Meta has a duty of care to prevent the foreseeable transmission of tax information to Meta.[10] Plaintiffs' harm is foreseeable because, *inter alia*, Meta

---

[9] The argument that plaintiffs failed to allege an omission also lacks merit for the same reasons stated in Section II.D.1 below (addressing Rule 9(b) pleading requirements).

[10] In assessing whether a duty of care exists, California courts consider, *inter alia*, the (1) "foreseeability of harm to the plaintiff"; (2) "degree of certainty that the plaintiff suffered injury"; (3) "closeness of the connection between the defendant's conduct and the injury suffered"; (4) "moral blame attached to the defendant's conduct; (5) the policy of preventing future harm; (6)

1  inadequately prevents the receipt of Plaintiffs' sensitive information. *See* MTD at 4-5. *See also Bass*,

2  394 F. Supp. 3d at 1039 (lack of reasonable care in handling personal information foreseeably harms

3  individuals providing information). Plaintiffs therefore are not claiming Meta "owe[s] a duty to

4  prevent every potential misuse of the Pixel tool," MTD at 21, but instead a "misuse" that Meta

5  specifically identified and claims to attempt to prevent. *See* MTD at 4-5.[11] Moreover, Meta's central

6  claim that it cannot be asked to "control the conduct of third parties," MTD at 22 (emphasis omitted),

7  has already been rejected in *Healthcare Litigation*. *See id.*, 2022 WL 17869218 at *19 (rejecting

8  same argument Meta makes here because it is "capable of turning the Pixel off for certain websites.").

9  Similarly, Meta's complaint that it is being asked to ensure compliance by the tax preparation

10  websites, *see* MTD at 22, elides the real issue here – Meta's *own* compliance with regulations

11  safeguarding tax information.[12]

12        Plaintiffs also readily satisfy the other factors. The degree of certainty that the plaintiff

13  suffered injury generally only comes into question "when the only claimed injury is an intangible

14  harm such as emotional distress." *Id.* at 1148 (internal quotations omitted). The closeness of

15  connection between the defendant's conduct and injury suffered "is strongly related to the question

16  of foreseeability itself," satisfied here, and an "intervening third party's actions that are themselves

17  derivative of defendants' allegedly negligent conduct . . . do not diminish the closeness of the

18  connection between defendant's conduct and plaintiff's injury for purposes of determining the

19  existence of a duty of care." *Id.* (internal quotations omitted). And failing to hold Meta responsible

20  here would clearly risk significant future harm for all users of online tax preparation websites. *See*

21  "extent of the burden to the defendant and the consequences to the community of imposing a duty

22  to exercise care with resulting liability for breach"; (7) and "availability, cost, and prevalence of insurance for the risk involved.'" *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal.

23  2019) (internal quotation omitted). These factors "must be evaluated at a relatively broad level of factual generality," *Id.* at 1039 (quotation omitted), and weigh in favor of a duty of care here.

24  [11] Whether the filter tool is sufficient in its design or effective is a fact question not for resolution here. *See Healthcare Litigation*, 2022 WL 17869218 at *20 (amount of data seeping through Meta

25  filter and feasibility of other technological solutions "remain unknown" but "[d]iscovery will eliminate some of these unknowns.").

26  [12] *See, e.g., Kesner v. Superior Ct.*, 1 Cal. 5th 1132, 1148 (2016) ("It is well established ... that

27  one's general duty to exercise due care includes the duty not to place another person in a situation in which the other person is exposed to an unreasonable risk of harm through the reasonably

28  foreseeable conduct (including the reasonably foreseeable negligent conduct) of a third person.") (internal quotations omitted).

