GIBSON, DUNN & CRUTCHER LLP
LAUREN GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:    212.351.4000
Facsimile:    212.351.4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:    415.229.7311
Facsimile:    415.801.7389

ANDREW M. KASABIAN, SBN 313210
akasabian@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:    213.229.7311
Facsimile:    213.229.6311

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:    415.693.2000
Facsimile:    415.693.2222

*Attorneys for Defendant Meta Platforms, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE META PIXEL TAX FILING CASES | MASTER FILE NO. 3:22-cv-07557-SI |
| | **DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT** |
| This Document Relates To: | |
| Case No. 3:22-cv-07557-SI, All Actions | CLASS ACTION |
| | Date:  October 27, 2023 |
| | Time:  10:00 a.m. |
| | Judge:  Hon. Susan Illston |
| | Date Action Filed: December 1, 2022 |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

I.    The Out-Of-State Claims Are Barred By The Choice-Of-Law Provision In Meta's Terms .................................................................................................................. 1

II.    The Complaint Fails To State Any Plausible Claim For Relief. ................................. 2

    A.    Plaintiffs Fail To State A Claim For Criminal Manufacturing Of A Spying Device (Counts 9 And 8) .................................................................... 2

    B.    Plaintiffs Fail To State A Consumer Fraud Claim ......................................... 4

        1.    California Legal Remedies Act And California Unfair Competition Law (Counts 14 And 16) ............................................... 4

        2.    Illinois Consumer Fraud And Deceptive Business Practices Act (Count 10) ...................................................................................... 6

        3.    Illinois And New York Deceptive Trade Practices Acts (Counts 11 And 12) .................................................................................... 7

    C.    Plaintiffs Fail To State A Claim For Negligence (Count 13) ......................... 7

    D.    Plaintiffs Fail To State A Claim For Theft (Count 15) ................................... 9

    E.    Plaintiffs Fail To State A Wiretapping Claim ............................................... 9

        1.    The Federal Wiretap Act And The Missouri Wiretap Act (Counts 6 And 5) .................................................................................... 9

        2.    Section 631 Of The California Invasion Of Privacy Act (Count 1) .................................................................................................... 12

    F.    Plaintiffs Fail To State A Claim For Eavesdropping (Counts 2, 3, And 4) ................................................................................................................ 13

    G.    Plaintiffs Fail To State A Claim For Unjust Enrichment (Count 7) .............. 14

III.    At A Minimum, Claims Outside The Limitations Period Must Be Dismissed. ........ 15

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*In re Anthem, Inc. Data Breach Litig.*,
   2016 WL 3029783 (N.D. Cal. May 27, 2016) ............................................................. 5

*Brown v. Google LLC*,
   2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ............................................................ 4

*Brown v. Google LLC*,
   2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ............................................................. 4

*Calhoun v. Google LLC*,
   526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................................................................... 4

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..................................................................... 14

*De Bouse v. Bayer AG*,
   922 N.E.2d 309 (Ill. 2009) ........................................................................................ 6

*Doe v. Meta Platforms, Inc.*,
   2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ............................... 3, 4, 7, 8, 9, 11, 12, 13

*Ehret v. Uber Techs., Inc.*,
   68 F. Supp. 3d 1121 (N.D. Cal. 2014) ....................................................................... 6

*F.B.T. Prods., LLC v. Aftermath Records*,
   621 F.3d 958 (9th Cir. 2010) ................................................................................... 13

*In re Facebook Biometric Info. Privacy Litig.*,
   185 F. Supp. 3d 1155 (N.D. Cal. 2016) .................................................................... 2

*Gershzon v. Meta Platforms, Inc.*,
   2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ..................................................... 12, 13

*In re Google Assistant Priv. Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................ 11, 12

*In re Google, Inc. Privacy Policy Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ........................................................................ 5

*Hall v. Marriott Int'l, Inc.*,
   2020 WL 4727069 (S.D. Cal. Aug. 14, 2020) .......................................................... 15

*Katz-Lacabe v. Oracle Am., Inc.*,
   2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ........................................................... 10

*Kurowski v. Rush Sys. for Health*,
   2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) .............................................................. 6

iii

Gibson, Dunn & Crutcher LLP

*Lopez v. Apple, Inc.*,
    519 F. Supp. 3d 672 (N.D. Cal. 2021)....................................................................................... 11

*Luis v. Zang*,
    833 F.3d 619 (6th Cir. 2016) ..................................................................................................... 3

*Martin v. Sephora USA, Inc.*,
    2023 WL 2717636 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*,
    2023 WL 3061957 (E.D. Cal. Apr. 24, 2023)...................................................................... 12, 13

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022)........................................................................................ 8

*Modisette v. Apple Inc.*,
    30 Cal. App. 5th 136 (2018) ....................................................................................................... 8

*Moore v. Centrelake Med. Grp., Inc.*,
    83 Cal. App. 5th 515 (2022) ....................................................................................................... 9

*In re Nexus 6P Prods. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018)........................................................................................ 2

*Palomino v. Facebook, Inc.*,
    2017 WL 76901 (N.D. Cal. Jan. 9, 2017).................................................................................... 2

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
    51 F.4th 1125 (9th Cir. 2022) ................................................................................................... 10

*Revitch v. New Moosejaw, LLC*,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)............................................................................. 3

*Rosales v. City of Los Angeles*,
    82 Cal. App. 4th 419 (2000) ....................................................................................................... 8

*Schrenk v. Carvana, LLC*,
    2020 WL 4339969 (E.D. Cal. July 28, 2020) ........................................................................... 11

*Sharma v. Volkswagen AG*,
    524 F. Supp. 3d 891 (N.D. Cal. 2021)................................................................................. 14, 15

