UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

META PIXEL TAX FILING CASES

Case No. 22-cv-07557-PCP

**ORDER ON MOTION TO DISMISS**

Re: Dkt. No. 145

In this consolidated putative class action against Meta Platforms, Inc., plaintiffs assert several claims arising from Meta's alleged collection of their personal financial data through tracking tools installed on tax preparation websites including H&R Block, TaxAct, and TaxSlayer. After the Court allowed most of plaintiffs' claims to proceed but dismissed three of the state law claims with leave to amend, plaintiffs filed an amended complaint. Meta now moves to dismiss the three amended claims. The Court assumes familiarity with the previous order, Dkt. No. 141, 2024 WL 1251350, and applies the same standard in resolving Meta's motion to dismiss under Rule 12(b)(6). The claims at issue in this motion are for violations of the Washington Privacy Act, the New York Deceptive Practices Act, and the California Consumers Legal Remedies Act. For the reasons that follow, Meta's motion to dismiss these three claims is granted.

**1.    The Washington Privacy Act Claim Is Dismissed.**

The Washington Privacy Act provides that "it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions to intercept, or record any … [p]rivate communication transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state by any device electronic or otherwise designed to record and/or transmit said communication regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication." Wash. Rev. Code § 9.73.030(1) & (1)(a).

1 The Court previously concluded that because Section 9.73.030(1)(a) covers only communications "between two or more individuals," it does not apply to communications between an individual and a business entity's automated system. The previous complaint alleged that Meta intercepted communications between users (who are individuals) and the tax sites (who are not). The Court dismissed this claim with leave to amend and stated that plaintiffs could either "identify any individuals who received communications made through the automated systems at issue" or could reassert the claim with additional briefing on the proper construction of the statute.

Plaintiffs amended their complaint to identify the individuals *at Meta* who allegedly received the intercepted communications. This does not resolve the shortcoming in their claim, however, because the statute does not require that communications be intercepted *by* an individual, but rather that the communication be *between* two or more individuals. The amended complaint still fails to establish that the intercepted communications were made between two individuals rather than between individual users and the tax sites' automated systems. The Washington cases plaintiffs cite show that courts have taken a "broad" view of the kinds of electronic devices whose use to record communications can violate the statute. *See, e.g.*, *State v. Townsend*, 147 Wash. 2d 666, 675 (2002). But none of the cited authorities suggest that subsection (1)(a) applies to communications between an individual and an automated system. Accordingly, plaintiffs' claim that Meta's interception violated Section 9.73.030(1)(a) still fails.

In their opposition brief, plaintiffs argue that even if they cannot state a claim under subsection (1)(a), they can still pursue a claim under subsection (1)(b). This provision prohibits interception not of private communications but rather of a "[p]rivate conversation, by any device … without first obtaining the consent of all the persons engaged in the conversation." As an initial matter, the complaint as drafted invokes only subsection (1)(a), not (1)(b). Moreover, plaintiffs have not shown that subsection (1)(b) applies to data entered into an online form. The statute itself distinguishes in subsection (2) between the "wire communications" governed by subsection (1)(a) and "communications" governed by subsection (1)(b). And Washington courts have held that that "conversation" as used in this statute means oral communications between individuals: "In determining whether a communication between individuals constitutes a 'conversation' under the

United States District Court
Northern District of California

1 privacy act, courts use the ordinary meaning of the term: 'oral exchange, discourse, or
2 discussion.'" *See, e.g.*, *State v. Kamara*, 28 Wash. App. 2d 903, 910 (Wash. Ct. App. 2023).
3 Plaintiffs argue that the distinction between "communication" and "conversation" is immaterial
4 but cite no authority finding written electronic communications to be "conversations" within the
5 meaning of subsection (1)(b).

6 Accordingly, plaintiffs have not stated a claim under subsection (1)(a) and have failed to
7 demonstrate that further leave to amend this claim to invoke subsection (1)(b) would be warranted.
8 The Washington Privacy Act claim is therefore dismissed without further leave to amend.

**2.    The New York Deceptive Practices Act (Count X) Is Dismissed.**

To state a claim under the New York Deceptive Practices Act, plaintiffs must allege causation. As the Court previously explained, this statute "does not require actual reliance but does require causation." 2024 WL 1251350, at *16. Even for a claim based on an omission, the Court concluded that to establish causation, "plaintiffs must plausibly allege that they would have seen the disclosures they fault Meta for omitting." *Id.* In their initial complaint, plaintiffs did not allege that they ever read the various agreements where Meta made other relevant disclosures about its data practices. The Court explained that "plaintiffs must offer some other theory for how they would have seen Meta's disclosure if Meta had made one" in order to establish causation. Because the initial complaint did not establish that Meta's alleged omission caused plaintiffs to be deceived, the Court dismissed the claim with leave to amend.

