**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:   (212) 351-4000
Facsimile:   (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:   (415) 393-8200
Facsimile:   (415) 393-8306

*Attorneys for Defendant Meta Platforms, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE META PIXEL TAX FILING CASES<br><br>This Document Relates To:<br><br>Case No. 5:22-cv-07557-PCP, All Actions | Case No. 5:22-cv-07557-PCP (VKD)<br><br>**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date: July 31, 2025<br>Time: 10:00 a.m.<br>Courtroom 8, 4th Floor<br><br>Date Action Filed: December 1, 2022<br>Honorable P. Casey Pitts |

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.    Plaintiffs Fail To State A "Pen Register" Claim Under Section 638.51 Of CIPA. ................................................................................................................. 2

        A.    Plaintiffs Fail To Allege That Meta "Installed" Or "Used" A Pen Register. ................................................................................................. 2

        B.    Meta's Pixel Is Not A "Pen Register" Because Plaintiffs Allege It Discloses The "Contents" Of Communications. ........................................ 5

    II.   Plaintiffs' Pen-Register Claim Should Be Dismissed With Prejudice. ......................... 8

CONCLUSION ........................................................................................................................... 9

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Application of U.S.*,
    416 F. Supp. 2d 13 (D.D.C. 2006) .................................................................................. 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................... 6

*Bailey v. United States*,
    516 U.S. 137 (1995) ......................................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................... 6

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011) ........................................................................................ 8

*Gonzales v. CarMax Auto Superstores, LLC*,
    840 F.3d 644 (9th Cir. 2016) ........................................................................................ 6

*Greenley v. Kochava, Inc.*,
    684 F. Supp. 3d 1024 (S.D. Cal. 2023) ................................................................. 5, 7, 8

*In re Innovatio IP Ventures, LLC Patent Litig.*,
    886 F. Supp. 2d 888 (N.D. Ill. 2012) ............................................................................ 6

*Minor v. FedEx Office & Print Servs., Inc.*,
    182 F. Supp. 3d 966 (N.D. Cal. 2016) ......................................................................... 8

*Mirmalek v. L.A. Times Commc'ns LLC*,
    2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ............................................................ 4

*Moody v. C2 Educ. Sys., Inc.*,
    742 F. Supp. 3d 1072 (C.D. Cal. 2024) ................................................................... 4, 7

*People v. Palacios*,
    101 Cal. App. 5th 942 (2024) ........................................................................................ 7

*Schneider v. Cal. Dep't of Corr.*,
    151 F.3d 1194 (9th Cir. 1998) .................................................................................. 6, 8

*Shah v. Fandom, Inc.*,
    754 F. Supp. 3d 924 (N.D. Cal. 2024) ......................................................................... 4

*Silva v. City of Los Gatos*,
    2023 WL 1989771 (9th Cir. Feb. 14, 2023) ................................................................ 9

*Smith v. Maryland*,
    442 U.S. 735 (1979) ......................................................................................................... 4

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*United States v. Forrester*,
   512 F.3d 500 (9th Cir. 2008) .................................................................................................. 4

*Zarif v. Hwareh.com, Inc.*,
   2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ............................................................................ 7

**Statutes**

18 U.S.C. § 2511(b) ........................................................................................................................ 3

18 U.S.C. § 2511(d) ........................................................................................................................ 4

18 U.S.C. § 2518 ............................................................................................................................. 4

18 U.S.C. § 3121(a) ........................................................................................................................ 4

18 U.S.C. § 3122 ............................................................................................................................. 4

Cal. Penal Code § 629.50 ............................................................................................................... 4

Cal. Penal Code § 631(a) ............................................................................................................... 3

Cal. Penal Code § 638.50(b) .............................................................................................. 1, 2, 3, 5

Cal. Penal Code § 638.51(a) ........................................................................................................... 2

Cal. Penal Code § 638.52 ............................................................................................................... 4

**Other Authorities**

*Act of Aug. 13, 2015, Hearing on A.B. 929 Before the Comm. on Pub. Safety*, 2015–16
   Regular Sess. (Cal. Assemb. 2015) ........................................................................................ 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs concede that they have built this case around the theory that the Meta Pixel collects and transmits to Meta the *contents* of their tax-related communications. But they still amended their complaint to assert that Meta's Pixel is an unauthorized "pen register"—a device that collects *only* record information and *not* the contents of communications—in violation of CIPA § 638.51. This Court should dismiss plaintiffs' pen-register CIPA claim for two independent reasons.

