# Proposed Redacted Version of the Motion to Certify a Class (Dkt. No. 218)

**BURSOR & FISHER, P.A.**
Neal Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman (*pro hac vice*)
Michael Liskow (State Bar No. 243899)
200 Park Avenue, Suite 1700
New York, New York 10166
Telephone: (646) 354-6534
E-mail: lfeldman@4-justice.com
       mliskow@4-justice.com
       e-service@4-justice.com

*Attorneys for Plaintiffs*

*Additional Attorneys on Signature Page*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE META PIXEL TAX FILING CASES | Master File No. 5:22-cv-07557-PCP |
| This document relates to: | **NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION** |
| All actions | **SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| | Date: January 15, 2026 |
| | Time: 10:00 a.m. |
| | Judge: Hon. P. Casey Pitts |
| | Date Action Filed: Dec. 1, 2022 |

**FILED UNDER SEAL**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 15, 2026 at 10:00 a.m., or as soon thereafter as counsel may be heard by the above-captioned Court, located at 280 South First Street, San Jose, CA, 95113, Courtroom 8, 4th Floor in the Courtroom of Judge P. Casey Pitts, Plaintiffs will and hereby do move the Court for an order granting their motion to certify the proposed classes below, appoint Plaintiffs Kayla Housman, Tiffany Bryant, Katrina Calderon, and Jane Doe ("Plaintiffs") as class representatives, and appoint Lori G. Feldman of George Feldman McDonald, PLLC and Neal Deckant of Bursor & Fisher, P.A. as class counsel.

Plaintiffs seek certification of claims for damages under Rule 23(b)(3) and injunctive relief under Rule 23(b)(2).

This motion is made on the grounds that Plaintiffs have met each requirement of Rules 23(a), 23(b)(2), and 23(b)(3). This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, all supporting declarations, exhibits and expert reports, the documents on file, and upon such matters as may be presented to the Court at the time of the hearing.

Plaintiffs seek certification of the following classes and causes of action:

**The Nationwide Pen Register Classes (Cal. Penal Code § 638.51):**

H&R Block.com: All individuals in the United States who visited the website H&R Block.com from January 15, 2019 to June 30, 2023. This class seeks certification of claims under California Penal Code § 638.51. All Plaintiffs seek to be the class representatives for this class.

TaxAct.com: All individuals in the United States who visited the website TaxAct.com from August 25, 2015 to June 30, 2023. This class seeks certification of claims under California Penal Code §§ 638.51. Plaintiff Katrina Calderon seeks to be the class representative for this class.

**The Nationwide Eavesdropping Classes (Cal. Penal Code §§ 632 and 635):**

H&R Block.com: All individuals in the United States who visited the website H&R Block.com from January 15, 2019 to June 30, 2023. This class seeks certification of claims under California Penal Code §§ 632 and 635. All Plaintiffs seek to be the class representatives for this class.

TaxAct.com: All individuals in the United States who visited the website TaxAct.com from August 25, 2015 to June 30, 2023. This class seeks certification

of claims under California Penal Code §§ 632 and 635. Plaintiff Katrina Calderon seeks to be the class representative for this class.

**The California Wiretapping Classes (Cal. Penal Code § 631(a) and 635):**

<u>H&R Block.com</u>: All individuals in California who visited the website H&R Block.com from January 15, 2019 to June 30, 2023. This class seeks certification of claims under California Penal Code §§ 631(a) and 635. Plaintiffs Jane Doe and Katrina Calderon seek to be the class representative for this class.

<u>TaxAct.com</u>: All individuals in California who visited the website TaxAct.com from August 25, 2015 to June 30, 2023. This class seeks certification of claims under California Penal Code §§ 631(a) and 635. Plaintiff Katrina Calderon seeks to be the class representative for this class.

**The Nationwide UCL Public Injunctive Relief Classes (Cal. Bus. & Prof. Code § 17200 *et seq.*):**

<u>H&R Block.com</u>: All individuals in the United States who visited the website H&R Block.com from January 15, 2019 to June 30, 2023. This class seeks certification of claims under Cal. Bus. & Prof. Code § 17200. All Plaintiffs seek to be the class representatives for this class.

<u>TaxAct.com</u>: All individuals in the United States who visited the website TaxAct.com from August 25, 2015 to June 30, 2023. This class seeks certification of claims under Cal. Bus. & Prof. Code § 17200. Plaintiff Katrina Calderon seeks to be the class representative for this class.

\*    \*    \*

Plaintiffs reserve their right to modify the proposed class definitions as may be warranted to account for any arguments or evidence Meta Platforms, Inc. ("Meta") submits in opposition to class certification. *See* Fed. R. Civ. P. 23(c)(1)(C) (a class definition may be altered any time "before final judgment").

Dated:  August 18, 2025

**BURSOR & FISHER, P.A.**

By: ___*/s/ Neal Deckant*____
            Neal Deckant

Neal Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700

*Counsel for Plaintiffs*

# **TABLE OF CONTENTS**

**PAGE(S)**

I.      INTRODUCTION .................................................................................................1

II.     SUMMARY OF FACTS COMMON TO ALL CLASS MEMBERS ...................1

III.    ARGUMENT ......................................................................................................5

      A.      Each Of Rule 23(a)'s Requirements Are Satisfied ..................................6

              1.      Numerosity ...................................................................................7

              2.      Commonality .................................................................................7

              3.      Typicality ......................................................................................8

              4.      Adequacy ......................................................................................8

      B.      The Proposed Damages Classes Satisfy Rule 23(b)(3) ...........................9

              1.      Common Questions Of Law Or Fact Predominate ........................9

                     a.      CIPA § 638.51 ..................................................................10

                     a.      CIPA § 632 .......................................................................11

                     b.      CIPA § 635 .......................................................................12

                     c.      CIPA § 631(a) ...................................................................12

                     d.      Statutory Damages Provide A Straightforward Method For Calculating Classwide Damages ..................................14

              2.      Class Litigation Is Superior To Other Methods Of Adjudication ..................................................................................15

      C.      The Proposed Nationwide UCL Public Injunctive Relief Classes Satisfy Rule 23(b)(2) ...........................................................................16

IV.     CONCLUSION ................................................................................................18

1
2

# **TABLE OF AUTHORITIES**

**PAGE(S)**

3

**CASES**

4

*Ades v. Omni Hotels Mgmt. Corp.*,
   2014 WL 4627271 (C.D. Cal. Sept. 8, 2014) .......................................................................... 8, 16

5
6

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................................ 8

7
8

*Amgen Inc. v. Conn. Ret. Plans. & Tr. Funds*,
   568 U.S. 455 (2013) ......................................................................................................... 5, 10

