**LATHAM & WATKINS LLP**
MELANIE M. BLUNSCHI, SBN 234264
melanie.blunschi@lw.com
KRISTIN I. SHEFFIELD-WHITEHEAD,
SBN 304635
kristin.whitehead@lw.com
DIANNE KIM, SBN 348367
dianne.kim@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:     (415) 395-8129


MARISSA ALTER-NELSON (*pro hac vice*)
marissa.alter-nelson@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone:     (212) 906-1200

JESSICA STEBBINS BINA, SBN 248485
jessica.stebbinsbina@lw.com
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:     (424) 653-5500

*Attorneys for Defendant Meta Platforms, Inc.*

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000


ELIZABETH K. MCCLOSKEY, SBN
268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200


JONATHAN C. BOND (*pro hac vice*)
jbond@gibsondunn.com
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: (202) 955-8500

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE META PIXEL TAX FILING CASES | Case No. 5:22-cv-07557-PCP (VKD) |
| This Document Relates To: | **DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF ROBERT ZEIDMAN** |
| All Actions | |
| | Date: January 15, 2026<br>Time: 10:00 a.m.<br>Court: Courtroom 8, 4th Floor<br>Honorable P. Casey Pitts |

**REDACTED**

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

**NOTICE OF MOTION AND MOTION TO EXCLUDE**

**TO THE COURT, CLERK, PLAINTIFFS, AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on January 15, 2026, before the Honorable P. Casey Pitts of the United States District Court for the Northern District of California, Courtroom 8, 280 South 1st Street, San Jose, California, 95113 Defendant Meta Platforms, Inc. ("Meta"), will, and hereby does, move this Court for an order to strike and exclude the expert report and testimony of Robert Zeidman submitted by plaintiffs in support of their Notice of Motion and Motion for Class Certification.

Meta's Motion is made pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, ("*Daubert I*") 509 U.S. 579 (1993), and pursuant to the Court's discretion to disregard unsupported evidence in connection with a motion under Rule 23 to certify a class, on the grounds that Zeidman's report and testimony should be excluded because his opinions and observations are not based on sufficient training and experience, not helpful to determining a fact in issue, not based on sufficient facts or data, not the product of reliable principles and methods, and not tied to the facts of the case.

Meta's Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Jessica Stebbins Bina and all exhibits thereto, the complete files and records of this action, and any matters and arguments as may come before the Court, including in connection with any oral argument relating to this Motion.

DATED: October 27, 2025

LATHAM & WATKINS LLP

By: /s/ *Jessica Stebbins Bina*
Jessica Stebbins Bina

JESSICA STEBBINS BINA, SBN 248485
jessica.stebbinsbina@lw.com
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Facsimile: (424) 653-5501

MELANIE M. BLUNSCHI, SBN 234264

melanie.blunschi@lw.com
KRISTIN I. SHEFFIELD-WHITEHEAD,
SBN 304635
kristin.whitehead@lw.com
DIANNE KIM, SBN 348367
dianne.kim@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-8129
Facsimile:   (415) 395-8095

MARISSA ALTER-NELSON (*pro hac vice*)
marissa.alter-nelson@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200

JONATHAN C. BOND (*pro hac vice*)
jbond@gibsondunn.com
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: (202) 955-8500

*Attorneys for Defendant Meta Platforms, Inc.*

1

## TABLE OF CONTENTS

2

**Page**

3  INTRODUCTION ............................................................................................ 1

4  LEGAL STANDARD ...................................................................................... 3

5  BACKGROUND ............................................................................................. 3

6      I.      Procedural History and Context .................................................... 3

7      II.     Zeidman's Experience and Role in Class Certification. ................. 4

8  ARGUMENT ................................................................................................... 4

9      I.      All Zeidman's Opinions Should Be Excluded Because Zeidman is
               Not Qualified to Opine on the Meta Pixel. .................................... 5
10

11     II.     The Uniformity Opinion Should Be Excluded. ............................... 6

12             A.      Zeidman Did Not Actually Analyze the Meta Pixel, Even
                       Though He Could Have. ..................................................... 6

13             B.      Zeidman Instead Relied on Unwarranted Assumptions ........... 8

14     III.    The Pen Register Opinion Should Be Excluded. ........................... 13

15             A.      Zeidman's "Pen Register" Opinion Is an Improper Legal
                       Conclusion. ..................................................................... 13
16

17             B.      The Pen Register Opinion Is Based on Demonstrably
                       Inaccurate Assumptions and Misleadingly Partial Selection
18                     of Relevant Facts. ............................................................ 14

19     IV.     The Tax Information Opinion Should Be Excluded. ...................... 16

20     V.      The Visitation Count Opinion Should Be Excluded. ...................... 18

21  CONCLUSION ............................................................................................. 21

22

23

24

25

26

27

28

META'S MOT. TO EXCLUDE THE EXPERT
REPORT AND TESTIMONY OF ZEIDMAN
CASE NO. 5:22-CV-07557-PCP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Avila v. Willits Env't Remediation Tr.*,
   633 F.3d 828 (9th Cir. 2011) ........................................................................ 5

*Claar v. Burlington N.R.R.*,
   29 F.3d 499 (9th Cir. 1994) ........................................................................ 10

*Daubert v. Merrell Dow Pharm., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ........................................................................ 3

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ........................................................................ ii, 5

*Davidson v. Apple, Inc.*,
   2018 WL 2325426 (N.D. Cal. May 8, 2018) ........................................................................ 19

*Domingo ex rel. Domingo v. T.K.*,
   289 F.3d 600 (9th Cir. 2002) ........................................................................ 6, 9, 17

*Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*,
   285 F.3d 609 (7th Cir. 2002) ........................................................................ 5

*Elliot v. Google Inc.*,
   45 F. Supp. 3d 1156 (D. Ariz. 2014) ........................................................................ 5

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ........................................................................ 3

