# EXHIBIT A

**American Arbitration Association®**

**DEMAND FOR ARBITRATION
CONSUMER ARBITRATION RULES**

Complete this form to start arbitration under an arbitration agreement in a contract.

| | |
|---|---|
| 1. Which party is sending in the filing documents? *(check one)* ☑ Consumer ☐ Business | |
| 2. Briefly explain the dispute: Claimant claims that Respondents violated federal and state privacy laws, specifically the Federal Wiretap Act, 18 USC § 2510 et seq., and common law claims for invasion of privacy. Claimant's additional allegations are on the supplement attached to this Demand. | |
| 3. Specify the amount of money in dispute, if any: $ 10,000 per violation as statutory damages; see supplement | |
| 4. State any other relief you are seeking: ☑ Attorney Fees ☑ Interest ☑ Arbitration Costs ☑ Other; explain: punitive damages | |
| 5. Identify the requested city and state for the hearing if an in-person hearing is held: City: Springfield    State: Select... IL | |
| 6. Please provide contact information for both the Consumer and the Business. Attach additional sheets or forms as needed. | |

**Consumer:**

| Name: Cessley Cole | | |
|---|---|---|
| Address: c/o Zimmerman Reed, 6420 Wilshire Blvd., Suite 1080 | | |
| City: Los Angeles | State: California | Zip Code: 90048 |
| Telephone: 877.500.8780 | Fax: 877.500.8781 | |
| Email Address: rellersick@zimmreed.com; clm@zimmreed.com; docketca@zimmreed.com | | |

**Consumer's Representative (if known):**

| Name: Ryan Ellersick & Caleb Marker | | |
|---|---|---|
| Firm: Zimmerman Reed, LLP | | |
| Address: 6420 Wilshire Blvd., Suite1080 | | |
| City: Los Angeles | State: California | Zip Code: 90048 |
| Telephone: 877.500.8780 | Fax: 877.500.8781 | |
| Email Address: ryan.ellersick@zimmreed.com; clm@zimmreed.com; docketca@zimmreed.com | | |

**Business:**

| Name: HRB Digital LLC & HRB Tax Group, Inc. | | |
|---|---|---|
| Address: One H&R Block Way | | |
| City: Kansas City | State: Missouri | Zip Code: 64105 |
| Telephone: | Fax: | |
| Email Address: | | |

AMERICAN ARBITRATION ASSOCIATION®

**DEMAND FOR ARBITRATION
CONSUMER ARBITRATION RULES**

| Business' Representative (if known): | | |
|---|---|---|
| Name: Anthony Durone | | |
| Firm: Berkowitz Oliver | | |
| Address: 2600 Grand Boulevard, Suite 1200 | | |
| City: Kansas City | State: Missouri | Zip Code: 64108 |
| Telephone: 816-627-0217 | Fax: | |
| Email Address: adurone@berkowitzoliver.com | | |
| Date: 4/21/2025 | | |

**7. Send a copy of this completed form to the AAA together with:**

- A clear, legible copy of the contract containing the parties' agreement to arbitrate disputes;
- The proper filing fee (filing fee information can be found in the Costs of Arbitration section of the Consumer Arbitration Rules); and
- A copy of the court order, if arbitration is court-ordered.

**8. Send a copy of the completed form and any attachments to all parties and retain a copy of the form for your records.**

To file by mail, send the initial filing documents and the filing fee to: AAA Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.

To file online, visit **www.adr.org** and click on **File or Access Your Case** and follow directions. To avoid the creation of duplicate filings, the AAA requests that the filing documents and payment be submitted together. When filing electronically, no hard copies are required.

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

Pursuant to New Jersey Statutes § 2A:23B-1 et seq, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the New Jersey Arbitration Act, and to all consumer arbitrations conducted in New Jersey. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

# Attachment A

**SUPPLEMENT TO THE DEMAND FOR ARBITRATION**

**2.   Briefly explain the dispute**:

1.      Respondents HRB Digital, LLC and HRB Tax Group, Inc. (collectively "H&R Block" or "Respondents") provide taxpayers with "assisted and do-it-yourself (DIY) tax preparation solutions through multiple channels (including in-person, online and mobile applications, virtual, and desktop software)."[1]   H&R Block operates the www.hrblock.com website (the "website") in and from its offices and facilities in Kansas City, Missouri.

