# EXHIBIT B

2025 WL 3034069
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

STEVE DELLASALA, et al., Plaintiffs,

v.

SAMBA TV, INC., Defendant.

Case No. 3:25-cv-03470-JSC
|
Filed 10/30/2025

**Attorneys and Law Firms**

Christian Levis, Pro Hac Vice, Amanda Grace Fiorilla, Pro Hac Vice, Rachel Isabel Kesten, Pro Hac Vice, Yuanchen Lu, Pro Hac Vice, Lowey Dannenberg, P.C., White Plains, NY, Willem F. Jonckheer, Amber Love Schubert, Schubert Jonckheer & Kolbe LLP, San Francisco, CA, for Plaintiffs.

Brett Nicole Taylor, Cozen O'Connor, Los Angeles, CA, Matthew Lewitz, Cozen O'Connor, Santa Monica, CA, for Defendant.

**ORDER RE: MOTION TO DISMISS**

JACQUELINE SCOTT CORLEY United States District Judge

*1 Plaintiffs, three non-California residents, filed this putative class action bringing claims under California privacy laws and the Video Privacy Protection Act against Samba TV. Samba moves to dismiss for lack of Article III standing and failure to state a claim. (Dkt. No. 31.[1]) After carefully considering the parties' briefs and the relevant legal authority, the Court concludes oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS the motion to dismiss with leave to amend. California's privacy laws do not apply to conduct that occurs to non-residents outside California and Plaintiffs fail to plausibly allege a common law intrusion upon seclusion claim or a Video Privacy Protection Act claim.

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

**BACKGROUND**

Plaintiffs, residents of North Carolina and Oklahoma, allege they purchased Sony televisions to watch "video-viewing content" including on steaming services. (Dkt. No. 1 at ¶¶ 12-20 (Plaintiff Steve DellaSala); ¶¶ 26-27 (Plaintiff Bob Warden); ¶¶ 33-34 (Plaintiff Vince Tophoney).) "[U]nbeknownst" to Plaintiffs, a Samba chip embedded in their televisions allowed Samba "to intercept unique identifiers including [their] IP address[es]." (*Id.* at ¶¶ 21, 28, 35.) Samba intercepted Plaintiffs' "private video-viewing data in real time, including what [t]he[y] watched on cable television and streaming services" and tied this information to each Plaintiff's unique "SambaID." (*Id.* at ¶¶ 23, 30, 37.) Samba used the data to "facilitate targeted advertising." (*Id.* at ¶¶ 24, 31, 38.) Plaintiffs "did not consent to Samba TV intercepting [their] unique identifiers and other personal data, assigning and using unique identifiers to track [them] across internet-enabled services and devices, or intercepting and using the contents of [their] private communications for-profit." (*Id.* at ¶¶ 25, 31, 39.)

Plaintiffs Philip McDonald, Steve DellaSala, Bob Warden, and Vince Tophoney filed this nationwide putative class action against Samba TV, a Delaware corporation with its principal place of business in San Francisco, California. Plaintiffs allege claims for (1) violation of the California Invasion of Privacy Act (CIPA), Cal. Pen. Code § 631; (2) violation of CIPA, § 632; (3) violation of CIPA, §§ 638.50, 638.51; (4) violation of the Comprehensive Computer Data Access and Fraud Act (CDAFA), Cal. Pen. Code § 502; (5) violation of the Video Privacy Protection Act (VPPA), 18 U.S.C. § 2710; (6) unjust enrichment; and (7) injunctive relief. (Dkt. No. 1.) Plaintiff McDonald subsequently voluntarily dismissed his claims. (Dkt. No. 23.) Samba moves to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6). (Dkt. No. 31.)

**DISCUSSION**

This case is one of dozens filed in district courts throughout California alleging claims under CIPA and other California privacy laws. Plaintiffs seek to invoke California's sweeping privacy laws, which in the case of CIPA, provides for criminal liability and punitive civil penalties.

