**BURSOR & FISHER, P.A.**
Neal Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman *(pro hac vice)*
Michael Liskow (State Bar No. 243899)
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
E-mail: lfeldman@4-justice.com
       mliskow@4-justice.com
       e-service@4-justice.com

*Attorneys for Plaintiffs*

*Additional Attorneys on Signature Page*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE META PIXEL TAX FILING CASES<br><br>This document relates to:<br><br>All actions | Master File No. 5:22-cv-07557-PCP<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF CLASS CERTIFICATION**<br><br>Date: January 15, 2026<br>Time: 10:00 a.m.<br>Judge: Hon. P. Casey Pitts<br>Date Action Filed: Dec. 1, 2022 |

**TABLE OF CONTENTS**

Page

Table of Authorities ................................................................................................................... ii

I.    INTRODUCTION ................................................................................................................1

II.    ARGUMENT .........................................................................................................................2

    A.    Modifying The Class Definitions Resolves Meta's Arguments Concerning Overbreadth ................................................................................................................ 2

    B.    Meta's Typicality And Adequacy Arguments Lack Merit ........................................ 4

        1.    Meta's Arguments About The Data It Collected From Plaintiffs Have Nothing To Do With Rule 23(a)(3) or (4) ........................................................ 4

        2.    Meta's Express Consent Defense Lacks Evidentiary Support And Is Irrelevant To Rule 23(a) ............................................................................... 5

    C.    Meta's Predominance Arguments Lack Merit .......................................................... 6

        1.    There Are No Individualized Issues About Whether Meta Received Sensitive Data Or Matched It To Users Because Everything Is In Meta's Hive Database ................................................................................. 6

        2.    Meta Cannot Defeat Certification By Questioning The Reliability Of Its Own Hive Data ........................................................................................ 6

        3.    Whether Or Not Some Class Members Treated The Information As Private Is Irrelevant To The Claims Asserted ........................................... 8

        4.    The Court Already Rejected Meta's Arguments Regarding Implied Consent In *Flo Health* ............................................................................... 9

        5.    The Hive Data Shows Whether Data Was Sent From California ................. 10

        6.    The Hive Data Also Shows The Contents Of Communications ................... 12

    D.    Meta's Arguments Against Certification Of A Rule 23(b)(2) Class Are Contrary To Controlling Ninth Circuit Decisions ...................................................... 12

    E.    Plaintiffs Have Demonstrated Superiority ............................................................... 14

III.    CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

Page

**CASES**

*Barragan v. Home Depot, U.S.A., Inc.*,
No. 19-cv-01766-AJB-AGS.
2022 WL 174023 (S.D. Cal. Jan. 18, 2022) ................................................................................ 7

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ................................................................................................. 13

*Conant v. McCaffrey*,
172 F.R.D. 681 (N.D. Cal. 1997) ............................................................................................... 2

*Deteresa v. Am. Broad. Cos., Inc.*,
121 F.3d 460 (9th Cir. 1997) ..................................................................................................... 9

*Dukes v. Wal-Mart Stores, Inc.*,
603 F.3d 571 (9th Cir. 2010) ................................................................................................... 12

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ............................................................................................................... 9

*Frasco v. Flo Health, Inc.*,
No. 21-cv-00757-JD,
2025 WL 2680068 (N.D. Cal. Sept. 17, 2025) ...................................................................... 1, 9

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. May 19, 2025) ....................................................................... *passim*

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) ................................................................................................................... 2

*Hargrove v. Sleepy's LLC*,
974 F.3d 467 (3rd Cir. 2020) ..................................................................................................... 7

*Hart v. Rick's Caberet Int'l, Inc.*,
60 F. Supp. 3d 447 (S.D.N.Y. 2014) ......................................................................................... 7

*Herrera v. LCS Fin. Servs. Corp.*,
274 F.R.D. 666 (N.D. Cal. 2011) ............................................................................................... 7

*In re Facebook Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ............................................................................................... 5, 12

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ..................................................................................... 13

*Johnson v. Nissan N. Am., Inc.*,
  No. 3:17-cv-00517-WHO,
  2022 WL 2869528 (N.D. Cal. July 21, 2022) .................................................................... 2

*Kearny v. Salomon Smith Barney, Inc.*,
  39 Cal. 4th 95 (2006) ...................................................................................................... 10

*Kristensen v. Credit Payment Servs.*,
  12 F. Supp. 3d 1292 (D. Nev. 2014) ................................................................................ 5

*Lieberman v. KCOP Television, Inc.*,
  110 Cal. App. 4th 156 (2003) .......................................................................................... 8

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ............................................................................................ 2

*Nevarez v. Forty Niners Football Co., LLC*,
  326 F.R.D. 562 (N.D. Cal. 2018) ..................................................................................... 2

*Nguyen v. Barnes & Noble, Inc.*,
  763 F.3d 1171 (9th Cir. 2014) .......................................................................................... 5

