**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman (*pro hac vice*)
Michael Liskow (State Bar No. 243899)
200 Park Avenue, Suite 1700
New York, New York 10166
Telephone: (646) 354-6534
lfeldman@4-justice.com
mliskow@4-justice.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Ninth Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
ndeckant@bursor.com

*Attorneys for Plaintiffs*
*Additional Attorneys on Signature Page*

# THE UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE META PIXEL TAX FILING CASES<br><br><br>This document relates to:<br><br>All Actions | Case No.: 5:22-cv-07557-PCP (VKD)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF ROBERT ZEIDMAN**<br><br>Date: January 15, 2026<br>Time: 10:00 a.m.<br>Court: Courtroom 8, 4th Floor<br>Honorable P. Casey Pitts |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................1

II.   BACKGROUND .......................................................................................1

III.  LEGAL STANDARD...................................................................................2

IV.   ARGUMENT ............................................................................................3

    A.    Mr. Zeidman Is Well-Qualified To Opine on the Meta Pixel..............................3

    B.    Mr. Zeidman's Uniformity Opinion Is Reliable, and Meta's Criticisms—At Most—Bear Only on Weight, Not Admissibility. ............................................5

        a.    Meta Misconstrues Mr. Zeidman's Opinion............................................6

        b.    Meta's Own Data and Documentation Provide a Factual Foundation for Mr. Zeidman's Uniformity Opinion....................................................6

        c.    The "Assumptions" Meta Identifies Are Merely Factual Disputes that Go to Weight, Not Admissibility. .......................................................9

    C.    Mr. Zeidman's Analysis of Routing / Addressing Data Is Reliable and Proper. .......................................................................11

        a.    Mr. Zeidman's "Pen Register" Is Not an Improper Legal Conclusion...11

        b.    Mr. Zeidman's Pen Register Analysis Is Based on Reliable Assumptions, Facts, and Methodology....................................................13

    D.    Mr. Zeidman's Tax Information Opinion Is Reliable, Relevant, and Permissible Expert Testimony. .............................................................15

    E.    Mr. Zeidman's Visitation Count Supports Class Certification Because It Provides a Framework That Can Be Applied Classwide...................................18

        a.    Mr. Zeidman's Definition of session_id Is Reliable and Admissible.....19

        b.    Mr. Zeidman's Analysis Is Tethered to Plaintiffs' Theory....................20

        d.    Mr. Zeidman Does Not Need to Specify the Exact Data Transmitted....22

V.    CONCLUSION........................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
    738 F.3d 960 (9th Cir. 2013) ...............................................3

*Ambrosini v. Labarraque*,
    101 F.3d 129 (D.C. Cir. 1996) ............................................11

*Arriaga v. Logix Fed. Credit Union*,
    No. CV–18–9128–CBM–(AGRx), 2022 WL 3097456 (C.D. Cal. Apr. 22, 2022) .............16

*In re Arris Cable Modem Consumer Litig.*,
    327 F.R.D. 334 (N.D. Cal. 2018) ..........................................8

*Avila v. Ford Motor Co.*,
    796 F. Supp. 3d 593 (N.D. Cal. 2025) ....................................8

*Bally v. State Farm Life Ins.*,
    335 F.R.D. 288 (N.D. Cal. 2020) ..........................................9

*Barragan v. Home Depot U.S.A., Inc.*,
    No. 19–cv–01766–AJB–AGS, 2022 WL 174023 (S.D. Cal. Jan. 18, 2022) .......................14

*Brooks v. Thomson Reuters Corp.*,
    No. 21-CV-01418-EMC, 2023 WL 5667884 (N.D. Cal. Aug. 9, 2023) .......................17, 21

*Brown v. Google LLC*,
    No. 20-cv-3664-YGR, 2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ..........................6, 8

*Cahill v. Nike, Inc.*,
    No. 3:18-cv-1477-JR, 2022 WL 19226181 (D. Or. Nov. 22, 2022) ....................................8

*Campbell v. Nat'l R.R. Passenger Corp.*,
    311 F. Supp. 3d 281 (D.D.C. 2018) ........................................11

*Camplisson v. Adidas Am., Inc.*,
    2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) ..............................22

*Carol Cortes v. Princess Cruise Lines, LTD.*,
    No. Cv 19–2563–RSWL(AGRx), 2020 WL 5492988 (C.D. Cal. Sept. 8, 2020) ...............18

*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014) ...........................................3, 16

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014) ..........................................3, 4

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)...............................................................................11, 17, 20

*Davidson v. Apple*,
   No. 16–CV–04942–LHK, 2018 WL 2325426 (N.D. Cal. May 8, 2018) ...........................20

*Droplets, Inc. v. Yahoo! Inc.*,
   No. 12-cv-03733-JST, 2021 WL 9038353 (N.D. Cal. July 1, 2021)...................................10

*Elosu v. Middlefork Ranch Inc.*,
   26 F.4th 1017 (9th Cir. 2022) ...............................................................7, 9, 11, 21

*Favell v. Univ. of S. Cal.*,
   No. CV 23-846-GW-MARx, 2024 WL 4868259 (C.D. Cal. Nov. 13, 2024) ......................7

*Griffith v. TikTok Inc.*,
   No. 5:23–cv–00964–SB–E, 2024 WL 4874556 (C.D. Cal. Oct. 22, 2024)...................17, 18

*Hyer v. City and Cnty. of Honolulu*,
   118 F.4th 1044 (9th Cir. 2024) .................................................................................3

*JH Kelly, LLC v. AECOM Tech. Servs., Inc.*,
   605 F. Supp. 3d 1295 (N.D. Cal. 2022) ................................................................3, 4

*Kendall Dealership Holdings, LLC v. Warren Distrib. Inc.*,
   561 F. Supp. 3d 854 (D. Ala. 2021)..........................................................................7

*Lawes v. CSA Architects and Eng'rs LLP*,
   963 F.3d 72 (1st Cir. 2020)......................................................................................8

*Lindland v. TuSimple, Inc.*,
   No. 3:21–cv–00417–RBM–MDD, 2022 WL 11965022 (S.D. Cal. Oct. 20, 2022) ..............2

*In re Lipoderm Antitrust Litig.*,
   No. 14-md-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017)...................10, 11, 21

*Lucido v. Nestle Purina Petcare Co.*,
   217 F. Supp. 3d 1098 (N.D. Cal. 2016) ...................................................................4

*Matuez v. Lewis*,
   No. CV 11–7411–JVS (JPR), 2012 WL 3582122 (C.D. Cal. May 9, 2012).........................4

*In re Packaged Seafood Prods. Antitrust Litig.*,
   No. 15–MD–2670 JLS (MDD), 2020 WL 4530744 (S.D. Cal. Aug. 6, 2020)....................20

*Pokorny v. Quixtar Inc.*,
   No. 07-00201 SC, 2007 WL 1932922 (N.D. Cal. June 29, 2007).......................................12

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) ..................................................................3, 11, 21

*In re Soc. Media Adolescent Addiction / Personal Injury Prods. Liab. Litig.,*
    No. 22–md–03047–YGR (PHK), 2025 WL 3171582, at *4 (N.D. Cal. Nov. 13, 2025) .....16

*Sumotext Corp. v. Zoove, Inc.,*
    No. 16-cv-01370-BLF, 2020 WL 264701 (N.D. Cal. Jan. 17, 2020) ..................................16

