**LATHAM & WATKINS LLP**
MELANIE M. BLUNSCHI, SBN 234264
melanie.blunschi@lw.com
KRISTIN I. SHEFFIELD-WHITEHEAD,
SBN 304635
kristin.whitehead@lw.com
DIANNE KIM, SBN 348367
dianne.kim@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:    (415) 395-8129


MARISSA ALTER-NELSON (*pro hac vice*)
marissa.alter-nelson@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone:    (212) 906-1200


JESSICA STEBBINS BINA, SBN 248485
jessica.stebbinsbina@lw.com
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:    (424) 653-5500

*Attorneys for Defendant Meta Platforms, Inc.*

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000


ELIZABETH K. MCCLOSKEY, SBN
268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200


JONATHAN C. BOND (*pro hac vice*)
jbond@gibsondunn.com
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: (202) 955-8500

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE META PIXEL TAX FILING CASES | Case No. 5:22-cv-07557-PCP (VKD) |
| This Document Relates To:<br><br>All Actions | **DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF ROBERT ZEIDMAN**<br><br>Date: February 26, 2026<br>Time: 10:00 a.m.<br>Court: Courtroom 8, 4th Floor<br>Honorable P. Casey Pitts |

## TABLE OF CONTENTS

**Page**

I.    ZEIDMAN REMAINS UNQUALIFIED TO OPINE ON THE META PIXEL.................1

II.   THE UNIFORMITY OPINION SHOULD BE EXCLUDED. ..........................................2

    A.    Zeidman's "Clarification" Demonstrates His Opinion's Irrelevance. ....................2

    B.    Zeidman's Uniformity Opinion Is Not Based On Sufficient Facts Or Data...........3

    C.    Zeidman's Unwarranted Assumptions Are Not "Factual Disputes." ......................5

III.  THE PEN REGISTER OPINION SHOULD BE EXCLUDED.........................................8

    A.    The "Pen Register" Opinion Is An Improper Legal Conclusion. ...........................8

    B.    The Pen Register Opinion Is Based on Inaccurate Assumptions............................8

IV.   THE TAX INFORMATION OPINION SHOULD BE EXCLUDED. ............................10

V.    THE VISITATION COUNT OPINION SHOULD BE EXCLUDED. ............................13

VI.   CONCLUSION.............................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Bally v. State Farm Life Ins.*,
   335 F.R.D. 288 (N.D. Cal. 2020) ............................................................................................ 5

*Barragan v. Home Depot U.S.A., Inc.*,
   2022 WL 174023 (S.D. Cal. Jan. 18, 2022) ......................................................................... 10

*Brown v. Google*,
   2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ...................................................................... 4

*Cahill v. Nike, Inc.*,
   2022 WL 19226181 (D. Or. Nov. 22, 2022) .......................................................................... 4

*Camplisson v. Adidas Am., Inc.*,
   2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) ..................................................................... 15

*Claar v. Burlington N.R.R.*,
   29 F.3d 499 (9th Cir. 1994) .................................................................................................... 3

*Daubert v. Merrill Dow Pharms., Inc.*,
   509 U.S. 579 (1993) .......................................................................................................... 2, 12

*Dawidzik v. Tesla, Inc.*,
   2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .................................................................... 15

*Domingo ex rel. Domingo v. T.K.*,
   289 F.3d 600 (9th Cir. 2002) ............................................................................................... 10

*Droplets, Inc. v. Yahoo! Inc.*,
   2021 WL 9038353 (N.D. Cal. July 1, 2021) ......................................................................... 7

*Elosu v. Middlefork Ranch Inc.*,
   26 F.4th 1017 (9th Cir. 2022) ................................................................................................ 5

*Grodzitsky v. Am. Honda Motor Co.*,
   957 F.3d 979 (9th Cir. 2020) ........................................................................................... 3, 12

*Guidroz-Brault v. Mo. Pac. R. Co.*,
   254 F.3d 825 (9th Cir. 2001) ............................................................................................. 3, 6

*In re Apple iPhone Antitrust Litig.*,
   2025 WL 3124160 (N.D. Cal. Oct. 27, 2025) ..................................................................... 15

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014) ........................................................................... 2

*In re Lipoderm Antitrust Litig.*,
    2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ........................................................... 5

*In re MacBook Keyboard Litig.*,
    2021 WL 1250378 (N.D. Cal. Apr. 5, 2021) ......................................................... 13

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
    2016 WL 1598666 (N.D. Cal. Apr. 21, 2016) ......................................................... 7

*In re Vivendi Univ., S.A. Sec. Litig.*,
    2009 WL 10795068 (S.D.N.Y. Aug. 18, 2009) ........................................................ 7

*Keywords, LLC v. Internet Shopping Enters., Inc.*,
    2005 WL 8156440 (C.D. Cal. June 29, 2005) ......................................................... 1

*Khamooshi v. Politico LLC*,
    2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .......................................................... 14

*Kishnani v. Royal Caribbean Cruises Ltd.*,
    2025 WL 1745726 (N.D. Cal. June 24, 2025) ....................................................... 14

*Klein v. Meta Platforms, Inc.*,
    766 F. Supp. 3d 956 (N.D. Cal. 2025) .............................................................. 3, 14

*Krouch v. Wal-Mart Stores, Inc.*,
    2014 WL 5463333 (N.D. Cal. Oct. 28, 2014) .......................................................... 6

*Laatz v. Zazzle, Inc.*,
    2025 WL 3205586 (N.D. Cal. Nov. 17, 2025) ....................................................... 11

*Liaw v. United Airlines, Inc.*,
    2019 WL 6251204 (N.D. Cal. Nov. 22, 2019) ..................................................... 4, 5

*Lucido v. Nestle Purina Petcare Co.*,
    217 F. Supp. 3d 1098 (N.D. Cal. 2016) .................................................................. 2

*Matuez v. Lewis*,
    2012 WL 3582122 (C.D. Cal. May 9, 2012) ........................................................... 2

*Moses v. Payne*,
    555 F.3d 742 (9th Cir. 2009) ............................................................................... 11

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
    523 F.3d 1051 (9th Cir. 2008) ............................................................................... 8

*NuVasive, Inc. v. Kormanis*,
    2019 WL 9633645 (M.D.N.C. Mar. 18, 2019) ........................................................ 5

*Popa v. Microsoft Corp.*,
    153 F.4th 784 (9th Cir. 2025) ...................................................................... 12, 14