1    *Bass*, 394 F. Supp. 3d at 1039 (to hold Facebook had no duty of care "would create perverse

2    incentives for businesses who profit off the use of consumers' personal data to turn a blind eye and

3    ignore known security risks.") (internal quotations omitted); *Flores-Mendez v. Zoosk, Inc.*, 2021 WL

4    308543, at *4 (N.D. Cal. Jan. 30, 2021) (same).[13]

5         To be sure, Judge Orrick dismissed the negligence per se claim in the *Healthcare Litigation*

6    for lack of a cognizable statutory duty to support such a theory, whereas Plaintiffs do not allege

7    HIPPA violations but violations of taxation code regulations, consumer protection, and criminal

8    codes.  Moreover, the cause of action here is not based solely on a negligence per se theory. Hence,

9    the dismissal *Healthcare Litigation* does not support dismissal of the entire negligence claim here.

10   If this Court dismisses Count XIII to the extent it is based on negligence per se, Plaintiffs request an

11   opportunity to cure via amendment, as was the case in the *Healthcare Litigation*. *See* Exhibit 1,

12   *9/7/23 Doe Order*, at 20:17.

13        **Breach:** Meta argues there was no breach by improperly relying on its own "Business Tools

14   Terms." *See* MTD at 22 (citing RJN, Ex. 4). But as discussed *supra*, at this stage the Court cannot

15   accept Meta's bald assertions based on the *contents* of its own documents. Moreover, *Healthcare

16   Litigation* held that the effectiveness of Meta's filter is a question of fact. *See id.*, 2022 WL 17869218

17   at *20. Finally, Plaintiffs do not merely allege that Meta "'knew or should have known that its

18   business practices did not safeguard against the disclosures at issue in this case,'" MTD at 22

19   (quoting Compl., ¶ 210), but instead have asserted numerous other allegations sufficient to show

20   breach. *See, e.g.,* Compl., ¶¶ 71-79.

21        **Causation:** Meta argues that Plaintiffs fail to allege Meta caused Plaintiffs' harm because

22   "third-party developers," operators of the tax-preparation websites, were instead the culprit. *See*

23   ───────────────
     [13] While the moral blame factor "can be difficult to assess in the absence of a factual record," here
24   Meta's alleged conduct is akin to that of defendants in cases finding moral blame where "the
     plaintiffs are particularly powerless or unsophisticated compared to the defendants or where the
25   defendants exercised greater control over the risks at issue." *Id.* at 1151 (citations omitted). The
     extent of the burden and consequences on Meta of imposing the duty here do not weight against a
26   duty here because Plaintiffs have "limit[ed] potential plaintiffs to an identifiable category of
     persons who, as a class, are most likely to have suffered a legitimate, compensable harm," *id.* at
27   1155, namely people whose tax information was obtained by Meta from tax preparation websites.
     *See* Compl., ¶ 80. Finally, the availability and cost of insurance for Meta relating to Plaintiffs
28   claims is at worst (for Plaintiffs) a fact issue not appropriate here, and likely a non-factor in light of
     Meta being one of the wealthiest corporations on Earth.

─────────────────────────────────────────
OPPOSITION TO MOTION TO DISMISS; CASE NO. 22-CV-07557-SI                                              16

MTD at 22. But Judge Orrick rejected the same argument as "meritless" in *Healthcare Litigation*. *See Healthcare Litigation*, 2022 WL 17869218 at *19 (finding causation despite Meta's claim it "cannot stop website developers from sending it health information" because, *inter alia*, Meta "is capable of turning the Pixel off for certain websites" and its purported "efforts to prevent receipt of health information do not diminish the irreparable invasion of privacy that plaintiffs have experienced."). Moreover, Plaintiffs amply allege how Meta caused this illicit flow of sensitive information into its own servers, for its own profit. *See, e.g.,* Compl., ¶¶ 30-42; 45-62; 71-79.