*Smith v. Facebook, Inc.*,
    745 F. App'x 8 (9th Cir. 2018) ............................................................................................ 3, 15

*Sussman v. Am. Broadcasting Cos.*,
    186 F.3d 1200 (9th Cir. 1999) ................................................................................................... 10

*Terraza v. Safeway, Inc.*,
    241 F. Supp. 3d 1057 (N.D. Cal. 2017)..................................................................................... 13

iv

*Tovar v. City of San Jose*,
   2021 WL 6126931 (N.D. Cal. Dec. 28, 2021) ........................................................................ 4

*United States v. Schweihs*,
   569 F.2d 965 (5th Cir. 1978) .................................................................................................. 3

*In re Vizio, Inc., Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................................. 5

*Williams v. Facebook, Inc.*,
   384 F. Supp. 3d 1043 (N.D. Cal. 2018) ................................................................................. 7

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (N.D. Cal. 2021) ................................................................................. 3

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ............................................................................................. 11

**STATUTES**

18 U.S.C. § 2511(2)(d) ........................................................................................................... 10

720 Ill. Comp. Stat. 5/14-2(a) ................................................................................................ 14

Cal. Penal Code § 484(a) ......................................................................................................... 9

Cal. Penal Code § 631(a) ....................................................................................................... 12

Mo. Ann. Stat. § 542.402.2(3) ............................................................................................... 10

Wash. Rev. Code § 9.73.030(1)(a) ........................................................................................ 14

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## INTRODUCTION

3   Plaintiffs' sprawling sixteen-count complaint is based on tax-service providers' alleged misuse

4   of Meta's Pixel, a data analytics tool "widely deployed across many industries." Compl. ¶ 49. Pixels

5   and similar tools are offered by numerous companies (not just Meta) to help countless publishers (not

6   just tax-service providers) optimize their websites. The technology is common, beneficial, and lawful.

7   Plaintiffs say that tax-service providers improperly used the Pixel to send unspecified *sensitive*

8   data, but their allegations clearly overreach in characterizing the tool as a criminal spying device. This

9   theory flies in the face of how the Pixel is actually used and ignores Ninth Circuit precedent approving

10   similar technology. And plaintiffs' reliance on Judge Orrick's motion-to-dismiss decision in a case

11   involving healthcare providers' use of the Pixel misses the mark, as he ultimately *dismissed* most of

12   the claims in that case, including many of the same claims plaintiffs assert here (negligence, larceny,

13   and consumer protection claims). The bases for those dismissals—failure to allege a duty of care,

14   reliance, or a money-or-property harm—apply with equal force to the claims in this case. Judge Orrick

15   did allow wiretapping and unjust enrichment claims to proceed in the healthcare case (and this Court

16   allowed a wiretapping claim to proceed in the DMV case), but even for those claims, plaintiffs *here*

17   fail to allege sufficient facts to survive dismissal.

18   Independently, plaintiffs face several obstacles that are unique to their allegations: for example,

19   they fail to allege any information Meta received *about them* that qualifies as "contents," and deploy

20   an impermissible shotgun-pleading strategy that fails to connect *factual allegations* to their claims.

21   As argued in Meta's motion and below, this Court should dismiss the complaint in full with

22   prejudice. At a minimum, this Court should substantially narrow the case by dismissing the same claims

23   Judge Orrick dismissed in the healthcare case.

24

## ARGUMENT

25   **I.      The Out-Of-State Claims Are Barred By The Choice-Of-Law Provision In Meta's Terms.**

26   When Meta users sign up for an account—as plaintiffs allege they did here, Compl. ¶¶ 5–12—

27   they "agree . . . that the laws of the State of California will govern these Terms and any claim, cause

28   of action, or dispute without regard to conflict of law provisions." Meta RJN Ex. 1 at 7. Given

California's "strong policy favoring enforcement of choice-of-law provisions," *Palomino v. Facebook, Inc.*, 2017 WL 76901, at *3 (N.D. Cal. Jan. 9, 2017) (quotation marks omitted), the non-California claims must be dismissed. Mot. 6–7.

Plaintiffs do not contest that Meta's choice-of-law provision is enforceable or that it would bar their claims brought under the laws of other states. They argue only that this argument is "premature" because "Meta submitted no evidence of what the Terms of Service said during the relevant period, or that Plaintiffs ever agreed to them." Opp. 3.[1] That is not a legitimate dispute. Plaintiffs do not address the cases Meta cited enforcing choice-of-law provisions on motions to dismiss—including cases enforcing Meta's choice-of-law provision and cases dismissing some of the exact same out-of-state claims plaintiffs assert here. Mot. 7. One of those cases expressly considered assent, noted "courts have often enforced" online terms, and found "no reason to depart from those cases." *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 934 (N.D. Cal. 2018).

In any event, if this Court finds factual development necessary to determine (1) whether historical versions of Meta's Terms of Service had a choice-of-law provision selecting California law (they did), or (2) whether plaintiffs (like all Facebook users) agreed to Meta's Terms, there is a solution: targeted discovery and, if necessary, a hearing. *See In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1164–67 (N.D. Cal. 2016) (after evidentiary hearing, finding that "plaintiffs assented to the user agreement when they signed up for Facebook" and "agreed to the current user agreement" through continued use).

## II.    The Complaint Fails To State Any Plausible Claim For Relief.

### A.    Plaintiffs Fail To State A Claim For Criminal Manufacturing Of A Spying Device (Counts 9 And 8)

Plaintiffs' claims for criminal manufacturing of a spying device under the federal Wiretap Act are frivolous: there is no private right of action, and the theory underlying this claim would render pixel technology *per se* unlawful. Mot. 13–15. There is no legal basis for that extreme result.