The amended complaint does not resolve these shortcomings. Plaintiffs emphasize in their opposition brief that the claim is based on a theory of omission rather than misrepresentation. And plaintiffs are correct that under New York law they need not plead that a particular statement is misleading because it omits certain information. But plaintiffs must still allege causation. The amended complaint alleges that plaintiffs were injured by "paying for services from the tax filing websites … without knowing their information was being shared with Meta." But it still offers no theory for how plaintiffs would have seen Meta's disclosure if Meta had made one. And without an allegation that plaintiffs would have seen any disclosures they fault Meta for omitting, it is impossible to see how plaintiffs' alleged injuries could have been caused by Meta's omissions.

3

1    Because the amended complaint does not resolve the shortcomings previously identified, the New York Deceptive Practices Act claim is dismissed without further leave to amend.

### 3.     The California Consumers Legal Remedies Act (Count XII) Is Dismissed.

Plaintiffs' claim under the California Consumers Legal Remedies Act (CLRA) is based on the same alleged omissions by Meta. The Court previously dismissed this claim because plaintiffs had not identified any "any specific purchase or lease of goods or services by plaintiffs" that would give them standing to pursue a CLRA claim. Plaintiffs now assert that all but one of them purchased and paid for services from the tax filing websites. The parties dispute whether an allegation that plaintiffs purchased services from the tax sites enables them to bring a CLRA claim against Meta as opposed to the tax sites. But the Court need not resolve this question because the complaint also fails to plead causation as required to state a claim.

As the Ninth Circuit has explained in addressing a fraudulent omission claim under the CLRA:

> An essential element for a fraudulent omission claim is actual reliance. To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct. A plaintiff need not prove that the omission was the only cause or even the predominant cause, only that it was a substantial factor in his decision. A plaintiff may do so by simply proving "that, had the omitted information been disclosed, one would have been aware of it and behaved differently."

*Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (citations omitted) (quoting *Mirkin v. Wasserman*, 5 Cal.4th 1082 (1993)). The requirement that a plaintiff must prove that they would have been aware of information had it been disclosed parallels the New York causation requirement discussed above. Here, as with the New York claim, plaintiffs do not allege that they read any of the various agreements where Meta made other disclosures, so they must offer some other theory for how they would have seen any disclosures Meta could have made.

As plaintiffs note, some courts applying the CLRA's causation requirement have held that a plaintiff can show they would have been aware of omitted information if it had been disclosed by identifying a "public outcry" that occurred once the information became public. *See, e.g.*, *In re*

*Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1114 (N.D. Cal. 2015). While plaintiffs raise this theory of causation only in connection with their CLRA claim, there is no reason the same theory could not establish causation under the New York Deceptive Practices Act. The general theory is that even if a plaintiff cannot identify exactly where a disclosure that the plaintiff would have seen could have been made, a sufficient public reaction occurring after the allegedly concealed information becomes public can suggest that the news would have made its way to the plaintiff if a disclosure had been made earlier.

Even under a "public outcry" theory, however, plaintiffs' allegations fail to plead causation. Paragraph 94 of the complaint states that "[i]nformation about online tax filing services such as H&R Block transmitting tax filing information did not become publicly known until approximately November 22, 2022, when various news agencies began reporting on the subject" as a result of "research and data collected by The Markup [that] required the expert analysis of computer scientists to uncover." But these allegations are not sufficient to plausibly suggest that *plaintiffs* would have been aware of any disclosures Meta could have made because the complaint does not allege that any of the plaintiffs actually saw any of these news reports. To the contrary, it alleges that at least some of the plaintiffs continued using the tax sites at issue to file taxes in 2023 after the reporting became public—suggesting that they did not see the news coverage or that the reports had no impact on their decision to use the tax sites.

For the same reasons explained above with respect to the New York claim, plaintiffs fail to offer any other theory as to how they would have seen any disclosures Meta might have made. Without such allegations, plaintiffs cannot establish that they would have been *aware* of the omitted information if it had been disclosed. Accordingly, the complaint does not adequately plead causation or reliance and therefore fails to state a CLRA claim based on Meta's alleged omission.

The CLRA claim is therefore dismissed. And because plaintiffs have already been given one opportunity (in the context of the previously dismissed New York claim) to offer a theory for how they would have seen the disclosures they fault Meta for omitting, this dismissal is without further leave to amend.

\* \* \*

For the reasons set forth above, Meta's motion to dismiss is granted.

**IT IS SO ORDERED.**

Dated: August 6, 2024

_____
P. Casey Pitts
United States District Judge