*First*, the statute prohibits only "install[ing] or us[ing] a pen register," and plaintiffs have not alleged that Meta did either of those things. To the contrary: Meta makes its Pixel available to website developers, and they, in turn, decide whether to install or use it. Plaintiffs do not dispute that Meta does not "install" the Pixel, and their allegations that Meta "use[s]" *data sent by third parties through* the Pixel has no bearing on whether Meta itself used *the Pixel*. Section 638.51 imposes liability only on a person who installs or uses a pen register itself, not data that is collected by it. That distinction is made clear by the text of § 638.51, which omits any reference to using data collected by a pen register—unlike CIPA's wiretapping provision, which explicitly forbids using information derived from a wiretap.

*Second*, plaintiffs concede that their theory of the case rests on the assumption that Meta's Pixel transmits the *contents* of communications, which takes the Pixel outside of § 638.50's definition of a "pen register." CIPA defines a pen register as a "device or process" that collects record information, "but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs nevertheless contend that the Pixel is "multifaceted" and, in addition to collecting the contents of communications, can implement a separate process allowing it to function as a pen register that collects only record information. But nowhere in their complaint do plaintiffs allege facts to support this new theory of the Pixel with distinct processes. Nor does § 638.50's text contemplate that sort of parsing of multifaceted technology—again unlike CIPA's other provisions, such as the wiretapping provision.

Lastly, this Court should reject plaintiffs' proposal to amend their complaint to include additional allegations and a new theory of the Pixel's functionality to save their § 638.51 claim. Those amendments would be futile, and this Court should dismiss the pen-register claim with prejudice.

# ARGUMENT

## I. Plaintiffs Fail To State A "Pen Register" Claim Under Section 638.51 Of CIPA.

California Penal Code § 638.51(a) prohibits "install[ing] or us[ing] a pen register . . . without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Despite plaintiffs' arguments to the contrary, they fail to state a pen-register claim under CIPA for two independent reasons. First, plaintiffs have not alleged, as the statute requires, facts showing that Meta installed or used the Pixel. Second, allegations that Meta's Pixel discloses the "contents" of plaintiffs' communications with tax websites foreclose any argument that the Pixel is a "pen register" under the statute. For either or both of those reasons, this Court should dismiss plaintiffs' § 638.51 claim with prejudice.

### A. Plaintiffs Fail To Allege That Meta "Installed" Or "Used" A Pen Register.

To violate § 638.51, a defendant must have "install[ed] or use[d]" a pen register. Even if the Pixel qualified as a pen register, the Court should *still* dismiss plaintiffs' claim because their complaint is devoid of any allegations that *Meta* installed or used the Pixel. In fact, plaintiffs do not dispute that Meta did not "install" the Pixel on third-party tax-preparation services' websites. And they acknowledge in their complaint that Meta makes its Pixel available to website developers, who, in turn, choose whether to install or use it. *See, e.g.*, Dkt. 180 ¶ 25 (alleging that Meta "*offers*" to third parties "a suite" of "Business Tools" including the Pixel) (emphasis added); *id.* ¶ 26 (alleging that "*website owners* can install" Meta's Pixel "on their websites to measure certain actions taken by users on their own websites") (emphasis added). The complaint uses the word "install" only three times, and it never suggests that Meta, as opposed to the tax-preparation service running the website, is able to and can choose to do the installing. *Id.* ¶¶ 26, 29, 67. The complaint, moreover, repeatedly states that the tax-preparation services configure the Pixel as they wish, choosing what information to send to Meta. The Pixel "can collect" various pieces of information, plaintiffs allege, but what specifically it collects depends on what "[d]evelopers and marketers . . . optionally choose," what they decided to "include," and what they have "chosen to measure on [their] website[s]." *Id.* ¶¶ 28, 32.