9

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
   2016 WL 3543699 (S.D. Cal. June 29, 2016) ......................................................................... 11

10
11

*Bowen v. Paxton Media Grp., LLC*,
   2024 WL 1446468 (W.D. Ky. Apr. 3, 2024) ........................................................................... 9

12
13

*Brown v. Google, LLC*,
   2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ................................................................. 16, 17

14

*Carrese v. Yes Online Inc.*,
   2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) ......................................................................... 11

15
16

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ................................................................................................. 17

17
18

*Dukes v. Wal–Mart Stores, Inc.*,
   603 F.3d 571 (9th Cir. 2010) ................................................................................................. 16

19

*DZ Reserve v. Meta Platforms, Inc.*,
   96 F.4th 1223 (9th Cir. 2024) .............................................................................................. 5, 8

20
21

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ................................................................................................. 16

22
23

*Famular v. Whirlpool Corp.*,
   2019 WL 1254882 (S.D.N.Y. Mar. 19, 2019) ......................................................................... 9

24

*Frasco v. Flo Health, Inc.*,
   2025 WL 1433825 (N.D. Cal. May 19, 2025) ................................................................. passim

25
26

*Garner v. Amazon.com, Inc.*,
   2025 WL 1911088 (W.D. Wash. July 7, 2025) ....................................................................... 11

27

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................................................. 8

28

*Hawkins v. S2Verify*,
  2016 WL 3999458 (N.D. Cal. July 26, 2016) ........................................................... 14

*In re ConAgra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) .............................................................................. 16

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ...................................................................................... 3

*In re Toys R Us-Delaware, Inc.*,
  300 F.R.D. 347 (C.D. Cal. 2013) .............................................................................. 15

*In re Yahoo Mail Litig.*,
  308 F.R.D. 577 (N.D. Cal. 2015) .................................................................... 7, 10, 12

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) .............................................................................. 8, 14

*Lytle v. Nutramax Labs, Inc.*,
  114 F.4th 1011 (9th Cir. 2024) ................................................................................. 14

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ................................................................................. 7, 8

*McMillion v. Rash Curtis & Assocs.*,
  2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) ........................................................ 7, 13

*Miller v. Peter Thomas Roth, LLC*,
  2020 WL 363043 (N.D. Cal. Jan. 22, 2020) ............................................................ 17

*Mobile Emergency Housing Corp. v. HP, Inc.*,
  2023 WL 9550942 (N.D. Cal. Dec. 8, 2023) ........................................................... 17

*Mueller v. Puritan's Pride, Inc.*,
  2021 WL 5494254 (N.D. Cal. Nov. 23, 2021) ......................................................... 17

*O'Shea v. Am. Solar Solutions, Inc.*,
  318 F.R.D. 633 (S.D. Cal. 2017) ......................................................................... 7, 10

*Palacios v. Penny Newman Grain, Inc.*,
  2015 WL 4078135 (E.D. Cal. July 6, 2015) .............................................................. 7

*Perez v. Rash Curtis & Assoc.*,
  2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) ............................................................ 9

*Rabin v. Google LLC*,
  2025 WL 1720532 (N.D. Cal. June 20, 2025) ................................................... passim

*Romero v. Securus Techs., Inc.*,
  331 F.R.D. 391 (S.D. Cal. 2018) ..................................................................... 1, 13, 15

*Smith v. Cardinal Logistics Mgmt. Corp.*,
   2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ........................................................... 10

*Tate v. EyeMed Vision Care, LLC*,
   2025 WL 2119389 (S.D. Ohio July 29, 2025) ............................................................. 9

*Tavernetti v. Superior Court*,
   22 Cal. 3d 187 (1978) ............................................................................................ 12

*Torres v. Prudential Fin. Inc.*,
   2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) ................................................... 1, 5, 7

*Valentine v. NebuAd, Inc.*,
   804 F. Supp. 2d 1022 (N.D. Cal. 2011) ................................................................... 11

*Valenzuela v. Best-Line Shades, Inc.*,
   2021 WL 3514101 (N.D. Cal. Aug. 10, 2021) ......................................................... 13

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013) .................................................................................. 16

*Zaklit v. Nationstar Mortg. LLC*,
   2017 WL 3174901 (C.D. Cal. July 24, 2017) ................................................ 8, 15, 16

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ............................................................................ ii, 6, 7

Cal. Penal Code § 631(a) ......................................................................................... passim

Cal. Penal Code § 632 ............................................................................................. passim

Cal. Penal Code § 635 ............................................................................................. passim

Cal. Penal Code § 637.2 ............................................................................................. 8, 15

Cal. Penal Code § 638.51 ........................................................................................ passim

**RULES**

Fed. R. Civ. P. 23(a) ............................................................................................... iii, 7, 8

Fed. R. Civ. P. 23(b) ............................................................................................... passim

Fed. R. Civ. P. 23(c)(1)(C) ............................................................................................. ii

**OTHER AUTHORITIES**

2 Newberg and Rubenstein on Class Actions § 4:37 (6th ed.) ......................................... 16

## I.    INTRODUCTION

When users of the tax-filing websites H&R Block and TaxAct accessed the websites to prepare and file their taxes, defendant Meta Platforms, Inc. ("Meta") was surreptitiously behind the scenes collecting a wide array of data about those users through its use of its "Meta Pixel" technology. Meta admitted it received tax filing information via the Meta Pixel, including revenue, dependent information, and refund amounts. *See* Ex. 1, at 3, 5 (Responses to RFA Nos. 13 and 15). Meta's internal communications also show that, since at least ▮▮▮▮ it knew that it was receiving sensitive information from its Meta Pixel, including from tax filing websites. *See* Ex. 13, at 156:25-158:4 (30(b)(6) Depo. Tr.) (testifying that Meta ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 14, at 1 (30(b)(6) Depo. Ex. 150) (describing 2018 incident with Intuit tax filing website). Meta responded by developing stock ▮▮▮▮▮▮ that was ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ while placing the blame solely on website developers. Ex. 15, at 3 (30(b)(6) Depo. Ex. 156); *see also* Ex. 13, at 54:1-13; 55:24-56:8; 70:13-25; 72:8-17 (30(b)(6) Depo. Tr.).

Certification of the proposed classes described below, and the appointment of plaintiffs Kayla Housman, Tiffany Bryant, Katrina Calderon, and Jane Doe ("Plaintiffs") as class representatives, is appropriate here. The elements of the CIPA claims at issue are straightforward and capable of proof with common, classwide evidence. *See, e.g.*, *Torres v. Prudential Fin. Inc.*, 2024 WL 4894289, at *3 (N.D. Cal. Nov. 26, 2024) (certifying CIPA claims in Internet wiretapping case); *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391 (S.D. Cal. 2018) (certifying CIPA claims). Earlier this year, Judge Donato certified CIPA claims against Meta in a case involving similar technology to that at issue here, and a jury subsequently found Meta liable. *See Frasco v. Flo Health, Inc.*, -- F.R.D. –, 2025 WL 1433825, at *5 (N.D. Cal. May 19, 2025) (certifying claims against Meta where its software development kit ("SDK") collected "event data" from a health app). The Court should certify the classes here too.