*Friend v. Time Mfg. Co.*,
   422 F. Supp. 2d 1079 (D. Ariz. 2005) ........................................................................ 12

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ........................................................................ 12

*Griffith v. TikTok, Inc.*,
   2024 WL 4874556 (C.D. Cal. Oct. 22, 2024) ........................................................................ 16

*Guidroz-Brault v. Missouri Pac. R. Co.*,
   254 F.3d 825 (9th Cir. 2001) ........................................................................ 6, 9, 17

*Haas v. Travelex Ins. Servs. Inc.*,
   679 F. Supp. 3d 962 (C.D. Cal. 2023) ........................................................................ 13

*In re MyFord Touch Consumer Litig.*,
   291 F. Supp. 3d 936 (N.D. Cal. 2018) ........................................................................ 9

META'S MOT. TO EXCLUDE THE EXPERT
REPORT AND TESTIMONY OF ZEIDMAN
CASE NO. 5:22-CV-07557-PCP

*In re Packaged Foods Antitrust Litig.,*
    2020 WL 4530744 (S.D. Cal. Aug. 6, 2020) ........................................................................ 19

*In re Volkswagen "Clean Diesel" Mktg, Sales Pracs., & Prods. Liab. Litig.,*
    2020 WL 6688912 (N.D. Cal. Nov. 12, 2020) ..................................................................... 19

*Kamakahi v. Am. Soc'y for Reprod. Med.,*
    305 F.R.D. 164 (N.D. Cal. 2015) ........................................................................... 3, 18, 20

*Klein v. Meta Platforms, Inc.,*
    766 F. Supp. 3d 956 (N.D. Cal. 2025) ....................................................................... passim

*Liaw v. United Airlines, Inc.,*
    2019 WL 6251204 (N.D. Cal. Nov. 22, 2019) ...................................................................... 6

*Lytle v. Nutramax Lab'ys, Inc.,*
    114 F.4th 1011 (9th Cir. 2024) ................................................................................. 3

*Myers v. United States,*
    2014 WL 6611398 (S.D. Cal. Nov. 20, 2014) ...................................................................... 7

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,*
    523 F.3d 1051 (9th Cir. 2008) ................................................................................. 13

*Newkirk v. Conagra Foods, Inc.,*
    438 F. App'x 607 (9th Cir. 2011) ................................................................. 13, 16, 18

*NuVasive, Inc. v. Kormanis,*
    2019 WL 9633645 (M.D.N.C. Mar. 18, 2019) ...................................................................... 7

*Rambus Inc. v. Hynix Semiconductor Inc.,*
    254 F.R.D. 597 (N.D. Cal. 2008) ........................................................ 7, 10, 12, 17

*Sali v. Corona Reg'l Med. Ctr.,*
    909 F.3d 996 (9th Cir. 2018) ................................................................................. 3

*Siquiros v. General Motors LLC,*
    2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ........................................................................ 6

*Stein v. Pac. Bell,*
    2007 WL 831750 (N.D. Cal. Mar. 19, 2007) ...................................................................... 6

*United States ex rel. Jordan v. Northrup Grumman Co.,*
    No. CV-95-2985, 2003 WL 27366247 (C.D. Cal. Feb. 24, 2003) ........................................ 11

*United States v. Artero,*
    121 F.3d 1256 (9th Cir. 1997) ......................................................................... 12, 16

*United States v. Tamman,*
    782 F.3d 543 (9th Cir. 2015) ................................................................................. 13

*Walker v. Conagra Brands, Inc.*,
  2023 WL 8885148 (C.D. Cal. Sept. 21, 2023) ................................................................ 5

*Waymo*,
  2017 WL 5148390 .......................................................................................................... 18

*Williams v. Lockheed Martin Corp.*,
  2011 WL 2200631 (S.D. Cal. June 2, 2011) ................................................................... 12

## STATUTES

Cal. Penal Code § 637.2 ....................................................................................................... 2

Cal. Penal Code § 637.2(a)(1) ............................................................................................ 18

Cal. Penal Code § 638.50 ................................................................................................... 13

Cal. Penal Code § 638.51 (2023) ......................................................................................... 4

## RULES

Fed. R. Civ. P. 23 .......................................................................................................... ii, 3

Fed. R. Civ. P. 702 ........................................................................................................ 1, 5

Fed. R. Evid. 702 ................................................................................................................ ii

## OTHER AUTHORITIES

https://www.safe-corp.com/ .................................................................................................. 4

https://www.zeidmanconsulting.com/index.htm .................................................................. 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Meta respectfully moves to exclude the report and testimony of plaintiffs' technical expert, Robert Zeidman, offered in support of class certification. Zeidman's opinions fail under Rule 702 at every step: they are outside his expertise, untethered to any reliable methodology, and irrelevant to the issues that matter for class certification. Each of Zeidman's four opinions is independently unreliable and irrelevant to class certification:

- **Uniformity Opinion.** Zeidman asserts the Meta Pixel collected and transmitted data in a "largely uniform" way across both H&R Block's and TaxAct's websites (the "Websites") and throughout the full class periods. Plaintiffs rely on the Uniformity Opinion to argue that class certification is appropriate because common questions of law and fact predominate over individual issues. But Zeidman's opinion rests on speculation: Zeidman *assumed* that the Meta Pixel operated in the same way across both Websites and over the entire class period, rather than actually *analyzing* the provided data. At deposition, he was forced to acknowledge that there is substantial, unquantifiable variation in the Meta Pixel's operations, rendering his Uniformity Opinion unsupported and unhelpful.