2.      Claimant is an H&R Block customer who used Respondents' online tax-preparation services to file their taxes in at least calendar years 2021 and/or 2022.  Respondents' online tax-preparation program is accessed by consumers like Claimant on the website.  As part of the tax preparation process on the website, Respondents' program instructs consumers like Claimant to input personal and private data.  Unbeknownst to Claimant, H&R Block deployed certain tracking technologies, including embedded pixels, on the tax preparation program on the website, which triggered the unlawful disclosure of Claimant's private tax return information to Meta, Google, and other potential third parties without advance consent.  Such conduct was unlawful and unfair, and caused injury and harm to Claimant for which all available monetary, legal and equitable relief should be provided.

3.      Claimant's dispute challenges Respondents' common conduct using tracking technologies, including embedded pixels, to intercept Claimant's information and interactions with the website, www.hrblock.com, without the prior consent of Claimant, and disclose that information to third parties, including but not limited to Meta Platforms, Inc. ("Meta") and Google, LLC ("Google").  The tracking conduct at issue includes the real-time interception and disclosure of the content of Claimant's communications including personal and private tax return information. The tracking technologies were active and began intercepting Claimant's communications to the website the moment Claimant accessed the site and continued disclosing Claimant's sensitive tax information to Meta and Google as Claimant prepared their taxes.  On information and belief, Respondents disclosed Claimant's tax information to Meta, Google and/or other third-parties through the pixels it agreed to secretly embed on its website program for the purpose of retargeting Claimant and others with advertising, all in an effort to increase Respondents' revenue.   Third-parties Meta and Google likewise benefited from the use of Claimant's data, including by selling advertising to Respondents and other companies seeking to target individuals like Claimant.

4.      Additional details regarding the unlawful disclosure practices that Claimant was subjected to are outlined in the November 2022 report by *The Markup*.  According to that report, H&R Block "embedded a pixel on its site that gathered information on filers' health savings account usage and dependents' college tuition grants and expenses."[2]   After being confronted with this information, H&R Block told *The Markup* that it removed the pixel from its tax filing

---

[1] H&R Block Form 10-K at p. 3 (Aug. 15, 2024), https://investors.hrblock.com/node/32116/html (last accessed Dec. 12, 2024).

[2] The Markup, "Tax Filing Websites Have Been Sending Users' Financial Information to Facebook" (Nov. 22, 2022),  https://themarkup.org/pixel-hunt/2022/11/22/tax-filing-websites-have-been-sending-users-financial-information-to-facebook (last accessed Dec. 12, 2024).

2

website "to stop any client tax information from being collected."[3] In response to *The Markup*'s report, the U.S. Senate initiated an investigation into H&R Block's unlawful data-sharing practices, which revealed that the disclosures were much more serious than previously reported. The Senate report found that "[t]hrough the Meta Pixel and Google's business tools, the tax prep companies investigated in this report - TaxAct, TaxSlayer, and H&R Block - recklessly disclosed and misused the personal tax return information of potentially millions of taxpayers."[4] In response to the congressional inquiry, H&R Block told Senate investigators that H&R Block had been using the Meta Pixel for "at least a couple of years."[5] According to H&R Block, "Meta's default settings of their pixel allowed them to collect additional information, including page title information from our online tax filing service."[6] In addition, "[s]ome of those page titles included a subset of information related to the customer and his or her tax situation, including the first name of the taxpayer and aggregate amounts relating to HSA contributions, scholarships, and education expenses."[7] H&R Block also revealed that "the Pixel transmitted information on page headers- meaning that the Pixel would transmit information on whether taxpayers had visited pages for many broad categories, such as dependents, certain types of income (such as rental income or capital gains), and certain tax credits or deductions."[8]