**A. Article III Standing**

**\*2** Article III of the United States Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' " *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203, (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id.* (citations omitted). To establish standing sufficient to satisfy constitutional requirements, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).

Samba contends Plaintiffs consented to the collection of their viewership data and thus cannot demonstrate an injury-in-fact. In support, Samba relies on declarations from its own representatives which attest to the prompts consumers see upon installation of their Smart TVs and attest the information is collected on an opt-in basis only. (Dkt. No. 33, Tseng Decl. at ¶¶ 6-10; Dkt. No. 34, Mazzoni Decl. at ¶ 7.[2]) But Samba does not provide screenshots of these prompts or offer testimony as to when or how these prompts are provided to users. And, while the Tseng Declaration attests "[t]he consumer's privacy preferences are communicated to Samba TV's Data Privacy Platform where they are stored to ensure that any information collected from the device is processed consistent with the consumer's preferences," Samba has not provided information which supports a plausible inference the Plaintiffs here consented. (Dkt. No. 33 at 11.) This contrasts sharply with the evidence offered in *Larroque v. First Advantage LNS Screening Sols., Inc.*, No. 15-CV-04684-JSC, 2016 WL 4577257 (N.D. Cal. Sept. 2, 2016), on which Samba relies. *Id.* at \*5 (finding no subject matter jurisdiction over the FRCA claim where the defendant offered evidence the plaintiff "expressly consented in writing to 'the release of a credit report and/or investigative consumer report concerning me by a credit reporting agency [i.e. Defendant]' and authorized Pacific's use of her reports as part of its evaluation of her employment application"). "In a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction by offering affidavits or other evidence to dispute the allegations in the complaint." *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Because Samba has not offered evidence which disputes Plaintiffs' affirmative allegations that they did not consent, (Dkt. No. 1 at ¶¶ 25, 32, 39), its factual attack on subject matter jurisdiction fails.

[2] The Court will not consider Plaintiffs' motion to strike Samba's declarations (Dkt. No. 41) as this separate filing violates Civil Local Rule 7-3(c), which requires "[a]ny evidentiary and procedural objections to the motion ... be contained within the [opposition] brief or memorandum." N.D. Cal. Civ. L.R. 7-3(a). "Courts in this district regularly strike separately-filed evidentiary objections and responses for violating Local Rule 7-3." *Go Daddy Operating Co., LLC v. Ghaznavi*, No. 17-CV-06545-PJH, 2018 WL 1091257, at \*14 (N.D. Cal. Feb. 28, 2018) (collecting cases re: same).

The Court will not consider Samba's argument, raised for the first time on reply, that Plaintiffs have not alleged an injury-in-fact because they have not alleged a privacy violation relying on the Ninth Circuit's recent decision in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025). (Dkt. No. 42 at 8-9.) While *Popa* was issued after Samba filed its motion to dismiss, *Popa* did not set forth a new rule of law—the issue of whether a privacy violation gives rise to an injury-in-fact for purposes of Article III standing is a frequent feature in these cases. *See, e.g., In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (concluding the plaintiffs had adequately alleged harm to their privacy interests and thus an injury for purposes of Article III standing). That Samba chose not to make this argument in its motion was the result of litigation strategy, not a change in the law.

**B. Whether Plaintiffs can Bring California Claims**

**\*3** Next, Samba contends Plaintiffs' claims under CIPA, CDAFA, and the California Constitution fail because these laws do not apply extraterritorially—to conduct occurring outside the state. Plaintiffs concede their claim under the California Constitution fails because such a claim can only be brought by California residents. (Dkt. No. 40 at 17, n.5.)

A California statute applies to conduct outside of California only if that "intention is clearly expressed or reasonable to be inferred 'from the language of the act or from its purpose, subject matter or history.' " *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) (quoting *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal. 4th 1036, 1059 (1999)). In *Sullivan*, the California Supreme Court concluded "[n]either the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially. Accordingly, the presumption against extraterritoriality applies to the UCL

in full force." *Sullivan*, 51 Cal. 4th at 1207. Samba urges the same result is required for CIPA and CDAFA claims.