*Popa v. Microsoft Corp.*,
  153 F.4th 784 (9th Cir. 2025) ........................................................................................... 4

*Robinson v. U-Haul Co. of Cal.*,
  4 Cal. App. 5th 304 (2016) ............................................................................................. 13

*Rosebrock v. Mathis*,
  745 F.3d 963 (9th Cir. 2014) .......................................................................................... 13

*Ruiz Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) .......................................................................................... 2

*Russell v. U.S.*,
  No. C 09–03239 WHA,
  2012 WL 2343369 (N.D. Cal. June 20, 2012) .................................................................. 2

*Tibble v. Edison Intern.*,
  No. CV 07-5359 SVW (AGRx),
  2009 WL 6764541 (C.D. Cal. June 30, 2009) ................................................................ 12

*Torres v. Prudential Fin., Inc.*,
  No. 22-cv-7465-CRB,
  2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) ................................................................. 9

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) ....................................................................................... 1, 5

*Valentine v. NebuAd, Inc.*,
  804 F. Supp. 2d 1022 (N.D. Cal. 2011) ........................................................................... 10

*Van v. LLR, Inc.*,
  61 F.4th 1053 (9th Cir. 2023) ..................................................................................... 1, 7

*Woolery v. Omni Hotels Mgmt. Corp.*,
  No. 2:13–cv–02468–CAS(MANx),
  2014 WL 4627271 (C.D. Cal. Sept. 8, 2024), ................................................................... 8

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021) ............................................................................. 5

*Zaklit v. Nationstar Mortg. LLC*,
  No. 5:15-cv-2190-CAS(KKx),
  2017 WL 3174901 (C.D. Cal. July 24, 2017) .................................................................. 11

*Zinser v. Accufix Rsch. Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ........................................................................................ 12

**OTHER AUTHORITIES**

Cal. Bus. & Prof. Code § 17200 ............................................................................................. 4
Cal. Penal Code § 631(a) ............................................................................................. *passim*
Cal. Penal Code § 632 ............................................................................................... 3, 8, 10
Cal. Penal Code § 635 .................................................................................................. 3, 4, 8
Cal. Penal Code § 638.51 .................................................................................................. 3, 8

**RULES**

Fed. R. Civ. P. 23
  (a) ....................................................................................................................................... 5
  (b)(2) ........................................................................................................................... 1, 12
  (b)(3) ........................................................................................................................... 1, 12
  (c)(1)(C) ............................................................................................................................ 2

I.  INTRODUCTION

There are three overarching flaws appearing throughout Meta's opposition brief.

The first flaw is that Meta is conflating two categories of data at issue in the class certification motion, with one category governed by Rule 23(b)(2) and (b)(3), and the other governed only by Rule 23(b)(2). With respect to the first category, pen register and URL data, Plaintiffs are seeking both damages and injunctive relief classes because Meta uniformly collected those types of data and continues to do so today. On the other hand, as to traditional tax filing information such as income and return amounts, Plaintiffs are seeking certification under Rule 23(b)(2) because the evidence suggests that Meta's filtering worked (at best) intermittently, and without injunctive relief anyone who uses a tax filing website is at risk of future non-consensual disclosures of their data to Meta. Meta's opposition brief treats these two categories as interchangeable, making arguments about tax filing information that are irrelevant to Rule 23(b)(3), while failing to respond to Plaintiffs' arguments about pen register and URL data that are relevant to both Rule 23(b)(3) and (b)(2).

Next, Meta is largely rehashing arguments that Judge Donato rejected in the *Flo Health* matter when granting certification and when later denying Meta's motion for decertification. *See Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 575 (N.D. Cal. May 19, 2025) ("*Flo Health I*"); *Frasco v. Flo Health, Inc.*, 2025 WL 2680068 at *10-11 (N.D. Cal. Sept. 17, 2025) ("*Flo Health II*"). Whenever Meta repeats its arguments, it does not explain why it believes the outcome here should be any different than it was in *Flo Health*, or why it believes the outcome in *Flo Health* was wrong.

Finally, it is a cardinal rule that a defendant cannot defeat certification by speculating about the possibility of individual issues. Meta, however, attempts to do just that. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 932 (9th Cir. 2018) ("We are unwilling to allow such speculation and surmise to tip the decisional scales in a class certification ruling.") (internal quotations and brackets omitted); *accord Van v. LLR, Inc.*, 61 F.4th 1053, 1068 (9th Cir. 2023). Meta's opposition relies heavily on imagined doubts about the reliability of its own Hive data and its ability to match users—but not actual *evidence* of unreliability because that would contradict Meta's whole business model. The Court should grant certification here.