*Tietsworth v. Sears, Roebuck and Co.,*
    No. 5:09–cv–00288–JF (HRL), 2012 WL 1595112 (N.D. Cal. May 4, 2012)......................5

*Torliatt v. Ocwen Loan Servicing, LLC,*
    570 F. Supp. 3d 781 (N.D. Cal. 2021) ...............................................................................12

*In re Vivendi Universal, S.A. Sec. Litig.,*
    No. 02 Civ. 5571 (RJH)(HBP), 2009 WL 10795068 (S.D.N.Y. Aug. 18, 2009)...............10

*In Re Volkswagen "Clean Diesel" Mktg, Sales Pracs., & Prods. Liab. Litig.,*
    500 F. Supp. 3d 940 (N.D. Cal. Nov. 12, 2020) ................................................................21

*Waymo LLC v. Uber Techs. Inc.,*
    No. C 17–00939 WHA, 2017 WL 5148390 (N.D. Cal. Nov. 6, 2017) ...............................18

*Zariczny v. Harley-Davidson, Inc.,*
    No. 2:23-cv-09066-SPG-MAR, 2025 WL 3049974 (C.D. Cal. Sept. 8, 2025)................4, 5

**Statutes**

California Penal Code § 638.50 ...............................................................................................12

**Other Authorities**

Federal Rule of Evidence 702........................................................................................ *passim*

Federal Rule of Civil Procedure 23 ........................................................................................17

1

## I.    INTRODUCTION

2       Meta Platforms, Inc. ("Meta"), in its Motion to Exclude the Expert Report and Testimony

3   of Robert Zeidman ("Motion" or "Mot."), has offered no adequate basis to exclude Robert

4   Zeidman's opinions, despite its multiple attacks on Mr. Zeidman's report. First, Meta attempts to

5   paint Mr. Zeidman as unqualified by characterizing him as merely an intellectual property expert.

6   But Mr. Zeidman has spent decades developing and analyzing software, experience that more than

7   qualifies him to opine on the Meta Pixel. Second, Meta attempts to undercut the relevance and

8   reliability of Mr. Zeidman's opinions by highlighting factual inputs it says he ignored. At bottom,

9   however, Meta's criticisms amount to a disagreement about what evidence matters—a criticism that

10  can only go to weight, not admissibility. For these and other reasons discussed below, the Court

11  should deny Meta's Motion.

12

## II.    BACKGROUND

13      Meta offers a technology known as the "Meta Pixel" that allows websites to collect a wide

14  array of data about the websites' users. H&R Block and TaxAct (the "Tax Preparers") installed the

15  Meta Pixel on their tax filing websites, feeding Meta user data that included revenue, dependent

16  information, refund amounts, and more—even if the user lacked a Meta account. Plaintiffs brought

17  this action against Meta on December 1, 2022, *see* ECF No. 1, and filed the operative Second

18  Amended Consolidated Class Action Complaint ("SAC") on May 9, 2025; *see* ECF No. 180.

19  Plaintiffs now seek to certify eight classes. *See* concurrently filed Reply in Support of Class

20  Certification ("Reply Brief"). In support of the motion for class certification, Plaintiffs retained

21  Robert Zeidman as a technical expert.

22      Mr. Zeidman has over 50 years of experience in software development. *See* Expert Report

23  of Robert Zeidman ("Zeidman Report," ECF No. 214-1), ¶ 6. In his role as founder and president of

24  Zeidman Consulting, he works with Fortune 500 companies—most of which are high-tech

25  companies—to develop, maintain, and optimize hardware and software. *See id.* ¶ 5. He also has

26  experience with web development and online advertisement tools, including through his work with

27  online streaming media and user tracking at Firtiva. *See id.* ¶¶ 7-8; *see also* concurrently filed Reply

28  Report of Robert Zeidman ("Zeidman Reply Report"), ¶¶ 11-14.

---

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE ZEIDMAN
CASE NO. 5:22-CV-07557-PCP

1    In his opening report, Mr. Zeidman provided analysis on (1) how and when the Meta Pixel

2    collected and transmitted data to Meta from the Tax Preparers' websites, and (2) the specific event

3    data produced by Meta that the Meta Pixel collected from the Tax Preparers' websites and

4    transmitted to Meta. *See* Zeidman Report ¶ 4. ████████████████████████████████

5    ████████████████████████████████████████████████████████████████████

6    ████████████████████████ *See id.* ¶¶ 24-27. Mr. Zeidman offered two conclusions based on

7    his analysis. *See id.* ¶ 57. First, he concluded that "the Meta Pixel collected and transmitted various

8    types of data to Meta from the Representatives and other members of the Classes during the relevant

9    class periods from the Tax Preparers' websites, and did so in a largely uniform [manner] on each

10   website during the relevant class periods." *Id.* Second, he determined that the Hive data that Meta

11   produced included both routing and addressing information—what he referred to as "pen register"

12   data—as well as tax information that Meta had received from the Tax Preparers' websites. *Id.* Based

13   on this data, Mr. Zeidman proposed a methodology to determine the number of visits to each Tax

14   Preparer's website during the relevant class periods. *See id.* In its Motion, Meta has moved to exclude

15   these opinions from the case. *See generally* Mot.

16   **III.   LEGAL STANDARD**

17   Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under this

18   rule,

19   A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's

20   scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based

21   on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the

22   facts of the case.

23   *Lindland v. TuSimple, Inc.*, No. 3:21–cv–00417–RBM–MDD, 2022 WL 11965022, at *1 (S.D. Cal.

24   Oct. 20, 2022). Courts employ a "broad conception of expert qualifications" based on "a purported

25   expert's knowledge, skill, experience, training, and education in the subject matter of [the] asserted

26   expertise." *JH Kelly, LLC v. AECOM Tech. Servs., Inc.*, 605 F. Supp. 3d 1295, 1303 (N.D. Cal.

27   2022).

28

The inquiry into admissibility is similarly flexible. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (emphasizing the standard is not a rigid one). Simply put, the court must assure that the expert testimony is both relevant and reliable. *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). Relevant expert testimony has "a valid connection to the pertinent inquiry." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (quoting *Primiano*, 598 F.3d at 565). Reliable expert testimony "has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* (quoting *Primiano*, 598 F.3d at 565). In evaluating expert testimony, the court must limit its role to that of a "gatekeeper" only. *City of Pomona*, 750 F.3d at 1043; *see also Hyer v. City and Cnty. of Honolulu*, 118 F.4th 1044, 1056 (9th Cir. 2024) (explaining that a court exceeds this role by assessing whether an expert's "'hypothesis is correct'" or "'corroborated by other evidence on the record'") (quoting *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026 (9th Cir. 2022)). Even "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564.

## IV.   ARGUMENT

Meta's Motion is meritless. This Court should reject Meta's arguments and deny its motion.

### A.     Mr. Zeidman Is Well-Qualified to Opine on the Meta Pixel.

Mr. Zeidman has the knowledge, skill, and experience required to testify as an expert witness. *See* Fed. R. Evid. 702. Courts impose a "low" threshold for qualification that requires a "minimal foundation of knowledge, skill, and experience." *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 550 (C.D. Cal. 2014). Mr. Zeidman exceeds that threshold. As described above, Mr. Zeidman has designed and analyzed software for over fifty years. *See* Zeidman Report ¶¶ 5-7. His experience includes founding consumer-facing online companies that handle consumer data, and he holds patents in internet-tracking and advertisement-targeting technology. *See id.*, Ex. B (Zeidman CV); *see also* Zeidman Reply Report ¶¶ 11-14. Mr. Zeidman has had articles on consumer data published in both the *Disaster Recovery Journal* and *IT World*. *See* Zeidman Reply Report ¶¶ 11, 14. His experience and knowledge have equipped him to work as an expert on data privacy cases in the past,

1    *see id.* ¶ 12, and it more than qualifies him to opine here. *See JH Kelly*, 605 F. Supp. 3d at 1303;

2    *ConAgra*, 302 F.R.D at 550.