*Rambus Inc. v. Hynix Semiconductor Inc.*,
    254 F.R.D. 597 (N.D. Cal. 2008) ...................................................................... 3

*SA Music LLC v. Apple, Inc.*,
    592 F. Supp. 3d 869 (N.D. Cal. 2022) .............................................................. 1

*Siqueiros v. Gen. Motors LLC*,
    2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ......................................................... 5

*Sonneveldt v. Mazda Motor of Am., Inc.*,
    2024 WL 5242611 (9th Cir. Dec. 30, 2024) .................................................... 4

*Stein v. Pac. Bell*,
    2007 WL 831750 (N.D. Cal. Mar. 19, 2007) ................................................... 5

*Stiner v. Brookdale Senior Living, Inc.*,
    665 F. Supp.3d 1150 (N.D. Cal. 2023) ............................................................ 15

*Tinsley v. Snyder*,
    922 F.3d 957 (9th Cir. 2020) ...................................................................... 12, 13

*Torres v. Prudential Financial, Inc.*,
    2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) (Opp. ) ..................................... 10

*United States Ex Rel., Jordan v. Northrop Gruman Corp.*,
    2003 WL 27366247 (C.D. Cal. Feb. 24, 2003) ............................................ 5, 6

*Zaklit v. Nationstar Mortgage LLC*,
    2017 WL 3174901 (C.D. July 24, 2017) .......................................................... 10

*Zariczny v. Harley-Davidson, Inc.*,
    2025 WL 3049974 (C.D. Cal. Sept. 8, 2025) .................................................... 2

**STATUTES**

Cal. Penal Code § 638.50............................................................................................ 9

**RULES**

Fed. R. Civ. P. 23(b)(2)........................................................................................ 12, 15

Fed. R. Evid. 702 .................................................................................................... 1, 2

Fed. R. Evid. 702(b)................................................................................................... 3

Despite plaintiffs' attempts to remedy the deficiencies in Robert Zeidman's opinions through improper new analyses on Reply, Zeidman's opinions remain both unreliable and irrelevant to class certification, and Meta's motion to exclude his opinions should be granted.[1] Contrary to plaintiffs' claims, Zeidman's experience in unrelated software development does not qualify him to opine on the Meta Pixel specifically. More importantly, Zeidman's own testimony and reports demonstrate that his opinions lack a reliable foundation. Zeidman now effectively concedes that there was variability in the data transmitted to Meta throughout the class periods, rendering his Uniformity Opinion unsupported and irrelevant. His Pen Register Opinion remains a legal conclusion untethered from any technical analysis. His Tax Information Opinion—despite improper attempts to rewrite it—continues to fail to provide any basis to determine whether the allegedly transmitted "tax information" is actually sensitive or confidential. And his Visitation Count Opinion likewise continues to be irrelevant, counting "visits" that have no legal connection to plaintiffs' actual claims. Zeidman's opinions and testimony should be excluded.[2]

## I.    ZEIDMAN REMAINS UNQUALIFIED TO OPINE ON THE META PIXEL.

An expert who offers opinions on the functionality and operation of a software or technology must possess "specialized knowledge" of that specific technology and cannot rely on generalized experience alone. *SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 900-01 (N.D. Cal. 2022). In their opposition, plaintiffs highlight Zeidman's general software knowledge and experience. Opp. at 3-5; Reply Rpt. (Dkt. 259-7) ¶¶ 11-14. But none of these experiences involves pixels, let alone the Meta Pixel, and the lone experience Zeidman has with tracking technology was from a time when this technology "was not called 'pixels' and there was no Meta." *Id.* ¶ 13. His lack of relevant experience—coupled with his inability to understand core concepts of the Meta Pixel and its data transmissions (*see* Mot. at 5)—make clear that Zeidman is outside of his expertise here. *See* FRE 702; *Keywords, LLC v. Internet Shopping Enters., Inc.*, 2005 WL 8156440, at *12 n.83 (C.D. Cal. June 29, 2005) (general computer programming experience did

---

[1] Meta concurrently filed a Motion to Strike Portions of the Reply Report of Robert Zeidman ("Mot. to Strike").

[2] Unless noted, all emphasis is added and internal citations are omitted and all references to "Ex." are to exhibits attached to the Bina Declaration in support of Meta's Motion to Exclude Expert Report and Testimony of Robert Zeidman (Dkt. 233-1).

1  not qualify expert to opine on defendant's technology).[3] Indeed, Zeidman repeatedly conceded

2  during his deposition that he is "not familiar" with *basic features* that affect the Meta Pixel's core

3  functions (*e.g.*, developers may disable "automatic" events)—not just "arcane technical details,"

4  Opp. at 4—such that he is not qualified to offer expert opinions on the Meta Pixel. *See* Mot. at 5-

5  6; Ex. 1 at 84:15-24, 86:21-22, 104:1-5, 127:2-128:4, 130:7-131:6, 192:16-21. His opinions, which

6  are all about the Meta Pixel, should be excluded. *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S.

7  579, 592 (1993) ("*Daubert I*").

8  **II.    THE UNIFORMITY OPINION SHOULD BE EXCLUDED.**

9          Zeidman's Uniformity Opinion should be excluded because it is unsupported and

10  unreliable, and irrelevant to plaintiffs' motion for class certification. Mot. 6-12. Plaintiffs claim

11  that Zeidman's opinion "provides the Court with useful information for its commonality analysis,"

12  Opp. at 7, because Zeidman opines that data for visitors to the Tax Preparer websites were

13  "collected and transmitted" by the Meta Pixel "in a largely uniform manner" over two lengthy

14  proposed class periods, Zeidman Rpt. ¶ 57(1). But Zeidman offers *no* basis, consistent with Rule

15  702, in support of this opinion. Zeidman's Uniformity Opinion is also irrelevant to class

16  certification because it does not provide a common methodology to prove that class members'

17  *sensitive* data were transmitted; individualized inquiries into each user's data is necessary.

18          **A.    Zeidman's "Clarification" Demonstrates His Opinion's Irrelevance.**

19          In his initial report, Zeidman opined that "the Meta Pixel collected and transmitted various

20  types of data … and did so in a largely uniform manner on each website during the relevant class

21  periods." Zeidman Rpt. ¶ 57(1). At deposition, Zeidman testified that "by largely uniform, I mean

22  that ***with respect to the data***," that the "automatic data" transmitted was "***all the same for each***

23  ***[T]ax [P]reparers' website***," and "***there's nothing that's allowed differently from each website***."