**Harm:** Meta argues Plaintiffs' negligence claim is barred by the economic loss rule because Plaintiffs "allege only losses related to the disclosure of their personal data." MTD at 22 (internal quotations and citations omitted). But this obfuscates Plaintiffs' varied allegations of harm including, *inter alia*, the loss of privacy of the plaintiffs' protected financial information and the time and resources expended to investigate and respond to Meta's violations. *See Compl.*, ¶ 213. These harms have been held by numerous courts to be sufficient to overcome the economic loss rule. *See, e.g., Bass*, 394 F. Supp. 3d 1039 (harm from loss of time not barred by economic loss rule); *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 654 (N.D. Cal. 2020) (same); *Schmitt v. SN Servicing Corp.*, 2021 WL 3493754, at *6 (N.D. Cal. Aug. 9, 2021) (same).[14]

Meta's cited cases to the contrary are inapposite or against the weight of authority. For example, in *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ("*iPhone App. Litig.*"), the court held that certain of the plaintiffs' allegations of harm supporting their negligence claim, including an "increased, unexpected, and unreasonable risk to the security of sensitive personal information," were not sufficient to establish negligence. However, the court did not differentiate between which claims it found were "too speculative to support a claim for negligence under California law" and which were barred by the economic loss doctrine because they "stem from

---

[14] *See also Flores-Mendez*, 2021 WL 308543, at *3 ("Plaintiffs allege their loss of time, risk of embarrassment, and enlarged risk of identity theft as harms and so *do not* allege pure economic loss.") (emphasis in original); *Mehta v. Robinhood Fin. LLC*, 2021 WL 6882377, at *6 (N.D. Cal. May 6, 2021) (not solely economic loss where defendants' actions caused loss of control over the use of their identity, harm to privacy rights, and similar harms).

disappointed expectations from a commercial transaction." *Id.* at 1064.[15]

### D.  Plaintiffs Sufficiently Allege Statutory Consumer Protection Claims

#### 1.  California's CLRA and UCL (Counts XIV and XVI)

*Statutory Standing.* Plaintiffs' standing for their CLRA and UCL claims do not depend on whether they paid fees for Meta's services. *See Brown v. Google LLC*, 2021 WL 6064009, at *14 (N.D. Cal. Dec. 22, 2021) ("*Brown III*") (diminution in value of personal information caused by unauthorized disclosure supported standing); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 613 (N.D. Cal. 2021) (loss of "personal information" supported standing); *Brown II*, 2023 WL 5029899, at *21 (injury in fact satisfied, as plaintiffs demonstrated "that there is a market for their browsing data and Google's alleged surreptitious collection of the data inhibited plaintiffs' ability to participate in that market"). *Compare* MTD, 16:2-4.

Meta's cases do not support dismissal. In *Rodriguez v. Google LLC*, for example, the alleged harm was that plaintiffs paid money to Google by purchasing certain apps, when in fact, the plaintiffs conceded that "the apps named in the FAC are free to download." 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021). *Rodriguez* is therefore easily distinguishable from *Brown III* and *Calhoun* and has nothing to do with standing alleged here. Meta's other cases are likewise irrelevant to the allegations here. *See In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 714-15 & n.10 (N.D. Cal. 2011) (basing conclusion that "broad" allegation was insufficient on plaintiffs' failure to offer caselaw in support of their proposition that personal information is a form of property); *In re iPhone App. Litig.*, 2011 WL 4403963, at *5 (N.D. Cal. Sept. 20, 2011) (finding plaintiffs' "general allegations" about "abstract concepts" insufficient). None of these cases involve allegations of a loss of value in personal information based on a party's "disclosure of their tax filing data which has value as is demonstrated by the use and sale of it []." Compl., ¶ 248; *see also id.*, ¶ 72 ("Income and other related financial information are highly valuable demographic markets for advertising purposes. Hence, the financial information at issue here was valuable to Meta.").

---

[15] The opinion in *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236 at *12-13 (N.D. Cal. Mar. 26, 2013) ("*Google Privacy*"), contains limited analysis, but also dismissed with leave to amend, as this Court should too if it follows that opinion.