---

[1] Plaintiffs cite Judge Orrick's conclusion in the healthcare case that *extraterritoriality* arguments—*i.e.*, arguments that non-California plaintiffs could not bring claims *under California law*—was premature. Opp. 3. But Judge Orrick did not address a choice-of-law provision because the healthcare plaintiffs, unlike plaintiffs here, did not bring any claims under out-of-state laws.

Gibson, Dunn & Crutcher LLP

***No private right of action.*** "The three circuit courts that have considered the question" have squarely held that "there is no private right of action for the violation of § 2512(1) of the Wiretap Act." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1085 (N.D. Cal. 2021). Likewise, "CIPA § 637.2 does not provide [plaintiffs] with a private right of action to enforce CIPA § 635." *Id.*; *see* Mot. 14–15.

Plaintiffs argue that a Sixth Circuit case, *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016), "distinguished Meta's authorities" by allowing private lawsuits under § 2512(1) for possessing a spying device if a plaintiff *also* asserts a claim under § 2511 for intercepting communications. Opp. 12. But that ignores both the plain language of the statute and *Yoon*, which was decided after *Luis* and expressly rejected this reasoning. Mot. 14–15; *Yoon*, 549 F. Supp. 3d at 1085. Plaintiffs also ignore that *Luis* addresses only the federal Wiretap Act and does not concern CIPA at all.

***The Pixel is not inherently unlawful.*** Plaintiffs' claims also fail on the merits. Section 2512 of the Wiretap Act is "narrowly drawn" and bans only "a narrow category of devices" like "martini olive transmitters, spike mikes, and microphones disguised as wristwatches and fountain pens." *United States v. Schweihs*, 569 F.2d 965, 968 (5th Cir. 1978). There is no liability for "electronic equipment designed for regular use in varied nonsurreptitious activities, even though the equipment is capable of being used in a surreptitious manner." *Id.*; *see* Mot. 14.

Plaintiffs do not and cannot deny that the Pixel has countless legitimate uses as a standard internet tool, even if they allege tax-service providers used it improperly. In fact, they explicitly allege this: "[t]he Pixel is widely deployed across many industries." Compl. ¶ 49. Similarly, Judge Orrick acknowledged that even on healthcare sites, there is data "collected by the Pixel software that does not constitute sensitive, personal information." *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *8 (N.D. Cal. Sept. 7, 2023); *cf. Smith v. Facebook, Inc.*, 745 F. App'x 8, 8–9 (9th Cir. 2018) (dismissing claims regarding similar technology). On plaintiffs' theory, *any* use of *any* company's pixel technology would be unlawful. That is not the law; the only case plaintiffs cite in support of their novel and breathtakingly broad theory involved *different* technology and contained just a single sentence of analysis. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019).

***Scienter.*** Plaintiffs also have not alleged scienter for these claims, which would require well-pled allegations that Meta knew—counterfactually—that the Pixel was *primarily useful* for unlawful

3

Gibson, Dunn &
Crutcher LLP

wiretapping. Mot. 15. Plaintiffs make scienter arguments about Meta's alleged *interception* of sensitive data, Opp. 4–7, but do not address this different scienter requirement; this Court may dismiss on that ground alone. *See Tovar v. City of San Jose*, 2021 WL 6126931, at *2 (N.D. Cal. Dec. 28, 2021).

**B.      Plaintiffs Fail To State A Consumer Fraud Claim**

**1.      California Legal Remedies Act And California Unfair Competition Law (Counts 14 And 16)**

Plaintiffs' attempt to repackage their wiretapping and privacy-based allegations under consumer protection statutes fails for multiple reasons. Mot. 15–18. Judge Orrick dismissed the UCL and CLRA claims in the healthcare case, 2023 WL 5837443, at *15–17; this Court should do likewise.

***Harm (UCL/CLRA).*** The UCL and CLRA require plaintiffs to plead a loss of *money or property* (UCL) or a *tangible increased cost or burden* (CLRA). Mot. 16. Plaintiffs do not contend they paid any fees for Facebook's services, and courts routinely dismiss UCL and CLRA claims where, as here, the plaintiff has paid nothing to the defendant. *See id.* Plaintiffs respond that their claim is based on "a loss of value in personal information." Opp. 18. But that theory has been rejected numerous times as a basis for showing harm for UCL and CLRA claims, most recently by Judge Orrick in the healthcare case. *Doe*, 2023 WL 5837443, at *15 ("Courts in this district have dismissed cases where, like here, the injury is based on the loss of the inherent value of their personal data, as well as where it was undisputed that plaintiffs paid no money to the defendant." (quotation marks and citations omitted)). Judge Orrick distinguished the cases plaintiffs cite here, noting that unlike in those cases, the plaintiffs suing Meta did not allege that they wanted to sell their data. *Id.* at *17; *see also id.* at *16 (addressing *Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021), and *Brown v. Google LLC*, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021)).[2] The same is true here.

***Particularity and reliance (UCL/CLRA).*** Under Rule 9(b), plaintiffs must plead that they read and relied upon a specific misrepresentation. As Judge Orrick concluded in the healthcare case, the failure to do so requires dismissal. *Doe*, 2023 WL 5837443, at *17; *see also* Mot. 16.