Plaintiffs' only contention is that they sufficiently pleaded that Meta "uses" the Pixel. *See* Opp. 2–4. But none of the scattershot paragraphs from their complaint that plaintiffs cite in their opposition, *see id.*, actually alleges that Meta "used" the Pixel itself. Instead, those portions of the complaint:

- explain Meta's alleged intent, plans, and ability, *see* Dkt. 180 ¶¶ 19, 24, 46, 82;
- discuss what the Pixel does, including allegedly sending various types of data to Meta, *see id.* ¶¶ 25–30, 32–35, 58, 62–65, 67;
- state in a conclusory fashion that Meta intercepted various types of data, *see id.* ¶¶ 36, 41, 45; or
- elaborate on ways Meta purportedly uses *the data sent through* the Pixel, *see id.* ¶¶ 19, 32, 45–48, 51, 67.

Section 638.51 imposes liability only on a person who installs or uses "a pen register or trap and trace device." In other words, the statute applies only to those who use or install the "device or process" itself. Cal. Penal Code § 638.50(b). It does not hold anyone liable for allegedly receiving or using *data sent through* that "device or process." For example, if a police officer believes a suspect is conspiring to commit a crime with others, he may, subject to § 638.51's court-authorization requirement, "install" a pen register and "use" it to find out which phone numbers the suspect is calling. But a prosecutor, who neither "installs" nor "uses" a pen register but does rely on *the data sent through* the pen register to later prosecute the suspect, would not fall within § 638.51's ambit. *Cf. Bailey v. United States*, 516 U.S. 137, 144 (1995) (statute criminalizing "use" of a firearm required showing "active employment of the firearm").

That omission is legally significant in light of CIPA's other provisions, which forbid not just using a prohibited device but also the information it collects. For example, CIPA's wiretapping provision expressly imposes liability not only on anyone who perpetrates an illegal wiretap himself, but also on anyone who unlawfully "uses, or attempts to use . . . or to communicate in any way, any information so obtained." Cal. Penal Code § 631(a). And this same distinction appears in the corresponding federal laws too. The federal Wiretap Act expressly imposes liability not only on a person who "uses" an "electronic, mechanical, or other device to intercept [an] oral communication," 18 U.S.C. § 2511(b), but also on a person who "uses . . . the contents" of an illegally intercepted

Gibson, Dunn & Crutcher LLP

3

communication, § 2511(d). By contrast, neither CIPA's pen-register provision, nor the federal Pen Registers Act, 18 U.S.C. § 3121(a), includes any similar prohibition on using *information* collected by an unauthorized pen register.

This textual distinction—that a party may be liable for using information derived from an unauthorized wiretap but not information collected by an unauthorized pen register—makes sense in light of the nature of these technologies and the distinct statutory schemes governing them. Wiretaps, which reveal the contents of communications, are potentially more invasive than pen registers, which do not. *See United States v. Forrester*, 512 F.3d 500, 509–10 (9th Cir. 2008). That is why the Supreme Court has held that pen registers do not invade a person's reasonable expectation of privacy. *See Smith v. Maryland*, 442 U.S. 735 (1979). And that is also why the statutory process for obtaining a court order authorizing a wiretap is more onerous than that for obtaining an order authorizing a pen register. *Compare* Cal. Penal Code § 629.50 (requiring an application for a wiretapping order to include, among other things, a sworn statement "that conventional investigative techniques had been tried and were unsuccessful, or why they reasonably appear to be unlikely to succeed or too dangerous"), *and* 18 U.S.C. § 2518 (similar), *with* Cal. Penal Code § 638.52 (containing no such requirement to obtain a pen-register order), *and* 18 U.S.C. § 3122 (similar).