## II.    SUMMARY OF FACTS COMMON TO ALL CLASS MEMBERS

The Meta Pixel is a "publicly available piece of code that third-party website developers can choose to install and use on their websites to measure actions taken on their own websites." Ex. 2, at

¶ 3 (Wooldridge Decl.). "[W]hen someone takes an action a developer chooses to track on their website"—like entering tax filing information or searching for tax information online—"the Meta Pixel is triggered and sends Meta certain data, called an 'Event.'" *Id.* at ¶ 4; *see also* Ex. 13, at 20:23-21:14 (30(b)(6) Depo. Tr.).

The Meta Pixel sends certain "Event Data" to Meta, "which Meta can then compile and use to provide analytics to the [website] developer." Ex. 3, at 6:17-18 (*HBO* Brief); *see also* Ex. 28, ¶¶ 35-37 (Zeidman Report). Likewise, "Meta attempts to match the Events it receives to Meta users," so that website developers "can target ads on Facebook, Instagram," and other publishers. Ex. 2, at ¶ 4 (Wooldridge Decl.). This has been the "key" functionality of the Meta Pixel "since its original launch." Ex. 13, at 39:23-40:7 (30(b)(6) Depo. Tr.). Event data is not strictly used just for targeted advertising, but also is used for "purposes outside of advertising," such as "general analytics," unspecified "operational purposes," machine learning, and AI training. Ex. 13, at 27:17-20; 43:21-44:2; 101:18-102:17; 107:23-108:16; 118:1-13 (30(b)(6) Depo. Tr.); *see also* Ex. 4, at 6 (30(b)(6) Depo. Ex. 158) (flowchart depicting how Pixel event data is used).

TaxAct began using the Meta Pixel in August 2015, and H&R Block in January 2019. *See* Ex. 5, at 3 (Meta Supp. Rog Resp. 6). It appears that they both continue to use the Pixel today. *See id*; Ex. 28, at ¶ 33(Zeidman Report). The relevant information that Meta read or attempted to read via these Pixels falls under three categories.

First, Meta read or attempted to read pen-register information. Meta produced sample data to Plaintiffs from its database of data collected by the Meta Pixel (the "Hive" data). This sample data reveals that Meta collected over ███████ of data fields generated when a website user visits a website, including H&R Block's and TaxAct's websites. *See* Ex. 28, at ¶ 27 (Zeidman Report). This includes pen-register information about the webpages members of the classes visited, the date and time they were on the website, their operating system information, browser information, device type information, IP address, and geolocation data. *See* Ex. 16, at 1-3, 5-6, 10, 21 (30(b)(6) Depo. Ex. 148); *see also* Ex. 13, at 130:20-131:6 (30(b)(6) Depo. Tr.); Zeidman Report, ¶¶ 28-29. The Meta Pixel collected this pen register information each time someone visited H&R Block's and TaxAct's websites during the proposed class periods. *See* Ex. 28, at ¶ 29 (Zeidman Report). Given that Meta

"attempts to match Events it receives to Meta users," this information can be correlated with a particular individual, as demonstrated by the fact that Meta was able to identify and disclose the Hive data for Plaintiffs Calderon, Doe, and Bryant (to the extent the data was not destroyed pursuant to Meta's 90-day data retention policy). *See* Ex. 13, at 108:21-110:11; 173:4-9 (30(b)(6) Depo. Tr.). Meta's 30(b)(6) witness testified that Meta's "identity-matching process" uses a variety of "customer information parameters" to match data with individuals, such as hashed PII, cookie data, device identifiers, and IP addresses. *See id.* at 22:5-26:6; 36:7-38:11; 38-22-39:3 (30(b)(6) Depo. Tr.).

For example, Meta's Hive data concerning Plaintiff Jane Doe reveals that on April 2, 2022, she visited H&R Block, using a Chrome desktop browser with device operating system Windows NT, while she was in Turlock, California, and searched for information about claiming boyfriends on taxes. *See* Ex. 16, at 1-3, 5-6, 21, bottom row (Depo 148); Ex. 28, at ¶ 44 (Zeidman Report). In another example, the Hive data shows that on November 14, 2021, Plaintiff Katrina Calderon visited H&R Block's website, using a mobile phone using an iOS operating system (i.e., an Apple iPhone), when she was in Salinas, California, and visited H&R Block's home page. *See* Ex. 17, at 1-4, 16; Ex. 28, at ¶ 45 (Zeidman Report). Meta's filtering systems do not prevent its ingestion of this information, as shown by the Plaintiffs' Hive data and the sample Hive data for members of the classes. *See* Ex. 13, at 148:1-14 (30(b)(6) Depo. Tr.) (Meta does not block geolocation data).

<u>Second</u>, Meta read or attempted to read the contents of website visitors' communications with the H&R Block and TaxAct websites. Meta collected URL data from H&R Block's and TaxAct's websites showing which pages website visitors searched for and visited, thereby "divulg[ing] a user's personal interests, queries, and habits on third-party websites operating outside of Facebook's platform." *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020) (reversing dismissal of CIPA claims). Jane Doe's search for information about claiming her boyfriend on her taxes is one such example. *See* Ex. 16, at 3, 5, bottom row (30(b)(6) Depo. Ex. 148). Sample Hive data from other members of the classes similarly reveals specific tax concerns individuals researched when visiting a tax filing website, such as "how to figure capital gains tax" and "debt you can't lose in bankruptcy." Ex. 18, at 2; Ex. 28, at ¶ 48 (Zeidman Report). Meta uses this information for "analytics, measurement, and advertising purposes." Ex. 13, at 129:23-130:11

(30(b)(6) Depo. Tr.). Meta did not attempt to block or filter this type of information until it launched its "Core Setup" program in July 2023, after this and other Pixel-related lawsuits had been filed. *See* Ex. 19, at 8:22-9:2; 18:6-23 (*Healthcare* 30b6 Depo. Tr.); *see also* Exs. 20-21 (30(b)(6) Depo. Ex. 154, and PIXEL_TAX000052648 (describing Core Setup).