- **Pen Register Opinion.** Zeidman asserts that the Meta Pixel transmitted "pen register" data from users of both Websites. Plaintiffs rely on the Pen Register Opinion for their newfound argument that even if highly confidential tax filing information is not transmitted via the Meta Pixel, a class of persons who had disclosure of data meeting CIPA's definition of "pen register" data might nonetheless be certified. Meta Opp. To Class Cert ("Opp") at 2–3, 13–14. Zeidman, however, neither relies on a clear definition of "pen register" data, nor measures its prevalence in the actual data samples he reviewed. With respect to definition, Zeidman improperly relied on his own personal interpretation of CIPA—an impermissible legal conclusion—not any technical analysis. And with respect to measurement, Zeidman failed to understand numerous facts about the data he reviewed: (a) several data fields he claims were ███████

were actually ████████ (b) IP addresses do not correlate with physical locations in many instances; and (c) █████████████████████████████████

████████████████████████

- **Tax Information Opinion.** Zeidman asserts that an ███████████████ ████████████████. However, he never defines ███████████ which means, critically for class certification, that there is no way under Zeidman's opinion to measure whether such information is sensitive or confidential, and thus no way to measure whether it either (a) implicates traditional privacy rights sufficient for Article III standing or (b) is subject to a consent defense based on Meta's policies. Opp at 11–12, 24–25. Further, Zeidman's examples include data fields that have no relation to "tax information" whatsoever. Even more problematic, Zeidman makes no effort to ████████████████████████████ When asked, █████████████ ████████████████████████████

- **Visitation Count Opinion.** Finally, Zeidman's method for █████████████ ████████████████. Plaintiffs rely on Zeidman's █████████ to assert that "a statutory damages framework can be applied to the data to determine classwide damages in this case by, for example, multiplying the visits to H&R Block's and TaxAct's websites by the $5,000 per violation provided by Section 637.2." Dkt. 214 at 15. But Zeidman's opinion does not support this, █████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████

At class certification, expert testimony must reliably advance material issues such as commonality and predominance. Zeidman's opinions do not. They rest on faulty assumptions and subjective guesswork, and they offer no reliable way to show classwide proof of liability or damages. The Court should exclude his report and testimony in full.

**LEGAL STANDARD**

At all stages, courts apply the *Daubert* standard when evaluating expert testimony. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018). Whether a district court conducts "a 'full' [or] 'limited' *Daubert* inquiry is a function of what aspect of FRCP 23 is being addressed" and what information was available to the expert. *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1030 (9th Cir. 2024). Under either inquiry, district courts evaluate whether the expert's testimony "both rests on a reliable foundation and is relevant to the task at hand." *Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956, 961 (N.D. Cal. 2025) (citation omitted) (excluding an expert as unreliable at class certification).

At class certification, "[t]he reliability prong requires the court to act as a gatekeeper to exclude junk science," and "should be excluded as unreliable if it suffer[s] from serious methodological flaws." *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 176 (N.D. Cal. 2015) (citations omitted); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).

Relevance "depends on what the parties will need to show to support or defeat class certification, and the class certification questions of predominance and commonality in turn depend on the elements of [the] underlying [] claim." *Kamakahi*, 305 F.R.D. at 174. A court "must ensure that the proposed expert testimony . . . logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharm., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1315 (9th Cir. 1995). If it does not, the expert testimony must be excluded. *Kamakahi*, 305 F.R.D. at 182.

**BACKGROUND**

## I.    Procedural History and Context

 "Meta's Pixel is a free, publicly available piece of code that third-party website developers can choose to install and use on their websites to measure certain actions taken on their own websites." Dkt. 223-1 (Zeidman Report) Ex. J ¶ 3. Third-party website developers install and configure the Meta Pixel on their sites. Dkt. 223-1 ¶ 31. Thus, these third-party website developers decide what information to send using the Meta Pixel code (called an "event"). *Id.* Ex. J ¶ 4; Ex. E at 2. In their Second Amended Complaint ("SAC"), Plaintiffs allege that because of TaxAct and

1  H&R Block's use of the Meta Pixel code, Meta obtained "sensitive" or "confidential tax

2  information obtained from [] users' interactions on third-party online tax [] sites." Dkt. 180 ¶¶ 70–

3  72. Plaintiffs also claim that the Meta Pixel works as an unauthorized pen register, in violation of

4  section 638.51 of California's Invasion of Privacy Act ("CIPA"). *Id.* ¶¶ 127–31.

5      In their motion for class certification (the "Class Cert Motion"), plaintiffs seek to certify

6  eight classes. *See* Dkt. 214 at 6–7. Limited only by time—and, with respect to two proposed

7  California classes, by jurisdiction—each proposed class period encompasses "all individuals" who

8  "visited" either HRBlock.com or TaxAct.com. *Id.*  For H&R Block, all proposed class periods

9  span from January 15, 2019, to June 30, 2023. *Id.* The proposed class periods for TaxAct are even

10  longer, spanning from August 25, 2015, to June 30, 2023. *Id.*

11  **II.    Zeidman's Experience and Role in Class Certification.**

12      Plaintiffs hired Robert Zeidman, an electrical engineer who concentrated his expert career

13  in intellectual property matters—not data privacy—to opine on the Meta Pixel in support of their

14  Class Cert Motion. Dkt. 223-1 Ex. B. ███████████████████████████████

15  ████████████████████████████████████████████████████

16  ████████████████████ There is nothing in his published works that involves anything

17  related to pixel technologies, their data transmissions, or even consumer data more generally. Dkt.

18  223-1 Ex. B at 28–35. Though Zeidman Consulting does "expert witness work and consulting on

19  litigation," its website does not advertise any specialty involving pixel technology and related data

20  transmissions or even consumer data generally; rather, it repeatedly highlights intellectual

21  property.[1] Similarly, Zeidman's other company, Software Analysis and Forensic Engineering

22  Corporation, provides "software analysis and comparison tools *for IP litigation*."[2]  (emphasis

23  omitted).

**ARGUMENT**

25      Each of Zeidman's opinions should be excluded. As a threshold matter, he lacks the

26  training and experience to offer any of them. Further, each opinion fails on its own merits because

---

[1] https://www.zeidmanconsulting.com/index.htm.
[2] https://www.safe-corp.com/.

each is unreliable, unsupported, and irrelevant. The Court should strike and exclude Zeidman's Report in its entirety.