5. The investigation also discovered that H&R Block disclosed protected tax return information to Google. According to the report, "H&R Block representatives communicated that they were 'not aware' of any other pixels used on their website, 'past or present,' despite Google confirming that H&R Block did have [Google Analytics] installed on their website - which was also previously unreported and raises the concern that tax prep companies themselves are unaware of what pixels they are using and how this may be affecting taxpayer privacy."[9] H&R Block also indicated that these disclosures may have impacted every person who used its online tax preparation services. According to the report, "although the companies initially dissembled when it came to revealing how many taxpayers had their data shared with Big Tech firms, they ultimately indicated that - because of the way the pixels were set up and implemented - every single taxpayer who used their websites to file their taxes could have had at least some of their data shared."[10]

6. At relevant times between 2021 and/or 2022, Claimant visited and used Respondents' website to prepare and file their taxes online, and had their tax return information disclosed to Meta and Google via the tracking technologies, without prior affirmative consent. Such conduct violates the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, and gives rise to common law claims for invasion of privacy and intrusion upon seclusion.

---

[3] *Id.*

[4] Warren, et al., "Attacks on Tax Privacy: How the Tax Prep Industry Enabled Meta to Harvest Millions of Taxpayers' Sensitive Data" at p. 39 (July 2023), https://www.warren.senate.gov/imo/media/doc/Attacks%20on%20Tax%20Privacy_Final.pdf (last accessed Dec. 12, 2024).

[5] *Id.* at 11.

[6] *Id.* at 12.

[7] *Id.*

[8] *Id.*

[9] *Id.* at 13.

[10] *Id.*

7. The Federal Wiretap Act prohibits the intentional interception of electronic communications. 18 U.S.C. § 2511(1)(a). Respondent's deployment of the tracking technologies on its website to intercept and disclose taxpayer information to third-parties, including Meta and Google, violates the Federal Wiretap Act. *See Smith v. Google, LLC*, No. 23-CV-03527-PCP, 2024 WL 2808270, at *5 (N.D. Cal. June 3, 2024); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1007 (N.D. Cal. 2024).

8. The default settings for the Meta Pixel trigger the interception of URLs visited, domains visited, and the devices used by visitors. "The URLs, by virtue of including the particular document within a website that a person views, . . . divulg[e] a user's personal interests, queries, and habits." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023). Here, H&R Block admitted to Senate investigators that the Meta Pixel triggered the disclosure of "page title information from [its] online tax filing service," which revealed the substance of a taxpayer's return information.

9. Because the Meta Pixel can only be installed on a website through deliberate action of adding the pixel code to the website, and because the default settings for the Meta Pixel trigger the disclosure of URL and pageview information revealing the substance of user activities on a website, H&R Block did not act by mistake or accident in intercepting and disclosing protected tax return information via the Meta Pixel. Indeed, H&R Block intentionally deployed the Meta Pixel for its intended purpose: to intercept its customers' activities on the Website—including communications regarding the substance of protected tax return information—and disclose those communications to Meta for purposes of ad retargeting.

10. While the Federal Wiretap Act provides an exception to liability for "parties" to the communication, the exception does not apply here because, *inter alia*, Respondents intercepted Claimant's communications "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Specifically, Respondents deployed the tracking technologies for the purpose of sharing customers' tax return information with Meta and Google in violation of 26 U.S.C. § 7216 and/or other law. That provision prohibits "[a]ny person who is engaged in the business of preparing, or providing services in connection with the preparation of [tax returns] . . . and who knowingly or recklessly . . . discloses any information furnished to him for, or in connection with, the preparation of any such return, or uses any such information for any purpose other than to prepare, or assist in preparing, any such return." 26 U.S.C. § 7216(a). The unauthorized disclosure of Claimant's tax return information to two of the largest advertising companies in the world likewise constituted an invasion of privacy, which is a tort and provides an independent basis for applying the crime-tort exception. *See R.C. v. Walgreen Co.*, No. EDCV 23-1933 JGB (SPX), 2024 WL 2263395, at *15 (C.D. Cal. May 9, 2024) (finding crime-tort exception applicable where plaintiffs stated a claim for invasion of privacy based on disclosure of health-related data to third parties).