CIPA and CDAFA both contain language demonstrating the legislature's intent for the statutes not to apply outside of California. See Cal. Penal Code § 630 (stating the legislature "intends to protect the right of privacy of the people of this state"); Cal. Penal Code § 502(a) (declaring CDAFA "vital to the protection of the privacy of individuals ... within this state"). Plaintiffs counter that because both CIPA and CDAFA allow claims to be brought by "any person" or "any 'owner or lessee,' " respectively, they can bring the claims as non-residents because Samba is a California resident and a large portion of the conduct underlying their claims occurred in California. (Dkt. No. 40 at 16.) This argument is unavailing.

First, CDAFA does not use the "any" language. Cal. Penal Code § 502(e)(1) ("In addition to any other civil remedy available, *the* owner or lessee of the computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the provisions of subdivision (c) may bring a civil action.") (emphasis added). Second, the express legislative intent at the beginning of each statute limits their application to "protect the right of privacy of the people of this state," Cal. Penal Code § 630, and "within this state," Cal. Penal Code § 502(a). Thus, to invoke CIPA and CDAFA, Plaintiffs must allege conduct in this state, which they have not done. The Complaint paragraphs Plaintiffs cite do not allege the interception occurred in California. (Dkt. No. 40 at 17 (citing Dkt. No. 1 at ¶ 40 ("Samba TV is a Delaware corporation with its principal place of business located in San Francisco, California."); ¶ 134 ("Samba TV maintains its principal place of business in California and conducts substantial business in California, including the activities giving rise to Plaintiffs' and Class Members' claims. Samba TV's decision to reside in California and avail itself of California's laws makes the application of California law to its conduct alleged herein constitutionally permissible."); ¶ 135 (same).) The jurisdictional allegation in Paragraph 47 that "[t]his Court has personal jurisdiction over Samba TV because its principal place of business is in California" and because "a substantial part of the events and conduct giving rise to Plaintiffs' claims occurred in California, including Samba TV's interception and use of Plaintiffs' unique identifiers and other personal data," simply parrots the jurisdictional standard and contradicts the allegations made as to each Plaintiff. Plaintiffs elsewhere allege that all the conduct complained of occurred outside California.

(Dkt. No 1 at ¶¶ 19-20 ("Plaintiff Steve DellaSala is a resident of Burk County, North Carolina" and Samba "used its chip set embedded in Plaintiff DellaSala's televisions to intercept unique identifiers, including his IP address"); ¶¶ 26-28 (alleging Plaintiff Warden is a resident of Tula County, Oklahoma and the interception occurred via a chip embedded in his television); ¶¶ 33-35 (alleging Plaintiff Tophoney is a resident of Wake County, North Carolina and the interception occurred via a chip embedded in his television) .) That is, the interception occurred via a chip embedded in each Plaintiff's television in either North Carolina or Oklahoma

**\*4** The Complaint is devoid of allegations as to where the "use" of Plaintiffs' data occurred, but the allegations support an inference the use occurred simultaneously with interception. (Dkt. No. 1 ¶ 69 ("Samba TV intercepts and processes the content in real-time"); ¶ 74 ("Samba TV processes and stores this data on its own systems").) Regardless, the interception of the data is the critical element of Plaintiffs' CIPA and CDAFA claims and the Complaint alleges the interception occurred *outside* California. See Cal. Penal Code §§ 631, 632 (requiring interception without consent); Cal. Penal Code § 502(c)(2) (requiring access without permission).

The cases Plaintiffs rely on do not suggest otherwise because they involve conduct that occurred in California. *See, e.g., Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1027 (N.D. Cal. 2011) ("Since the Complaint alleges that the communications at issue were sent to and from California, Plaintiffs argue that they have the requisite standing under the CIPA."); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 14-CV-00751 GPC DHB, 2016 WL 3543699, at \*5 (S.D. Cal. June 29, 2016) (holding an "an out–of–state corporation, has a right of action under the CIPA against a California defendant for unlawful recording of its employees" where the alleged violations occurred in California); *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1184 n.7 (N.D. Cal. 2019) (stating the parties' "cursory" briefing was insufficient to address the issue of CDAFA's extraterritorial application). And in *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079 (N.D. Cal. 2023), the court relied in part on evidence Facebook's Terms of Service specified "that California law applies to disputes between Facebook and its users." Not so here.