## II. ARGUMENT

### A. Modifying The Class Definitions Resolves Meta's Arguments Concerning Overbreadth

Meta begins by arguing that the class definitions are purportedly broader than those in the complaint because they cover anyone who visited the website. That is an argument for modifying the class definitions—not for denying class certification. Class definitions are "inherently tentative"[1] and "may be altered or amended" any time before final judgement. Fed. R. Civ. P. 23(c)(1)(C); *see also* SAC, at ¶ 93 (ECF No. 173) ("Plaintiffs reserve the right to modify the class definition …."). Therefore, when a defendant argues that a proposed class is overbroad, "'the better course is not to deny class certification entirely but [instead] to amend the class definition as needed to correct for the overbreadth.'" *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138-39 (9th Cir. 2016) (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 826 n.15 (7th Cir. 2012)). "District courts have broad discretion to modify class definitions" including "consider[ing] changes to class definitions proposed in reply briefs." *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 575 (N.D. Cal. 2018) (collecting authorities); *see also, e.g.*, *Johnson v. Nissan N. Am., Inc.*, 2022 WL 2869528 at *21 (N.D. Cal. July 21, 2022) (resolving arguments against certification by modifying proposed class definitions); *Russell v. U.S.*, 2012 WL 2343369 at *4 (N.D. Cal. June 20, 2012) (same); *Conant v. McCaffrey*, 172 F.R.D. 681, 683 (N.D. Cal. 1997) (same).

Here, Meta's concern can be easily resolved by adding the following words to the end of each class definition: "… and whose data from visiting [Tax Preparers'] website is in Meta's Hive tables." So, for example, the proposed Nationwide Pen Register Class for H&R Block.com would now read: "All individuals in the United States who visited the website H&R Block from January 15, 2018 to June 30, 2023, and whose data from visiting H&R Block's website is in Meta's Hive data tables." This limitation was already implied in Plaintiffs opening brief because the relevance of the data in Hive is cited and relied upon throughout the motion for class certification. *See* Opening Brf., at 2:19-3:4; 13:21-14:15; 15:6-10 (describing data in Hive).

---

[1] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

Modifying the class definition in this manner also dispenses with Meta's arguments that there is supposedly no way to know if Tax Act or H&R Block sent Meta any data about a user, or whether Meta's filter prevented the receipt of that data. Meta's Opposition to Plaintiffs' Motion for Class Certification ("Opp'n," ECF No. 239), at 12:10-20; 14:19-15:6. The answer to both of those questions is readily available in Meta's Hive records, because if data was transmitted to Meta and not filtered, it is in the Hive database.

As such, Plaintiffs propose the following more limited class definitions for certification:

**The Nationwide Pen Register Classes (Cal. Penal Code § 638.51):**

<u>H&R Block.com</u>: All individuals in the United States who visited the website H&R Block.com from January 15, 2019 to June 30, 2023, and whose data from visiting H&R Block's website is in Meta's Hive data tables. This class seeks certification of claims under California Penal Code § 638.51. Plaintiffs Kayla Housman, Tiffany Bryant, Katrina Calderon, and Jane Doe seek to be the class representatives for this class.

<u>TaxAct.com</u>: All individuals in the United States who visited the website TaxAct.com from August 25, 2015 to June 30, 2023, and whose data from visiting TaxAct's website is in Meta's Hive data tables. This class seeks certification of claims under California Penal Code §§ 638.51. Plaintiff Katrina Calderon seeks to be the class representative for this class.

**The Nationwide Eavesdropping Classes (Cal. Penal Code §§ 632 and 635):**

<u>H&R Block.com</u>: All individuals in the United States who visited the website H&R Block.com from January 15, 2019 to June 30, 2023, and whose data from visiting H&R Block's website is in Meta's Hive data tables. This class seeks certification of claims under California Penal Code §§ 632 and 635. Plaintiffs Kayla Housman, Tiffany Bryant, Katrina Calderon, and Jane Doe seek to be the class representatives for this class.

<u>TaxAct.com</u>: All individuals in the United States who visited the website TaxAct.com from August 25, 2015 to June 30, 2023, and whose data from visiting TaxAct's website is in Meta's Hive data tables. This class seeks certification of claims under California Penal Code §§ 632, and 635. Plaintiff Katrina Calderon seeks to be the class representative for this class.

**The California Wiretapping Classes (Cal. Penal Code § 631(a) and 635):**

<u>H&R Block.com</u>: All individuals in California who visited the website H&R Block.com from January 15, 2019 to June 30, 2023, and whose data from visiting H&R Block's website is in Meta's Hive data tables. This class seeks certification

of claims under California Penal Code §§ 631(a) and 635. Plaintiffs Jane Doe and Katrina Calderon seek to be the class representative for this class.

TaxAct.com: All individuals in California who visited the website TaxAct.com from August 25, 2015 to June 30, 2023, and whose data from visiting TaxAct's website is in Meta's Hive data tables. This class seeks certification of claims under California Penal Code §§ 631(a) and 635. Plaintiff Katrina Calderon seeks to be the class representative for this class.