3            Meta argues that Mr. Zeidman is nevertheless unqualified because he lacks expertise in its

4    proprietary Meta Pixel technology. *See* Mot. at 4-5. According to Meta, Mr. Zeidman cannot

5    possibly opine on anything other than his understanding of software and hardware for intellectual

6    property purposes. *See* Mot. at 5. Meta misses the point. Mr. Zeidman need not demonstrate prior

7    experience designing, developing, or analyzing the Meta Pixel itself. *See Matuez v. Lewis*, No. CV

8    11–7411–JVS (JPR), 2012 WL 3582122, at *8 (C.D. Cal. May 9, 2012), *report and recommendation*

9    *adopted*, 2012 WL 3582629 (C.D. Cal. Aug. 20, 2012) ("If witnesses could not testify for the first

10   time as experts, we would have no experts."); *see also Zariczny v. Harley-Davidson, Inc.*, No. 2:23-

11   cv-09066-SPG-MAR, 2025 WL 3049974, at *4 (C.D. Cal. Sept. 8, 2025) (emphasizing that "an

12   expert 'need not be officially credentialed in the specific matter under dispute'") (quoting *Icon-IP*

13   *Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp. 3d 928, 938 (N.D. Cal. 2015)). He

14   need only show that his background qualifies him to opine on the design of software generally,

15   including the Meta Pixel.

16           Mr. Zeidman's background equips him to do just that. By fixating on Mr. Zeidman's

17   intellectual property expertise, Meta elides the fact that the bulk of his experience revolves around

18   analyzing and reverse-engineering software—the crux of his report. *See Lucido v. Nestle Purina*

19   *Petcare Co*., 217 F. Supp. 3d 1098, 1108 (N.D. Cal. 2016) (rejecting defendant's argument that

20   expert was not qualified because, even if he did not have "a specialty with mycotoxins," a niche

21   subfield, his "broader specialty of veterinary toxicology" meant he had enough knowledge to opine

22   on the subject). This experience fits within courts' "broad conception" of expertise. *See JH Kelly*,

23   605 F. Supp. 3d at 1303; Fed. R. Evid. 702, advisory committee's note to 2000 amendments ("[T]he

24   text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.").

25           Meta also attacks Mr. Zeidman for his purported inability to recite arcane technical details

26   related to the Meta Pixel on command. *See* Mot. at 5. As Meta is aware, however, a "deposition is

27   not a memory test." *In re Soc. Media Adolescent Addiction / Personal Injury Prods. Liab. Litig*., No.

28   22–md–03047–YGR (PHK), 2025 WL 3171582, at *4 (N.D. Cal. Nov. 13, 2025) (summarizing

1    Meta's response to a dispute related to its witness's inability to answer "specific, data-driven

2    questions . . . at the level of granularity now sought") (citations omitted). Moreover, Meta

3    misconstrues exchanges from Mr. Zeidman's deposition testimony. ████████████████

4    ████████████████████████████████████████████████████████████

5    ████████████████████████████    See Declaration of Kate M. Baxter-Kauf in Support

6    of Opposition to Motion to Exclude Expert Report and Testimony of Robert Zeidman ("Baxter-Kauf

7    Decl."), Ex. A (Tr. of Oct. 3, 2025 Dep. of Robert Zeidman at 124:24-125:21 ███████████

8    ████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████

13   ████████████████    Id. at 146:08-13, 149:5-11. These examples are hardly "core concepts in the Meta

14   Pixel," Mot. at 5, that would disqualify Mr. Zeidman as an expert. At most, Meta's critique of Mr.

15   Zeidman is a "[d]ispute[] as to the strength of [his] credentials"—a dispute that goes "to the weight,

16   not the admissibility," of Mr. Zeidman's testimony. *Zariczny*, 2025 WL 3049974, at *4.

17       **B.    Mr. Zeidman's Uniformity Opinion Is Reliable, and Meta's Criticisms—At**

18             **Most—Bear Only on Weight, Not Admissibility.**

19       Mr. Zeidman's analysis shows that the Meta Pixel operated in a largely uniform manner

20   throughout the class periods. Meta argues that his analysis is unreliable because it lacks a "sufficient

21   factual foundation" and "relie[s] on unwarranted assumptions." Mot. at 6, 8. "Ordinarily," however,

22   "the factual basis of an expert's opinion goes to the credibility of the testimony, not to its

23   admissibility." *Tietsworth v. Sears, Roebuck and Co.*, No. 5:09–cv–00288–JF (HRL), 2012 WL

24   1595112, at *7 (N.D. Cal. May 4, 2012). Therefore, the Court should reject Meta's argument because

25   Mr. Zeidman's opinion is not "so fundamentally unsupported that it can offer no assistance to the

26   jury." *Id.*

27   _____

28   [1] Meta claims that ████████████████████████████████ " Mot. at 5. Plaintiffs understand this to be a reliability
     criticism and address it in the context of Meta's uniformity argument below. *See infra* Section IV.B.

1

        *a.    Meta Misconstrues Mr. Zeidman's Opinion.*

2

     As an initial matter, Meta misconstrues Mr. Zeidman's uniformity opinion: it says that Mr.

3

Zeidman concluded that "███████████████████████████████████████████████████████

4

████████." Mot. at 9 (emphasis added). This is not so. Mr. Zeidman specifically said the Pixel

5

operated "in a *largely* uniform matter on *each* website during the relevant class periods," Zeidman

6

Report ¶ 57 (emphasis added), and highlighted differences between the Tax Preparers' websites'

7

Pixel configurations. *See id.* ¶¶ 33, 38, 43, 46. Mr. Zeidman has since reiterated that he used the term

8

"to mean that the Meta Pixel utilized the same mechanisms to collect and transmit data during the

9

class periods, regardless of any changes in the specific data that the individual Tax Websites

10

collected." Zeidman Reply Report ¶ 25.

11

        *b.    Meta's Own Data and Documentation Provide a Factual Foundation for*

12

                *Mr. Zeidman's Uniformity Opinion.*

13

     Mr. Zeidman based his uniformity opinion on reliable sources. Specifically, Mr. Zeidman

14

reviewed Meta testimony and exhibits, public Meta Pixel documentation, and Meta Hive data

15

produced in this case. *See* Zeidman Report ¶¶ 24-27; *see also id.* at Ex. A (listing materials relied

16

upon). These sources provide a reliable factual foundation for Mr. Zeidman's analysis. For example,

17

████████████████████████████████████████████████████████████████████████████

18

██████████████████████████████. *See* Zeidman Report, Ex. E at 3. Public documentation is also

19

a reliable source for technical information about the Meta Pixel, ████████████████████. *See*

20

Corrected Rebuttal Expert Report of Georgios Zervas ("Zervas Report," ECF No. 257-3), ██████

21

████████████████████████████████████████████████████████████████████████████

22

████████████████████████████████████████████████████████████████████████████

23

██████████████████████████████████████████████████. Indeed, Courts

24

have accepted similar sources as reliable. *See, e.g.*, *Brown v. Google LLC*, No. 20-cv-3664-YGR,

25

2022 WL 17961497, at *14 (N.D. Cal. Dec. 12, 2022) (denying motion to exclude an expert because

26

his opinions were based on "reliable principes" and "relevant documentation," including "Google

27

documents and discovery responses" and "publicly available sources"). And Meta itself even

28

1    submitted one of its public webpages as an exhibit to its motion to dismiss. *See* ECF No. 107 at 4-

2    5; ECF No. 107-6.