24

---

25  [3] Plaintiffs' cases in Opp. 3-5 are inapposite because those experts opined on subjects that were within their areas of expertise. *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 551 (C.D. Cal.

26  2014) (economist experienced with models qualified on damages using those models); *Matuez v. Lewis*, 2012 WL 3582122, at *8 (C.D. Cal. May 9, 2012) (police officer monitoring a particular

27  gang qualified on activities of that gang); *Zariczny v. Harley-Davidson, Inc.*, 2025 WL 3049974, at *4 (C.D. Cal. Sept. 8, 2025) (expert experienced with adapting kickstands qualified on

28  functionality of kickstand); *Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 3d 1098, 1104, 1108 (N.D. Cal. 2016) (veterinarian certified in "veterinary toxicology" qualified on petfood toxin).

1   Ex. 1 at 54:9-23. This assertion was critical to plaintiffs' arguments that their proposed classes

2   have common legal and factual questions that could be answered through a class proceeding. Class

3   Cert. Mot. at 7; *id* at 2 (citing Zeidman Rpt. ¶ 29).

4           Zeidman now runs from his original opinion and asserts he only meant that "the Meta Pixel

5   utilized the same mechanisms to collect and transmit data during the class periods, ***regardless of***

6   ***any changes in the specific data that the individual Tax Websites collected***," and "each website's

7   Meta Pixel individually operated in a largely uniform manner." Reply Rpt. ¶ 25. By changing his

8   opinion, Zeidman thus concedes that the data sent to Meta via the Meta Pixel ***did not remain***

9   ***"uniform"*** but rather varied not only across websites but also among class members and across

10  the class periods. This renders it irrelevant for the purpose plaintiffs offer it—namely, to

11  demonstrate common questions regarding the transmission of class members' data—and thus it

12  should be excluded on that basis alone. *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 986

13  (9th Cir. 2020) (exclusion of opinion that did not fit class-certification argument).

14          **B.    Zeidman's Uniformity Opinion Is Not Based On Sufficient Facts Or Data.**

15          Zeidman's Uniformity Opinion is also unreliable. *See* FRE 702(b); *Klein v. Meta*

16  *Platforms, Inc.*, 766 F. Supp. 3d 956, 961 (N.D. Cal. 2025) (opinions "'inherently unreliable' if

17  they do not rest on a sufficient factual foundation"); *Rambus Inc. v. Hynix Semiconductor Inc.*,

18  254 F.R.D. 597, 600 (N.D. Cal. 2008) (opinion not based on "sufficient facts or data"

19  inadmissible). Zeidman did not reliably reach any conclusions regarding the Meta Pixel's

20  operations, because he conducted no technical analysis of its implementation, nor of its "uniform"

21  manner, because he only examined data from within a single year. *Id.* at 605 (excluding report

22  where expert "did no analysis"). Contrary to plaintiffs' claims, this is not a matter of "weight."

23  Opp. at 5. Rather, Zeidman's opinion rests entirely on speculation. *Guidroz-Brault v. Mo. Pac. R.*

24  *Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (expert cannot "include unsupported speculation"); *Claar*

25  *v. Burlington N.R.R.*, 29 F.3d 499, 502 (9th Cir. 1994) (similar, affirming exclusion).

26          Plaintiffs spend several pages handwaving at various "sources" Zeidman reviewed to try

27  to build a factual foundation for his Uniformity Opinion. Opp. at 6-8. None of them, individually

28  or collectively, provides that foundation. Plaintiffs first claim that Zeidman reviewed Meta's

public documentation on the Meta Pixel. *Id.* at 6-7. But this public information only shows "how the Meta Pixel *can* be implemented, not how it *was* implemented in this case." Mot. at 7; Opp. at 7 ("Meta's documentation [] set[s] out the 'rules' for how the Meta Pixel operates."). As plaintiffs admit, Zeidman did not review the Pixel source code or how the Pixel was ***actually*** implemented on each of the websites. *Id.*; Mot. at 6-8.

Next, plaintiffs assert that Zeidman examined sample data from Meta's Hive tables which show data transmitted via the Pixel. Opp. at 6-7. This sample, however, only contains data from certain dates over a one-year period. Mot. at 11. Yet Zeidman concludes that the Meta Pixel "operated in a largely uniform manner" across an almost ***eight-year*** class period on TaxAct's website and a roughly ***four-and-a-half-year*** period on H&R Block's website. *Id.*; Zeidman Rpt. ¶ 40. Nothing in the sample data supports this conclusion, and, despite repeated questioning at his deposition, Zeidman could not point to *any* data that did. Mot. at 10-11. To the contrary, the evidence demonstrates that the Meta Pixel did *not* "operate" uniformly. *See infra* Section I.C. There is "simply too great an analytical gap" between the "established facts in this case and [Zeidman's] opinion." *Liaw v. United Airlines, Inc.*, 2019 WL 6251204, at *4 (N.D. Cal. Nov. 22, 2019) (excluding opinion); *Sonneveldt v. Mazda Motor of Am., Inc.*, 2024 WL 5242611, at *2 (9th Cir. Dec. 30, 2024) (excluding expert because he "failed to provide sufficient facts and data to 'support … every necessary link' in his" opinion).

Excerpts of deposition testimony and discovery responses, also cited by plaintiffs, likewise do not support Zeidman's Uniformity Opinion. Mot. at 6-8. Plaintiffs do not deny, *see* Opp. at 7-8, that Zeidman during his deposition was unable to list the "various types of data" that he concluded were sent via the Meta Pixel, which is the very core of his Uniformity Opinion, and that his Exhibit G is taken nearly verbatim from plaintiffs' complaint, demonstrating it is not the product of independent expert analysis.[4] Mot. at 7; Reply Rpt. ¶ 25. Zeidman "merely summarizes" the documents and then "draws [his] conclusion based solely on speculation," which is improper.

---

[4] Plaintiffs' cited cases are inapposite as they involved expert opinions that went beyond merely "summariz[ing] facts and 'regurgitat[ing]' legal arguments," *Brown v. Google*, 2022 WL 17961497, at *12 (N.D. Cal. Dec. 12, 2022), or were reliable despite lacking detailed analysis on a particular issue, *Cahill v. Nike, Inc.*, 2022 WL 19226181, at *13 (D. Or. Nov. 22, 2022).