1      ***Economic Injury.*** Plaintiffs also adequately allege harm under their CLRA and UCL claims.

2  *Contrast* MTD, 16:7-13. For the UCL, a plaintiff must "establish a loss or deprivation of money or

3  property to qualify as injury in fact, i.e. economic injury." *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877,

4  885 (Cal. 2011). "Similarly, the CLRA requires that a plaintiff allege a tangible increased cost or

5  burden to the consumer." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F.

6  Supp. 2d 942, 965 (S.D. Cal. 2012). Although "UCL standing is narrower than Article III standing,"

7  the "economic injury required by UCL is a classic form of injury in fact under Article III and there

8  is no precedent which suggests that economic injury has a different meaning in the UCL context than

9  it does in the Article III context." *Brown III*, 2021 WL 6064009, at *17 (quotations omitted).

10      As stated above, Plaintiffs have adequately pleaded a diminution in value theory of economic

11  injury. *Compare* Compl., ¶¶ 225, 248, *with Brown III*, 2021 WL 6064009, at *14. A plaintiff suffers

12  economic injury where he or she "acquire[s] in a transaction . . . less[] than he or she otherwise would

13  have." *Kwikset*, 246 P.3d at 885. "Under this standard, a party who has provided goods or services

14  in a transaction and has not been paid the fair value of those goods or services has suffered an

15  economic injury even though the party has *received* money instead of paying money. The same logic

16  would apply to parties like Plaintiffs who have provided valuable data to [Defendant] and have

17  received *no* money in return." 2021 WL 6064009, at *17 (emphases in original).

18      ***Rule 9(b).*** An omission claim does not require the same level of specificity as a

19  misrepresentation claim. *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *35 (N.D. Cal.

20  May 27, 2016) ("*Anthem*"). And reliance in an omissions case is established through materiality, i.e.

21  whether the plaintiff would have been aware of the information and behaved differently if it had been

22  disclosed. *Id*. Plaintiffs CLRA and UCL claims are based on Meta's "fail[ure] to disclose that [it]

23  was secretly collecting and using tax filing and other financial data for its own advertising and other

24  business purposes." Compl., ¶¶ 222, 243, 245; *see also id.*, ¶ 68 ("None of the tax-filing websites . .

25  . disclosed that they sent confidential tax-return information to Meta, or requested consent for such

26  disclosure."). The complaint further alleges that as a result of the omissions, Meta stripped Plaintiffs

27  of their ability to make fully informed decisions about their use of or interaction with those websites.

28  *See id.*, ¶ 248 ("Facebook's actions have prevented Plaintiffs and Class Members from making fully

1   informed decisions about whether to communicate online with their financial services providers and

2   to use their providers' websites in the first instance."). Such allegations are adequate under Rule 9(b).

3   *See In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1229 (C.D. Cal. 2017) (holding

4   that allegations satisfied Rule 9(b) where they alleged that material information was not readily

5   accessible to them prior to or after purchasing their televisions). In addition, Plaintiffs have alleged

6   that "Facebook's actions offend public policy," something courts also consider in determining the

7   adequacy of a fraudulent omission claim. *See Anthem*, 2016 WL 3029783, at *35 (highlighting the

8   "public outcry" associated with defendant's actions). These allegations are sufficient.

9        ***Lack of Adequate Remedy at Law.*** Meta's adequate remedy at law argument fails for two

10  reasons. <u>First</u>, Plaintiffs allege that they lack an adequate remedy at law, and courts have held that

11  the same allegations made here are sufficient to survive a motion to dismiss. In *Elgindy v. AGA*

12  *Service Co.*, the court agreed with plaintiffs that "significant differences in proof and certainty

13  establish that their common-law fraud claim cannot serve as an adequate remedy at law displacing

14  their fraud-based UCL and [California False Advertising Law ("FAL")] claims." 2021 WL 1176535,

15  at *15 (N.D. Cal. Mar. 29, 2021). This is exactly what is alleged here: "In short, significant