Plaintiffs say their claim is based on *omissions*, which they argue "do[] not require the same

---

[2] Plaintiffs also cite *Brown v. Google LLC*, 2023 WL 5029899 (N.D. Cal. Aug. 7, 2023); that case is a later iteration of the same *Brown* case Judge Orrick addressed.

level of specificity as a misrepresentation claim." Opp. 19. But they acknowledge that omissions claims still require Rule 9(b)-compliant allegations that "the plaintiff *would have been aware of the information*" but for the omission. Opp. 19 (emphasis added); *see also In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *35 (N.D. Cal. May 27, 2016); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1229 (C.D. Cal. 2017). No allegations establish that here—plaintiffs do not allege they read any policy or statement by Meta that, but for Meta's omission, would have made them aware tax preparers were sending to Meta their sensitive financial data.

>    ***Adequate remedy at law (UCL/CLRA).*** Meta argued that plaintiffs have an adequate remedy at law because (1) they seek money damages for the same conduct and (2) they lack an ownership interest in Meta's allegedly improper profits. Mot. 17. On the first point, plaintiffs do not address Meta's authorities, instead citing cases where equitable and legal claims involved "significant *differences* in proof and certainty," Opp. 20 (quotation marks omitted) (emphasis added), without identifying such differences *here*. On the second point, plaintiffs refer back to their arguments about harm based on the loss of value in their personal data. Opp. 21 n.16. Even if that theory had merit (*but see supra* 4), it would not allege an ownership interest in *Meta's* allegedly improper profits. Mot. 17.

>    ***Consumers (CLRA).*** The CLRA claim fails because plaintiffs did not purchase or lease goods or services from Meta. Mot. 17 (citing cases). Plaintiffs cite *In re Google, Inc. Privacy Policy Litigation* for the proposition that they "need not allege a *direct* sale between [Meta] and themselves," 58 F. Supp. 3d 968, 982 (N.D. Cal. 2014) (emphasis added), but that case involved an *indirect* sale of Google's Android devices to the plaintiffs. *Id.* at 981–82. There was *no* sale of any Meta product or service here, either direct or indirect.

>    ***Unlawful and unfair (UCL).*** Both parties agree that plaintiffs' claim under the "unlawful" prong of the UCL turns on whether plaintiffs have plausibly alleged their other claims. Mot. 17; Opp. 21. For the "unfair" prong, in addition to failing to plausibly allege fraud under Rule 9(b), *see supra* 4–5, plaintiffs fail to allege facts to satisfy the UCL's "balancing" and "tethering" tests. Mot. 18. Plaintiffs assert that "[w]hether the challenged practices are actually unfair is a question to be resolved at a later stage in this litigation," Opp. 22 (quotation marks omitted), but they fail to adduce the *factual* allegations required to satisfy the balancing or tethering tests. Mot. 18.

*Extraterritoriality (UCL/CLRA).* Plaintiffs cite cases allowing out-of-state parties to bring UCL and CLRA claims based on "allegations that the misrepresentations were developed in California, contained on websites and an application that are maintained in California, and that the billing and payment of services went through servers located in California." *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014). But plaintiffs here make no such allegations; they claim only that Meta is headquartered in California and that it engaged in "a pattern or generalized course of conduct" there (Compl. ¶¶ 13, 253)—allegations that their own authorities recognized as inadequate. *Ehret*, 68 F. Supp. 3d at 1132 (collecting cases).

## 2. Illinois Consumer Fraud And Deceptive Business Practices Act (Count 10)

Plaintiffs' Illinois consumer fraud claim fails on multiple grounds: failure to adequately allege a specific statement with a material omission, deception or proximate cause, intent, and actual damages. Mot. 18–20. Plaintiffs barely defend this claim.

*Specific statement.* Meta argued that plaintiffs failed to identify a specific statement that was rendered misleading by an omission, as Illinois law requires. Mot. 18–19. Plaintiffs now point to an allegation that appears 100 paragraphs before their Illinois consumer fraud claim. *See* Opp. 22 (citing Compl. ¶ 69). But that reach simply creates another problem, because (as discussed next) plaintiffs never allege they actually saw the statements in the allegation they now cite.

*Actual deception and proximate cause.* Plaintiffs do not allege that they "actually saw and w[ere] deceived by the statements" cited at paragraph 69 of their complaint; this is fatal to their claim. *De Bouse v. Bayer AG*, 922 N.E.2d 309, 315 (Ill. 2009); Mot. 19. Plaintiffs argue this claim "does not require actual reliance," Opp. 22, but ignore *De Bouse*'s statement of law from Illinois's highest court.

*Intent.* Plaintiffs must allege not only that Meta actually deceived them, but that Meta *intended* to do so. Mot. 19. Plaintiffs simply cite to their argument that Meta intended to receive their sensitive information. Opp. 22. That argument fails on its own terms, *infra* 10–11, but even if it did not, alleging an intent *to receive sensitive financial information* is not the same as alleging an intent *to deceive*.

*Actual damages.* "There is no basis under Illinois law to suggest that [a plaintiff] is entitled to claim a 'privacy injury' under ICFA." *Kurowski v. Rush Sys. for Health*, 2023 WL 2349606, at *8 (N.D. Ill. Mar. 3, 2023) (dismissing claim based on healthcare providers' disclosure of patient data);

*see* Mot. 19–20. Plaintiffs ignore this case, and cite to their groundless argument under California law that "a diminution in value" of their personal data suffices. Opp. 22; *supra* 4. Plaintiffs' failure to address binding Illinois precedent is fatal to their claim.