Plaintiffs have not articulated a clear theory about how *Meta*, as opposed to the tax-preparation services, has "used" the *Pixel*—as opposed to *data sent through* it. They thus fail to state a claim under § 638.51.

That gap in plaintiffs' second amended complaint makes this case very different from the handful of recent cases in which courts have permitted pen-register claims to move forward. Those cases involved website developers that *hosted* tracking software, not entities like Meta that *created* the software in the first place. *See, e.g.*, *Moody v. C2 Educ. Sys., Inc.*, 742 F. Supp. 3d 1072, 1074 (C.D. Cal. 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024); *Mirmalek v. L.A. Times Commc'ns LLC*, 2024 WL 5102709, at *1 (N.D. Cal. Dec. 12, 2024). The defendants in those cases were in much the same position as the tax-preparation services here; they installed and used the device that was supposedly a pen register. Meta, by contrast, created the initial Pixel code, which the tax websites then incorporated and configured into their own code, and which plaintiff now claims is a pen

register—but Meta neither installs it nor uses it. Nor does plaintiffs' reliance on *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023)—the *only* § 638.51 case that has involved a defendant that, like Meta, *created* and allegedly used *data* sent through tracking software installed and used by website operators—save them. As Meta explained in its motion, *see* Mot. 5, the defendant there did not raise the argument, as Meta does here, that plaintiffs failed to satisfy § 638.51's "install or use" element, so the court there did not have occasion to address that question, *see Greenley*, 684 F. Supp. 3d at 1050. Not a single case supports the theory that *creating* and *using data sent through* a device is the same as *installing* or *using* the device itself.

### B. Meta's Pixel Is Not A "Pen Register" Because Plaintiffs Allege It Discloses The "Contents" Of Communications.

Both federal law and California law separately address unauthorized wiretaps and unauthorized pen registers. Mot. 5. To ensure that the offenses prohibited by these statutory schemes remain distinct, the California Legislature made clear in § 638.50 that a device can qualify as a pen register if its function is limited to the capture of record information (*e.g.*, a phone number) and *not* the substance of communications (*e.g.*, what the parties said on the phone). The legislative history confirms that understanding. *See Act of Aug. 13, 2015, Hearing on A.B. 929 Before the Comm. on Pub. Safety*, 2015–16 Regular Sess. at 10 (Cal. Assemb. 2015) (Pen registers "do not record audio or text messages and cannot be used to obtain real-time location data on a cellular telephone."); *see also id.* at 10–11 ("Unlike a wiretap authorization, pen registers . . . do not provide law enforcement with the content of messages which are transmitted.").

In their opposition, plaintiffs concede that their theory of the case rests on the assumption that Meta's Pixel transmits the *contents* of communications. *See* Opp. 6. That concession bars them from asserting that the Pixel meets CIPA's definition of a "pen register." *See* Cal. Penal Code § 638.50(b); *see also* Mot. 5–8. Plaintiffs nevertheless argue that they can still bring a § 638.51 claim—despite the statute's definition of a pen register and corresponding legislative history—based on the "Pixel's processes that function as a pen register." Opp. 6. That's wrong for two reasons.

*First*, nowhere in plaintiffs' complaint do they allege that Meta's Pixel consists of distinct processes, one transmitting *only* record information, "but not the contents of a communication," as

5

§ 638.50(b) requires, and another transmitting all types of information, including record information *and* the contents of a communication. They cannot now rely on some novel, unpleaded theory of Pixel functionality to save their claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