<u>Third</u>, Meta read individuals' tax information. Meta admitted that TaxAct transmitted specific tax filing data like state revenue, number of dependents, tax form, W2, "agi" (adjusted gross income"), federal amount owed, and federal refund amounts. *See* Ex. 1, at 3, 5 (Responses to RFA Nos. 13 and 15). Meta was able to retrieve this data from its Hive database where it was stored. *See* Ex. 13, at 48:13-51:23 (30(b)(6) Depo. Tr.). This tax filing data is easily seen in the example from the Hive data shown below, and Meta's 30(b)(6) witness confirmed that the values shown were "transmitted as Event Data from the Pixel . . . ." *Id.* at 91:20-24. That data from July 26, 2022 shows, among other things, a specific class member's age range (35-44), return year (2020), agi ($55,000), federal revenue ($0), federal amount owed ($0), federal refund amount ($7,400), number of dependents (2), standard deductions (1), state revenue ($0), and tax form used (1040):

```
{"age_range":"35-44","f1099misc":"0","ad_tracking":"0","promo":"taspcl4usmilitary,","source_code":"1901200000","start_vintage":"yr3","customer_type":"consumer","return_year":"2020","start_edition":"deluxe","current_edition":"deluxe","start_product_id":"20CRDLXFEDFEDOL","current_product_id":"20CRDLXFEDFEDOL",'start_actual_price':"24.95",'start_default_price':"24.95","agi":"55000","app_step":"iv_uspaper_printfedreturn","audit_revenue":"0.00","charitable_contribution":"0","complete_vintage":"new","federal_revenue":"0.00","federal_owe_amount":"0","federal_refund_amount":"7400","filing_status":"married_filing_jointly","investments":"1","modules_submitted":"fed","num_of_dependents":"2","payment_type":"ccard","rpt_revenue":"0.00","schedule_c":"0","schedule_c_ez":"undefined","software_revenue":"0.00","standard_deduction":"1","state_revenue":"0.00","svc_revenue":"undefined","tax_form":"1040","total_revenue":"0.00","w2":"1","_filteredParams":"{\"unwantedParams\":[\"mortgage_interest\",\"student_loan_interest\"],\"sensitiveParams\":[];"}
```

Ex. 22, at 3, 16 (30(b)(6) Depo. Ex. 146). There are thousands of rows of data like this for other members of the classes in the limited sample data produced by Meta. *See* Ex. 28, at ¶ 50 (Zeidman

Report). And while Meta's 30(b)(6) witness prevaricated about what terms like "state revenue" signified, he had no information suggesting that the terms mean anything other than what they say. *See* Ex. 13, at 54:15-56:15 (30(b)(6) Depo. Tr.).

Unlike with the first two categories of data described above, Meta purportedly implemented a filter, ostensibly to attempt to block some financial data. However, Meta's internal documents show that Meta employees described the filter as ███████ and unable to ███████ and even Meta's own engineers were uncertain about whether it captured financial data. Ex. 15, at 2 (30(b)(6) Depo. Ex. 156); Ex. 23, at 1 (30(b)(6) Depo. Ex. 151) ("Our signals integrity does financial filtering too?" "It depends…"). Internal documents also suggest that ████████████████████████ ████████████████████ until it faced a wave of Pixel-related lawsuits in 2023. *Compare* Ex. 24 at 3 (PIXEL_TAX000023182) (describing circumstances in January 2020) *with* Exs. 20-21, 25 (describing post-litigation efforts to improve filtering of sensitive data, such as ███████████████████). Even in its June 2023 motion to dismiss in this matter, Meta cited its filter but repeatedly soft-pedalled its capabilities, stating that it "attempted" to filter out data, and that it was "designed" to filter data without saying it worked as intended. *See* MTD, at 4:18:5:4; 9:24-26; 20:24 (ECF No. 107). As shown in the image above, the filter is unreliable (and in any event, not designed to filter most of the data at issue here, as explained above).

### III.    ARGUMENT

A party seeking certification must "meet the requirements of Rule 23(a), as well as one of three possible requirements under Rule 23(b)." *Torres v. Prudential Fin. Inc.*, 2024 WL 4894289, at *3 (N.D. Cal. Nov. 26, 2024). Orders granting class certification receive "noticeably more deference" from the Ninth Circuit than orders denying certification. *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1232 (9th Cir. 2024) (internal quotation omitted). Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage, and so "'[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Id.* (quoting *Amgen Inc. v. Conn. Ret. Plans. & Tr. Funds*, 568 U.S. 455, 466 (2013)). As set forth below, Plaintiffs satisfy each of the requirements for certification under Rules 23(a), 23(b)(2), and 23(b)(3).

**A.     Each Of Rule 23(a)'s Requirements Are Satisfied**

Plaintiffs seek to certify the following classes:

**The Nationwide Pen Register Classes (Cal. Penal Code § 638.51):**

<u>H&R Block.com</u>: All individuals in the United States who visited the website H&R Block.com from January 15, 2019 to June 30, 2023. This class seeks certification of claims under California Penal Code § 638.51. All Plaintiffs seek to be the class representatives for this class.

<u>TaxAct.com</u>: All individuals in the United States who visited the website TaxAct.com from August 25, 2015 to June 30, 2023. This class seeks certification of claims under California Penal Code §§ 638.51. Plaintiff Katrina Calderon seeks to be the class representative for this class.

**The Nationwide Eavesdropping Classes (Cal. Penal Code §§ 632 and 635):**

<u>H&R Block.com</u>: All individuals in the United States who visited the website H&R Block.com from January 15, 2019 to June 30, 2023. This class seeks certification of claims under California Penal Code §§ 632 and 635. All Plaintiffs seek to be the class representatives for this class.

<u>TaxAct.com</u>: All individuals in the United States who visited the website TaxAct.com from August 25, 2015 to June 30, 2023. This class seeks certification of claims under California Penal Code §§ 632, and 635. Plaintiff Katrina Calderon seeks to be the class representative for this class.

**The California Wiretapping Classes (Cal. Penal Code § 631(a) and 635):**

<u>H&R Block.com</u>: All individuals in California who visited the website H&R Block.com from January 15, 2019 to June 30, 2023. This class seeks certification of claims under California Penal Code §§ 631(a) and 635. Plaintiffs Jane Doe and Katrina Calderon seek to be the class representative for this class.

<u>TaxAct.com</u>: All individuals in California who visited the website TaxAct.com from August 25, 2015 to June 30, 2023. This class seeks certification of claims under California Penal Code §§ 631(a) and 635. Plaintiff Katrina Calderon seeks to be the class representative for this class.[1]

**The Nationwide UCL Public Injunctive Relief Classes (Cal. Bus. & Prof. Code § 17200 *et seq*.):**

<u>H&R Block.com</u>: All individuals in the United States who visited the website H&R Block.com from January 15, 2019 to June 30, 2023. This class seeks certification

---

[1] The Nationwide Pen Register Classes, Nationwide Eavesdropping Classes and California Wiretapping Classes are collectively referred to herein as the "Damages Classes."

of claims under California Cal. Bus. & Prof. Code § 17200. All Plaintiffs seek to be the class representatives for this class.