## I.    All Zeidman's Opinions Should Be Excluded Because Zeidman is Not Qualified to Opine on the Meta Pixel.

A district court may properly exclude an expert who offers opinions outside "the reasonable confines of his subject area" without even evaluating the reliability of his methods. *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011) (citation omitted). "A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002).

Ex. 1 at 21:20–23; *see also* Dkt. 223-1 at 2–3 (software experience includes e-learning, remote backup, and gaming); Dkt. 223-1 Ex. B. But this is not an intellectual property case, and Zeidman's expertise in intellectual property is irrelevant to the pixel technology and related data. His report should be excluded on this basis alone. *Dura Auto.*, 285 F.3d at 614; *Walker v. Conagra Brands, Inc.*, 2023 WL 8885148, at *11 (C.D. Cal. Sept. 21, 2023).

Zeidman's lack of relevant expertise became evident during his deposition when he repeatedly confessed that he did not know or understand core concepts in the Meta Pixel or its data transmissions. Fed. R. Civ. P. 702.

*Id.* at 130:14–131:6; Zervas Report ¶¶ 93–100. These admissions demonstrate that Zeidman has no "reliable basis in the knowledge and experience of [the relevant] discipline," *Daubert I*, 509 U.S. at 592, and  his failure to have actual expertise in the relevant subject area renders all of his opinions unreliable and calls for exclusion in full. *Elliot

1   *v. Google Inc.*, 45 F. Supp. 3d 1156, 1169–70 (D. Ariz. 2014).

2   **II.    The Uniformity Opinion Should Be Excluded.**

3       Zeidman's Uniformity Opinion should be excluded because Zeidman assumed the very

4   thing he purported to measure; namely, that the ███████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████████████████

6   ████████    Dkt. 223-1 ¶ 57(1).

7       "An expert's opinions are 'inherently unreliable' if they do not rest on a sufficient factual

8   foundation and are speculative." *Klein*, 766 F. Supp. 3d at 961 (citation omitted); *Guidroz-Brault*

9   *v. Mo. Pac. R. R.  Co.*, 254 F.3d 825, 829 (9th Cir. 2001); *Domingo ex rel. Domingo v. T.K.*, 289

10  F.3d 600, 607 (9th Cir. 2002). As detailed below, Zeidman performed no independent technical

11  analysis of how the Meta Pixel was configured on the Websites.  Instead, he made assumptions.

12  He assumed that the Meta Pixel was installed on all pages of the Websites, that it was configured

13  the same way on both Websites, that these configurations never changed, and that there were no

14  individual variations that impacted how or if data was transmitted.  These assumptions are false

15  and leave Zeidman with no reliable basis to claim classwide uniform operation or effects.

16      **A.    Zeidman Did Not Actually Analyze the Meta Pixel, Even Though He Could**

17          **Have.**

18      Zeidman's Uniformity Opinion is unreliable because he did not conduct any independent

19  technical analysis into the Meta Pixel. Instead, Zeidman merely assumed that ████████████████

20  ████████████████████████████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████ Ex. 1 at 54:6–23, 77:5–78:8. While "[a]n

22  expert may review the record evidence to extract factual bases from which to apply reliable

23  methodologies in deriving an opinion," an expert "may not restate or summarize record evidence

24  and then state a conclusion without applying a methodology that is reliable and which evinces

25  his/her expertise." *Siquiros v. Gen. Motors LLC*, 2022 WL 74182, at *9 (N.D. Cal. Jan. 7, 2022);

26  *Stein v. Pac. Bell*, 2007 WL 831750, at *11 (N.D. Cal. Mar. 19, 2007) (excluding expert who

27  "merely summarize[d] the findings of the [document], and dr[ew] a number of conclusion based

28  solely on speculation").

***Zeidman Parrots Attorney Arguments.*** "[I]t is not acceptable for an expert to rely on summaries provided by a lawyer or on client data cherry-picked by a lawyer, without independently verifying the information." *NuVasive, Inc. v. Kormanis*, 2019 WL 9633645, at *2 (M.D.N.C. Mar. 18, 2019). Throughout his deposition, Zeidman made clear that he had not closely examined the Meta Pixel's configuration or code but instead relied on public information or information provided by plaintiffs' counsel. *Liaw v. United Airlines, Inc.*, 2019 WL 6251204, at *4 (N.D. Cal. Nov. 22, 2019) (excluding opinion that "essentially parrots attorney argument").

Zeidman claims that his Report ███████████████████████████████████████ ████████" Dkt. 223-1 ¶ 57(1). It does not. Rather, Zeidman parrots the SAC and Meta's own public-facing information. In the SAC, plaintiffs allege what the Meta Pixel is and list the "large range of user data" that developers can program the Meta Pixel to transmit. Dkt. 180 ¶¶ 25–28. The SAC is nearly verbatim to Exhibit G of Zeidman's Report, which is Meta's introductory summary of the Meta Pixel. Dkt. 223-1 Ex. G at 1; *see also* Dkt. 223-1 ¶¶ 29, 31. █████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████ Ex. 1 at 53:8–54:5. Neither paragraph includes a reference. Dkt. 223-1 ¶¶ 36–37. However, both reflect the information contained within ███████ ████████████████—all screenshots from Meta's website. *Compare* Dkt. 223-1 ¶¶ 36–37, *with* Dkt. 223-1 ███████████ Similarly, Zeidman did not ███████████████████ ███████████████████████████████████████████████████████████████████ ███████████ Ex. 1 at 113:8–21, 115:1–17, 153:21–154:7.

Zeidman's testimony confirms what is obvious on the face of his Report: Zeidman recites public information about how the Meta Pixel *can* be implemented, not how it *was* implemented in this case. Dkt. 223-1 ¶¶ 28–40. This is not a reliable foundation and Zeidman's opinion should be excluded.