11. Because Respondents used the tracking technologies "for the purpose" of disclosing its customers' tax return information to Meta and Google for ad retargeting, the crime-tort exception applies, and H&R Block is liable for the interceptions.

12. Respondents' conduct also constituted an invasion of privacy and intrusion upon seclusion. Claimant had a legally protected privacy interest in their personal tax return

4

information and had a reasonably expectation of privacy against unlawful disclosures of such information by Respondents. By deploying the tracking technologies on its website to disclose Claimant's tax return information to Meta and Google (and/or other third-parties), Respondents breached Claimant's expectation of privacy in a manner that is highly offensive.

13. Respondents did not inform Claimant before the tracking activities commenced that H&R Block was secretly tracking Claimant's communications on the website and disclosing protected tax return information in real-time to Meta and Google.

14. The Federal Wiretap Act provides for $10,000 in statutory damages. 18 U.S.C. § 2520.

15. In addition to monetary damages, statutory damages and restitution, Claimant seeks injunctive relief and declaratory relief to stop and prevent the continuation of the practices complained of, which continue to pose a risk of future harm to Claimant. Indeed, Claimant's confidential tax return information remains today in the hands of third parties without Claimant's consent. The challenged conduct may be ongoing and threatens to harm and injure Claimant in the future unless enjoined (including through violation of statutory privacy rights and need to spend time protecting those rights with resulting costs, loss of income and need of counsel). Claimant also seeks reasonable attorneys' fees and costs as may be appropriate and allowed by applicable law.

16. Claimant files their claims pursuant to Respondents' Online Services Agreement ("OSA") published on Respondents' website that were in effect at the time Claimant's claims accrued (prior to 2023).

17. The OSA requires Claimant to present any and all claims in arbitration before AAA on an individual basis. Specifically, the OSA provides:

> You and the H&R Block Parties agree that all disputes and claims between you and the H&R Block Parties shall be resolved through binding individual arbitration unless you opt out of this Arbitration Agreement using the process explained below. However, to the fullest extent permitted by applicable law, either you or the H&R Block Parties may elect that an individual claim be decided in small claims court, as long as it is brought and maintained as an individualized claim and is not removed or appealed to a court of general jurisdiction.
> ***
> A party who intends to seek arbitration must first mail a written Notice of Dispute ("Notice") to the other party.
> ***
> After the Notice containing all of the information required above is received, within 60 days either party may request an individualized discussion (by telephone or videoconference) regarding informal resolution of the dispute ("Informal Settlement Conference"). If timely requested, the parties will work together in good faith to select a mutually agreeable time for the Informal Settlement Conference.

18. This claim is properly filed in AAA at this time as pre-filing notice was provided to Respondents in the manner directed requesting arbitration and describing the claims. Any notice period has expired, and all claims are ripe to proceed before AAA.

19.     Claimant sent their full and complete Notice of Dispute to Respondents via certified mail on September 20, 2024, or October 4, 2024.  Respondents did not begin requesting Informal Settlement Conferences until December 18, 2024. Respondents' own terms are clear, however, that an Informal Settlement Conference must be requested within 60 days of receipt of the Notice. Any request for an Informal Settlement Conference that H&R Block sent for Claimant is therefore untimely.

20.     Claimant is represented by counsel, Zimmerman Reed, LLP in this matter and has retained counsel to present the claims at any hearing or other proceeding on Claimant's behalf.

21.     Claimant instructs Respondents to send all notices, communications, filings and materials regarding this dispute to counsel at the following address: Zimmerman Reed LLP, 6420 Wilshire Blvd., Suite 1080, Los Angeles, CA 90048 and via email to Ryan.Ellersick@zimmreed.com.

22.     Claimant reserves the right to amend this Demand as additional facts are learned and/or as may be appropriate.