Because the presumption against extraterritoriality applies to Plaintiffs' CIPA and CDAFA claims, and drawing all reasonable inferences from the Complaint's allegations

in Plaintiffs' favor Plaintiffs are non-California residents challenging conduct that occurred in their home states, these statutory claims must be dismissed. *See Lineberry v. AddShopper, Inc.*, No. 23-CV-01996-VC, 2025 WL 551864, at *3 (N.D. Cal. Feb. 19, 2025) (applying extraterritoriality presumption and dismissing CIPA and CDAFA claims that did not allege the unlawful conduct occurred within the state).

### C. Intrusion Upon Seclusion

Plaintiffs' common law claim of intrusion upon seclusion requires showing " 'an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man.' " *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (quoting *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019) (emphasis added). Samba insists this claim fails because Plaintiffs have no expectation of privacy in the information it collects and Plaintiffs have not alleged a highly offensive intrusion.

Plaintiffs' allegations as to what Samba actually collects are unclear. Plaintiffs allege Samba creates a SambaID for each individual in a household and their respective devices by intercepting IP addresses and "other information" directly from consumer's Smart TVs (Dkt. No. 1 at ¶¶ 6, 14, 21, 28, 35), and using "its proprietary technology [to] identify which specific users are interacting with the Smart TV and individual devices" (*Id.* at ¶ 62). Plaintiffs' vague references to other information "does not allow the Court to determine whether Plaintiff has a protectable privacy interest in that information." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (citing *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) ("a court need not assume the truth of legal conclusions merely because they are cast in the form of factual allegations")); *see also Hughes v. Vivint, Inc.*, No. CV 24-3081-GW-KSX, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024) (finding allegations defendant collected "device and browser information," among other data, insufficient to specify what information was captured).

**\*5** Further, "[d]isclosure of one's [ ] IP address, without more, does not bear similarity to the 'highly offensive' interferences or disclosures that were actionable at common law." *Wooten v. BioLife Plasma Services L.P. et al.*, No. 1:25-CV-00099-KES-SKO, 2025 WL 2979619, at *3 (E.D. Cal. Oct. 22, 2025) (collecting cases re: same). In *Popa*, the Ninth Circuit rejected the plaintiff's intrusion on seclusion claim based on session-replay technology which captured certain information regarding her visit to a pet supply website, including the date of her visit, her device type, her operating system, and her interactions with the website. *Popa v. Microsoft Corp.*, 153 F.4th 784, 786, 791 (9th Cir. 2025). Because the plaintiff "identifies no embarrassing, invasive, or otherwise private information collected" she had not "explain[ed] how the tracking of her interactions with the PSP website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id.* at 791. The plaintiff's allegations were

> quite different from the hypotheticals set out in the Restatement. Consider, for example, the following scenario for intrusion upon seclusion: "A ... rents a room in a house adjoining B's residence, and for two weeks looks into the windows of B's upstairs bedroom through a telescope taking intimate pictures with a telescopic lens."

*Id.* (quoting Restatement (Second) of Torts § 652B cmt. b, illus. 2). The Ninth Circuit concluded the defendants' "conduct in this case does not implicate a similarly sensitive sphere" and thus the plaintiff did not plausibly allege infringement of her privacy interest. *Id.* ("To the extent Microsoft's tracking software *could* be offensive in particular circumstances (e.g., involving sensitive medical or financial information), Popa does not plausibly allege the infringement of any such privacy interest." (emphasis in original)). So too here. Plaintiffs have not plausibly alleged a highly offensive violation of a privacy interest.

Accordingly, Plaintiffs' common law intrusion upon seclusion claim is dismissed.