**The Nationwide UCL Public Injunctive Relief Classes (Cal. Bus. & Prof. Code § 17200 *et seq*.):**

H&R Block.com: All individuals in the United States who visited the website H&R Block.com from January 15, 2019 to June 30, 2023, and whose data from visiting H&R Block's website is in Meta's Hive data tables. This class seeks certification of claims under Cal. Bus. & Prof. Code § 17200. Plaintiffs Kayla Housman, Tiffany Bryant, Katrina Calderon, and Jane Doe seek to be the class representatives for this class.

TaxAct.com: All individuals in the United States who visited the website TaxAct.com from August 25, 2015 to June 30, 2023, and whose data from visiting TaxAct's website is in Meta's Hive data tables. This class seeks certification of claims under Cal. Bus. & Prof. Code § 17200. Plaintiff Katrina Calderon seeks to be the class representative for this class.

**B.    Meta's Typicality And Adequacy Arguments Lack Merit**

**1.    Meta's Arguments About The Data It Collected From Plaintiffs Have Nothing To Do With Rule 23(a)(3) or (4)**

Meta argues that Plaintiffs Doe, Bryant, and Calderon are not adequate or typical because Meta disagrees that their data was sensitive or can give rise to a privacy claim. That is a merits-based argument that has nothing to do with the adequacy or typicality requirements; throughout its brief, Meta takes the position that *none* of the browsing data it received from class members gives rise to any privacy claim, and therefore no class member suffered an injury. *See* Opp'n, at 1:6-26; *see also id.* at 12:13-14 (arguing "[n]o one has standing to sue over the receipt of data like IP addresses…."). Meta's position applies just as much to the named Plaintiffs as to the classes generally. Meta primarily relies on *Popa* for its position, but that decision is inapposite here because, among other reasons, it (a) did not involve any claims brought by Plaintiffs in this action, including under Cal. Penal Code § 638.51 (CIPA's "pen register" statute); and (b) did not address class certification at all, but instead 12(b)(1) standing. *See Popa v. Microsoft Corp.*, 153 F.4th 784

(9th Cir. 2025). Equally important, Plaintiffs' theory of liability here partly relies on *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), and *Popa* distinguished *In re Facebook* on the facts and expressly did not overrule it. *See Popa*, 153 F.4th at 794. And even if Plaintiffs were alleging that the Meta Pixel only collected IP addresses (which it did not), courts in this Circuit have held that this is sufficient for standing purposes. *See Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949, at *7 (S.D. Cal. Nov. 18, 2025) ("most cases in this and other districts have also recognized that website-based trackers can plausibly constitute a pen register . . . even if only IP addresses are collected.") (collecting cases).

In a related argument, Meta argues that Plaintiffs are inadequate and atypical because "Meta received no data about income, refund amount, or anything similar for them," and therefore Plaintiffs "did not suffer the same injury as anyone whose sensitive financial information was actually sent." Opp'n, at 11:4-6. That argument cannot support denial of certification because Meta does not deny that it received pen register and URL data from Doe, Bryant, and Calderon, causing the same injury to the plaintiffs as to other class members.

### 2. Meta's Express Consent Defense Lacks Evidentiary Support And Is Irrelevant To Rule 23(a)

Citing its privacy policies, Meta argues that Plaintiffs are not typical or adequate because they are Facebook users, and therefore "subject to Meta's express-consent defense." Opp'n, at 11:18-19. Earlier this year, Judge Donato rejected a similar argument by Meta in *Flo Health I*. *See id.*, 349 F.R.D. at 575. There are two reasons why Meta's argument has not improved with repetition. First, it is Meta's burden to show that Plaintiffs took "affirmative action to demonstrate assent" to the policies Meta cites. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). A consent defense cannot defeat certification without supporting evidence. *Cf. Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014) ("The Ninth Circuit has held that in the absence of any evidence of consent by the defendant, consent is a common issue with a common answer."). Here, Meta *has failed to submit any evidence* that any class member took affirmative action to demonstrate assent. Instead, Meta takes the position that the mere existence of the policies tucked away somewhere on Facebook's website establishes consent, but that is not the

law. *See Nguyen*, 763 F.3d at 1179; *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) (applying *Nguyen* to consent defense).

Second, even if Meta's policies could support a consent defense, consent is not a unique defense affecting adequacy or typicality because literally billions of people use Facebook, and Meta's argument applies to every other class member who is a Facebook user. The question of whether Meta's policies disclosed the conduct at issue here would be the same for Plaintiffs as it would be for any other class member. *See Flo Health I*, 349 F.R.D. at 576 (whether "common disclosures" in privacy policies furnished consent was a classwide issue); *see also True Health*, 896 F.3d at 932 ("Consent, or lack thereof, is ascertainable [on a classwide basis] by simply examining the product registrations and the EULAs.").