3         Using this foundation, Mr. Zeidman provides a reliable analysis of how the Meta Pixel

4    functions—both in general *and* in this particular case. ███████████████████████████

5    ████████████████████████████████████ *See* Baxter-Kauf Decl., Ex. A at 76:13-20.

6    ███████████████████████████████████████████████

7    ███████████████████████████████████████████████

8    ███████████████████████████████████████████████

9    ███████████████████████████████████████████████

10   ███████████████████████████ *See* Zeidman Reply Report ¶ 25. This

11   methodology informed his uniformity opinion, and it aligns with methodology used by Meta's own

12   expert. *See* Baxter-Kauf Decl., Ex. B, at 256:24-257:22 (████████████████████

13   ███████████████████████████████████████████████

14   ███████████████████████████████████████████

15   ███████████████████████████████████████ "). Mr. Zeidman's opinion

16   provides the Court with useful information for its commonality analysis at the class certification

17   stage. *See Favell v. Univ. of S. Cal.*, No. CV 23-846-GW-MARx, 2024 WL 4868259, at *5 (C.D.

18   Cal. Nov. 13, 2024) (finding expert's opinions relevant to class certification because "they relate to

19   the commonality of the putative class's claims and thereby advance a material aspect of Plaintiffs'

20   case").

21        Nevertheless, Meta complains that its own data and documentation aren't good enough—

22   it thinks Mr. Zeidman should have reviewed its source code, too. *See* Mot. at 6-8. Meta approaches

23   this criticism from two different angles. First, it characterizes Mr. Zeidman's opinion as

24   impermissibly restating or summarizing record evidence to state a conclusion without any

25   methodology or expertise. *See* Mot. at 6. Second, it claims that Mr. Zeidman's uniformity opinion

26   is merely "guesswork" that includes "no analysis." Mot. at 7-8.

27        Neither is true. As explained above, Mr. Zeidman had "sufficient facts [and] data" to

28   ground his opinion, *see* Fed. R. Evid. 702, not mere "unsupported speculation." *Kendall Dealership*

1  *Holdings, LLC v. Warren Distrib. Inc.*, 561 F. Supp. 3d 854, 859 (D. Ala. 2021); *see also Elosu*, 26

2  F.4th at 1025 ("[W]hile a court may reject wholly speculative or unfounded testimony, it abuses its

3  discretion if it overlooks relevant data submitted as the foundation of an expert's remarks."). Mr.

4  Zeidman performed data analysis on the sample data produced by Meta and synthesized testimony

5  and documents to reach his conclusion. *See* Zeidman Report ¶¶ 31-50. That is analysis—not

6  "assumptions." *Brown*, 2022 WL 17961497, at *12 (plaintiffs' expert "does more than summarize

7  Google's documents, testimonies, and disclosures" because he "synthesiz[ed] information from a

8  variety of different sources, including both Google's internal documents and public documents");

9  *see also Cahill v. Nike, Inc.*, No. 3:18-cv-1477-JR, 2022 WL 19226181, at *13 (D. Or. Nov. 22,

10  2022) (denying motion to exclude despite "scant analysis" because the court could "weigh the

11  evidence . . . and determine what weight to give" expert opinion for class certification purposes).

12          Finally, in an attempt to discredit Mr. Zeidman, Meta tries to paint him as a hired shill. *See*

13  Mot. at 7-12 (accusing Mr. Zeidman of "parroting" attorney arguments and providing "sound bites"

14  for plaintiffs' counsel). But counsel may provide assistance to an expert witness. *See Avila v. Ford*

15  *Motor Co.*, 796 F. Supp. 3d 593, 597 (N.D. Cal. 2025) (Pitts, J.) (finding it "permissible" for counsel

16  to "provide substantial assistance to an expert witness," including by selecting documents for the

17  expert to review, highlighting relevant portions of those documents, and helping in the drafting

18  effort). And Mr. Zeidman explained in his deposition that, ███████████████████

19  ████████████████████████████████████████████████████████████

20  ██████████████████████████████  *See* Baxter-Kauf Decl., Ex. A at 114:11-25;

21  *see also In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 364 (N.D. Cal. 2018) (noting

22  that an expert need not "independently sort through all of the discovery in a case in order to determine

23  the relevant evidence"). Mr. Zeidman also need not review every potentially relevant deposition

24  transcript or filing to have a reliable foundation for his opinions. *See Lawes v. CSA Architects and*

25  *Eng'rs LLP*, 963 F.3d 72, 101 (1st Cir. 2020) (Rule 702 only requires "sufficient" data which

26  "'signifies that the expert may properly base her opinion on something less than all the pertinent

27  facts or data'") (quoting 29 Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

28  *Procedure* § 6268 (2d ed. 2017)).

1          *c.      The "Assumptions" Meta Identifies Are Merely Factual Disputes that Go*

2                    *to Weight, Not Admissibility.*

3          Meta next argues that Mr. Zeidman's opinion should be excluded because it relies on four

4    purported assumptions. *See* Mot. at 8-12. According to Meta, Mr. Zeidman did not have any basis

5    for his uniformity opinion because he did not address factors it believes are vital: automatic events,

6    custom events, code changes, and user-specific factors. *See id.* However, none of these

7    "assumptions" have any bearing on the *admissibility* of Mr. Zeidman's opinion because they "turn

8    on factual disputes over which inputs . . . should [have been] use[d] in his model, rather than flaws

9    in the model itself." *Bally v. State Farm Life Ins.*, 335 F.R.D. 288, 299 (N.D. Cal. 2020) (explaining

10   that these kinds of arguments "do little to undermine the reliability of the model at this stage"). Each

11   of the "assumptions" Meta raises should instead be "'attacked by cross examination, contrary

12   evidence, and attention to the burden of proof, not exclusion.'" *Elosu*, 26 F.4th at 1024 (quoting

13   *Primiano*, 598 F.3d at 564).

14         With respect to the specific "assumptions," Meta first contends that Mr. Zeidman



16   *See* Mot. at 8-10. According to Meta,

20   *See* Zervas Report ¶ 107 & Fig. 28.

22         Meta next implies that, because the Tax Preparers could create custom events, the Meta

23   Pixel could not possibly operate in a uniform manner. *See* Mot. at 10.

26                                                              Baxter-Kauf Decl., Ex. B at

27   271:23-272:10.

28                                          . *See* Zeidman Report ¶¶ 31, 36-37; Zeidman

1   Reply Report ¶ 25. ████████████████████████████████████████████████

2   ████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████. *See* Mot. at 10 (critiquing

4   Mr. Zeidman for "not know[ing] how H&R Block or Tax Act set custom events").[2] Again, Meta's

5   argument boils down to a disagreement over which inputs Mr. Zeidman used to reach his

6   conclusions, which is not a valid basis to exclude his opinion. *See In re Lipoderm Antitrust Litig.*,

7   No. 14-md-02521-WHO, 2017 WL 679367, at *12 (N.D. Cal. Feb. 21, 2017) (stating that disputes

8   about "what the appropriate inputs should be does not undermine the approach or the reliability" of

9   an expert's methodology).