1  *Stein v. Pac. Bell*, 2007 WL 831750, at *11 (N.D. Cal. Mar. 19, 2007); *see also Siqueiros v. Gen.*

2  *Motors LLC*, 2022 WL 74182, at *9 (N.D. Cal. Jan. 7, 2022); *NuVasive, Inc. v. Kormanis*, 2019

3  WL 9633645, at *2 (M.D.N.C. Mar. 18, 2019); *Liaw*, 2019 WL 6251204, at *4 (excluding expert

4  opinion that "essentially parrots attorney argument").

5          Plaintiffs seek to excuse Zeidman's failures by claiming that Meta's rebuttal expert, Dr.

6  Zervas (who plaintiffs did not move to exclude), conducted similar analyses. Opp. at 7. But unlike

7  Zeidman, Dr. Zervas does not attempt to ***prove uniformity***; rather, Dr. Zervas critiques Zeidman—

8  a different opinion that requires different supporting facts, data, and analyses. In any event, unlike

9  Zeidman, Dr. Zervas relied on tag manager logs and source code, court filings, internal H&R

10  Block, TaxAct, and Meta documents, and other sources, and conducted technical analyses to

11  demonstrate that various factors could—and did—affect the functionalities of the Meta Pixel on

12  the two websites during the class periods. *See* Zervas Rpt. ¶¶ 81-120; Appendix C.

13      **C.      Zeidman's Unwarranted Assumptions Are Not "Factual Disputes."**

14          Instead of basing his Uniformity Opinion on sufficient facts and data, Zeidman relies on

15  unwarranted assumptions. Mot. at 8-12. The problem is not merely that Zeidman made mistakes

16  about "automatic events, custom events, code changes, and user-specific factors," as plaintiffs

17  assert, nor is this a dispute over "inputs Mr. Zeidman used to reach his conclusions." Opp. at 9-

18  11.[5] Rather, the cited errors illustrate that Zeidman's opinion relies on unsupported assumptions,

19  *United States Ex Rel., Jordan v. Northrop Gruman Corp.,* 2003 WL 27366247, at *3 (C.D. Cal.

20  Feb. 24, 2003), rendering it unreliable.

21      ***Automatic Events.*** Contrary to Zeidman's claims that data transmission was "uniform"

22  throughout the class periods for each website, H&R Block changed the configuration of its Meta

23  Pixel, thereby changing the operation of the Meta Pixel and data transmissions to Meta. Zeidman

24

---

25  [5] Plaintiffs rely on cases involving disputes over experts' inputs into models, *see id.* at 9-10, but
    Zeidman's unwarranted assumptions are not "inputs" into a model; they are the building blocks on
26  which his Uniformity Opinion depends. As such, plaintiffs' cited cases are inapposite. *See Bally*
    *v. State Farm Life Ins.*, 335 F.R.D. 288, 299 (N.D. Cal. 2020) (flaws in expert's damages model
27  turned on "disputes over which [numerical] inputs [the expert] should use" "rather than flaws in
    the model itself"); *In re Lipoderm Antitrust Litig.*, 2017 WL 679367, at *12 (N.D. Cal. Feb. 21,
28  2017) (same); *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1028 (9th Cir. 2022) (addressing
    expert's reliance on testimony from a potentially biased party, not assumptions).

Rpt. ¶¶ 40, 57(1); Reply Rpt. ¶ 25. Zeidman did not know this, because, as plaintiffs admit, he incorrectly assumed that (1) automatic events cannot be turned off by developers (they can); and (2) H&R Block did not disable automatic events (it did). Opp. at 9; *see* Mot. at 9-10. Plaintiffs now argue that some small amount of button click data was still sent after this change. Opp. at 9. But this argument misses the mark: Zeidman's assertion that H&R Block transmitted data "in a largely uniform manner" throughout the class periods is not only wrong, but is something he merely *assumed* and did not analyze. Mot. at 11. *Northrop Grumman*, 2003 WL 27366247, at *3 (excluding opinion that "ma[de] assumptions where convenient to arrive at the desired result").

**Custom Events.** The same is true with respect to custom events. Zeidman *assumed* (without any analysis) that both TaxAct and H&R Block did not change their Meta Pixel configurations to send (or not send) custom event data to Meta during the proposed class periods. Mot. at 10. In fact, during the proposed class periods, TaxAct stopped sending **ten** custom event parameters that Zeidman alleges contained "tax information." Zeidman Rpt. ¶¶ 46, 47, 49, 104; Reply Rpt. ¶ 54; Zervas Rpt. ¶ 104. Again, the import of Zeidman's mistake is that he lacked any basis for his contrary (and wrong) conclusion; he did not examine how the websites actually configured the Pixel, nor did he do any analysis of how often they set or transmitted custom events. Mot. at 10; Zeidman Rpt. ¶¶ 38-39. Yet, Zeidman still concluded—contrary to the actual facts—that "the kinds of events the Meta Pixel collected and transmitted remained largely uniform during the class periods." Reply Rpt. ¶ 25. This is not reliable. *See Krouch v. Wal-Mart Stores, Inc.*, 2014 WL 5463333, at *7 (N.D. Cal. Oct. 28, 2014) (excluding report "based on unfounded and contradicted assumptions"); *Guidroz-Brault*, 254 F.3d at 830-31 (affirming exclusion of opinion based on assumption unsupported and contradicted by record evidence).

**Changes Over Time.** Plaintiffs similarly misunderstand Meta's argument about Zeidman's failure to consider changes over time. Plaintiffs' theory of liability is that Meta received "sensitive" tax information and "pen register" data from these Tax Preparer Websites throughout the class periods. Class Cert. Mot. at 1-2. Changes by developers to Meta Pixel's configuration affects whether, when, and what data is transmitted. Zervas Rpt. ¶¶ 15-23. By his own admission, Zeidman examined data from a *single year* and *assumed* that the Pixel code transmitted uniform data for

1    four-and-a-half to eight years. Mot. at 10-11. He provides no evidentiary support for this

2    assumption, *id.* at 11, and when given the opportunity at his deposition to provide a single piece

3    of evidence in support, he failed to do so, *id.* Plaintiffs argue that this does not affect Zeidman's

4    conclusion that the Meta Pixel sent *some* kind of data throughout the periods it was implemented

5    on the Tax Preparers' Websites. Opp. at 10. But that is not what Zeidman opined (or what matters

6    for class certification); rather, he claimed the Meta Pixel operated ***in a uniform manner*** throughout