16  differences in proof and certainty establish that any potential legal claim cannot serve as an adequate

17  remedy at law." Compl., ¶¶ 225, 252. The *Elgindy* court explained that, "[a]lthough rooted in the

18  same theory, the elements of a common-law fraud claim require proof of conduct beyond that which

19  must be shown to establish liability under the UCL and FAL." *Id.* Likewise, in *Coleman v. Mondelez*

20  *Int'l Inc.*, 554 F. Supp. 3d 1055, 1065 (C.D. Cal. 2021), the court found that plaintiff had sufficiently

21  alleged the lack of an adequate legal remedy, stating that "viewed in the light most favorable to

22  plaintiff, . . . her allegations sufficiently plead that restitution would be more certain, prompt, or

23  efficient" than the monetary damages she seeks, but may ultimately not attain." 554 F. Supp. 3d at

24  1065 (quotation omitted) (citing *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937)). Here, too,

25  Plaintiffs allege that the "[l]egal remedies available to [them] are inadequate because they are not

26  equally prompt and certain and in other ways efficient as equitable relief." Compl., ¶¶ 225, 252.

27       <u>Second</u>, Meta argues that the mere fact that Plaintiffs seek legal remedies in the alternative is

28  an admission that those remedies are adequate, but that is wrong. Plaintiffs may plead claims and

1   remedies in the alternative at this stage of the litigation, *see Coleman*, 554 F. Supp. 3d at 1065 n.9,

2   and when they do so, one claim cannot be "invoked as an admission against an alternative or

3   inconsistent claim." *Molsbergen*, 757 F.2d at 1019.[16]

4   　　　**"Transaction" Under the CLRA.** The CLRA does not require a transaction between the

5   parties. *See* Cal. Civ. Code § 1770(a) (prohibiting "unfair or deceptive acts or practices . . .

6   undertaken by *any person in any transaction* . . . that results in the sale or lease of goods or services

7   to any consumer) (emphasis added). The CLRA defines "transaction" as "an agreement *between a*

8   *consumer and another person*, whether or not the agreement is a contract enforceable by action, and

9   includes the making of, and the performance to, that agreement." Cal. Civ. Code § 1761 (emphasis

10   added). In addition, the *In re Google* court held that "under the CLRA, the stream of commerce does

11   not vitiate liability for alleged affirmative misrepresentations made by manufacturers that do not sell

12   directly to customers." *In re Google, Inc.Privacy Pol'y Litig..*, 58 F. Supp. 3d 968, 982 (N.D. Cal.

13   2014) (holding that "Plaintiffs need not allege a direct sale between Google and themselves to

14   establish their CLRA claim").

15   　　　**"Unlawful" and "Unfair" Under the UCL.** Plaintiffs' "unlawful" allegations hinge on the

16   adequacy of Plaintiffs' other statutory and common law allegations. Compl., ¶ 242. As shown herein,

17   Plaintiffs adequately plead all other claims alleged. Regarding Plaintiffs' "unfair" allegations,

18   contrary to Meta's argument, *see* MTD, 17:24-18:2, Plaintiffs have adequately pleaded their fraud

19   allegations under Rule 9(b), as discussed *supra*.

20   　　　Meta also wrongly argues that Plaintiffs' allegations of "unfair" conduct fail the UCL's

21   "balancing" and "tethering" tests. MTD, 18:3-4. As this Court has stated, the "unfair" prong of the

22   UCL "offers an independent basis for relief that is intentionally broad, thus allowing courts

23   maximum discretion to prohibit new schemes to defraud." *Abeyta v. DMCG, Inc.*, 2023 WL 3047054,

24   at *1 (N.D. Cal. Apr. 20, 2023) (Illston, J.) (quotation omitted). "The term 'unfair' as it is used in the