### 3. Illinois And New York Deceptive Trade Practices Acts (Counts 11 And 12)

*Illinois claim.* Plaintiffs' claim under Illinois's Deceptive Trade Practices statute is based on the same facts as their Illinois consumer fraud claim, Opp. 22, and fails for the same reasons. *Supra* 6–7. This claim also fails because it is limited to injunctive relief and plaintiffs cannot make out the requirements for an injunction. Mot. 20–21. Plaintiffs barely try to show future harm; they simply assert that "harm will continue unless Meta is enjoined." Opp. 23 (quotation marks omitted). Plaintiffs fail to address the cases denying relief under this statute where the plaintiffs were on notice of an alleged deception. Mot. 20. And in response to Meta's argument that "it is unclear what else any injunction would order Meta . . . to do," Mot. 20, plaintiffs accuse Meta of "relying on factual assertions outside the pleadings" but still do not say what an injunction in this case would look like, Opp. 23.

*New York claim.* This claim fails for similar reasons. Mot. 21. The assertion that Meta engaged in deception, Opp. 23, fails for the reasons discussed above. *Supra* 6–7. The claim also fails for two other reasons. *First*, New York's law does not protect unquantifiable injuries to privacy interests. Mot. 21. Plaintiffs say "there is a split of authority" on the subject, Opp. 23, but the cases they cite are inapt and do not contradict the "recent case law" that "has gone a different direction and requires actual harm." *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018). The Court should follow this well-reasoned trend. *Second*, plaintiffs fail to allege any deception occurred in New York. Mot. 21. They point to "the pleadings pertaining to the New York Plaintiffs," Opp. 23; but they cite paragraphs 8 and 9 of their complaint, neither of which addresses where any deception occurred.

### C. Plaintiffs Fail To State A Claim For Negligence (Count 13)

*Duty.* Judge Orrick dismissed the negligence claim in the healthcare case for failure to allege a duty of care, *Doe*, 2023 WL 5837443, at *13–14, and the same result is warranted here. Plaintiffs offer two responses; both are meritless. *First*, they argue that their negligence per se claim "does not require Plaintiffs to prove duty." Opp. 14. That is simply wrong: a negligence per se claim borrows from other laws to establish "the *standard* of care," but a plaintiff still must separately establish a "*duty* of care."

*Rosales v. City of Los Angeles*, 82 Cal. App. 4th 419, 430 (2000); *see* Mot. 21 n.5 (citing cases); *Doe*, 2023 WL 5837443, at \*14 (rejecting "negligence per se claim based on a duty created by HIPAA").

*Second*, plaintiffs argue "Meta has a duty of care to prevent the foreseeable transmission of tax information to Meta." Opp. 14. But they identify no case recognizing a duty to avoid *receipt* of sensitive data; their authorities are far afield. *See* Opp. 15–16 (citing data-breach cases involving alleged violations of industry-standard security practices). And they ignore *Modisette*, where the California Supreme Court *refused* to impose a duty on phone manufacturers to prevent injury from misuse of their products *even if* the manufacturer "had available the technology" to prevent that misuse. 30 Cal. App. 5th 136, 151–52 (2018). Imposing a duty on Meta in this context would anomalously force *Meta* to become an expert in the rules and regulations applicable to innumerable industries instead of placing that onus on the parties who are actually in those industries. Mot. 21–22.

**Breach.** Nor, in light of the numerous steps Meta *already* takes to ensure third parties do not send sensitive data, can plaintiffs plausibly allege breach. Mot. 22. Plaintiffs assert this is a question of fact, Opp. 16, but they must plausibly allege what actions Meta took that breached a duty.

**Causation.** Plaintiffs point to Judge Orrick's causation analysis *at the preliminary-injunction stage*, but that opinion did not address a negligence claim. Opp. 17; *see In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 789 (N.D. Cal. 2022). Judge Orrick noted the plaintiffs' alleged harm was causally connected to Meta's conduct because Meta "is capable of turning the Pixel off for certain websites." *Id.* at 803. That is not the issue here; for a negligence claim, the question is whether *breach of a duty* caused harm, and even if plaintiffs could allege a duty to prevent receipt of sensitive information with 100% precision, they have not alleged any duty to *turn off the Pixel entirely*.

**Harm.** The economic loss rule bars recovery for losses based on the disclosure of personal data. Mot. 22 (citing cases). Plaintiffs say it is enough to plead a "loss of privacy of [their] protected financial information and the time and resources expended to investigate and respond to Meta's violations," Opp. 17, but the cases they cite are data-breach cases where individuals were forced to spend time mitigating damages from the breach. Plaintiffs make no such allegations here; they do not say what they mean by "time and resources expended to investigate and respond to Meta's violations," Compl. ¶ 213, but to the extent that simply means preparing to file this lawsuit, their theory would swallow the

1   economic loss rule whole. Additionally, even in the data-breach context, California courts have

2   expressly rejected plaintiffs' leading case because that case "neither articulated any reasoning for

3   concluding the plaintiff's lost-time damages were non-economic, nor cited any authority for this

4   conclusion." *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 537 (2022).

5   **D.   Plaintiffs Fail To State A Claim For Theft (Count 15)**

6       Judge Orrick dismissed the healthcare plaintiffs' theft claim. *Doe*, 2023 WL 5837443, at *15.

7   Plaintiffs offer no good reason for any different outcome here.

8       ***Theft.*** Plaintiffs do not dispute that they willingly provided their information to the tax websites.

9   Their theft claim is based on the theory that Meta induced them to do so by false pretenses—

10  specifically, by failing to inform them that the tax-service providers could install and customize the

11  Meta Pixel, and that, in doing so, such providers might send Meta some of their information in violation

12  of Meta's policies. A false pretenses claim requires the plaintiff to prove (1) reliance on (2) a

13  misrepresentation; that is why Judge Orrick dismissed this claim in the healthcare case. Plaintiffs

14  respond that their claim is also based on "the simple 'stealing or taking of property' Meta knew it was

15  not entitled to," "akin to picking someone's pockets." Opp. 24 n.17. This argument is frivolous; there

16  are no such allegations in the complaint. In any event, this claim also fails because the theft statute is

17  limited to "money, labor or real or personal property," Cal. Penal Code § 484(a), and plaintiffs'

18  personal information is none of those things. Mot. 23; *cf. Doe*, 2023 WL 5837443, at *16–17

19  ("diminished value of [plaintiffs'] data" is not a "money or property" harm under UCL).