*Second*, it would make no difference even if plaintiffs had pleaded this new theory of distinct processes. Section 638.51 does not contemplate "multifaceted" technology that can serve as a wiretap in one instance and then a pen register in another, depending on the data it collects at any given moment. *See* Opp. 6. To accept plaintiffs' view would render § 638.50(b)'s clause qualifying that a pen register does "not [record or decode] the contents of communications," meaningless. The appropriate reading of that clause, then, is that if a device or process is even *capable* of capturing content, it falls outside of § 638.50's definition of a pen register. *See Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 650 (9th Cir. 2016) (Courts must "first look[] to the language of the statute, giving effect to the words' plain meaning; if the language is unambiguous, the plain meaning controls." (internal quotation marks removed)). The "but not" language indicates that the statute is exclusive, which the legislative history confirms. *See supra* 5. Indeed, when interpreting CIPA's federal analogs, the Wiretap Act and Pen Registers Act, courts have recognized that the Pen Registers Act appears to exclude any device that collects "contents." In *In re Innovatio IP Ventures, LLC Patent Litigation*, 886 F. Supp. 2d 888 (N.D. Ill. 2012), for example, after addressing whether Wi-Fi analyzers functioned as an illegal wiretap, the court addressed whether they might also be illegal pen registers. *See id.* at 891–95. Expressing "some doubt that the Pen Registers and Tap and Trace Devices Act applies to any device that is also capable of collecting the contents of a communication," the court declined to hold that the challenged data-collection activity violated that Act's pen-register provisions. *Id.* at 895; *see also In re Application of U.S.*, 416 F. Supp. 2d 13, 18 (D.D.C. 2006) (explaining that "'pen registers' . . . are statutorily defined as processes or devices that are prohibited from collecting 'the contents of any

6

Gibson, Dunn & Crutcher LLP

communication'" and that, "[c]onsequently, the argument could be made that any process or device that collects the *content* of an electronic communication is not, in fact, a pen register" but instead an "intercepting device," *i.e.*, a wiretap).

Plaintiffs never address the language defining a pen register as collecting certain information, "but not the contents," at all. *See* Opp. 6–7. That omission is unsurprising, because plaintiffs' claim relies on reading that language out of the statute entirely, and interpreting Section 638.50 to define a "pen register" as a device or process that captures both record information *and* contents. That is not an effort to read CIPA "broadly," as plaintiffs suggest—it is instead an effort to excise the words "but not" from the statute altogether, an impermissible result. *See, e.g.*, *People v. Palacios*, 101 Cal. App. 5th 942, 951 (2024) (courts "presume the Legislature intended the entire statute to have effect, and we aim to avoid interpretations that render any part meaningless").

The cases that plaintiffs cite to support their novel theory of a "multifaceted" Pixel don't shore up the theory that a device can violate the pen-register statute even though it *does* collect contents. None of the defendants in those cases raised Meta's plain-language statutory argument, so those courts did not have occasion to address it. For example, plaintiffs rely on both *Greenley* and *Zarif* to argue that courts have allowed both substantive wiretapping and pen-register claims to proceed simultaneously. *See* Opp. 7 (citing *Greenley*, 684 F. Supp. 3d 1024, and *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025)). But neither of the defendants in those cases raised, nor did those courts consider, the argument that the claims were mutually exclusive, or that a device that collects the "contents" of communications cannot also be a pen register. That was also the case in *Moody*, where the court considered a challenge to software that, as alleged, collected both "browser and device data sent automatically upon visiting" a website and "form data entered by the visitor." 742 F. Supp. 3d at 1077. The court there rejected the defendant's argument that the plaintiff's allegations about the "browser and device data" were "vague and conclusory," holding that the alleged data "fall within the scope of §§ 638.50 and 638.51." *Id.* And, as a result, the court did not consider whether "form data also fall[] within the scope of the statute," cursorily explaining that, even if they did, "a defendant may not dismiss only a portion of a claim under Rule 12(b)(6)." *Id.* As in *Greenley* and *Zarif*, the defendant in *Moody* did not argue, and the court did not consider the argument, that a device

that allegedly captures both contents and record data does not qualify as a pen register under § 638.50.