<u>TaxAct.com</u>: All individuals in the United States who visited the website TaxAct.com from August 25, 2015 to June 30, 2023. This class seeks certification of claims under Cal. Bus. & Prof. Code § 17200. Plaintiff Katrina Calderon seeks to be the class representative for this class.

### 1. Numerosity

Rule 23(a)(1) requires the classes to be so numerous that joinder of all members of the classes is "impracticable." Fed. R. Civ. P. 23(a)(1). "Generally, the numerosity requirement is met where [the] plaintiffs' class contains forty or more members." *Rabin v. Google LLC*, -- F. Supp. 3d –, 2025 WL 1720532, at *4 (N.D. Cal. June 20, 2025) (Pitts, J.). Here, each of the proposed classes include more than 40 members. *See* Ex. 28, at ¶ 43 (Zeidman Report).

### 2. Commonality

Commonality requires the presence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This factor "only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012). Common questions of law or fact common to the classes here include, among others:

- Whether Meta intercepted or attempted to intercept electronic communications between members of the classes and the subject tax filing websites. *See Torres*, 2024 WL 4894289, at *4 (commonality satisfied where plaintiffs alleged similar claim under CIPA); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 590 (N.D. Cal. 2015) (same).

- Whether the Meta Tracking Pixel is a "device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another" under Cal. Penal Code § 635; or whether it is a "machine, instrument, or contrivance" under § 631(a). *See In re Yahoo Mail Litig.*, 308 F.R.D. at 591 (functionality of Yahoo's email software supported commonality in CIPA case); *cf. O'Shea v. Am. Solar Solutions, Inc.*, 318 F.R.D. 633, 637 (S.D. Cal. 2017) (issue of whether defendant's equipment qualified as "automatic telephone dialing system" under Telephone Consumer Protection Act supported commonality requirement).

- Whether Meta acted "intentionally" or was "willfully blind." *See Torres*, 2024 WL 4894289, at *4 ("Whether [defendant] acted willfully" common issue in case alleging claim under CIPA § 631(a)); *McMillion v. Rash Curtis & Assocs.*, 2017 WL 3895764, at *5 (N.D. Cal. Sept. 6, 2017) ("question of defendant's willfulness and knowledge is a common question").

- Whether members of the classes are entitled to statutory damages. *See Palacios v. Penny Newman Grain, Inc.*, 2015 WL 4078135, at *4 (E.D. Cal. July 6, 2015) (question of "whether

class members are entitled to statutory penalties" supported commonality); *see also* Cal. Penal Code § 637.2 (providing for statutory damages here).

Any one of these questions, standing alone, would be sufficient to support the commonality requirement. *See Mazza*, 666 F.3d at 589. Commonality is satisfied here.

### 3. Typicality

Rule 23(a)(3) requires the representative party to have claims that are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The requirement is permissive," and Plaintiffs' claims need only be "reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation omitted); *see also Meta Platforms*, 96 F.4th at 1239 (addressing typicality requirement and rejecting Meta's arguments against typicality). That requirement is satisfied here. Like the putative members of the classes, each Plaintiff visited H&R Block's or TaxAct's website when Meta's Tracking Pixel was deployed on those websites. Plaintiffs assert the same claims and seek the same statutory damages and injunctive relief as the putative members of the classes. *See Frasco*, 2025 WL 1433825, at *6 (typicality satisfied where named plaintiffs were surveilled by Meta's technology); *Ades v. Omni Hotels Mgmt. Corp.*, 2014 WL 4627271, at *9 (C.D. Cal. Sept. 8, 2014) (typicality satisfied in CIPA case where named plaintiffs' claims derived from unlawful recording of telephone calls); *Zaklit v. Nationstar Mortg. LLC*, 2017 WL 3174901, at *14 (C.D. Cal. July 24, 2017) (typicality satisfied in CIPA case where named plaintiffs "allege[d] a course of conduct by [defendant] common to the class, and privacy invasions typical to those of the class generally").

### 4. Adequacy

Rule 23(a)'s final requirement is that the class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied where, as here, the proposed representatives have no conflicts of interest and are represented by qualified counsel. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020-21 (9th Cir. 1998). Both elements are satisfied here.

First, each of the proposed class representatives have dedicated substantial time to this action, including by responding to written discovery requests and sitting for depositions. *See* Exs. 6-9

(Plaintiff Declarations). They understand that their role in this litigation is to protect the interests of other members of the putative classes and expect to assist further in this case as needed, including testifying at trial. *See id*. None have any interest in this litigation that would conflict with the members of the classes, or any relationship with counsel that would cause them to put their economic interests above those of the classes they seek to represent. *See id*.

Second, proposed class counsel Lori G. Feldman of George Feldman McDonald, PLLC ("GFM") and Neal Deckant of Bursor & Fisher, P.A., as well as the other attorneys working with them on this matter, have worked hard prosecuting this action, and have a strong record of litigating class actions through jury trials and appeal. *See* Exs. 10-11 (Firm Resumes). In another class action that went to trial in this District, Judge Gonzalez-Rodgers noted the "general quality" of Bursor & Fisher's work and found that its attorneys had achieved "extraordinary" results after a jury awarded $267,349,000 in favor of class members. *Perez v. Rash Curtis & Assoc.*, 2020 WL 1904533, at *16, 21 (N.D. Cal. Apr. 17, 2020). Bursor & Fisher, P.A. "has been appointed class counsel in dozens of cases in both federal and state courts, and has won several multi-million dollar verdicts or recoveries." *Famular v. Whirlpool Corp.*, 2019 WL 1254882, at *4 (S.D.N.Y. Mar. 19, 2019). Likewise, courts have recognized that GFM has "significant experience with class-action litigation" and is "qualified to represent adequately the interests of the proposed class." *Bowen v. Paxton Media Grp., LLC*, 2024 WL 1446468, at *6 (W.D. Ky. Apr. 3, 2024); *see also Tate v. EyeMed Vision Care, LLC*, 2025 WL 2119389, at *5 (S.D. Ohio July 29, 2025).

**B.    The Proposed Damages Classes Satisfy Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As set forth below, both requirements are satisfied here for the Damages Classes.