***Didn't Review Source Code or Other Technical Information.*** Without analyzing the Meta Pixel, Zeidman has no basis whatsoever to conclude it ██████████████████████████ ██████████████████████████ Dkt. 223-1 ¶ 57(1). Courts exclude expert opinion when "it is clear from [the expert's] report that he did no analysis." *Rambus Inc. v. Hynix*

1  *Semiconductor Inc.*, 254 F.R.D. 597, 605 (N.D. Cal. 2008); *Klein*, 766 F. Supp. 3d at 961. "Such

2  guesswork cannot pass the reliability standard." *Myers v. United States*, 2014 WL 6611398, at *41

3  (S.D. Cal. Nov. 20, 2014).

4  ████████████████████████████████████████████ Ex. 1 at

5  68:18–70:24; 152:4–9. ███████████████████████████████████

6  ████████████████████, *Id.* at 115:21–116:2. █████████████

7  ████████████████ *Id.* at 137:23–138:7. As detailed

8  below, this failure to analyze the Meta Pixel's operations led Zeidman to assume that it operated

9  in a particular manner—an assumption that was, in most cases, wholly unwarranted.

**B.    Zeidman Instead Relied on Unwarranted Assumptions.**

11  Because Zeidman did not examine the Meta Pixel's actual functionality and configuration,

12  he does not actually understand how it works, generally or on the Websites. Zeidman was unable

13  to explain the three basic kinds of Meta Pixel events: "standard," "automatic," and "custom"

14  events. When asked what his first opinion (that the Meta Pixel operated in a "largely uniform

15  matter on each website") meant, Zeidman stated:

16–21  ████████████████████████████████████████████

22  Ex. 1 at 54:9–23. ***None of this is true.*** ████████████████

23  ████████████████████ *Id.* at 85:25–86:22, 104:13–24, 192:16–23; *see also* Zervas

24  Report ¶ 105–106. ██████████████████████████████████ Ex.

25  1 at 111:5–13; *see also* Dkt. 223-1 ¶ 36. ████████████████████

26  ████████████████████████████████████████████

---

[3] A tag manager is a system that allows a website developer to manage and update the Meta Pixel code on their website from a single online interface, instead of having to change the website's code directly.

1 ████████████████████████████████████████████████████████████████

2 ████████████████████████ Ex. 1 at   110:17–20, 119:17–120:9, 120:15–121:9, 121:21–

3 122:3. These failures, individually and collectively, render his opinion that the Meta Pixel ████

4 ████████████████████████████████████████████████████████ *Guidroz-*

5 *Brault*, 254 F.3d at 829–30; *Domingo*, 289 F.3d at 607.

6     ***Automatic Events.*** A core aspect of Zeidman's opinion with respect to the ████

7 ████████████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████████

15 ███████████████████████

16     When asked directly, Zeidman repeatedly confirmed his understanding ████

17 ████████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████████████

23 ██████████████████

24     Zeidman's "understanding" is wrong. *In re MyFord Touch Consumer Litig.*, 291 F. Supp.

25 3d 936, 967 (N.D. Cal. 2018) (recognizing a court may strike an expert if their "factual assumptions

26 are indisputably wrong") (citation omitted). As Zeidman was forced to admit, ████████████

27 ████████████████████████████████████████████████████████████ Ex. 1 at

28 103:19–104:5, 192:16–23. ████████████████████████████████████ *Id.* at

1   104:13–24.

2   *Id*. at 87:9–20

3

4   Zeidman's opinion with respect to the "largely uniform" nature of Meta Pixel transmissions does

5   not account for this basic difference and is thus entirely unreliable. *Claar v. Burlington N.R.R.*, 29

6   F.3d 499, 502 (9th Cir. 1994) (affirming exclusion of opinions that were "unsupported

7   speculation").

8       ***Custom Events***. Zeidman also did not analyze custom events. *Rambus*, 254 F.R.D. at 605.

9

10

11   Ex. 1 at 116:19–117:13.

12

13   " *Id*. at 119:17–120:9. Despite knowing this, Zeidman

14   made absolutely no effort to understand *how* H&R Block or TaxAct actually *had* configured the

15   Meta Pixel. This matters because, as Zeidman acknowledged, the specific data he cited in his report

16   as "tax information" was custom data transmitted by TaxAct (*i.e.*, it was not Meta-generated and

17   was not transmitted at all by H&R Block).

18

19

20

21

22

23   *Id*. at 152:4–9 (emphasis added). Incredibly, Zeidman acknowledged that

24

25

26   *Id*. at 172:7–173:21.

27       ***Didn't Review Change Over Time.*** Zeidman also wholly failed to analyze whether H&R

28   Block's or TaxAct's configurations of the Meta Pixel code changed during the class period.

*Rambus*, 254 F.R.D. at 605. Despite the sample data set covering only certain dates over a one-year period ████████████████████ Zeidman did not analyze any changes over time. Instead, he ████████████████████████

████ This assumption lacks ***any*** evidentiary basis. When asked how he determined that H&R Block's and TaxAct's configurations of the Pixel code had not changed over a decade, Zeidman cited only ████████████████████ Dkt. 223-1 ¶ 33, ████████████████ Ex. 1 at 83:9–17; *see also* Dkt. 223-1 ¶ 34, Ex. L. ████████████████████████████████. Ex. 1 at 77:5–78:8; 140:5–10. ███████████████████ *Id*. at 78:3–8.

Caught in this assumption, Zeidman then tried to argue ████████████████████████████████████████████████████████ Ex. 1 at 82:10–16. ████████████████████████████. *Id*. at 82:17–83:17, 90:7–97:2. Experts cannot mischaracterize selected documents and "ma[k]e assumptions where convenient to arrive at the desired result." *United States ex rel. Jordan v. Northrup Grumman Corp.*, 2003 WL 27366247, at *3 (C.D. Cal. Feb. 24, 2003). Zeidman's opinion is consequently inadmissible.