### D. VPPA Claim

The VPPA makes liable "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). So, "to plead a plausible claim under section 2710(b)(1) of the VPPA, a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Samba insists the VPPA claim fails because (1) it is not a "video tape service provider", (2) Plaintiffs are not consumers, and (3) the data at issue is not personally identifiable information (PII). The first argument is dispositive.

The statute defines "video tape service provider" as "any person, engaged in the business ... of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). "Taken together, the phrase 'rental, sale, or delivery' characterizes the exchange of a video product." Osheske v. Silver Cinemas Acquisition Co., 132 F.4th 1110, 1113 (9th Cir. 2025). Plaintiffs allege Samba is a video tape service provider "because its technology is incorporated in Smart TVs, which deliver prerecorded videos. Samba TV advertises its technology precisely as providing a 'better viewing experience' 'immersive on-screen experiences' and a 'more tailored ad experience' through its technology." (Dkt. No. 1 at ¶ 211.) This allegation does not plausibly support an inference, Samba—an analytics software provider—facilitated the exchange of a video product. Rather, the allegations support an inference Samba collected information about Plaintiffs' *use* of a video product, but not that it provided the product itself.

**\*6**  Plaintiffs' reliance on In re Vizio, Inc., Consumer Priv. Litig., 238 F. Supp. 3d 1204, 1222 (C.D. Cal. 2017), is misplaced. The court there held the plaintiffs plausibly alleged Vizio was a video tape service provider because its Apps were "designed to enable consumers to seamlessly access Netflix, Hulu, YouTube, and Amazon Instant Video content in their homes." Id. at 1222. Plaintiffs make no such allegation here—like Vizio, Plaintiffs' Smart TVs may be video service providers, but Samba, which is alleged to merely have a chip inside the Smart TVs that is used to track certain information regarding viewing habits, is not akin to Vizio. Nor is Samba's business purpose akin to Zillow's use of video walkthroughs to facilitate real estate transactions. See Mata v. Zillow Grp., Inc., No. 24-CV-01095-DMS-VET, 2024 WL 5161955, at \*2-3 (S.D. Cal. Dec. 18, 2024).

Accordingly, Plaintiffs' allegations fail to support an inference that Samba is a video tape service provider and the VPPA claim is dismissed.

### E. Remaining Equitable Claims

Plaintiffs also bring an unjust enrichment claim and an injunctive relief claim. Plaintiffs' unjust enrichment claim is based on their allegation "Samba TV receives benefits from Plaintiffs and Class Members in the form of their unique identifiers and other personal data and private online communications" and Samba uses this private data for its own benefit. (Dkt. No. 1 at ¶¶ 220-221.) Because, as discussed above, it is unclear what information Samba actually obtains about Plaintiffs, Plaintiffs have not alleged a basis for an unjust enrichment claim. Best Carpet Values, Inc. v. Google, LLC, 90 F.4th 962, 973 (9th Cir. 2024) ("The elements of a cause of action for unjust enrichment are simply stated as receipt of a benefit and unjust retention of the benefit at the expense of another.") (citing Tufeld Corp. v. Beverly Hills Gateway, L.P., 86 Cal.App.5th 12, 31–32 (2022)).

Plaintiffs' injunctive relief claim must be dismissed because "California law does not permit a standalone claim for injunctive relief." Tashjian v. Invictus Residential Pooler -2A, No. 19-CV-01536-EJD, 2024 WL 780416, at \*11 (N.D. Cal. Feb. 26, 2024)) (citing Ivanoff v. Bank of Am., N.A., 9 Cal. App. 5th 719, 734 (2017) ("Injunctive relief is a remedy, not a cause of action.").

### CONCLUSION

For the reasons stated above, the Court GRANTS the motion to dismiss with leave to amend. Any amended complaint is due November 20, 2025. Plaintiffs may not add new claims or parties without further leave of Court.

This Order disposes of Docket Nos. 31, 41.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 3034069

**End of Document**  © 2025 Thomson Reuters. No claim to original U.S. Government Works.