  **C.**  **Meta's Predominance Arguments Lack Merit**

    **1.**  **There Are No Individualized Issues About Whether Meta Received Sensitive Data Or Matched It To Users Because Everything Is In Meta's Hive Database**

Meta argues that individualized issues are necessary to determine whether Meta received any data from any class member, whether it was filtered out by Meta before being moved into the Hive database, whether the data could be matched with Facebook users, and whether that data was "sensitive." Opp'n, at 12:10-20;14:20-16:1. These issues are already addressed in Section II.A above concerning the class definitions. All of Meta's arguments about ad blockers, its purported filter, or other variables that could potentially impact whether Meta received data or matched it with Facebook users become moot when limiting the classes, as Plaintiffs propose *supra*, to individuals whose data is contained in the Hive data.

Meta's argument that there are individualized issues about whether any data sent was "sensitive" likewise cannot defeat certification because that is not an element of any of the claims to be certified. *See Flo Health I*, 349 F.R.D. at 574 (the predominance analysis "is grounded in the elements of the underlying causes of action"). Moreover, Meta's position is that as a matter of law

*none* of the URL and pen register data it collected is private or actionable—but Meta's position applies the same way to all class members, and therefore is a class-wide issue.[2]

### 2. Meta Cannot Defeat Certification By Questioning The Reliability Of Its Own Hive Data

Meta argues that people sometimes help others with their online taxes, and therefore there are individualized issues about who was logged onto the device when it transmitted data to Meta. *See* Opp'n, at 16. There is no evidence that the scenario Meta posits is so widespread that it undermines the accuracy of Meta's Hive data in any meaningful way—let alone enough to make individual issues predominate over common ones. The Court should therefore reject Meta's argument for the following two reasons.

First, courts "do not permit a defendant to support its invocation of individualized issues with mere speculation." *Van*, 61 F.4th at 1068; *accord, e.g.*, *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 671, 676 (N.D. Cal. 2011) (holding speculation cannot defeat predominance).[3] Here, Meta relies on the possibility that its data "could have been matched" with the wrong person because of device sharing, but it does not present evidence of that occurring in its Event Data, much less at a rate that would support denial of certification. *See* Opp'n, at 16:24. Moreover, the examples of Plaintiffs' experiences that Meta describes do not support Meta's point. Meta contends that Plaintiff Bryant checked "the price of [H&R Block's] services for her younger siblings" and that Plaintiff Doe "searched for tax-related information on behalf of her friend." Opp'n, at 16:27-17:1. Yet that is irrelevant because, in both circumstances, Meta would still be collecting *Bryant*'s and *Doe*'s website activity in violation of CIPA and the UCL.

Second, a "[d]efendant may not rely upon the inaccurate information in its own records as a basis for denying class certification." *Barragan v. Home Depot, U.S.A., Inc.*, 2022 WL 174023 at *6 (S.D. Cal. Jan. 18, 2022). A defendant claiming that its own records "should be disregarded

---

[2] To the extent Meta suggests bot visits pose a problem for predominance, *see* Opp'n, at 14:7-12, Meta's own Hive data shows that Meta identifies and filters out bots before using data in production, allowing Plaintiffs to remove bots from the proposed class. *See* concurrently-filed Reply Report of Robert Zeidman ("Zeidman Reply Report"), ¶¶ 40-41.

[3] To the extent that the out-of-circuit district court decisions that Meta cites permitted speculation to defeat certification, they are inconsistent with the controlling decision in *Van*.

because it is unclear that they are accurate" is an "audacious[]" tactic to avoid class certification. *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 481 (3rd Cir. 2020); *see also Hart v. Rick's Caberet Int'l, Inc.*, 60 F. Supp. 3d 447, 466 (S.D.N.Y. 2014) ("It would be manifestly unfair" to allow a defendant to evade liability based on the supposed unreliability of its own business records).

These principles apply here because Meta has repeatedly insisted that "█████████ ████████████████████████████████████..." Declaration of Neal Deckant in Support of Reply in Support of Motion for Class Certification ("Deckant Reply Decl."), Ex. 1 (March 7, 2025 Letter from Meta), at 4, 5; *see also* Deckant Reply Decl., Ex. 2 (Meta 30(b)(6) depo), at 48:22-49:9 (testifying that "in the ordinary course of business," event data is primarily stored in Hive). The core of Meta's business model is targeted advertising whereby advertisers pay Meta millions of dollars to reach "custom audiences" of consumers who are identified based on Event Data contained in Hive. If Meta's Hive data were unreliable in any meaningful way, its business model would be an unsuccessful sham. Therefore, a jury could conclude that it is more likely than not that Meta's Hive data can be correlated with website users with reasonable reliability.