10          Meta next recycles a similar argument to accuse Mr. Zeidman of ignoring Meta Pixel

11   configuration changes during the class periods. *See* Mot. at 10-11. But the kinds of configuration

12   changes Meta hypothesizes do not affect Mr. Zeidman's broader point: "███████████████

13   ████████████████████████████████████████████████████████████████

14   ██████████████████████████ Zeidman Report ¶ 31; *see also id.* ¶¶ 35-40; Baxter-

15   Kauf Decl., Ex. A at 54:9-23, 55:14-56:2. Meta simply disagrees with the specific factors Mr.

16   Zeidman addressed and the level of granularity of his conclusion. *See Droplets, Inc. v. Yahoo! Inc.*,

17   No. 12-cv-03733-JST, 2021 WL 9038353, at *6-7 (N.D. Cal. July 1, 2021) (rejecting defendant's

18   argument that opposing expert's explanations were "insufficient" or "conclusory" because case law

19   cited did not "require the specific organization and level of detail" the defendant sought); *cf. In re*

20   *Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH)(HBP), 2009 WL 10795068, at *4

21   (S.D.N.Y. Aug. 18, 2009) ("[A]t a certain level of generality, there is ample precedent for Dr. Nye's

22   method. The fact that it lacks precedent at more specific levels does not disqualify it provided the

23   method is applied with sufficient rigor.").

24          Finally, Meta argues that Mr. Zeidman should have considered "user-specific factors" like

25   consent banners and ad blockers. Mot. at 11. Meta cites the Zervas Report to claim these "user-side

26   interventions . . . materially affect Meta Pixel performance." *Id.* But Dr. Zervas bases his conclusions

27

28   ─────────────────
    [2] Meta also claims that Mr. Zeidman failed to analyze how often the Meta Pixel transmitted tax information data. *See* Mot. at 10. This critique mirrors Meta's argument as to Mr. Zeidman's tax information opinion, and Plaintiffs address it below. *See infra* Section IV.D.

on sources and tests that are not clearly from within the class periods. *See* Zervas Report at nn. 200-05, 207-210, 212, 216, 227, 235-45, 248-49 (████████████████████████████████ ████████████████████████████████████████); Zervas Report ¶¶ 84-100 & Figs. 12-15, 17-23 ("████████████████████████████████████████████████"); Baxter-Kauf Decl., Ex. B at 248:16-250:5; 255:19-256:22, 269:24-270:18 (████████████████████ ██████████████). These misaligned tests leave Meta no support for its claims.

        Even if Dr. Zervas's tests were relevant, however, these "user-specific factors" still do not undermine Mr. Zeidman's opinion. Plaintiffs have now proposed revised class definitions that limit the classes to those "whose data from visiting the [Tax Preparers'] websites is in Meta's Hive tables." *See* Reply Brief at 2. These revised definitions mean Mr. Zeidman's opinion remains helpful and reliable regardless of ad blockers or private browsing features (because, for example, if all of an individual's data from each of their visits to a Tax Preparer website was blocked from being ingested into the Hive database, that individual would not be a member of the classes). However, should the Court decide not to adopt this proposed revised definition, "user-specific factors" still affect only the weight of Mr. Zeidman's report, not its admissibility. *See Elosu*, 26 F.4th at 1024; *Primiano*, 598 F.3d at 564; *Lipoderm*, 2017 WL 679367, at *12.

        The Court should reject Meta's attempt to exclude Mr. Zeidman's uniformity analysis on these grounds.

        **C.**    **Mr. Zeidman's Analysis of Routing / Addressing Data Is Reliable and Proper.**

          *a.*    *Mr. Zeidman's "Pen Register" Is Not an Improper Legal Conclusion.*

        Meta incorrectly labels Mr. Zeidman's analysis of Plaintiffs' pen register claims as an improper legal conclusion. *See* Mot. at 13. Again, Meta mischaracterizes the applicable standard in an attempt to disguise its real critique with Mr. Zeidman's analysis—that Meta disagrees with his conclusions. Yet disagreement among experts and between parties goes to the weight of the evidence considered by the trier of fact. *See Elosu*, 26 F.4th at 1024; *see also Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 305 (D.D.C. 2018) (explaining that "[t]he parties' disagreements as to [an expert's] conclusions go to the weight to be given the evidence and not its admissibility");

1   *Ambrosini v. Labarraque*, 101 F.3d 129, 140 (D.C. Cir. 1996) ("*Daubert* instructs that the

2   admissibility inquiry focuses not on conclusions, but on approaches . . . .").

3          It is true that "[a]n expert witness may not 'give an opinion as to her legal conclusion, i.e.,

4   an opinion on an ultimate issue of law.'" *Torliatt v. Ocwen Loan Servicing, LLC*, 570 F. Supp. 3d

5   781, 791 (N.D. Cal. 2021) (internal citation omitted). But as reiterated in his reply report, Mr.

6   Zeidman ███████████████████████████████████████████████

7   ████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████.

10  *See id.*; *see also, e.g.*, Zeidman Report ¶¶ 4, 29, 57. In other words, Mr. Zeidman uses this

11  terminology to explain how, as a *technical* matter and in his *technical* experience, the information

12  Meta collects fits many of the technical categories of data within the pen register statute's scope (i.e.,

13  routing, addressing, and signaling information). *See* Zeidman Report ¶ 29 (████████████

14  ████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████

17  ███████████████████████████); Zeidman Reply Report ¶¶ 18-23. Mr. Zeidman

18  did not, however, opine on whether Meta violated § 638.50.

19          Moreover, Mr. Zeidman's analysis helps identify the technical attributes of the Hive data

20  so a jury can determine its legal significance. This kind of opinion sits squarely within the domain

21  of technical expertise because it assists the trier of fact in understanding ████████████

22  ████████████████████████████████████████████████████████

23  █████████████████████████████████████████. *See* Baxter-Kauf

24  Decl., Ex. B at 287:19-22 ████████████████████████████████

25  ████████████████████████████████████████████████████████

26  ████████████████████████."); *see also Pokorny v. Quixtar Inc.*, No. 07-00201

27  SC, 2007 WL 1932922, at *2 (N.D. Cal. June 29, 2007) ("'[T]estimony is permissible as long as the

28  expert's testimony assists, rather than supplants, the jury's judgment.'"); Fed. R. Evid. 702, (expert

may give testimony if their "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue").

Because Mr. Zeidman's analysis is helpful to the trier of fact, and does not supplant the trier of fact's role, the Court should admit his expert report and testimony in full.

      *b. Mr. Zeidman's Pen Register Analysis Is Based on Reliable Assumptions, Facts, and Methodology.*

Next, Meta argues that Mr. Zeidman's report is based on unreliable assumptions. *See* Mot. at 14-15. Specifically, Meta complains that Mr. Zeidman did not properly measure whether "pen register" data was transmitted to Meta because he did not consider three factors: ██████████ ████████████████████████████████████████████████████████████████ ██████████████████████████. *See id.* But Mr. Zeidman considered each of these factors, and his analysis provides helpful guidance to the Court at class certification. Again, at best, Meta raises challenges that go to the weight of the evidence, not the reliability of Mr. Zeidman's methodology.