7    those entire periods. And he made this claim without analysis and despite record evidence showing

8    the contrary. *See* Zervas Rpt. ¶¶ 81-120. This is not reliable. *In re Montage Tech. Grp. Ltd. Sec.*

9    *Litig.*, 2016 WL 1598666, at *11 (N.D. Cal. Apr. 21, 2016) (excluding expert's methodology

10   because it assumed "exactly the question that the test [was] supposed to examine").[6]

11        ***User-Specific Factors.*** Finally, Zeidman assumed that user-side interventions could not—

12   and did not—affect the Meta Pixel's operation for the TaxAct and H&R Block websites and its

13   users during the class periods. Mot. at 11-12. But he admitted otherwise during his deposition, *see*

14   Ex. 1 at 123:15-124:25 (conceding that consent banners prevent data transmission through the

15   Pixel until the user opts in), and he also did not conduct any analysis or review any facts or data to

16   conclude that user-side factors did not actually affect the Pixel's operation on the Tax Preparer

17   Websites. Mot. at 12. Zeidman also ignored class representatives' testimony that they routinely

18   used software or settings that block Meta Pixel data transmissions. Mot. at 12; Zervas Rpt. ¶ 87

19   n.214 (quoting named plaintiffs' testimonies on how often they use blockers and when started).

20        Plaintiffs claim their proposed modification of the class definitions, in which users who

21   used ad blockers or private browsers "would not be a member of the classes" because their data

22   would not be in Meta's Hive tables, cure these problems. Opp. at 11. But again, this is not correct.

23   Users who opted in to data transmissions (*e.g.*, through consent banners) could still have their data

24   in Meta's Hive tables. Further, plaintiffs' modified class definitions still suffer from the same

25   predominance issues as their original classes. *See* Class Cert. Opp. (Dkt. 239) Section III.

26

27   _____

[6] This is not an argument about details of Zeidman's analysis, and plaintiffs' cases are thus
28   irrelevant. *See Droplets, Inc. v. Yahoo! Inc.*, 2021 WL 9038353, at *6-7 (N.D. Cal. July 1, 2021)
     (argument that a "claim chart" required more detail); *In re Vivendi Univ., S.A. Sec. Litig.*, 2009
     WL 10795068, at *3-4 (S.D.N.Y. Aug. 18, 2009) (argument regarding method).

1    Zeidman's Uniformity Opinion lacks a factual basis and should be excluded.

2    **III.    THE PEN REGISTER OPINION SHOULD BE EXCLUDED.**

3        **A.    The "Pen Register" Opinion Is An Improper Legal Conclusion.**

4        Zeidman's initial opinion cited the California Penal Code's definition of "pen register" to

5    opine that "'pen register' data [] was transmitted from each visitor to the Tax Preparers' website[s]

6    to Meta." Zeidman Rpt. ¶ 57(2); *id.* ¶ 4 (citing Cal. Penal Code § 638.50). Faced with the obvious

7    argument that this is an impermissible legal conclusion, Mot. at 13-14, Zeidman now backpedals

8    and claims that he "used the term 'pen register' data as a shorthand to refer to 'dialing, routing,

9    addressing, or signaling information,'" and that he "only meant to show that from a technological

10    perspective, the Meta Pixel sends the type of data that [he] understand[s] to be 'pen register' data."

11    Reply Rpt. ¶ 17. Zeidman's newfound explanation—which still quotes the Penal Code—appears

12    nowhere in his original report or his deposition testimony.

13        In any event, Zeidman conducted no "technological" analysis of data transmitted by the

14    Meta Pixel. All Zeidman does is baldly state that the labels for certain fields in Meta's Hive tables

15    (geo_ip_zip, country, IP addresses), and HTTP headers, include "addressing," "signaling," or

16    "routing" information. Zeidman provides no technical explanation of what data is actually

17    transmitted, nor does he attempt to explain why such data is "addressing," "signaling," or "routing"

18    information from a technical perspective. *Id.* Rather, Zeidman concludes, based on his own *ipse*

19    *dixit*, that these fields fall into the statutory categories. Zeidman's Pen Register Opinion thus still

20    rests on his personal interpretation of the law rather than any technical analysis—an improper legal

21    conclusion. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008).

22        **B.    The Pen Register Opinion Is Based on Inaccurate Assumptions.**

23        ***Location Data.*** Even though Zeidman admitted that the fields "city" and "country" in

24    Meta's Hive tables were *inferred* from IP addresses that Meta receives (and thus not transmitted

25    via the Meta Pixel), Reply Rpt. ¶ 19, Zeidman still asserted that "the Meta Pixel *sends*" this location

26    data to Meta, *id.* ¶ 17. Zeidman's assertion is contradicted by his own testimony acknowledging

27    that these fields were inferred, not sent. Ex. 1 at 146:5-13. In his Reply Report, Zeidman claims

28    that "the distinction between transmitted data and inferred data [is] a legal issue, not a technical

1    issue, and thus I do not address it." Reply Rpt. ¶ 62. However, this *is* a technical issue: whether

2    data is transmitted or not *is* a fact question—and Zeidman ultimately acknowledges that these

3    fields are not transmitted. *See* Zeidman Rpt. Exhibit H (city and country fields "inferred from geo

4    IP location"). Plaintiffs also contend that "[w]hether the city and country data was 'inferred'

5    instead of 'transmitted'" is not relevant, Opp. at 13, but this is wrong: if a piece of data is inferred,

6    then Meta could not have "intercepted" this data. *Id*. Zeidman's conclusion that the data was

7    "*transmitted* to Meta each time a person visits a website employing the Meta Pixel," is

8    unsupported. Zeidman Rpt. ¶ 29.[7]

9        ***Facts Knowable From IP Addresses.*** Zeidman also claimed that "[b]y reviewing the

10   number of unique (encrypted) IP addresses and associated zip codes," he could determine the size

11   of the proposed California subclass. Zeidman Rpt. ¶ 43. However, Zeidman relies on two

12   unsupported assumptions: (1) that an IP address corresponds to a single, unique user; and (2) that

13   IP addresses accurately reflect the physical location of users. Mot. at 15.

14       Both assumptions are flawed. Zeidman now admits that "a user may have more than one

15   encrypted IP address." Reply Rpt. ¶ 47. This means that counting encrypted IP addresses in order

16   to count users is not reliable. *See* Mot. at 15-16 (a single proposed class representative had 270

17   unique encrypted IP addresses).[8] Zeidman also admitted that (a) IP addresses can "be reflected as

18   different than it is in reality" and "may not be a particularly precise method for evaluating a

19   physical location," Ex. 1 at 150:16-20; (b) various factors can mask a user's location, Reply Rpt.