25   UCL context has been defined in numerous ways, none of which has yet been adopted as controlling

26

27   ───────────────
    [16] Meta also argues that Plaintiffs' UCL and CLRA claims should be dismissed because they have
    not alleged that Meta took their money or that they are entitled to an ownership interest in Meta's

28   allegedly improper profits. MTD, 17:7-10. For the reasons stated *supra*, Plaintiffs have
    demonstrated economic injury under both the UCL and the CLRA.

by the California Supreme Court or the Ninth Circuit in the context of consumer fraud." *Id*. (quotation omitted). Under *Abeyta*, "regardless of which test applies," Plaintiffs here have "sufficiently alleged that [Meta] engaged in an unfair business practice that caused [them] harm." *Id*. Whether the challenged practices are actually unfair is 'a question to be resolved at a later stage in this litigation." *Id*. (internal quotation omitted). *See also* Section II.A.3.b. above.

     ***Extraterritoriality***. *See* Section II.A above.

### 2.    Illinois Consumer Fraud And Deceptive Business Practices Act (Count X)

     ***Rule 9(b)***. *See* Section II.D.1 above*.* Contrary to Meta's contention, MTD, 19:4-5, Plaintiffs allege the statements by Meta that render the alleged omissions misleading. Compl., ¶ 69.

     ***Deception and Reliance.*** Plaintiffs have alleged specific communications from Meta. Compl., ¶ 69. Further, contrary to Meta's argument, the ICFA does not require actual reliance. *Ash v. PSP Distribution, LLC*, 2023 IL App (1st) 220151 (Ill. App. June 12, 2023). Rather, "[a]n omission is considered material when a reasonable consumer would have acted differently had the consumer known the omitted fact." *Id*. Similarly, "[a] representation of fact is material if a reasonable person could be expected to rely on [it] in deciding to enter into a transaction." *Id*. at *4. This analysis is governed by an objective standard.  *See id.* Here, Plaintiffs allege that "[t]he undisclosed information Meta concealed is material to reasonable consumers." Compl., ¶ 178. They further allege that the omission is offensive to reasonable consumers. Compl., ¶ 180.

     ***Intent***. *See* Section II.A above.

     ***Actual damages.*** Meta argues that plaintiffs have failed to allege actual damages. MTD, 19:19-20. For the reasons stated in Section II.D.1 above, plaintiffs have, among other damages alleged, adequately alleged a diminution in value based on Meta's actions. *See* Complaint, ¶ 182.

### 3.    Illinois UDTPA (Count XI)

     Plaintiffs adequately plead a claim under the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") for the same reasons they do so under ICFA. See Section II.D.2 above. Contrary to Meta's contention, MTD, 20:11-21, Plaintiffs allege adequate relief under the IUDTPA, which "provides injunctive relief for a plaintiff who can demonstrate that a defendant engaged in any of the

12 enumerated types of conduct listed in 815 ILCS 510/2(a)." *Darne v. Ford Motor Co.*, 2015 WL 9259455, at *12 (N.D. Ill. Dec. 18, 2015).  Plaintiffs allege that "Meta misrepresented that it does not collect sensitive financial information from its users, when it, in fact, did collect such information …." Compl., ¶ 187. Plaintiffs allege four different types of conduct listed in the statute: "(a) Representing that goods or services have characteristics that they do not have;" "(b) Representing that goods or services are of a particular standard, quality, or grade if they are of another;" "(c) Advertising goods or services with intent not to sell them as advertised (815 Ill. Comp. Stat. § 510/2(a)(9));" and/or "(d) Engaging in other conduct that creates a likelihood of confusion or misunderstanding here." Compl., ¶ 188. Any of these is sufficient to violate the statute.