20      ***Scienter.*** Plaintiffs simply cite to their argument that Meta intended to receive sensitive

21  financial information. Opp. 25. Even if this argument were valid (*but see infra* 10–11), it would not

22  establish that Meta knew it was receiving *stolen* information. *See* Mot. 23.

23  **E.   Plaintiffs Fail To State A Wiretapping Claim**

24      **1.   The Federal Wiretap Act And The Missouri Wiretap Act (Counts 6 And 5)**

25      On the merits, plaintiffs' wiretapping claims under federal and Missouri law fail for three

26  reasons: at least one party (the tax-service providers) consented; plaintiffs have not plausibly alleged

27  Meta intended to receive confidential tax information (in violation of its own policies); and plaintiffs

28  have not plausibly alleged Meta received the contents of any of *their* communications. Mot. 7–11.

*One-party consent.* The federal and Missouri wiretapping laws are one-party consent statutes. 18 U.S.C. § 2511(2)(d); Mo. Ann. Stat. § 542.402.2(3). Plaintiffs allege the tax-service providers "install[ed] [the Pixel] on their websites to measure certain actions taken by users on their own websites." Compl. ¶ 27. Because those websites "must have chosen to deploy [Meta's] tools on their websites, it necessarily follows that one of the parties to the communication—the websites themselves—gave prior consent to such interception," vitiating plaintiffs' claims. *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *10 (N.D. Cal. Apr. 6, 2023) (quotation marks omitted).

Plaintiffs say "Judge Orrick rejected [this] argument" and "Meta bears the burden of proving that the tax preparation websites were fully informed and consented." Opp. 9. But plaintiffs do not allege that the tax-service providers were unaware of the Pixel's operation when they installed it on their websites; to the contrary, plaintiffs' allegations show the opposite. *See* Compl. ¶¶ 26–32, 53–59.

*Second*, plaintiffs invoke the crime-tort exception, which suspends application of the one-party consent defense where a defendant intercepts data to facilitate some *other* crime, "such as blackmail." *Sussman v. Am. Broadcasting Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999); *see* Opp. 9–10. Plaintiffs allege Meta's receipt of their data "violat[es] laws prohibiting the unlawful review and use of tax and other confidential information." Compl. ¶ 77. But those supposed violations are not "*separate and independent* from the act of the recording"; they turn on "whether the interception itself violated [the] law." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (emphasis added). The Ninth Circuit has rejected that bootstrap approach. *See id.* Moreover, it is well established that the crime-tort exception does not apply where a defendant's purpose is simply to make money. *See* Mot. 8–9 (collecting cases).

*Scienter.* Plaintiffs cannot plausibly allege scienter for their wiretapping claims, because undisputed facts demonstrate Meta told developers *not* to send any sensitive information. Mot. 9–10.

Meta acknowledges that Judge Orrick held intent turned on "disputed questions of fact" in the healthcare case, and that this Court reached a similar conclusion under CIPA in the DMV case. *See* Opp. 4 (citing these cases). But plaintiffs' allegations about scienter *in this case* do not cross the plausibility threshold. Plaintiffs' theory rests on a basic logical error: they say "Meta's entire business model is based on surveillance," and ask the Court to infer that "Meta's collection of financial

information was intentional" because it is "consistent with its business model." Opp. 4–5. The premise that Meta is in the business of collecting *some* information does not plausibly suggest Meta intends to collect *sensitive and legally protected* information—just as it is implausible to infer that a locksmith's "business model" encompasses breaking into bank vaults. Plaintiffs must allege more to support their leap from a lawful business model to an intent to break the law.[3]

Plaintiffs' argument that Meta's policies against sending sensitive information are "a sham," Opp. 6, likewise misses the mark. It is not enough to assert facially legitimate policies are "a sham" designed to cover up a nefarious intent without alleging *facts* to support that intent. *Cf. Schrenk v. Carvana, LLC*, 2020 WL 4339969, at *4 (E.D. Cal. July 28, 2020) ("sham" allegations were "conclusory and insufficient to state a plausible claim"); *see* Mot. 9.[4]

**Contents.** To state a wiretapping claim, plaintiffs must allege Meta received the *contents* of *their* communications. This analysis turns not on how *sensitive* the information allegedly is, but rather on whether the information is "the intended message conveyed" by a particular communication, as opposed to information about its transmission (like a referrer header). *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Plaintiffs have alleged no facts to answer that context-dependent question: they do not allege *any* specific communications of their own that Meta received. Mot. 10–11.

Plaintiffs' counterarguments miss the point. Their reliance on the healthcare and DMV opinions is misplaced: In both of those cases, the complaints specifically alleged Meta received particular items of information about the plaintiffs that Judge Orrick and this Court deemed content. *See Doe*, 2023 WL

---

[3] Plaintiffs take issue with Meta's invocation of its filtration system, which aims to detect and filter out sensitive financial information. Opp. 5. The existence of the filter is properly subject to judicial notice and does not require any inferences in Meta's favor, and plaintiffs have not opposed Meta's judicial notice request. *See* Dkt. 107-1 (Meta RJN). In any event, this Court need not rely on the filter at all because plaintiffs' own allegations fail to plausibly show any intent to receive sensitive financial information. *See* Mot. 9.