The law on what qualifies as a pen register in the internet age remains underdeveloped. Courts have only recently begun considering § 638.51 claims. *See, e.g.*, *Greenley*, 684 F. Supp. 3d at 1050 (recognizing not even two years ago that "it seems no court has interpreted this provision of CIPA"). Only a few courts have had an opportunity to address these claims—and no court has addressed the arguments Meta now raises. Plaintiffs' repeated assertions that "Meta offers no authority for its reading of Section 638.51," Opp. 7; *see also* Opp. 1, 6, are thus not only incorrect in the face of the clear statutory text at issue here, *see supra* 6–7, but also gloss over the very limited extent to which other courts have confronted these issues. The paucity of relevant decisions should not dissuade this Court from straightforwardly construing the statutory provisions in light of their text and context and rejecting plaintiffs' untenable interpretation.

## II.   Plaintiffs' Pen-Register Claim Should Be Dismissed With Prejudice.

This Court should dismiss plaintiffs' pen-register claim with prejudice because further "amendment would be futile." *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). The two core problems with plaintiffs' claim are unfixable.

First, plaintiffs cannot plead that Meta *installed* or *used* a pen register, and plaintiffs' allegations that Meta purportedly uses *the data sent through* the Pixel have no bearing on this element. *See supra* 2–5. Plaintiffs appear to advance new allegations in their opposition, *see* Opp. 9–10, Ex. A, claiming that Meta "use[s]" the Pixel based on "responses" from "meta.ai," but those new allegations do nothing to change this result. The question here is what the *statute* means, not what Meta's AI generates in response to a generic and colloquial question. Regardless, plaintiffs cannot raise in their opposition new allegations, and this Court cannot consider those allegations in assessing the futility of their claims. *See Schneider*, 151 F.3d at 1197 n.1 (9th Cir. 1998); *Minor v. FedEx Office & Print Servs., Inc.*, 182 F. Supp. 3d 966, 977 (N.D. Cal. 2016) ("Plaintiff may not use his opposition to raise and argue new allegations or claims not in the complaint" and "the Court may not consider [the] newly raised . . . claim or related allegations.").

Second, as plaintiffs concede, the entire theory of their case against Meta rests on the assumption that the Pixel collects the *contents* of their communications, which § 638.50—and the

federal law on which it was modeled—explicitly recognizes a pen register cannot do. Plaintiffs' new theory that the Pixel has multiple functions—serving as an alleged pen register in some instances and a wiretap in others—is thus irrelevant under the text of the statute, and no additional allegations would change the plain meaning of the statutory text. *See supra* 5–8; *see also* Mot. 5–8.

Lastly, after litigating this case now for more than two years, plaintiffs should not have the opportunity to amend their complaint for a *third time*. In their last motion for leave to amend, they argued that adding a § 638.51 claim would not require them to change the core of their underlying allegations, *see* Dkt. 164 at 5; *see also id.* at 1, and that Meta would not be prejudiced by adding the claim, *see id.* at 5. To amend the complaint now to include the list of allegations plaintiffs preview in their opposition brief and exhibit, *see* Opp. 9–10, Ex. A, and assert the new theory that Meta's Pixel has multiple functionalities, *see* Opp. 6, would contradict the very reasons plaintiffs asserted to support amendment in the first place.

In any event, because no amendment to the complaint could save plaintiffs' claim, the Court should dismiss it without leave to amend. *See Silva v. City of Los Gatos*, 2023 WL 1989771, at *2 (9th Cir. Feb. 14, 2023) (dismissing claim with prejudice where plaintiffs' allegations negated element of the claim).

## CONCLUSION

The Court should dismiss count III of the second amended consolidated class action complaint with prejudice.

| | | |
|---|---|---|
| 1 | DATED: June 9, 2025 | **GIBSON, DUNN & CRUTCHER LLP** |
| 2 | | |
| 3 | | By: */s/ Lauren R. Goldman* <br> Lauren R. Goldman |