**1.    Common Questions Of Law Or Fact Predominate**

Predominance "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Rabin*, 2025 WL 1720532, at *8 (internal quotation omitted). The analysis is grounded in "the elements of the

underlying cause[s] of action . . . ." *Frasco*, 2025 WL 1433825, at *6; *see also Rabin*, 2025 WL 1720532, at *8-10 (analyzing predominance separately for different causes of action). "Rule 23(b)(3), however, does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.' . . . What the rule does require is that common questions '*predominate* over any questions affecting only individual [class] members." *Amgen*, 568 U.S. at 469 (emphasis and brackets in original; citation and internal quotations omitted). "[F]ederal courts have recognized that individual issues will likely be present during class actions but that such issues should not prevent class certification so long as they do not override the underlying common question." *Smith v. Cardinal Logistics Mgmt. Corp.*, 2008 WL 4156364, at *10 (N.D. Cal. Sept. 5, 2008); *accord Rabin*, 2025 WL 1720532, at *8.

### a.     CIPA § 638.51

There are three elements to a claim under Cal. Penal Code § 638.51: "a person may not [1] install or use [2] a pen register or a trap and trace device [3] without first obtaining a court order pursuant to Section 638.52 or 638.53." Cal. Penal Code § 638.51. Each element is inherently subject to classwide proof. Either Meta uses the Pixel or it does not—and Meta admitted it uses the Pixel "to provide analytics to the [website] developer[s]" and to help with targeted ads on Facebook and Instagram. Ex. 2, Meta HBO Brf., 6:17-18; Ex. 2, at ¶ 4 (Wooldridge Decl.). The question of whether Meta's Pixel is a pen register is likewise a binary "yes or no" question for all class members. *See In re Yahoo Mail Litig.*, 308 F.R.D. at 591 (functionality of Yahoo's email software was common question); *O'Shea*, 318 F.R.D. at 637 (whether defendant's software was regulated by TCPA was common question). There is no evidence that Meta ever obtained a court order pursuant to Section 638.52 or 638.53.

Plaintiffs seek nationwide certification of the claim under § 638.51. Nationwide classes are permissible for three reasons. First, unlike § 631(a) (addressed below), nothing in the plain text of § 638.51 suggests any geographic limitations on where the plaintiff or defendant is located at the time of transmission. *Cf. Frasco*, 2025 WL 1433825, at *19 (distinguishing § 631(a) from § 632 because only the former includes geographic limitations).

1    Second, Meta has stated that "[a]t all relevant times, Meta's Terms have included a clear

2  California choice-of-law clause" that governs here "'without regard to conflict of law provisions.'"

3  MTD, 6:21-23 (ECF No. 107) (quoting Meta Terms of Use). Meta emphatically argued in this case

4  that the choice of law provision applies to the claims asserted. *See id.* at 7:4-17. Meta's position

5  makes nationwide classes permissible here. *See Garner v. Amazon.com, Inc.*, 2025 WL 1911088, at

6  *12 (W.D. Wash. July 7, 2025) (certifying nationwide class under Washington law pursuant to

7  choice-of-law provision); *see also Frasco*, 2025 WL 1433825, at *6 (certifying nationwide class

8  against Meta where applicable terms included California choice of law provision).

9    Third, numerous courts have held that CIPA applies to non-California plaintiffs who were

10  surveilled by a California defendant. *See, e.g.*, *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028

11  (N.D. Cal. 2011) (CIPA governs California defendants who wiretap non-California plaintiffs); *Bona*

12  *Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016)

13  (following *Valentine*); *Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *4 (C.D. Cal. Oct. 13, 2016)

14  (same). Here, Meta admitted that "California has an obvious substantial relationship to the parties"

15  and that it is headquartered in California. MTD, 7:4-6 (ECF No. 107).

### a.    CIPA § 632

17    Plaintiffs seek nationwide certification of the claims under § 632. Nationwide classes are

18  permissible under § 632 for the same reasons stated above with respect to § 638.51. The elements of

19  the cause of action under CIPA § 632 are simple and subject to common proof. Namely, liability

20  turns on evidence that Meta, "[1] intentionally and without the consent of all parties to a confidential

21  communication, [2] use[d] an electronic amplifying or recording device [i.e., the Meta Pixel] to [3]

22  eavesdrop upon or record the confidential communication [i.e., information shared with tax filing

23  websites]." Cal. Penal Code § 632. The first two elements may be proven with the same common

24  evidence supporting the claim under § 631(a). The third element presents a common issue because a

25  jury could easily conclude that a reasonable person would not expect their communications with

26  H&R Block's and TaxAct's websites to be surveilled by Meta.

### b.    CIPA § 635

Plaintiffs seek nationwide certification of the claim under § 635. Section 635 is straightforward in imposing liability on "[e]very person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another." Cal Penal Code § 635(a). Meta's 30(b)(6) witness testified that the "primary function" of the Meta Pixel is to transmit Event Data to Meta. Ex. 13, at 21:15-22:1 (30(b)(6) Depo. Tr.). The question of whether the Meta Pixel is a "device" governed by § 635(a) is therefore inherently a common question. *See In re Yahoo Mail Litig.*, 308 F.R.D. at 591. The same holds true for whether Meta "manufactured," "possessed" and/or "furnished" such a device, because there is no genuine dispute that Meta did each of those things with respect to its Pixel.

### c.    CIPA § 631(a)

The California Plaintiffs Calderon and Doe seek certification of California classes pursuing a claim under Cal. Penal Code § 631(a). A defendant is liable under § 631(a) if that defendant, "by means of any machine, instrument, or contrivance, or in any other manner," does either of the following:

> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state…
>
> [*Or*]
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained….

Cal Penal Code § 631(a); *see also Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192-93 (1978) (§ 631(a) prohibits several "distinct and mutually independent patterns of conduct").

The elements of this claim are susceptible to classwide proof. As with § 638.51 discussed above, the question of whether Meta's Pixel is "a machine, instrument, contrivance" or other "manner" of engaging in the conduct prescribed by § 631(a) is a binary "yes or no" question that applies the same to all class members. *See In re Yahoo Mail Litig.*, 308 F.R.D. at 591. The question

of whether Meta acted "intentionally" or was "willfully blind" to the fact that it received sensitive information since at least 2018 also is inherently subject to common proof. *See Romero*, 331 F.R.D. at 411 (rejecting argument that question whether defendant intentionally violated CIPA would involve "individualized inquiries"); *McMillion*, 2017 WL 3895764, at *5 (defendant's willfulness was common question supporting predominance requirement). Another element under § 631(a) is whether Meta "read[] or attempt[ed] to read" internet communications, or "use[d] or attempt[ed] to use" information obtained from wiretapping. Here, Meta has admitted in two other Pixel tracking cases that Meta "attempts to use" the data it receives so that it can "match the events it receives to Meta users" for advertising purposes, and "to provide analytics to the [website] developer[s]." Ex. 2, at ¶ 4 (Wooldridge Decl.); Ex. 3, at 6:17-18 (*HBO* Brief). Those admissions are, by their very nature, classwide evidence. *See, e.g.*, *Valenzuela v. Best-Line Shades, Inc.*, 2021 WL 3514101, at *6 (N.D. Cal. Aug. 10, 2021) (defendant's admissions were common proof supporting predominance requirement).