***User-Specific Factors.*** Finally, Zeidman failed to consider user-side interventions (such as consent banners and ad blockers) even though they materially affect Meta Pixel performance. Zervas Report ¶¶ 83–100. For example, Zeidman admitted that ████████████████████



1

2

3

4

5

6   *Id*. at 127:2–128:4;                                                      . An expert

7   opinion "that fails to correct for salient explanatory variables, or even to make the most elementary

8   comparisons, has no value as causal explanation and is therefore inadmissible in a federal court."

9   *United States v. Artero*, 121 F.3d 1256, 1262 (9th Cir. 1997) (internal quotation omitted); *Rambus*,

10  254 F.R.D. at 605. Thus, Zeidman's failure to consider user-side interventions warrants exclusion

11  of his opinions.

12                                             ***

13       Zeidman's failures to understand how the Meta Pixel works fatally undermine his opinion

14  that the Meta Pixel

15                                Dkt. 223-1 ¶ 57(1). Indeed, his opinions do little more

16  than provide counsel with the sound bites they need to support their Class Cert Motion. But

17  "[w]here an 'expert report' amounts to written advocacy . . . akin to a supplemental brief, a motion

18  to strike is appropriate because this evidence is not useful for class certification purposes."

19  *Williams v. Lockheed Martin Corp.*, 2011 WL 2200631, at *15 (S.D. Cal. June 2, 2011).

20

21

22

23

24

25                      Zeidman's opinion that the Meta Pixel operated in a "largely uniform matter"

26  is unsubstantiated and unhelpful, supported only by "ipse dixit guesswork," and should be

27  excluded. *Friend v. Time Mfg. Co.*, 422 F. Supp. 2d 1079, 1081 (D. Ariz. 2005) (citing *Gen. Elec.*

28  *Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

### III.    The Pen Register Opinion Should Be Excluded.

Zeidman's Pen Register Opinion is an improper legal conclusion and is also based on a misconstruction of the data. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008); *Newkirk v. Conagra Foods, Inc.*, 438 F. App'x 607, 609 (9th Cir. 2011). Though he is not a lawyer, Zeidman based his understanding of ████████████ ████████████████████████████ Having created this subjective definition, he made no effort to actually quantify which kinds of "pen register" data (by his definition) were transmitted or how often, either in the sample set he reviewed or more broadly. Zeidman's resulting conclusions fail to demonstrate whether or how often "pen register" data was actually transmitted, rendering his opinion unsupported and unhelpful.

### A.    Zeidman's "Pen Register" Opinion Is an Improper Legal Conclusion.

Zeidman's "pen register" opinion must be excluded as an impermissible opinion on the law. Rep. ¶¶ 4(b), 28–29, 57(2). "[A]n expert witness cannot give an opinion as to [his] legal conclusion, i.e., an opinion on an ultimate issue of law." *Nationwide Transp.*, 523 F.3d at 1058 (internal quotation marks and citation omitted) (expert's legal conclusions invaded province of trial judge in instructing jury on legal issues, and constituted erroneous statements of law, and were inadmissible); *see also United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015) ( "expert cannot testify to a matter of law amounting to a legal conclusion"); *Haas v. Travelex Ins. Servs. Inc.*, 679 F. Supp. 3d 962, 967–68 (C.D. Cal. 2023) (excluding opinions that were "indistinguishable" from legal conclusions). "Resolving doubtful questions of law is the distinct and exclusive province of the trial judge." *Nationwide Transp.*, 523 F.3d at 1058 (internal quotation marks and citation omitted).

Zeidman did not conduct any kind of technical analysis to quantify specific kinds of data that the Court may subsequently determine are (or are not) "pen register" data. He did not assume that certain kinds of data are "pen register" data and then examine whether such data was present. ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████. Ex. 1 at 58:18–59:6; 60:1–24.

1   This is improper. ███████████████. *Id*. at 60:15–16. And nothing in his background

2   gives him special expertise in determining the definition of "pen register" data. *See generally* Dkt.

3   223-1 Ex B. The Report restates the SAC's pen register allegations with an unqualified and

4   improper expert veneer. *Compare* Dkt. 214 ¶¶ 127–35 (SAC quotes the statutory definition of "pen

5   register" and then baldly concludes the Meta Pixel is a "pen register" based on the fact that

6   transmission of data takes place "every time they visited a subject website"), with Dkt. 223-1 ¶¶

7   4(b), 28–29 (same). Because Zeidman's entire Pen Register Opinion rests on his personal

8   interpretation of CIPA, rather than any quantifiable or definable metric or expertise, it is an

9   improper legal opinion and should be excluded.

10   **B.      The Pen Register Opinion Is Based on Demonstrably Inaccurate**

11   **Assumptions and Misleadingly Partial Selection of Relevant Facts.**

12   Having taken it upon himself to define "pen register data," Zeidman also failed to properly

13   measure whether H&R Block or TaxAct transmitted such data to Meta, wrongly concluding ███



16   ██████ These omissions render the Pen Register Opinion wholly irrelevant to, and unsupportive of,

17   the class certification motion, because the opinion neither demonstrates that data supporting a

18   legally cognizable claim was ever transmitted, nor that any such transmissions could be tied to

19   identifiable human users.

20   ***Location Data.*** In his Report, Zeidman asserts that █████████████████████████

21   ████████████████████████████████████ Dkt. 223-1 ¶ 29 (citations omitted).

25   ████████ *Id*. at 146:5–13. ██████████████████████████████

26   ██████████ *Id*.; *see also* Dkt. 223-1 Ex. H at 1–2.[4]

_____

[4] Indeed, the next sentence in his Report partially admits this: ████████████████████ Dkt. 223-
1 ¶ 29.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW



1   ***Whether IP Address Corresponds to Physical Address.*** Zeidman also failed to analyze

6   Ex. 1 at 146:22–148:14.

8   . at 149:15–150:1; *see also* Dkt. 180 ¶ 6 ("Plaintiff Crystal Craig is a

9   citizen of Illinois whose domicile is in Illinois.").