      **3.**      **Whether Or Not Some Class Members Treated The Information As Private Is Irrelevant To The Claims Asserted**

Meta's argument that there are individualized issues about whether someone "treated [the] information as private" lacks merit because a plaintiff's state of mind is not an element of any of the causes of action that Plaintiffs seek to certify. *See, e.g.*, CIPA, §§ 631(a), 632, 635, 638.51; *see also Flo Health I*, 349 F.R.D. at 574 (the predominance analysis "is grounded in the elements of the underlying causes of action") (internal quotations omitted). For example, in *Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, 2014 WL 4627271 at *10 (C.D. Cal. Sept. 8, 2024), the court rejected a similar argument that class members' expectations about privacy defeated predominance because those expectations were irrelevant to the elements of the CIPA cause of action. *See also Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 167 (2003) ("[A]n actionable violation of section 632 occurs the moment the surreptitious recording is made, whether it is disclosed or not.").

To be sure, § 632 focuses on whether a communication is "confidential" (which Meta appears to treat as synonymous with "sensitive"), but the Ninth Circuit and California Supreme Court hold that the standard under § 632 turns on "an objective standard and not by the subjective assumptions of the parties." *Deteresa v. Am. Broad. Cos., Inc.*, 121 F.3d 460, 463 (9th Cir. 1997) (internal quotations omitted); *see also Flanagan v. Flanagan*, 27 Cal. 4th 766, 772-77 (2002) (§ 632 is governed by an "objectively reasonable" standard). Hence, in *Flo Health II*, Judge Donato rejected the same argument Meta makes here when denying a motion to decertify the class. *See id.*, 2025 WL 2680068 at *10-11.

### 4. The Court Already Rejected Meta's Arguments Regarding Implied Consent In *Flo Health*

Meta also recycles two arguments about implied consent that were rejected in *Flo Health*. First, Meta contends that anyone who ever voluntarily posted financial information on Facebook or Instagram impliedly consented—both retroactively and in perpetuity—to have Meta collect any information shared with tax-filing websites, without restriction on the nature, scope, or timing of information collected from those websites. *See* Opp'n, at 6-7. Meta unsurprisingly cites no legal support for that extreme position. "Consent is only effective if the person alleging harm consented to *the particular conduct*, or to *substantially the same conduct* and if the alleged tortfeasor did not exceed the scope of that consent." *Flo Health I*, 349 F.R.D. at 575 (emphasis added; internal quotations omitted). "To establish implied consent, the circumstances, considered as a whole, [must] demonstrate that a reasonable person [would have] understood that [the] action[s] would be carried out" and that they proceeded to expose themselves to the actions anyways." *Torres v. Prudential Fin., Inc.*, 2024 WL 4894289 at *9 (N.D. Cal. Nov. 26, 2024) (internal quotations omitted). Voluntarily disclosing a specific piece of information in a social media post is a far cry from consenting to Meta collecting whatever information it can from tax-filing websites—but that is precisely the position that Meta takes here. There is an obvious and material difference between the two scenarios.

Second, Meta contends that anyone who learned about the data sharing after it was published in the *Markup* and the *Verge* would have impliedly consented to Meta's data collection.

Here again, Judge Donato rejected a similar argument in *Flo Health I*, *see id.*, 349 F.R.D. at 576, and there are many problems with Meta's position. For starters, Meta's argument has nothing to do with anyone who used a tax-filing website before the articles were released. The argument also contradicts Meta's contention that it stopped receiving information after those articles were published (Opp'n, at 4:24-27), because if that were truly the case, there would be nothing to impliedly consent to.[4] Finally, the *Markup* and *Verge* articles primarily focused on specific tax filing data points like income and returns, but not the pen register information and URL information at issue here.

### 5. The Hive Data Shows Whether Data Was Sent From California

Meta argues that CIPA § 631(a) and § 632 are limited to in-state conduct, and it contends that whether any individual class member was located in California is an individualized issue. Opp'n, at 20:15-20; *see also id.* at 22:25-27 (arguing California plaintiffs would "have no claim" if they were not in California when they were wiretapped). That argument is incorrect from both a legal and factual perspective. As for § 631, Plaintiffs are only seeking a California class, so Meta's legal argument that the statute applies only to Californians is irrelevant. With § 632, Judge Donato rejected Meta's same argument when granting certification in *Flo Health*, because unlike § 631, the text of § 632 contains no territorial limitation. *See Flo Health I*, 349 F.R.D. at 586 ("[N]othing in the plain text of [§ 632] suggests such a geographic limitation[.]"). The only case that Meta cites for § 632, *Kearny v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006), addresses whether CIPA protects California residents harmed by out-of-state defendants; it did *not* hold that CIPA is inapplicable to out-of-state residents. *See Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) (analyzing *Kearny* and rejecting same argument Meta makes here).

Meta's argument is factually incorrect as well. In their opening brief, Plaintiffs anticipated Meta's argument and submitted evidence that the Hive data clearly identifies geolocation data of class members right down to the zip code, and in its brief, Meta does not deny that it touts the

---

[4] Meta's contention that in July 2023 it "started blocking all custom parameters and parts of URLs" received from TaxAct and H&R Block, *see* Opp'n, at 4:24-27, is irrelevant because the class definitions of each proposed class end in on June 30, 2023, *prior* to July 2023.