First, Meta claims that Mr. Zeidman's opinion is irrelevant because the Meta Pixel ████ ████████████████████████. *See* Mot. at 14. But as Mr. Zeidman explained, ████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████ Zeidman Report ¶ 29. ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████ *See* Zeidman Report ¶ 29; Zeidman Reply Report ¶¶ 18-23. Mr. Zeidman's opinion thus helps the trier of fact understand how Meta's ██████████████████████████████████████.

Second, Meta claims that Mr. Zeidman does not consider whether an IP address actually reveals users' physical locations. *See* Mot. at 15. According to Meta, this supposed omission impacts Mr. Zeidman's ability to identify a California subclass. *See id.* Meta's arguments, however, do not demonstrate that Mr. Zeidman's decision to associate IP addresses with users' physical locations is unreliable; indeed, ██████████████████████████████████████████████████████

1  ███████████████████████████████████. *See* Declaration of Neal Deckant in

2  Support of Reply in Support of Motion for Class Certification (filed concurrently), Ex. 2, at 124:17-

3  125:2. Nevertheless, Meta argues that ████████████████████████████████████████

4  ████████████████████████████████. *See* Mot. at. 15.

5       Meta's arguments fall short. Meta's objection that IP addresses may sometimes be

6  imprecise does not undermine the reliability of Mr. Zeidman's analysis, which importantly goes only

7  to the question of numerosity—whether more than 40 individuals visited the Tax Preparers' websites

8  during the class periods in California and in the United States. *See* Opening Brief at 7. Additionally,

9  as further explained in Plaintiffs' Reply Brief, Meta cannot defeat certification by questioning the

10  reliability of its own Hive data. *See Barragan v. Home Depot U.S.A., Inc*., No. 19–cv–01766–AJB–

11  AGS, 2022 WL 174023 at *6 (S.D. Cal. Jan. 18, 2022) ("Defendant may not rely upon the inaccurate

12  information in its own records as a basis for denying class certification."); Reply Brief at 7-8.

13  Similarly, Meta's speculation that users may have used virtual private networks ("VPNs") to hide

14  their location has been rejected by courts in this district. *See id.* at 11-12. As *Zaklit v. Nationstar*

15  *Mortg. LLC* held, a jury could reasonably conclude on a classwide basis—based on Meta's own

16  records and testimony—that "it is more likely than not that a person with a California area code

17  [was] located in California." *Id.*, No. 5:15–cv–2190–CAS(KKx), 2017 WL 3174901, at *9 (C.D.

18  Cal. July 24, 2017).

19       Third, Meta claims Mr. Zeidman failed to analyze whether IP addresses correspond to

20  unique people, pointing to encrypted IP addresses. *See* Mot. at 15. But as Mr. Zeidman explained in

21  his report, ██████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████. *See* Zeidman

23  Report ¶ 43. And as Mr. Zeidman reiterates in his reply report, ██████████████████████

24  ████████████████████████████████████████████████████████████████

25  █████████████████████████████████████. Zeidman Reply Report ¶ 47. Whether

26  transmitted IP addresses correspond to unique people is thus irrelevant.

27       Mr. Zeidman's "pen register" analysis does not contain methodological errors or unreliable

28  assumptions, and this Court should admit it in full.

**D.    Mr. Zeidman's Tax Information Opinion Is Reliable, Relevant, and Permissible Expert Testimony.**

Meta argues that Mr. Zeidman's tax information analysis should be excluded for two main reasons: (1) Mr. Zeidman did not define "tax information" and (2) he did not quantify how often it appeared in the data sample. Both of Meta's arguments fail. *See* Mot. at 16-18.

First, any inadvertent omission regarding the specific definition of tax information is easily remedied. In his original report, deposition, and now his reply report, Mr. Zeidman outlined clear examples of tax information. *See* Zeidman Report ¶¶ 46-47, 49; Baxter-Kauf Decl., Ex. A at 67:12-68:16; Zeidman Reply Report ¶¶ 24, 50-53. These examples come both from a common sense understanding of what information is related to tax filings, as well Meta's *own* data definitions and Hive data. For instance, in his initial report Mr. Zeidman noted



. Zeidman Report ¶¶ 46-50. This alone should be sufficient for Meta to understand the type of tax information referred to in Mr. Zeidman's analysis. However, in Mr. Zeidman's reply report, he clarifies his definition of tax information (although no clarification was necessary):



Zeidman Reply Report ¶ 24 (citing Zeidman Report Ex. N). These fields are clearly descriptive of information that would comprise tax information.

1    Meta then characterizes Mr. Zeidman's opinion regarding what constituted "tax

2  information," and how to interpret event parameters, as "pure speculation" while citing to the Zervas

3  Report as evidence. *See* Mot. at 17. Expert witnesses may testify on matters for which they have

4  scientific, technical, or other specialized knowledge. *See Arriaga v. Logix Fed. Credit Union*, No.

5  CV–18–9128–CBM–(AGRx), 2022 WL 3097456, at *3 (C.D. Cal. Apr. 22, 2022). Mr. Zeidman's

6  opinion stems from his expertise in consumer data. His methodology is reliable and relevant because

7  it uses Meta's own data from its Hive database to anchor his conclusions. Meta's citations to the

8  Zervas Report do not change this. In fact, in attempting to rebut Mr. Zeidman's opinion, Zervas is

9  making his *own* speculative assumptions based on his experience (which does not include tax

10  expertise). *See Sumotext Corp. v. Zoove, Inc.*, No. 16-cv-01370-BLF, 2020 WL 264701, at *5 (N.D.

11  Cal. Jan. 17, 2020) (explaining that, where two qualified experts "espouse conflicting views, . . . a

12  'battle of the experts' arises," and "[t]he proper course is to allow each side to attack the other's with

13  contrary expert opinion, other contrary evidence, and cross-examination"). As such, Meta's claim

14  of "speculation" is actually just a disagreement with the merits of Mr. Zeidman's analysis, which

15  should be left for the trier of fact. *See* City of Pomona, 750 F.3d at 1049 ("A factual dispute is best

16  settled by a battle of the experts before the fact finder, not by judicial fiat.").

17    Second, Meta objects to Mr. Zeidman's use of the word "enormous." Mot. at 16, 17. In his

18  report, Mr. Zeidman determined that "there was an enormous amount of tax information and other

19  data transmitted to Meta from the Tax Preparers' websites." Zeidman Report ¶ 57. Mr. Zeidman's

20  conclusion that "enormous" amounts of data were collected by Meta is grounded in the structure,

21  operation, and volume of Meta's Hive data. Mr. Zeidman's use of "enormous" is a subjective

22  description with the respect to the amount of data he received. *See* Baxter-Kauf Decl., Ex. A at

23  71:16-72:9 (███████████████████████████████████████████████████).

24  Indeed, Meta does not itself identify a quantity of data that is "enormous" or not —so it can hardly

25  dispute whether the amount of data is "enormous" or not. Quibbling over the adjectives used to

26  describe the quantity of data does not impact what is at issue in this case—that is, Meta unlawfully

27  transmitted and received data, including tax information and sensitive financial information, without

28  user consent.