20   ¶ 9 ("a VPN can obscure [geolocation] information"); and (c) sample data shows the IP address of

21   a former plaintiff did not match her actual location, Mot. at 15. This means that Zeidman's use of

22   IP addresses to determine whether users are physically located in California is unsupported.

23       Plaintiffs respond by claiming that "Meta itself testified that Meta collects IP address, and

24   from that information, it can infer the website user's location down to the zip code level." Opp. at

---

25   [7] If plaintiffs mean solely "IP address" by "location data"—which is not what Zeidman opines—
26   Meta's receipt of IP addresses alone cannot support Zeidman's Pen Register Opinion nor class
     certification. *See infra* Section V.

27   [8] Zeidman also provides a belated estimate in his Reply Report of "55 unique visitors from TaxAct
     and 173 unique visitors from H&R Block." Reply Rpt. ¶ 47; Mot. to Strike at pp. 3-4. This is
28   unreliable; he provides no justification for assuming that the average visitor to these websites has
     exactly 270 unique encrypted IP addresses or that it is a "conservative estimate." Opp. at 14.

1   13-14. But plaintiffs mischaracterize Meta's testimony; Meta's witness actually explained that the

2   "geo_ip_zip" field represents "the zip code associated with the location where the Event Data *may*

3   have fired from," and that she was "not certain" whether that zip code matched the location of "the

4   person using the website that triggered the event." Class Cert. Reply Br. Ex. 2 (Dkt. 259-6) at

5   124:17-125:2; *see also* Ex. 1 at 131:7-19, 148:10-14. Further, contrary to plaintiffs' claims, Meta

6   did not generate the IP addresses included in its Hive tables and thus is not questioning the

7   reliability of its own data;[9] rather, Zeidman assumes that IP addresses necessarily reflect

8   geolocation when there are technical limitations to their ability to do so. Mot. at 15.[10]

9   **IV.    THE TAX INFORMATION OPINION SHOULD BE EXCLUDED.**

10          Meta identified at least two reasons why Zeidman's Tax Information Opinion was

11  unreliable: (1) Zeidman never defined "tax information"; and (2) he never quantified what he

12  meant by an "enormous amount." Mot. at 16-18. Zeidman's belated explanation of "tax

13  information," Reply Rpt. ¶ 24, provides no principled way to identify "tax information" as part of

14  any methodology for quantifying transmission of such information, as he claimed to attempt.

15  *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) (expert must employ

16  "scientific methodology" to survive *Daubert* inquiry). And the late-breaking quantifications he

17  now offers are ad hoc, *see* Mot. to Strike at pp. 3-4, and unreliable for their stated purpose.

18          Under plaintiffs' modified class definitions, Zeidman's Tax Information Opinion is only

19  relevant to plaintiffs' Rule 23(b)(2) injunctive relief classes. Class Cert. Reply Br. at 1.[11] Plaintiffs

20  argue as if this cures all of their *Daubert* problems with this opinion. Opp. at 16-17. Not so. For

21

---

22  [9] Plaintiffs' reliance on *Barragan v. Home Depot U.S.A., Inc.*, 2022 WL 174023 (S.D. Cal. Jan.
23  18, 2022), a wage-and-hour case where defendant "failed to keep accurate [payroll] records," is
    wholly inapposite. The issue here is not that data is missing or inaccurate, but that it is not a reliable
    proxy for a user's physical location.

24  [10] Plaintiffs' citation to *Zaklit v. Nationstar Mortgage LLC*, 2017 WL 3174901 (C.D. July 24,
25  2017) (Opp. at 14) fails because plaintiffs there proposed to "obtain cell site location information,"
    not IP addresses, to determine the location of a borrower, *id.* at *9, and their citation of *Torres v.
26  Prudential Financial, Inc.*, 2024 WL 4894289 (N.D. Cal. Nov. 26, 2024) (Opp. at 14) also fails
    because plaintiffs there proposed to identify class members who used a VPN by "cross-
27  referencing" the zip code data directly submitted to defendant's website against their IP address.
    *Id.* at *9. Plaintiffs propose no such cross-checking or independently verifiable information here.

28  [11] Plaintiffs' only proposed damages classes are now for their CIPA claims, which they have now
    stated are based solely on "pen register and URL data." Class Cert. Reply Br. at 1; Reply Rpt. ¶ 54.

their injunctive relief classes, plaintiffs still must provide a reliable methodology to identify Meta's uniform practice during the class periods and classwide injury. Fed. R. Civ. P. 23(b)(2). Zeidman does not do so, and his Tax Information Opinion should be excluded.

**Definition of "Tax Information."** Fundamentally, Zeidman still fails to provide a comprehensive and systematic description of what "tax information" should be included as part of a principled methodology that demonstrates a common injury which can be remedied through classwide injunctive relief. Zeidman claims that what he would consider to be "tax information" is based on "common sense." Reply Rpt. ¶ 24. But Zeidman's "common sense" understanding is not permissible expert testimony. *Moses v. Payne*, 555 F.3d 742, 756 (9th Cir. 2009) (expert testimony must "concern[] matters beyond the common knowledge of the average layperson"); *Laatz v. Zazzle, Inc.*, 2025 WL 3205586, at *15 (N.D. Cal. Nov. 17, 2025) (excluding opinion based on expert's "mere subjective beliefs" rather than "objective metric").

Zeidman's new approach also offers no principled methodology to identify "tax information." Instead, Zeidman admits that he made "assumptions about what each piece of data represented based on the name of the data field" labels. Reply Rpt. ¶ 50.[12] For example, he included "age_range" as one of the fields he counted, but does not explain what the parameter represented or why it was "tax information." *Id.* ¶ 54. Indeed, Zeidman's Reply Report offers conflicting explanations: Zeidman first claimed that "tax information" includes "any information that would typically be found on a tax form, particularly financial information," which he couples with five "examples." Reply Rpt. ¶ 24. But later he says he considers 18 pieces of information as tax information, among unspecified "others." *Id.* ¶ 54. Still elsewhere he says that "tax information" is "information that *I would expect* to be found on a tax form." *Id.* ¶ 50.