In addition, Plaintiffs "must demonstrate that [they are] likely to be damaged in the future by defendants' conduct." *Tarin v. Pellonari*, 625 N.E.2d 739, 747 (Ill. App. Ct. 1993). Here, Plaintiffs allege that "harm will continue unless Meta is enjoined from continuing its conduct as described herein." Compl., ¶ 226; *see also id.*, ¶¶ 201, 253. Finally, Meta argues no injunction is needed after rehashing its argument that it forbids websites from sending it sensitive information.  Once again, Meta is relying on factual assertions outside the pleadings.  *See* Section II.A.3.b.

### 4.    New York's GBL § 349 (Count XII)

Meta makes three arguments for dismissal. <u>First</u>, Meta argues that Plaintiffs have not plausibly alleged any deception. That is wrong. Plaintiffs allege that Meta secretly collected tax information despite promising that it would not collect "financial or other categories of sensitive information," and by disseminating privacy policies that were a sham. Compl., ¶¶ 69(A), 75. <u>Second</u>, Meta argues that GBL § 349 does not protect privacy interests. Meta fails to disclose, however, that there is a split of authority on that subject, and in fact, courts have denied dismissal where, like here, a defendant's deceptive conduct about data security imperiled consumers' privacy. *See In re Blackbaud, Inc. Customer Data Breach Litig.*, 2021 WL 3568394, at *13-14 (D.S.C. Aug 12, 2021); *see also Daniel v. Tootsie Roll Indus., LLC*, 2018 WL 3650015 at *7 (S.D.N.Y. Aug. 1, 2018) (collecting authorities holding that non-pecuniary harm is cognizable under § 349). <u>Third</u>, Meta argues that the alleged deception did not occur in New York, but that argument is contrary to the pleadings pertaining to the New York Plaintiffs. *See* Compl., ¶¶ 8-9.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### E.    Plaintiffs Sufficiently Allege Theft Under Cal. Penal Code § 496 (Count XV)

*Theft*. Meta's argument that Plaintiffs' personal information is not "money, labor or real or personal property," MTD at 23, is contrary to prior rulings of courts in this District. *See, e.g.*, *Calhoun*, 526 F. Supp. 3d at 635 (N.D. Cal. 2021) ("California courts have acknowledged that users have a property interest in their personal information.").

Meta also argues Plaintiffs have not plausibly alleged any deception by Meta, claiming "[n]one of Meta's conduct was 'felonious[],' 'false,' or 'fraudulent[.]'" MTD at 23. However, "[t]he elements required to show a violation of section 496(a) are simply that (i) property was stolen or obtained in a manner constituting theft, (ii) the defendant knew the property was so stolen or obtained, and (iii) the defendant received or had possession of the stolen property." *Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x 238, 242 (9th Cir. 2021) (internal quotations omitted). Plaintiffs have sufficiently alleged that Meta knowingly stole Plaintiffs' and the Class's tax information to utilize it for Meta's own financial benefit. *See* Compl. ¶¶ 232-35. Specifically, Meta knew the tax information it received was unlawfully obtained because Meta designed the code the information from tax filing websites to Meta and operated the Pixel in a manner that was concealed or withheld from Plaintiffs and Class members. *See* Compl., ¶¶ 62-70, 73-79, 235.[17]

Finally, Meta's argument that it only passively acquired sensitive personal information that plaintiffs voluntarily provided to a third party, *see* MTD at 23, conflicts with Plaintiffs' plausible allegations that Meta actively and knowingly stole Plaintiffs' property without consent. *See* Compl., ¶¶ 62-70, 73-79, 235. Plaintiffs do not merely allege a "misrepresentation or breach of contract made innocently or inadvertently . . . amount to theft." MTD at 23 (internal quotations omitted).[18]

---

[17] Plaintiffs recognize Judge Orrick's dismissal of the plaintiffs' larceny claims, with leave to amend, in *Meta Platforms* on the ground that the plaintiffs did not plausibly allege each element of their "theft by false pretenses" claim. *See* 9/7/23 Doe Order, at 22:3-14. But here Plaintiffs make a theft claim not only based on false pretenses but also on the simple "stealing or taking of property" Meta knew it was not entitled to. *See* Compl., ¶¶ 62-70, 73-79, 235. This type of theft claim, akin to picking someone's pockets, does not require specific misrepresentations made by Meta or reliance by Plaintiffs upon such misrepresentations. *See* Cal. Penal Code § 484(a).