[4] In response to the cases Meta cited showing that a failure to take enforcement action is not enough to show intent, *see* Mot. 9, plaintiffs accuse Meta of "misquot[ing]" the line "take enforcement action." Opp. 6. Not so—the quote is from plaintiffs' own allegations, cited immediately before. Mot. 9 (quoting Compl. ¶ 75). Plaintiffs also point to cases holding that a defendant's knowledge of a defect and failure to take remedial action may be enough at the pleading stage to show intent. Opp. 6–7 (citing *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672 (N.D. Cal. 2021), and *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020)). But those cases address situations where a defendant's *own actions* result in unlawful interceptions, not cases like this one involving legitimate services that *third parties* misuse.

Gibson, Dunn &
Crutcher LLP

5837443, at *4 (log-in buttons on patient portals); *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *13 (N.D. Cal. Aug. 22, 2023) (information that "shows that [the plaintiff] has a disability"). Plaintiffs make no similar allegations here; for each named plaintiff, they present only boilerplate, broad allegations that Meta received "tax return data" without providing the context of the relevant communication. Compl. ¶¶ 5–12. These allegations do not successfully plead that any of these transmissions conveyed the *intended message* of a communication. Plaintiffs' arguments about other types of data, like "information entered into website form fields," Opp. 10, are irrelevant without allegations tethered to the named plaintiffs.

Plaintiffs respond that "a plaintiff alleging privacy violations or wiretapping is not required to disclose in the pleadings the specific communications that were recorded or surveilled." Opp. 11. But in the healthcare case, Judge Orrick dismissed privacy claims because the plaintiffs failed to identify "what specific, personal or private information they conveyed to their healthcare providers that they reasonably believe Meta received," and required a "basic amendment (which can be general enough to protect plaintiffs' specific privacy interests)." *Doe*, 2023 WL 5837443, at *8. This Court should require the same for the wiretapping claims: plaintiffs need not "identify specific communications," *In re Google*, 457 F. Supp. 3d at 816, but they must allege what sort of information each plaintiff claims was sent *about them* and enough context to plausibly allege it qualifies as content under *In re Zynga*.

### 2. Section 631 Of The California Invasion Of Privacy Act (Count 1)

Plaintiffs now concede they are asserting claims only "under the second, third, and fourth prongs" of CIPA § 631, Opp. 7–8, which prohibit willfully obtaining or using the contents of a communication (or aiding others to do the same), Cal. Penal Code § 631(a). This pared-down claim fails. Mot. 11–12.

*Scienter and contents.* Plaintiffs fail to allege Meta "[w]illfully" obtained the "contents" of their communications. Mot. 11. These issues mirror the analyses above. *Supra* 10–12.

*Shotgun pleading.* Plaintiffs' shotgun-pleading approach simply parrots the statute without alleging facts for each part of their claim. Mot. 11. Plaintiffs confirm in their opposition that they have "fail[ed] to identify which specific facts are allocated to which claim," *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *5 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, 2023 WL

Gibson, Dunn &
Crutcher LLP

3061957 (E.D. Cal. Apr. 24, 2023), by citing a smattering of allegations scattered throughout the complaint. Opp. 8. Plaintiffs argue their "complaint should be read as a whole," *id.* (quoting *Terraza v. Safeway, Inc.*, 241 F. Supp. 3d 1057, 1081 (N.D. Cal. 2017)), but do not address the *Martin* court's dismissal of this exact claim for this exact problem. It is not Meta's (or this Court's) job to stitch together a plausible claim for relief.

**All-party consent.** Because the tax-service providers consented to sharing information with Meta by installing the Pixel, *see supra* 10, plaintiffs cannot state a claim if they also consented. By agreeing to Meta's policies when they signed up for a Facebook account, they did. Mot. 11–12. Plaintiffs argue Meta has not shown they assented to its policies or what prior versions of the policies said. Opp. 1–2; *see also Gershzon*, 2023 WL 5420234, at *9 n.3, 11. If those are the issues precluding dismissal, Meta submits that the Court should order targeted discovery before the parties and the Court expend substantial resources litigating a doomed claim. *See supra* 2.

Plaintiffs also say Meta's policies "never *specifically* indicated that Meta may acquire confidential tax information" and "instead said the opposite." Opp. 2 (emphasis added) (quotation marks omitted). But *specific* disclosures about every type of information Meta might receive are not required: Meta disclosed it could receive all sorts of information about activity on third-party websites, and a "contractual term is not ambiguous just because it is broad." *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 964 (9th Cir. 2010).

**Extraterritoriality.** The non-California plaintiffs cannot state a claim for interceptions that allegedly occurred outside California. Mot. 12. The three cases plaintiffs cite, *see* Opp. 3, all involved allegations that a CIPA violation took place in California. Here, plaintiffs do not allege the non-California plaintiffs' data was intercepted in California.[5]

**F.      Plaintiffs Fail To State A Claim For Eavesdropping (Counts 2, 3, And 4)**

**CIPA § 632.** The parties agree this claim rises or falls on the scienter, consent, and extraterritoriality arguments above. Mot. 12–13; *supra* 12–13; Opp. 8.

**Illinois Eavesdropping Statute.** This claim also fails based on scienter and consent. Mot. 13.

---

[5] Meta acknowledges Judge Orrick rejected an extraterritoriality argument in the healthcare case, *see Doe*, 2023 WL 5837443, at *6, but respectfully disagrees with that conclusion.