Plaintiffs acknowledge that in *Frasco*, Judge Donato denied certification of a class under § 631 a) due to individualized issues about whether any particular class member was in California at the time of transmission, but this case involves additional evidence that eliminates the individualized issues found in *Frasco*. The plaintiffs in *Frasco* largely relied on evidence from the third-party app developer (not Meta) which consisted of "hundreds of lines of incomprehensible code, and a line or two reading something like "'time_zone':'America/New_York.'" *Id.*, 2025 WL 1433825, at *19. "What this evidence might mean or how it [was] germane to certification [was] unexplained." *Id.*

Here, in contrast, Meta's Hive data includes fields clearly marked as ███████████," and ███████" and this information is provided each time a person visits a website. *See* Ex. 16, at 6, 21; Ex. 28, at ¶ 29 (Zeidman Report). Meta produced a data dictionary that states that the first two fields represent ████████████████████████████████████████ Ex. 26, at 1-2 (PIXEL_TAX000058899). So, for example, the Hive data for Plaintiff Katrina Calderon's visits to H&R Block have the words ████████████████████████████████ ████████████████████ Ex. 17, at 4; Ex. 28, at ¶ 45 (Zeidman Report). Similarly, the Hive data for Plaintiff Jane Doe's visits to H&R Block have the words ███████████████

1    ███████████████████████████████████ Ex. 16, at 6; Ex. 28, at ¶ 44 (Zeidman

2    Report). For both Plaintiffs, the ██████████████████████████████████

3    ██████████████████████████████████. Ex 17, at 16; Ex. 16, at 21.

4        In past litigation, Meta has tried to disclaim the reliability of the Meta Pixel's geo-tracking

5    capabilities, and Plaintiffs expect that Meta will attempt to do so here. However, outside the context

6    of litigation, Meta touts the reliability of its geo-tracking abilities to its business customers. On its

7    Business Help Center website, Meta emphasizes that its "[l]ocation targeting allows you to

8    reach people living in or recently in locations such as countries, regions or cities," and that "Meta

9    technologies use a variety of signals to show ads to people who are within your location targeting

10   selections." Ex. 12. Meta's 30(b)(6) witness confirmed that ███████████████████████

11   ██████████████████, as well as other unspecified purposes. *See* Ex. 13, 128:6-129:21

12   (30(b)(6) Depo. Tr.).

13       In short, Meta's Hive data, data dictionary, and public comments about the capabilities of its

14   geo-tracking technology are all party admissions that were absent in *Frasco*, and support certification

15   of a California class pursuing claims under § 631(a).

### d. Statutory Damages Provide A Straightforward Method For Calculating Classwide Damages

18       At class certification, "[p]laintiffs need only show that [class] damages can be determined

19   without excessive difficulty and attributed to their theory of liability." *Just Film*, 847 F.3d at 1121.

20   "[D]amage calculations alone cannot defeat certification" and "the presence of individualized

21   damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Id.* (internal quotations

22   omitted). Nor is it necessary to calculate the amount of classwide damages at the class certification

23   stage. *See Lytle v. Nutramax Labs, Inc.*, 114 F.4th 1011, 1024-25 (9th Cir. 2024) (sufficient at class

24   certification stage to show "damages *could* be calculated on a classwide basis, even where such

25   calculations have not yet been performed") (emphasis in original).

26       Under this standard, classwide damages pose no obstacle to predominance where the plaintiff

27   seeks only statutory damages. *See Hawkins v. S2Verify*, 2016 WL 3999458, at *6 (N.D. Cal. July 26,

28   2016) ("[P]laintiff's  counsel  represented  that  both  plaintiff  and  the  class  seek

only statutory damages. Damages can therefore be proven through class-wide proof."); *Zaklit*, 2017 WL 3174901, at *9 ("Courts have been more willing to find predominance where, as here, the class seeks only statutory damages.") (quoting *In re Toys R Us-Delaware, Inc*., 300 F.R.D. 347, 377 (C.D. Cal. 2013)). Statutory damages under California Penal Code § 637.2 furnish straightforward methods for calculating damages here. *See id*. (providing for statutory damages of $5,000 "per violation" of CIPA). A sampling of the Hive data produced by Meta evidences that a statutory damages framework can be applied to the data to determine classwide damages in this case by, for example, multiplying the visits to H&R Block's and TaxAct's websites by the $5,000 per violation provided by Section 637.2 (a)(1).  *See* Ex. 28, at ¶¶ 51-56 (Zeidman Report) (addressing method of identifying visits in Hive data); *see also generally* Ex. 27 (Weir Report) (addressing method of calculating visits).

## 2.     Class Litigation Is Superior To Other Methods Of Adjudication

Rule 23(b)(3) also examines whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). Relevant factors include: " (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

"Where recovery on an individual basis would be dwarfed by the cost of litigation on an individual basis, this factor weighs in favor of class certification." *Rabin*, 2025 WL 1720532, at *12 (internal quotation omitted). Here, as in *Frasco*, "[t]he record amply demonstrates discovery was complicated and voluminous, to say the least, and defendants are represented by law firms with deep resources, all of which demonstrate that litigating these claims entails relatively high costs." *Id.*, 2025 WL 1433825, at *19 (internal quotation omitted). A class action also is superior because the secretive nature of CIPA violations means that many absent members of the classes would have no knowledge of their entitlement to bring an individual claim. And even if that were not the case, a class action would avoid a multiplicity of actions. *See Romero*, 331 F.R.D. at 412 (fact that "a significant number

of class members may not know that their calls were recorded" supported superiority in CIPA class action). CIPA does not provide for fee-shifting, so any individual judgment would be dwarfed by the attorneys' fees and costs incurred to obtain that judgment. As a result, the statutory penalties under CIPA are too low to sufficiently "motivate individual litigation involving complex factual and legal issues as to weigh against class certification." *Zaklit*, 2017 WL 3174901, at *10; *accord Omni Hotels*, 2014 WL 4627271, at *14. Finally, although this case is complex, there is nothing unique about it that would render a class action unmanageable.