10  Ex. 1 at 149:15–150:1.

11  *Id.* at

12  149:9–11.

13  *Id.* at 131:7–19.

15  . at 131:7–19, 148:10–14.

16  ***Whether Transmitted IP Addresses Correspond to Unique People***. Finally, Zeidman

17  failed to analyze whether each IP address H&R Block and TaxAct sent using the Meta Pixel code

18  corresponds to a unique user that could be traced.

19  First, Zeidman failed to consider the impact of encryption on Meta's

25  Second, Zeidman did not understand that

28  . at 160:7–9; *see also* Dkt. 223-1 ¶¶ 29, 43–44; Dkt.

223-1 Ex. F. ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████ Ex. 1 at 160: 7–161:18.

Expert testimony is unreliable when an expert does "not sufficiently justify [their] foundational assumption or refute the contrary record evidence" because the "analytical gap between the existing data and the opinion [] offered" is "too great." *Newkirk,* 438 F. App'x at 609 (affirming exclusion) (internal quotation marks and citation omitted); *Klein*, 766 F. Supp. 3d at 961; *Artero,* 121 F.3d at 1262. By his own admission, Zeidman cannot say that ████████

████████████████████████████████████████████████████████████████

████████████████████████████ Nor does he quantify how often any of this data appears or whether it can be tied to a specific user who might be part of a class. Zeidman's Pen Register Opinion is wholly speculative and unsupported, and it should be excluded.

## IV.   The Tax Information Opinion Should Be Excluded.

Zeidman's Tax Information Opinion is equally unscientific. Dkt. 223-1 ¶ 57(2). Zeidman neither defined "tax information" nor made any effort to quantify how often it appeared in the data sample. ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████ Ex. 1 at 71:16–72:9.

This is both wrong and unhelpful because Zeidman makes no effort to ████████

████████████████████████████████████████████████████████████████

*Id.* at 71:16–73:18. Courts have found a technical expert's failure to properly assess potential sensitivity of user information, inclusion of hashed (or unidentifiable) information, and overly broad search parameters indicate a "deeply flawed analysis" that "greatly inflate[s] numbers." *Griffith v. TikTok, Inc.*, 2024 WL 4874556, at *2 (C.D. Cal. Oct. 22, 2024) (plaintiffs' motion for

---

[5] ███████████████████████████████████████████████████████████

1    reconsideration of class certification "fail[ed] because it relie[d] on a deeply flawed analysis by

2    [their expert]"). Such errors lead to "absurd results" and are plainly unreliable to support class

3    certification. *Id.* That is the case with Zeidman's Tax Information Opinion.

4        Zeidman's first failure is that he fails to define "tax information." ███████████

5    ██████████████████████████████████████████████████████████████

6    ███  Ex. 1 at 67:4–68:16.



10    *Id.* at 67:23–68:5. Zeidman's opinion—pure speculation—is wrong. NumChildButtons is a

11

12    parameter within the button object SubscribedButtonClick, shown below:

13

14    ███████████████████████████████████████████████████████████

15

16    Ex. 3 (PIXEL_TAX000023351); *see also* Zervas Report ¶ 72. This parameter is akin to a

17    parent/child relationship between objects, like a "parent folder" is a folder that holds other folders

18    and files within a file system hierarchy, acting as the "parent" to its contents, which are known as

19    subfolders or "children." *Id.* Contrary to Zeidman's unfounded speculation, this has nothing to do

20    with a tax filer's number of dependents. *Id.* Zeidman's failure to define "tax information" renders

21    his entire opinion unhelpful because, without such a definition, the Court cannot evaluate what he

22    means when he says that "tax information" was transmitted. As explained in Meta's opposition to

23    class certification, some data that might be considered "tax information" under Zeidman's vague

24    definition could be either (a) not private, and thus not a basis for Article III standing; and/or (b)

25    subject to a consent defense based on Meta's user agreement. Opp. at 10–12, 23–25.

26        Zeidman's failure to define "tax information" is compounded by his further failure to

27    quantify "enormous amount," rendering his opinion inadmissible speculation. *Guidroz-Brault*, 254

28    F.3d at 829–30; *Domingo*, 289 F.3d at 607. As discussed above, ███████████████

1 ███████████████████████████████████████████

2 ██, Ex. 1 at 71:2–13, ███████████████████████

3 ███████████████████████████████ *id.* at 152:4–9; *Rambus*,

4 254 F.R.D. at 605 (excluding expert who "did no analysis"). ██████████

5 ██████████████████████████████████████ Ex.

6 1 at 172:7–173:21. In the absence of any analysis of the available data, there is no reliable basis

7 on which Zeidman could have reached his conclusion ████████████████

8 █████████████████████████████ The Tax

9 Information Opinion should be excluded. *Waymo LLC v. Uber Techs. Inc.*, 2017 WL 5148390, at

10 *2 (N.D. Cal Nov. 6, 2017) (excluding expert who did "not apply any coherent principle,

11 methodology, theory, or technique, much less one possessing any discernible indicia of

12 reliability"); *Klein*, 766 F. Supp. 3d at 961; *Newkirk*, 438 F. App'x at 609.

13 **V.    The Visitation Count Opinion Should Be Excluded.**

14     Zeidman's final opinion, the Visitation Count Opinion, fails both on its own merits and for

15 all the reasons outlined above. ███████████████████████████

16 ███████████████████████████████████████████

17 ██████████ Dkt. 223-1 ¶¶ 51–56. █████████████████

18 ███████████████████████████████████████████

19 █████████████ Dkt. 223-1 ¶ 56; *see also* Ex. 1 at180:3–181:22.