1  accuracy of its geo-tracking technology to its customers. Opening Brf., at 13:22-14:13. Meta's
2  30(b)(6) witness testified that Meta collects ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
3  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. See Deckant Reply Decl., Ex. 2 (Meta 30(b)(6)
4  Depo.), at 124:17-125:2; see also Deckant Reply Decl., Ex. 3 (Wooldridge Dep.), at 107:14-108:2.
5  Even if Meta wanted to sow doubt about the reliability of its geotracking abilities at a granular
6  level, IP geotracking is highly reliable at the state-wide level. See Zeidman Reply Report, ¶ 9.

7        Meta cites *Flo Health* for the proposition that its Hive data does not sufficiently disclose
8  geolocation data—but Meta is not being entirely candid with the Court because the plaintiffs in that
9  case did not rely on Meta's Hive data. Instead, they relied on co-defendant Flo Health's limited
10 data, which consisted of "hundreds of lines of incomprehensible code, and a line or two reading
11 something like "'time_zone': 'America/New_York,'" and there was no information about what it
12 meant. *Flo Health I*, 349 F.R.D. at 586. As shown in the example of Hive data submitted with the
13 opening brief, that is not the situation here. See Ex. 16 to Opening Brf. (ECF No. 214-1) at 6, 21
14 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). Meta's 30(b)(6) witness testified at length about the meaning of the
15 fields in Hive, and he also confirmed that Meta ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ See Ex. 13 to Opening Brf. (ECF
17 No 214-1), at 128:6-129:16.

18       In a similar vein, Meta speculates that some class members may have used VPNs to hide
19 their location. See Opp'n, at 22:17-22. Judge Breyer rejected this same argument when certifying
20 CIPA claims in *Torres*. See *id.*, 2024 WL 4894289 at *9. As in *Torres*, Meta does not attempt to
21 quantify the number of class members who use a VPN when accessing tax filing websites, as
22 opposed to the general population; and if necessary, class members who only accessed the tax
23 preparers' websites through a VPN can self-identify if necessary. *See id.* And even if some portion
24 of the classes potentially used a VPN, that would not be enough on its own to make individualized
25 issues *predominate* over classwide issues, particularly because Meta does not tell its own
26 advertising customers that VPNs can materially defeat Meta's geo-targeting abilities. Hence, a jury
27 could reasonably conclude on a classwide basis—based on Meta's own records and testimony—
28 that "it is more likely than not that a person with a California area code [was] located in California

. . ." *Zaklit v. Nationstar Mortg. LLC*, 2017 WL 3174901, at *9 (C.D. Cal. July 24, 2017) (internal quotations omitted).

### 6. The Hive Data Also Shows The Contents Of Communications

Meta argues that there are individualized issues about whether Meta received the "contents" of user communications. *See* Opp'n, at 23:1-24:6. This argument is directed only at the claim under CIPA § 631(a), because that is the only cause of action where intercepting the "contents" of a communication issue is relevant to liability. *See* Opp'n, at 23:2. Meta's Hive data dispenses with this argument too. Plaintiffs' theory of liability under § 631(a) relies on *In re Facebook*, where the Ninth Circuit held that Meta may be liable under CIPA and other privacy claims if the "URLs could divulge a user's personal interests, queries, and habits on third-party websites operating outside of Facebook's platform." *In re Facebook*, 956 F.3d at 607. Meta does not deny that the Hive data is loaded with this type of information—such as URLs disclosing queries about who can be claimed on a tax return. *See* Opening Zeidman Report, ¶ 44 (Ex. 28 to Deckant Decl., ECF No. 218-1). Meta therefore is incorrect and ignores *In re Facebook* when it asserts that URL addresses can never support liability. *See* Opp'n, at 23:7-8.

### D. Meta's Arguments Against Certification Of A Rule 23(b)(2) Class Are Contrary To Controlling Ninth Circuit Decisions

Meta's arguments concerning injunctive relief, *see* Opp'n, at 24:8-25:10, lack merit for four reasons. First, citing *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001), Meta primarily argues that a court cannot certify a Rule 23(b)(2) class if plaintiffs seek monetary relief. However, Meta does not respond to or distinguish the Ninth Circuit's later decisions in *Dukes*, *Ellis*, or *Wang* holding that a court may certify a class under Rule 23(b)(3) for damages and under 23(b)(2) for injunctive relief. *See* Opening Brf., at 16. In *Dukes*, which rejected the same position Meta advances here, the Ninth Circuit distinguished *Zinser* because the injunctive relief sought in that case—a "medical monitoring *fund*"—was, in reality, an attempt to get compensatory relief under Rule 23(b)(2). *See Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 619 n.42 (9th Cir. 2010) *rev'd on other grounds*, 131 S.Ct. 2541 (2011) (distinguishing *Zinser*); *see also Tibble v. Edison*

*Intern.*, 2009 WL 6764541 at *9 (C.D. Cal. June 30, 2009) (explaining plaintiffs in *Zinser* were "masquerading" claims for damages as request for injunctive relief).