1  Meta claims Mr. Zeidman is "wrong" in characterizing the data as "enormous" because he

2  "███████████████████████████████████." Mot. at

3  16. But Mr. Zeidman was not asked by Plaintiffs to quantify the data or to provide an exact number

4  and specific percentage of times tax information was transmitted. *See Zeidman Reply Report* ¶ 42.

5  At this stage, he need only propose a method for identifying the amount of user visits that resulted

6  in Meta collecting and transmitting tax information. *See Brooks v. Thomson Reuters Corp.*, No. 21-

7  CV-01418-EMC, 2023 WL 5667884, at *3 (N.D. Cal. Aug. 9, 2023) ("At the class certification

8  stage, *Daubert* motions should be tailored to scrutinize expert testimony under Rule 23(b)(3), which

9  only requires that the plaintiff show that its damages are 'capable of measurement on a classwide

10 basis' and that its model for doing so 'is consistent with its theory of liability in the case.'") (citing

11 *Brown*, 2022 WL 17961497, at *5). He has done exactly that. Moreover, Mr. Zeidman has now

12 clarified that, based on his analysis, ████████████████████████████████

13 ████████████████████████████████████████████████

14 ████████████████████████████. *See Zeidman Reply Report* ¶¶ 54-55.

15 Given that this sample data only consists of a limited number of days, this number is enormous when

16 extrapolated across the class periods.

17    Meta compares Mr. Zeidman's supposed failure to "properly assess" the rate of

18 transmission to the "deeply flawed analysis" of the expert in *Griffith v. TikTok Inc.*, No. 5:23–cv–

19 00964–SB–E, 2024 WL 4874556, at *2 (C.D. Cal. Oct. 22, 2024). Mot. at 16. There, the district

20 court excluded a technical expert after it identified egregious errors in his calculations. *See id.*, 2024

21 WL 4874556, at *2. But the flaws detailed by the *Griffith* court are not present here. For example,

22 14 of the 15 events in the sample data the *Griffith* expert associated with the plaintiff "involved

23 different third-party cookies and different phones, indicating they did not come from" the plaintiff.

24 *Id.* at *2. The court also identified "absurd results" from the expert's content categorization method,

25 which resulted in a Lowe's Memorial Day Sale URL tagged as involving "Death, Injury, or Military

26 Conflict." *Id.* To be sure, the *Griffith* court decried the expert's "greatly inflated numbers"—but that

27 flaw arose not from the expert's failure to specify a specific transmittal rate, but because the expert's

28 code overidentified URLs containing search terms. *Id.* at *2. Put simply, *Griffith* is inapposite—Mr.

1    Zeidman is not inflating numbers, and his analysis relies on the straightforward identification of

2    transmissions in Meta's own data—a method that does not create the kind of "absurd results" shown

3    in *Griffith*.

4        Meta's citation to *Waymo LLC v. Uber Techs. Inc.*, No. C 17–00939 WHA, 2017 WL

5    5148390 (N.D. Cal. Nov. 6, 2017) is also not on point. *See* Mot. at 18. The expert in *Waymo* applied

6    no analysis other than "grade-school arithmetic" and merely "made the same arguments that the

7    lawyers can make based on other evidence in the case that can speak for itself." 2017 WL 5148390,

8    at *2. But here, Mr. Zeidman applied technical data analysis methods that showed "thousands of

9    rows of data" contained tax information. *See* Zeidman Report ¶¶ 41-50; Zeidman Reply Report ¶ 55.

10   Tellingly, Meta does not dispute Mr. Zeidman's actual theories, techniques, or methodologies.

11   Instead, it insists that the only acceptable analysis here involves ███████. Mot. at 18. That

12   misstates the applicable law and purpose of Mr. Zeidman's opinion. Mr. Zeidman reliably identified

13   that Plaintiffs' tax information was transmitted using Meta's own Hive data—the precise

14   quantization does not affect the reliability of Mr. Zeidman's methodology.

15       Mr. Zeidman's opinion is relevant and will assist the court in ruling on Plaintiffs' motion

16   for class certification, satisfying the Federal Rules of Evidence's low threshold for relevancy, and

17   thus should not be excluded. *See Carol Cortes v. Princess Cruise Lines, LTD.*, No. Cv 19–2563–

18   RSWL(AGRx), 2020 WL 5492988, at *3 (C.D. Cal. Sept. 8, 2020).

19       **E.    Mr. Zeidman's Visitation Count Supports Class Certification Because It**

20           **Provides a Framework that Can Be Applied Classwide.**

21       Mr. Zeidman's report further helps the trier of fact ascertain a legally cognizable class. Mr.

22   Zeidman provides his view that a "reasonable measure of a 'visit' to a website" is each time someone

23   "goes to the website and either simply remains for a time on the initial web page or performs some

24   operations such as entering information into the website, and then (b) leaves the website by

25   navigating to a different website, closing the browsing session or timing out." Zeidman Report ¶ 51.

26   He calls the count of these visits a "Visitation Count." *Id.* Mr. Zeidman then demonstrates how to

27   calculate the Visitation Count from the Hive data provided by Meta. *See id.* ¶¶ 52-56. Meta

28

challenges Mr. Zeidman's Visitation Count method on several grounds—including the ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Mot. at 19. Each challenge fails.

          *a.*    *Mr. Zeidman's Definition of* ▮▮▮▮ *is Reliable and Admissible.*

First, Meta mischaracterizes Mr. Zeidman's report, claiming that he ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mot. at 18-20. But Mr. Zeidman makes no such

legal claims in his report and does not say ▮▮▮▮▮▮. Rather, Mr. Zeidman describes a

method for determining how many visits occurred, and in doing so, ▮▮▮▮▮▮

▮▮▮▮▮▮ *See* Zeidman Report ¶¶ 52-56; Zeidman Reply Report ¶ 45.

Meta and Dr. Zervas challenge ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ *See* Baxter-

Kauf Decl., Ex. B at 200:18-212:1; *see also* Mot. at 18 ▮▮▮▮▮▮▮▮

▮▮▮▮. However, ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Zeidman Reply Report ¶ 30. Even Meta's other technical expert in this case, Steven Tadelis, ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1    ████████████████ *See* Rebuttal Report of Steven Tadelis ("Tadelis Report," ECF No. 239-52)

2    ¶¶ 23-29. ████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████

5    ████████████████ *See* Zeidman Reply Report ¶ 32. This is the kind of technical analysis that

6    courts routinely deem reliable because it is reproducible and verifiable through Meta's own data.

7    *See Daubert*, 509 U.S. at 593 (testability is a hallmark of reliability).

8           *b.*    *Mr. Zeidman's Analysis Is Tethered to Plaintiffs' Theory.*

9         Meta claims that Mr. Zeidman's Visitation Count opinion fails because it depends on his

10   opinions regarding uniformity, pen register, and tax information, which Meta argues also fail. *See*

11   Mot. at 18. But for the reasons explained above, Mr. Zeidman's analysis regarding these opinions

12   should be admissible in full.