Zeidman's unsystematic and subjective approach to determining what constitutes "tax information" is also inconsistent with plaintiffs' theory of liability; namely, that an injunction is necessary to prevent "future non-consensual disclosures" of "traditional tax filing information," Class Cert. Reply Br. at 1, and threatens Meta's due process rights. The Ninth Circuit has clarified

---

[12] Plaintiffs and Zeidman claim that Meta admitted it received "tax information," Opp. at 15, but nowhere did Meta "admit" that. In response to a Request for Admission, Meta **objected** to undefined, vague and ambiguous terms. *See* Zeidman Rpt. Exhibit M at 2-3.

that there can be no Article III standing where disclosed data was not "private" or "sensitive." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). But Zeidman's random selection of "tax information" parameters include data points that are not "sensitive" or "private." For example, although Zeidman admitted that he is "not certain" what this "piece of data represents," Ex. 1 at 67:12-68:5, Zeidman considers "return_year" to be "tax information." Reply Rpt. ¶ 54. Assuming that the event name "return_year" contains information about the year a tax return was filed, this information cannot be considered "private" or "sensitive." *See Popa*, 153 F.4th at 791 (for Article III standing, the "private facts" disclosed must be "*highly offensive* to a reasonable person") (emphasis in original). Zeidman's hodgepodge of undefined data that he thinks might be "tax information" is not sufficient to demonstrate sensitive data was transmitted and thus cannot confer Article III standing, *Id.* at 795. Because Zeidman does not demonstrate the systemic disclosure of sensitive tax filing information, or offer any method to quantify it, his Tax Information Opinion is unfit for its stated purpose and unhelpful. *Grodzitsky*, 957 F.3d at 986-87.

 ***"Enormous Amount."*** Plaintiffs admit that "Zeidman's use of 'enormous'" is merely "a subjective description," not a quantification. Opp. at 16. Again, this concession alone confirms the Tax Information Opinion is not grounded in any objective metric and thus should be excluded. *Daubert I*, 509 U.S. at 590.

 Knowing this, plaintiffs put forth Zeidman's new, untimely—and therefore improper—counting exercise. *See* Mot. to Strike at pp. 3-4. But that also fails; Zeidman's counting methodology does not help this Court identify any uniform conduct by Meta throughout the class periods that could be cured by a single injunction. *Tinsley v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2020). To provide a count of "tax information," Zeidman counted 18 parameters (chosen solely on "common sense" interpretation of their names) in sample data from dates within a single year of the class periods. Reply Rpt. ¶ 54. Zeidman asserts that his counting exercise shows "12,227 times that this tax information was transmitted and was not blank and/or filtered," Reply Rpt. ¶ 55, but even for the limited sample, that number is inflated by inclusion of parameters based on Zeidman's subjective selection, and it offers no comparison to gauge the frequency with which Meta's filters *did* work—*i.e.*, whether the transmittals represent a significant percentage of information or not.

1   From this dubious beginning, Zeidman assumes he can just "expand[]" the results of his counting

2   exercise "across the entire class periods," without any methodology for doing so or even

3   confirming that the relevant data is available. *Id.*

4       Zeidman's unwarranted assumptions render his counting exercise useless at supporting

5   plaintiffs' injunctive relief class. Plaintiffs claim they are seeking injunctive relief because Meta's

6   filtering "worked (at best) intermittently." Reply Br. at 1. But that *some* data may have been

7   received by Meta in April 2022 to April 2023 does not establish anything about the effectiveness

8   of filtering, nor—critically—that Meta engaged in uniform conduct that "appl[ies] generally to the

9   class[es]" warranting injunctive relief under Rule 23(b)(2). Meta's technical measures to detect

10  and filter out data evolved throughout the class periods, Zervas Rpt. ¶¶ 34-45, but Zeidman

11  expressly disregards such changes, Reply Rpt. § IV.F ("Meta's detection and filtration code is

12  irrelevant"). Zeidman's number is simply a number in a vacuum: it does not demonstrate a

13  common or continuing injury or—given his vague use of "tax information"—any injury at all,

14  rendering it irrelevant to certification and unreliable. *In re MacBook Keyboard Litig.*, 2021 WL

15  1250378, at *7 (N.D. Cal. Apr. 5, 2021) (striking opinions "irrelevant at the class certification

16  stage" because expert's lack of analysis of alleged defect did not support claim of common defect).

17  **V.    THE VISITATION COUNT OPINION SHOULD BE EXCLUDED.**

18      Plaintiffs contend that Meta "mischaracterizes" Zeidman's Visitation Count Opinion

19  because Zeidman did "not say each visit is a violation." Opp. at 19. But if Zeidman is only counting

20  visits and each visit is ***not*** a violation, then Zeidman's Visitation Count Opinion does not support

21  resolution of any classwide issue: it does not identify potential class members, nor does it aid in

22  any classwide damages calculation. It is therefore irrelevant and should be excluded. *See MacBook*

23  *Keyboard*, 2021 WL 1250378, at *7.

24      But of course, plaintiffs do claim that Zeidman's Visitation Count Opinion helps "ascertain

25  a legally cognizable class," Opp. at 18, and "demonstrate[s] predominance by supporting

26  [p]laintiffs' proposed damages model," *id.* at 20. It does neither, for multiple reasons. As a

27  threshold matter, Zeidman assumes, without support, that "each session_id [in Meta's Hive data]

28  equates to a unique website visit." Opp. at 19. But—despite the generic definitions of session ID

he cobbled together from blog posts unrelated to Meta or its Hive tables—even Zeidman admitted that there are numerous ways that a "session_ID" could count a single visit to a website multiple times. *See* Mot. at 20. Plaintiffs argue this does not make Zeidman's methodology unreliable, *id.* at 21,[13] but it does, because there is no way to confirm the actual number of visits from a count of session_IDs—rendering the opinion unable to provide plaintiffs with the visit count they claim to need. As such, Zeidman's "visitation count" is neither reliable nor "relevant to the task at hand." *Klein*, 766 F. Supp. 3d at 961.

Zeidman's Visitation Count Opinion also does not and cannot "demonstrate predominance by supporting [p]laintiffs' proposed damages model," Opp. at 20, which is to "multiply[] the visits to H&R Block's and TaxAct's websites by the $5,000 per violation" statutory damages, because Zeidman's count does not discriminate among types of data transmitted during visits. *See* Class Cert. Mot. (Dkt. 214) at 15. Zeidman assumes each "visit" represents a "violation" that caused actionable damage, but fails to provide any method to account for whether a given visit actually caused concrete harm.