[18] Meta's case citations are misplaced. In *Carreon v. Edwards*, the Court found the plaintiff had sufficiently alleged all elements of her § 496(c) claim and denied the defendants' motion to dismiss. *See id.*, 2022 WL 4664569, at *4-6 (E.D. Cal. Sept. 29, 2022). In *United States v. Flores*, 901 F. 3d 1150 (9th Cir. 2018), the Court noted that California's larceny statute "extends to those who aid in

---

1   *Scienter. See supra*, Section II.A.3 above.

2   **III.    CONCLUSION**

3     The Court should deny Meta's motion in its entirety. If the Court determines that the

4   pleadings are deficient in any respect, Plaintiffs request leave to amend to cure any such deficiencies.

5   *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (lower court erred by denying leave to

6   amend after dismissing amended complaint). If the Court dismisses any equitable claims based on

7   Meta's adequate remedy at law arguments, dismissal should be without prejudice to refiling a new,

8   parallel state court action alleging any equitable claims dismissed here. *See Guzman v. Polaris Indus.,*

9   *Inc.*, 49 F.4th 1308, 1314-15 (9th Cir. 2022) (if the adequate remedy doctrine applies, dismissal must

10  be "without prejudice to refiling the same claim in state court").

11  Dated:  September 12, 2023      **BURSOR & FISHER, P.A**.

12                By: ___*/s/ Joel D. Smith*___

13                   Joel D. Smith

14                Joel D. Smith (State Bar No. 244902)

15                Neal Deckant (State Bar No. 320783)
              1990 North California Blvd., Suite 940

16                Walnut Creek, CA 94596
              Telephone:  (925) 300-4455

17                Facsimile:  (925) 407-2700
              E-mail: jsmith@bursor.com

18                   ndeckant@bursor.com

19                **GEORGE FELDMAN MCDONALD, PLLC**
              Lori G. Feldman (*pro hac vice*)

20                102 Half Moon Bay Drive
              Croton-on-Hudson, NY 10520

21                Telephone: (917) 983-9321
              E-mail: lfeldman@4-justice.com

22                   eservice@4-justice.com

23

24                **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
              Rebecca A. Peterson (241858)

25                Kate M. Baxter-Kauf (pro hac vice)
              100 Washington Avenue South, Suite 2200

26                Minneapolis, MN 55401

27                Telephone: (612) 339-6900

28  the action" and that "stolen" includes "taking" *Id.* at 1161. This is what Plaintiffs allege Meta did
here when it acquired Plaintiffs' sensitive tax and financial information.

1

Facsimile: (612) 339-0981
rkshelquist@locklaw.com

2

E-mail: rapeterson@locklaw.com

3

kmbaxter-kauf@locklaw.com

4

**THE HODA LAW FIRM, PLLC**
Marshal J. Hoda, Esq. (pro hac vice)

5

12333 Sowden Road, Suite B

6

Houston, TX 77080
Telephone: (832) 848-0036

7

Email: marshal@thehodalawfirm.com

8

**FOSTER YARBOROUGH PLLC**
Patrick Yarborough, Esq. (pro hac vice)

9

917 Franklin Street, Suite 220

10

Houston, TX 77002
Telephone: (713) 331-5254

11

Email: patrick@fosteryarborough.com

12

**EMERSON FIRM, PLLC**
John G. Emerson (pro hac vice)

13

2500 Wilcrest, Suite 300

14

Houston, TX 77042
Telephone: (800) 551-8649

15

Email: jemerson@emersonfirm.com

16

*Attorneys for Plaintiffs and the Proposed Class*

17

18

19

20

21

22

23

24

25

26

27

28