In addition, plaintiffs have not plausibly alleged Meta intended to intercept their information "in a surreptitious manner," because Meta discloses the Pixel in its policies and contractually requires websites to post prominent notice on every page the Pixel is used. 720 Ill. Comp. Stat. 5/14-2(a); Mot. 13. Plaintiffs repeat their assertion that "Meta's policies are a sham," Opp. 8, but that conclusory argument fails for the reasons above, *supra* 11. Plaintiffs also say tax websites may not have complied with Meta's requirement, Opp. 8, but that misses the point: whether or not third parties complied with Meta's notice requirement, the requirement itself shows *Meta* did not intend to act surreptitiously.

**Washington Privacy Act.** This claim fails for a host of reasons. Most plainly, the statute is limited to eavesdropping on private communications "between two or more individuals"—not communications between an individual and a *website*. Wash. Rev. Code § 9.73.030(1)(a); Mot. 13 (citing cases). Plaintiffs respond that the statute does not say "natural persons," and suggest that "communications between a person and a corporation (or its website)" should count. Opp. 8–9. But the statute does not use the terms "individual" and "corporation" interchangeably. *See* Wash. Rev. Code § 9.73.030(1)(a) (unlawful for "any *individual*, partnership, *corporation*, association, or the state of Washington . . . to intercept, or record" communications "between two or more *individuals*" (emphases added)). Plaintiffs' interpretation would render the statute's reference to corporations surplusage. And even assuming a corporation can be an "individual," a tax form on a corporation's *website* clearly is not. *See* Mot. 13 (citing *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1093 (N.D. Cal. 2015)).

### G. Plaintiffs Fail To State A Claim For Unjust Enrichment (Count 7)

Plaintiffs' unjust enrichment claim fails for several independent reasons. Mot. 23–24.

**Adequate remedy at law.** Plaintiffs' principal argument is that the Restatement relieves them of the requirement to demonstrate legal remedies are inadequate, Opp. 12, but they do not even try to distinguish *Sharma v. Volkswagen AG*, which rejected this argument under California law. 524 F. Supp. 3d 891, 907–09 (N.D. Cal. 2021); *see* Mot. 23 (citing *Sharma*). Plaintiffs next say they have no adequate legal remedy because they seek "non-restitutionary disgorgement of profits," Opp. 13, but that argument dead-ends because plaintiffs have no ownership interest in Meta's profits, *supra* 5; Mot. 17. Last, plaintiffs say the argument is "premature" given the lack of evidence at this stage, Opp. 13—but even at the motion to dismiss stage, a plaintiff must *plead facts* supporting the absence of an

1    adequate legal remedy. *See Sharma*, 524 F. Supp. 3d at 909.

2          ***Barred by contract.*** Unjust enrichment is barred by the existence of a contract covering the

3    subject matter. Mot. 24. To the extent there are factual disputes over whether Meta's terms apply (*see*

4    Opp. 13), those should be resolved through targeted discovery. *See supra* 2. Plaintiffs also say they can

5    proceed under a fraud theory notwithstanding the existence of a contract, but the case they rely on

6    involved allegations that "a contract was fraudulently induced." *Hall v. Marriott Int'l, Inc.*, 2020 WL

7    4727069, at *13 (S.D. Cal. Aug. 14, 2020). That is not the case here, and plaintiffs cannot simply slap

8    a "fraud" label on their claim to do an end-run around the contractual bar.

9          ***Actionable wrong.*** Plaintiffs' claim also fails because they have not alleged any actionable

10   misrepresentation or omission. Mot. 24; *see supra* 4–5. Plaintiffs respond that their claim "is primarily

11   based on Meta's wrongful acquisition and use of tax information, rather than a misrepresentation or

12   omission." Opp. 14. But that just kicks the can: Meta's alleged "acquisition and use of tax information"

13   is "wrongful" only if it was accomplished through "misrepresentation or omission." *Cf. Smith*, 745

14   F. App'x at 8 (approving similar "data tracking and collection practices" where they were disclosed).

**III.     At A Minimum, Claims Outside The Limitations Period Must Be Dismissed.**

16         Plaintiffs' own allegations demonstrate that many of their claims are time-barred. Mot. 24–25.

17   Plaintiffs therefore invoke tolling doctrines, but they fail to allege even basic facts to carry their burden.

18         Plaintiffs say they "allege tolling due to Meta's concealment of its activities and application of

19   the discovery rule due to the computer-science expertise required to uncover its misconduct." Opp. 7.

20   Plaintiffs have not alleged deception with the requisite specificity, *see* Mot. 25, but even putting that

21   issue aside, plaintiffs fail entirely to respond to Meta's arguments that they did not allege facts showing

22   their own diligence or their own time and manner of discovery, *id.*—two *other* requirements for tolling

23   that plaintiffs simply ignore. The caselaw is clear: plaintiffs cannot survive a motion to dismiss without

24   alleging these facts. *E.g.*, *Al-Ahmed v. Twitter*, 2023 WL 27356, at *8–9 (N.D. Cal. Jan. 3, 2023).

25   Plaintiffs cannot simply cry "fact-bound issues," Opp. 7, when they put forward no allegations to

26   support crucial elements for tolling.

**CONCLUSION**

28         The Court should dismiss the complaint with prejudice.

1     DATED: October 13, 2023            **GIBSON, DUNN & CRUTCHER LLP**

2

3                                  By: * /s/ Lauren R. Goldman*

                                     Lauren R. Goldman

4

5                               **COOLEY LLP**

6                                   By: * /s/ Michael G. Rhodes*

7                                      Michael G. Rhodes

8                               *Attorneys for Defendant Meta Platforms, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CIVIL L.R. 5-1(h)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I, Lauren R. Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

DATED: October 13, 2023

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
Lauren R. Goldman