### C.    The Proposed Nationwide UCL Public Injunctive Relief Classes Satisfy Rule 23(b)(2)

Injunctive relief is available under both CIPA and the UCL. Plaintiffs seek statutory damages and injunctive relief under CIPA and injunctive relief under the UCL. There are three reasons why the Court can and should certify classes under Rule 23(b)(2) for injunctive relief in addition to Rule 23(b)(3) classes for damages.[2] First, "Ninth Circuit precedent indicates that [courts] can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class." *Brown v. Google, LLC*, 2022 WL 17961497, at *20 (N.D. Cal. Dec. 12, 2022) (quoting *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014)); *see also* 2 Newberg and Rubenstein on Class Actions § 4:37 (6th ed.) ("[A] case may be certified under Rule 23(b)(2) for some purposes [i.e., injunctive relief] and under other portions of the Rule for money damages."). For example, "[i]n its decision in *Dukes v. Wal–Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010), *rev'd on other grounds*, 131 S.Ct. 2541 (2011) (en banc), the Ninth Circuit noted that the district court had the option of certifying a Rule 23(b)(2) equitable relief class and a separate Rule 23(b)(3) class for damages if it concluded that it could not certify a single Rule 23(b)(2) class because monetary relief predominated over the equitable relief sought." *In re ConAgra*, 302 F.R.D. at 573. Similarly, in *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011), the Ninth Circuit "indicat[ed] that the court could certify a Rule 23(b)(2) class for injunctive relief and a separate Rule 23(b)(3) class for damages." *See Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013) (citing *Ellis*, 657 F.3d at

---

[2] Plaintiffs acknowledge that this Court ruled otherwise in *Rabin*, 2025 WL 1720532, at *13, but ask the Court to reconsider the issue in light of the Ninth Circuit authorities cited here.

987). "Thus, the Court may certify an injunctive class under Rule 23(b)(2) regardless of whether Plaintiffs primarily seek to obtain monetary relief in this action overall." *Mobile Emergency Housing Corp. v. HP, Inc.*, 2023 WL 9550942, at *14 (N.D. Cal. Dec. 8, 2023).

Second, certification of Rule 23(b)(2) classes also is warranted if the Court denies the Rule 23(b)(3) classes because, if that is the case, then (b)(2) injunctive relief would be the only relief available on a classwide basis. *See Mueller v. Puritan's Pride, Inc.*, 2021 WL 5494254, at *8-9 (N.D. Cal. Nov. 23, 2021); *see also Brown*, 2022 WL 17961497, at *20 (rejecting argument that certification of 23(b)(2) class was impermissible because plaintiffs also sought 23(b)(3) class).

Third, "the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) (internal quotation omitted). Plaintiffs seek certification of their UCL claim only for purposes of injunctive relief under Rule 23(b)(2) because it is the "primary" form of relief sought under that statute.[3]

The specific form of injunctive relief Plaintiffs seek also is appropriate. Specifically, Plaintiffs seek an injunction (1) precluding Meta from collecting further browsing information; (2) requiring Meta to delete any browsing information currently stored; (3) requiring Meta to remove any services that were developed or improved with the private browsing information; and (4) appointing an independent third-party to verify that the injunctive relief has been implemented. These are the same measures that Judge Gonzalez-Rogers held would be "important changes" when it certified a 23(b)(2) class in *Brown*. *See id.*, 2022 WL 17961497, at *20.

This relief is warranted here because Meta is continuing to collect data protected by CIPA's pen register statute, § 638.51. Meta's filter system is not designed to prevent transmission of that information, and the evidence shows that it does not. *See supra* Section II.

Nor does the existence of Meta's filter support denial of certification under Rule 23(b)(2). The evidence shows that Meta employees have acknowledged Meta's filtering system is ███████

---

[3] Although class certification is not necessary to obtain a *statewide* injunction under the UCL (*see Miller v. Peter Thomas Roth, LLC*, 2020 WL 363043 at *2 (N.D. Cal. Jan. 22, 2020)), Plaintiffs nonetheless seek certification to ensure the availability of a nationwide injunction.

1    ███████████████████ Ex. 15, at 2 (30(b)(6) Depo. Ex. 156). There is no better evidence

2    of this than the fact that ████████████████████████████

3    *See, e.g.*, Ex. 2 (30(b)(6) Depo. Ex. 146). Moreover, when pressed, Meta's 30(b)(6) witness testified

4    he could not recall Meta ever taking enforcement action against the three tax filing websites

5    identified in the complaint—or any other financial institution—for transmitting sensitive information

6    to Meta via the Pixel. *See* Ex. 13, at 71:21-73:13; 155:22-156:1 (30(b)(6) Depo. Tr.). Many members

7    of the Nationwide UCL Public Injunctive Relief Classes rely on tax filing websites like H&R Block

8    and TaxAct as economical and convenient methods for filing their tax returns. They should not have

9    to wonder if Meta's filtering system is working as intended when they do their taxes.

10   **IV.    CONCLUSION**

11   For the reasons stated above, Plaintiffs respectfully ask the Court to certify the classes

12   described herein; appoint Kayla Housman, Tiffany Bryant, Katrina Calderon, and Jane Doe as class

13   representatives; and appoint Lori G. Feldman of GFM and Neal Deckant of Bursor & Fisher, P.A. as

14   class counsel.

Dated:  August 18, 2025

**BURSOR & FISHER, P.A.**

By: ___*/s/ Neal Deckant*___
          Neal Deckant

Neal Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ndeckant@bursor.com

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman (*pro hac vice*)
Michael Liskow (State Bar No. 243899)
200 Park Avenue, Suite 1700
New York, New York 10166
Telephone: (646) 354-6534
E-mail: lfeldman@4-justice.com
         mliskow@4-justice.com
         eservice@4-justice.com

**GEORGE FELDMAN MCDONALD, PLLC**
Rebecca A. Peterson (State Bar No. 241858)
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (612) 778-9595
Facsimile: (888) 421-4173
E-mail: rpeterson@4-Justice.com

**SMITH KRIVOSHEY, P.C.**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor
Boston, MA 02216
Telephone: 617-377-7404
Email: joel@skclassactions.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Kate M. Baxter-Kauf (*pro hac vice*)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rkshelquist@locklaw.com
E-mail: kmbaxter-kauf@locklaw.com

**THE HODA LAW FIRM, PLLC**
Marshal J. Hoda, Esq. (*pro hac vice*)
12333 Sowden Road, Suite B
Houston, TX 77080
Telephone: (832) 848-0036
Email: marshal@thehodalawfirm.com

**FOSTER YARBOROUGH PLLC**
Patrick Yarborough, Esq. (*pro hac vice*)
917 Franklin Street, Suite 220
Houston, TX 77002
Telephone: (713) 331-5254
Email: patrick@fosteryarborough.com

**EMERSON FIRM, PLLC**
John G. Emerson (*pro hac vice*)
2500 Wilcrest, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Email: jemerson@emersonfirm.com

*Attorneys for Plaintiffs*