20     The Visitation Count Opinion fails both because it depends on his unsupported Uniformity

21 Opinion, Pen Register Opinion, and Tax Information Opinion, ██████████████

22 ███████████████████████████████████████████

23 ████████████████████████ This opinion thus cannot

24 be "relevant to the issue of class certification," as the number of "visits" to the Websites—as

25 defined by Zeidman—cannot constitute a legally cognizable class. *Kamakahi*, 305 F.R.D. at 182.

26     In *Kamakahi*, the court excluded all three of an expert's reports because "his analysis [did]

27 not reliably support his conclusion that impact or damages [were] subject to classwide proof" and

28 "absent such a showing, his reports [were] not relevant to the issue of class certification." 305

1  F.R.D. at 179–82. Here, plaintiffs claim various statutory damages frameworks can be applied to

2  the "visit" data by "multiplying the visits to H&R Block's and TaxAct's websites by the $5,000

3  per violation provided by Section 637.2(a)(1)." Dkt. 214 at 15 (relying on Zeidman's

4  methodology). Applying Zeidman's methodology to plaintiffs' damages framework presupposes

5  that each site visit constitutes a violation of law. *Id.* For that to be true, the visit must (among other

6  things) be traced to a human user. *Id.* And from there, the user's visit must transmit legally

7  actionable data that a user had a right not to have transmitted. Opp. at 15–31; *see also* Dkt. 214 at

8  10–14.

9         Zeidman's Visitation Count Opinion fails in the first instance because it requires that each

10  "visit" constitute a "violation," a conclusion Zeidman attempts to support with his ███████

11  ████████████████████████████████████████████████████████████████

12  ██████████████████████████████████████████. Dkt. 223-1 ¶¶ 29, 57. But as

13  detailed above, Zeidman's opinions on each of these points are speculative. Zeidman cannot say

14  what data was transmitted (thus there is no way to determine if at-issue data was transmitted),

15  when it was transmitted, or whether it was transmitted █████████████████████████

16  ████████. *See supra* Sections I–IV. This alone renders the Visitation Count Opinion

17  irrelevant. *See supra* Sections I–IV.

18         The Visitation Count Opinion itself also fails to assess the type of information that was

19  transmitted, untethering Zeidman's method of calculating visits from plaintiffs' theory of liability.

20  *Davidson v. Apple, Inc.*, 2018 WL 2325426, at *23 (N.D. Cal. May 8, 2018) (excluding expert

21  testimony that "unmoors Plaintiffs' damages from the specific touchscreen defect alleged to have

22  harmed them"); *see also In re Packaged Seafood Prods. Antitrust Litig.*, 2020 WL 4530744, at *2

23  (S.D. Cal. Aug. 6, 2020); *In re Volkswagen "Clean Diesel" Mktg, Sales Pracs., & Prods. Liab.

24  Litig.*, 2020 WL 6688912, at *9–10 (N.D. Cal. Nov. 12, 2020) (excluding expert's opinion as

25  irrelevant where expert failed to tailor analyses to pertinent damages theories). Specifically,

26  Zeidman's method of calculating visits does not (and cannot) support plaintiffs' proposed

27  classwide damages theory because ████████████████████████████████████

28  █████████████████████████████████████████████. Dkt. 223-1 ¶¶ 51–

1    56.

2       First, Zeidman's method fails to match a "visit" to a human user. Zeidman made no attempt

3    to match "visits" to putative class members, even though he acknowledged that putative class

4    members, particularly those who disclosed any sensitive data, may well have made multiple visits.

15   When subsequently

16   presented hypotheticals,

19   *Id.* at 179:9–21.

20       Second, Zeidman's method fails to account for whether at-issue information was

21   transmitted with each "visit"—a critical point because plaintiffs' proposed damages calculation

22   assumes that each and every "visit" is a violation of the law.   As explained above, Zeidman merely

23   assumes that

25   *Id.* at 176:25–177:10.

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW

META'S MOT. TO EXCLUDE THE EXPERT
REPORT AND TESTIMONY OF ZEIDMAN
CASE NO. 5:22-CV-07557-PCP

1    *Id.* at 176:25–177:10. This would mean that a user ████████████████████████

2    ████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████

4    ████████████████    *Id.* at 178:5–16.

5          Zeidman's method underlying the Visitation Count Opinion does not support class

6    certification as it does not "evidence[] that a statutory damages framework can be applied to the

7    data to determine classwide damages in this case." Dkt. 214 at 15; *Kamakahi*, 305 F.R.D. at 182.

8    Thus, the Visitation Count Opinion is unreliable and irrelevant and, consequently, must be

9    excluded.

10    ## CONCLUSION

11          The Court should exclude the report and testimony of Robert Zeidman.

12

13    DATED: October 27, 2025                LATHAM & WATKINS LLP

14

15    By: /s/ *Jessica Stebbins Bina*
      Jessica Stebbins Bina

16

17    JESSICA STEBBINS BINA, SBN 248485
jessica.stebbinsbina@lw.com

18    10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

19    Telephone: (424) 653-5500
Facsimile:  (424) 653-5501

20

21    MELANIE M. BLUNSCHI, SBN 234264
melanie.blunschi@lw.com

22    KRISTIN I. SHEFFIELD-WHITEHEAD,
SBN 304635

23    kristin.whitehead@lw.com
DIANNE KIM, SBN 348367

24    dianne.kim@lw.com
505 Montgomery Street, Suite 2000

25    San Francisco, CA 94111
Telephone: (415) 395-8129

26    Facsimile:  (415) 395-8095

27    MARISSA ALTER-NELSON (*pro hac vice*)

28    marissa.alter-nelson@lw.com

1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200

JONATHAN C. BOND (*pro hac vice*)
jbond@gibsondunn.com
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: (202) 955-8500

*Attorneys for Defendant Meta Platforms, Inc.*

META'S MOT. TO EXCLUDE THE EXPERT
REPORT AND TESTIMONY OF ZEIDMAN
CASE NO. 5:22-CV-07557-PCP