Relatedly, the Ninth Circuit holds that courts are not free to impose "additional hurdles" to certification that are not found in the "plain meaning" of Rule 23. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125-26 (9th Cir. 2017). Here, if Meta's interpretation were correct, then a class could never seek retrospective relief for past damages and injunctive relief to prevent future harm, even though an individual plaintiff can. The text of Rule 23 imposes no such restriction: instead, it simply sets forth one standard for certifying claims for damages, and another for certifying injunctive relief.

Second, Meta does not respond to Plaintiffs' argument that injunctive relief is the "primary" form of relief under the UCL, and that Plaintiffs are not seeking to certify any claims for monetary relief under the UCL—only injunctive relief. Hence, at least as to that cause of action, Meta's argument is simply inapplicable.

Third, Meta asks this Court to take Meta for its word that it has "address[ed] the issues described in the complaint," thereby making injunctive relief unnecessary. Opp'n, at 25. That is clearly a merits argument rather than a certification argument, and Meta does not rebut its admissions cited in the opening brief about the unreliability of its efforts. *See also* Opp'n, at 25:2-3 (conceding "the tax websites may still use Pixel code to send non-sensitive information"). Nor does Meta have a stellar record of credibility on this issue, given that one of the first things it did in these proceedings was to seek dismissal based on its filter (*see* ECF No. 107 at 4:17-5:4; 9:24-26; 20:24-25), when Meta knew all along that filter was unreliable. *See* Opening Brf., at 5 (describing and quoting admissions by Meta).

Even if Meta's representations were true, Meta's argument is contrary to the voluntary cessation doctrine, because nothing would prevent Meta from returning to its old ways the day after this matter is closed. *See Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) ("[T]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed."); *Robinson v. U-Haul Co. of Cal.*, 4 Cal. App. 5th 304, 315-16 (2016) ("Where, as here, a company

has not taken action to bind itself legally to a violation-free future, there may be reason to doubt the bona fides of its newly established law-abiding policy.").

Finally, Meta contends that injunctive relief is unnecessary because its privacy policies and the tax filing websites' privacy policies supposedly disclose the conduct at issue here. But that is, yet again, a merits-based argument and not a class certification argument. It also is an argument that this Court rejected earlier in this case. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1003-04 (N.D. Cal. 2024) (Pitts, J.).

### E.   Plaintiffs Have Demonstrated Superiority

Meta's arguments about superiority, *see* Opp'n, at 25:12-26, mostly rehash arguments about predominance that are already addressed above. Meta's contention that the availability of statutory damages defeats superiority is already addressed in Plaintiffs' opening brief, and Judge Donato rejected the same argument when certifying CIPA claims against Meta. *See Flo Health I*, 349 F.R.D. at 587.

## III.   CONCLUSION

For these reasons, Plaintiffs respectfully request that the more limited class definitions identified above be certified.

Dated:  December 15, 2025

**GEORGE FELDMAN MCDONALD, PLLC**

By: */s/ Michael Liskow*
Lori G. Feldman (*pro hac vice*)
Michael Liskow (State Bar No. 243899)
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (917) 983-9321
E-mail: lfeldman@4-justice.com
         mliskow@4-justice.com
         eservice@4-justice.com

**BURSOR & FISHER, P.A.**
Neal Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700

|   |   |
|---|---|
| 1 | **SMITH KRIVOSHEY, P.C.** |
| 2 | Joel D. Smith (State Bar No. 244902) |
|   | 867 Boylston Street, 5th Floor |
| 3 | Boston, MA 02216 |
|   | Telephone: 617-377-7404 |
| 4 | Email: joel@skclassactions.com |

**SMITH KRIVOSHEY, P.C.**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor
Boston, MA 02216
Telephone: 617-377-7404
Email: joel@skclassactions.com

**GEORGE FELDMAN MCDONALD, PLLC**
Rebecca A. Peterson (State Bar No. 241858)
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (612) 778-9595
Facsimile: (888) 421-4173
E-mail: rpeterson@4-Justice.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Kate M. Baxter-Kauf (*pro hac vice*)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: kmbaxter-kauf@locklaw.com

**THE HODA LAW FIRM, PLLC**
Marshal J. Hoda, Esq. (*pro hac vice*)
12333 Sowden Road, Suite B
Houston, TX 77080
Telephone: (832) 848-0036
Email: marshal@thehodalawfirm.com

**FOSTER YARBOROUGH PLLC**
Patrick Yarborough, Esq. (*pro hac vice*)
917 Franklin Street, Suite 220
Houston, TX 77002
Telephone: (713) 331-5254
Email: patrick@fosteryarborough.com

**EMERSON FIRM, PLLC**
John G. Emerson (*pro hac vice*)
2500 Wilcrest, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Email: jemerson@emersonfirm.com

*Attorneys for Plaintiffs*