13        Meta also baselessly contends that Mr. Zeidman's Visitation Count is "untethered" to

14   Plaintiffs' theory. Mot. at 1, 18-21. Meta misstates what Mr. Zeidman's Visitation Count is doing:

15   the number of visits is not the "class," but is data that helps demonstrate predominance by supporting

16   Plaintiffs' proposed damages model.

17        Meta cites to a number of inapposite cases to support its argument. For example, in

18   *Kamakahi v. Am. Soc'y for Reprod. Med.*, the court excluded an expert's report because "his analysis

19   [did] not reliably support his conclusion that impact or damages [were] subject to classwide proof"

20   and "absent such a showing[] his reports [were] not relevant to the issue of class certification." 305

21   F.R.D. 164, 182 (N.D. Cal. 2015); Mot. at 18. Meta fails to explain how or why the proposed classes

22   in *Kamakahi* are similar to Plaintiffs' proposed classes, or why Mr. Zeidman's analysis shares the

23   same deficiencies as the expert's analysis in that case. Rather, Mr. Zeidman uses Meta's own data

24   to quantify Visitation Count, revealing common evidence of Meta's uniform conduct across the class

25   periods. His analysis applies to all members of each class and fits Plaintiffs' liability theory. Meta's

26   citations to other cases fail for the same reason. *See Davidson v. Apple*, No. 16–CV–04942–LHK,

27   2018 WL 2325426, at *23 (N.D. Cal. May 8, 2018) (addressing specific failure of economic damages

28   model where model was at odds with Plaintiffs' theory of liability and relied on speculative

1     assumptions); *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15–MD–2670 JLS (MDD), 2020

2     WL 4530744, at *2-3 (S.D. Cal. Aug. 6, 2020) (addressing failure of damages model where model

3     did not fit the facts of the case but was outside the scope of the case); *In Re Volkswagen "Clean*

4     *Diesel" Mktg, Sales Pracs., & Prods. Liab. Litig.*, 500 F. Supp. 3d 940, 951 (N.D. Cal. Nov. 12,

5     2020) (addressing failure of damages methodology where expert did not tailor his analysis to

6     Plaintiffs' damages theory and thus did not prove damages under those theories).

7                 *c.*      *Mr. Zeidman's Analysis Accounted for Non-human Users.*

8            Meta argues that Mr. Zeidman's methodology fails because each visit must be traced to a

9     human user. *See* Mot. at 19. First, Meta presents hypotheticals regarding possible ways in which a

10    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.* at 20. But these hypotheticals present

11    issues of fact, not methodology. If, for instance, a visitor to the websites lost their connection and

12    left the site and joined again, that would indeed count as two visits under Mr. Zeidman's definition

13    above. This does not render Mr. Zeidman's methodology unreliable. If Meta believes Mr. Zeidman's

14    Visitation Count is wrong, that is a disagreement about interpretation, which goes to the weight of

15    Mr. Zeidman's analysis—not admissibility. *See Elosu*, 26 F.4th at 1024; *Primiano*, 598 F.3d at 564;

16    *Lipoderm*, 2017 WL 679367, at *12. Mr. Zeidman is free to count observable, measurable events,

17    and Meta is free to argue that not all of those events qualify as a violation.

18            Second, Meta inaccurately claims ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



19    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Mot. at 20. ▮▮▮

20    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22    ▮▮▮▮ *See* Zeidman Reply Report ¶¶ 40-41. ▮▮▮▮▮

23    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.* From there, ▮▮▮

25    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.* Thus, Mr. Zeidman

26    *can* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See*

27    *Brooks*, 2023 WL 5667884, at *3.

28

d.      *Mr. Zeidman Does not Need to Specify the Exact Data Transmitted.*

Finally, Meta argues that Mr. Zeidman's analysis fails because he "cannot say what data was transmitted" with each "visit" and thus does not determine if "at-issue data" was transmitted. Mot. at 19. Meta's argument misstates the statutory elements of Plaintiffs' claims. *See* Reply Brief at 2-4, 6, 10-11. Meta is also making a merits argument that ignores the fact that a legal violation depends on the act of interception or transmission of data, and not the content of the data intercepted or transmitted. Plaintiffs argue that the transmission of any data—including pen register and URL data—would be a violation, *see id.* at 5-7 & 12, and thus would be "at-issue data." *Id.* Meta's argument does not undermine the admissibility of Mr. Zeidman's analysis because the statutory violations attached to the fact of interception itself—not to the content or character of the data transmitted. *See Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949, at *7 (S.D. Cal. Nov. 18, 2025) ("[M]ost cases in this and other districts have also recognized that website-based trackers can plausibly constitute a pen register . . . even if only IP addresses are collected.") (collecting cases).

Nonetheless, Mr. Zeidman can determine what data is sent to Meta for each session, regardless of the duration of the session. *See* Zeidman Report ¶ 31 (describing that ████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ (citing Zeidman Report Ex. E)). Meta is simply wrong otherwise. *See* Mot. at 19-21. Further, Meta's argument that ███████████████████████████████████████████████████████████ ████████████████████████," *see* Mot. at 20, is contradicted by Mr. Zeidman and Meta's own experts. *See* Zeidman Reply Report ¶ 39; Zervas Report ¶ 18 (explaining that, ██████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ Tadelis Report ¶¶ 23-29 (discussing what data is sent to Meta for each session). Meta is thus correct ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████

1    ████████████████████████████. *See* Zeidman Reply Report ¶ 30. Mr. Zeidman's

2    Visitation Count opinion is therefore reliable and should not be excluded.

3    **V.    CONCLUSION**

4            For the reasons above, the Court should deny Meta's Motion to exclude Mr. Zeidman's

5    testimony.

6

7    Dated: December 15, 2025                    By: */s/ Michael Liskow*
                                                     Michael Liskow

8

9            **GEORGE FELDMAN MCDONALD, PLLC**
             Lori G. Feldman (*pro hac vice*)
10           Michael Liskow (State Bar No. 243899)
             200 Park Avenue, Suite 1700
11           New York, New York 10166
             Telephone: (646) 354-6534
12           lfeldman@4-justice.com
             mliskow@4-justice.com
13

14           **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
             Kate M. Baxter-Kauf (*pro hac vice*)
15           100 Washington Avenue South, Suite 2200
             Minneapolis, MN 55401
16           Telephone: (612) 339-6900
             Facsimile: (612) 339-0981
17           kmbaxter-kauf@locklaw.com

18           **BURSOR & FISHER, P.A.**
             Neal J. Deckant (State Bar No. 322946)
19           1990 North California Blvd., 9th Floor
             Walnut Creek, CA 94596
20           Telephone: (925) 300-4455
             Facsimile:  (925) 407-2700
21           E-mail: ndeckant@bursor.com

22           **SMITH KRIVOSHEY, P.C.**
             Joel D. Smith (State Bar No. 244902)
23           867 Boylston Street, 5th Floor, #1520
             Boston, MA 02116
24           Telephone: (617) 377-7404
             Email: joel@skclassactions.com
25

26

27

28

**GEORGE FELDMAN MCDONALD, PLLC**
Rebecca A. Peterson (241858)
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (612) 778-9595
Facsimile: (888) 421-4173
E-mail: rpeterson@4-Justice.com

**THE HODA LAW FIRM, PLLC**
Marshal J. Hoda, Esq. (*pro hac vice*)
12333 Sowden Road, Suite B
Houston, TX 77080
Telephone: (832) 848-0036
marshal@thehodalawfirm.com

**FOSTER YARBOROUGH PLLC**
Patrick Yarborough, Esq. (*pro hac vice*)
917 Franklin Street, Suite 220
Houston, TX 77002
Telephone: (713) 331-5254
patrick@fosteryarborough.com

**EMERSON FIRM, PLLC**
John G. Emerson (*pro hac vice*)
2500 Wilcrest, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
jemerson@emersonfirm.com

*Attorneys for Plaintiffs*