Plaintiffs argue this does not matter because "violations attach[]" to the act of transmission, "not to the content or character of the data transmitted." Opp. at 22. Plaintiffs are wrong for several reasons. First, plaintiffs themselves have clarified that the only information relevant to their damages classes is "pen register and URL data," ***not*** "traditional tax filing information." Class Cert. Reply Brief at 1. Yet, under the relevant standard set forth in *Popa*, transmission of "pen register" data gives rise to Article III standing only when the data transmitted is "sensitive" enough to rise to a "concrete" injury. *Popa*, 153 F.4th at 788-94; *see, e.g.*, *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *2–4 (N.D. Cal. Oct. 2, 2025) (no standing for CIPA pen-register claim based on "browsing activity" and other device information); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *1, 4 (N.D. Cal. June 24, 2025) (no standing for CIPA pen-register claim based on device, browser, and geographic information, and referral and URL tracking);

---

[13] Contrary to Plaintiffs' assertion, Tadelis did not treat session_id as "corresponding to unique website visits in line with [] Zeidman's definition." Opp. at 19-20. Instead, Tadelis uses session_id as corresponding to a user "session," but explains that many sessions are "very short" and "consistent with unintended user activity" (*i.e.*, misclicks or quickbacks), which means that a session does not always equate to a meaningful visit. Tadelis Rpt. ¶ 29.

1   *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *1, 4 (C.D. Cal. Dec. 29, 2025) (allegation that

2   pixels transmitted "routing and behavioral metadata" "only when the user visited Defendant's

3   website" insufficient for Article III standing for CIPA pen register claim).[14] Zeidman's session ID

4   count methodology does not limit his count to only "visits" where the pen register or URL data

5   transmitted contained "sensitive" information and cannot support the proposed classwide damages

6   model, which must reliably include only those "visits" that involve "pen register and URL" data

7   that is **also** sufficient to confer Article III standing. *See Stiner v. Brookdale Senior Living, Inc.*,

8   665 F. Supp.3d 1150, 1199 (N.D. Cal. 2023) (denying certification because "individualized inquiry

9   would be needed to determine whether class members actually suffered an injury sufficient to

10  confer Article III standing").

11       Second, Zeidman's visitation count is not reliable. After admitting he initially failed

12  entirely to consider bot traffic, Ex. 1 at 179:17-24, Zeidman now proposes a methodology that he

13  claims will filter out non-human visits. Reply Rpt. ¶¶ 40-41. This is improper. Mot. to Strike at

14  pp. 2-3. But even were the court to consider it, his proposed methodology is unreliable. Citing only

15  to a Meta employee's deposition testimony from another case, Zeidman claims that the field

16  "bot_traffic" represents an event that was discarded because it came from a bot. Reply Rpt. ¶ 40.

17  But the Meta employee did not testify on what the "bot_traffic" field meant, the methods Meta

18  used, or—critically—the effectiveness of Meta's efforts. *See* Reply Rpt. Exhibit M at 98:15-22;

19  98:19-99:6; *see also In re Apple iPhone Antitrust Litig.*, 2025 WL 3124160, at *9 (N.D. Cal. Oct.

20  27, 2025) (excluding expert because he "fail[ed] to provide an error rate" for his method).

21       In short, Zeidman's Visitation Count Opinion is both based on unreliable methods and

22  irrelevant to identifying a legally cognizable class or a damages model that can be applied

23  classwide and should therefore be excluded.

24  **VI.    CONCLUSION**

25       For the reasons stated above and in the Motion, the Court should exclude Zeidman's

26  Report, Reply Report, and testimony.

27

28  [14] Plaintiffs' reliance on *Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) is misplaced; that case addressed Rule 12's plausibility standard, not Article III standing as articulated in *Popa*.

1   DATED: January 14, 2026                    LATHAM & WATKINS LLP

2

3                                              By:/s/ *Jessica Stebbins Bina*
                                                  Jessica Stebbins Bina

4
                                               **LATHAM & WATKINS LLP**
5                                              JESSICA STEBBINS BINA, SBN 248485
                                               jessica.stebbinsbina@lw.com
6                                              10250 Constellation Blvd., Suite 1100
                                               Los Angeles, CA 90067
7                                              Telephone: (424) 653-5500
                                               Facsimile:  (424) 653-5501
8

9                                              MELANIE M. BLUNSCHI, SBN 234264
                                               melanie.blunschi@lw.com
10                                             KRISTIN I. SHEFFIELD-WHITEHEAD,
                                               SBN 304635
11                                             kristin.whitehead@lw.com
                                               DIANNE KIM, SBN 348367
12                                             dianne.kim@lw.com
                                               505 Montgomery Street, Suite 2000
13                                             San Francisco, CA 94111
                                               Telephone: (415) 395-8129
14                                             Facsimile:  (415) 395-8095
15

16                                             MARISSA ALTER-NELSON (*pro hac vice*)
                                               marissa.alter-nelson@lw.com
17                                             1271 Avenue of the Americas
                                               New York, NY 10020
18                                             Telephone: (212) 906-1200

19                                             **GIBSON, DUNN & CRUTCHER LLP**
20                                             LAUREN R. GOLDMAN (*pro hac vice*)
                                               lgoldman@gibsondunn.com
21                                             DARCY C. HARRIS (*pro hac vice*)
                                               dharris@gibsondunn.com
22                                             200 Park Avenue
                                               New York, NY 10166-0193
23                                             Telephone: (212) 351-4000

24
                                               ELIZABETH K. MCCLOSKEY, SBN 268184
25                                             emccloskey@gibsondunn.com
                                               ABIGAIL A. BARRERA, SBN 301746
26                                             abarrera@gibsondunn.com
                                               One Embarcadero Center, Suite 2600
27                                             San Francisco, CA 94111-3715
                                               Telephone: (415) 393-8200
28

META'S REPLY ISO MOT. TO EXCLUDE THE
16   EXPERT REPORT AND TESTIMONY OF ZEIDMAN
                                               CASE NO. 5:22-CV-07557-PCP

1

2      JONATHAN C. BOND (*pro hac vice*)
       jbond@gibsondunn.com
3      1700 M Street, N.W.
       Washington, D.C. 20036-4504
4      Telephone: (202) 955-8500

5      *Attorneys for Defendant Meta Platforms, Inc.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28