**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:   (212) 351-4000
Facsimile:   (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:   (415) 393-8200
Facsimile:   (415) 393-8306

JONATHAN C. BOND (*pro hac vice*)
jbond@gibsondunn.com
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone:   (202) 955-8500
Facsimile:   (202) 467-0539

**LATHAM & WATKINS LLP**
MELANIE M. BLUNSCHI, SBN 234264
melanie.blunschi@lw.com
KRISTIN I. SHEFFIELD-WHITEHEAD, SBN 304635
kristin.whitehead@lw.com
DIANNE KIM, SBN 348367
dianne.kim@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:   (415) 395-8129
Facsimile:   (415) 395-8095

MARISSA ALTER-NELSON (*pro hac vice*)
marissa.alter-nelson@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone:   (212) 906-1200

JESSICA STEBBINS BINA, SBN 248485
jessica.stebbinsbina@lw.com
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:   (424) 653-5500
Facsimile:   (424) 653-5501

*Attorneys for Defendant Meta Platforms, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE META PIXEL TAX FILING CASES<br><br>This Document Relates To:<br><br>All Actions | Case No. 5:22-cv-07557-PCP (VKD)<br><br>**DEFENDANT META PLATFORMS, INC.'S SUR-REPLY TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:  February 26, 2026<br>Time:  10:00 a.m.<br>Courtroom 8, 4th Floor<br><br>Date Action Filed: December 1, 2022<br>Honorable P. Casey Pitts |

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    I.    Plaintiffs' pivot to damages classes limited to browsing data cannot fix their class-certification problems. ................................................................................... 2

    II.    Limiting the proposed classes to people whose data appears in Meta's "Hive" tables does not clear the way to class certification. ....................................................... 6

CONCLUSION ........................................................................................................................... 8

i

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bailey Venture Partners XVI, LLC v. Myall*,
  2023 WL 3772026 (N.D. Cal. May 1, 2023) ................................................................................4

*Davis v. Meta Platforms, Inc.*,
  2023 WL 4670491 (E.D. Tex. July 20, 2023) ..............................................................................4

*Dawidzik v. Tesla, Inc.*,
  2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .............................................................................3

*In re Google Inc. Cookie Placement Consumer Priv.*,
  806 F.3d 125 (3d Cir. 2015) ........................................................................................................8

*In re Google Inc. Gmail Litig.*,
  2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .............................................................................4

*Griffith v. TikTok, Inc.*,
  2024 WL 4308813 (C.D. Cal. Sept. 9, 2024) ..............................................................................8

*Lineberry v. AddShoppers, Inc.*,
  2025 WL 1533136 (N.D. Cal. May 29, 2025) .............................................................................5

*Lloyd v. Facebook, Inc.*,
  2023 WL 1802415 (N.D. Cal. Feb. 7, 2023) ................................................................................4

*McDaniel v. Meta Platforms, Inc.*,
  Case No. 21-cv-383231 (Cal. Super. Ct. Dec. 30, 2024) .............................................................7

*Meta Platforms, Inc. v. Nguyen*,
  2023 WL 8686924 (N.D. Cal. Nov. 21, 2023) .............................................................................4

*Popa v. Microsoft Corp.*,
  153 F.4th 784 (9th Cir. 2025) ......................................................................................................3

*Smith v. Facebook, Inc.*,
  262 F. Supp. 3d 943 (N.D. Cal. 2017) .........................................................................................4

*Smith v. Facebook, Inc.*,
  745 F. App'x 8 (9th Cir. 2018) ................................................................................................4, 5

*Wise Guys I v. Meta Platforms, Inc.*,
  2023 WL 8434452 (N.D. Tex. Dec. 4, 2023) ..............................................................................4

**Rules**

Fed. R. Civ. P. 23(a) ..........................................................................................................................4

Fed. R. Civ. P. 23(b) ..........................................................................................................1, 2, 3, 4, 5

**INTRODUCTION**

Plaintiffs keep changing their theory of the case and their class definitions in search of a viable class. Their two most recent changes—fully abandoning any attempt to seek damages based on tax-filing information, and limiting their classes to individuals whose data is in Meta's "Hive" tables—are designed to avoid certain predominance problems Meta identified in its opposition brief. But neither of these late-breaking changes clears any path to certification.

Plaintiffs' theories in this case have been a moving target. Plaintiffs survived Meta's motion to dismiss based on allegations that Meta received their "sensitive financial information" from H&R Block and TaxAct when they "file[d] their taxes online"—"things like income, refund amounts, filing status, the names of dependents, and scholarship information." Dkt. 180 ("Compl.") ¶ 1. In line with those allegations, the class definition in the complaint was limited to individuals "whose *tax filing information* was obtained by Meta." *Id.* ¶ 92 (emphasis added). That theory has evaporated: Discovery revealed *no* transmission of tax-filing information for any named plaintiff. So in their class-certification motion, plaintiffs tried a new, broader theory: classes of "[a]ll individuals" who merely "visited" HRBlock.com or TaxAct.com, whether or not they shared (or Meta received) any sensitive tax-filing information. Mot. i–ii. Meta's opposition brief pointed out the problems with that new theory. One was that plaintiffs must prove Meta received their *sensitive* information to avoid the standing and consent problems they had pleaded around, and plaintiffs have no classwide way to do that. Another was that, sensitive data aside, plaintiffs had no classwide way to prove Meta received *any* data about each class member.

Now, in their reply brief, plaintiffs propose two more changes to deal with those problems. But even after these latest changes, numerous class-certification barriers remain.

First, plaintiffs explicitly abandon any attempt to seek damages for allegedly sensitive tax-filing information. That is a 180-degree shift from the complaint (which was all about tax-filing information), and a retreat even from the class-certification motion (which covered all website visitors—those who provided tax-filing information, and those who did not). Expressly disclaiming Rule 23(b)(3) certification for "tax filing information," plaintiffs now say they are seeking Rule 23(b)(3) certification and damages *only* for "pen register and URL data" (*i.e.*, basic web-browsing information). They seek

1

only Rule 23(b)(2) certification and injunctive relief for the transmission of tax-filing information—originally the complete basis for this entire case. Reply 1. Given that framing, plaintiffs argue, all the Rule 23(b)(3) predominance arguments about whether Meta received sensitive tax-filing information "are irrelevant." *Id.*

But plaintiffs' pivot to a browsing-data-only damages theory does not save them. For one thing, as Meta explained in its opposition brief, lowering the bar for the types of data that were transmitted creates an insurmountable problem as to standing: Plaintiffs cannot shirk their burden to show Meta received their "sensitive" data, because that is an indispensable Article III standing requirement no matter how plaintiffs frame their claims. And plaintiffs' claims still run into a host of other class-certification barriers, including: (1) the impermissible disconnect between the theory in the complaint and the theory at class certification; (2) typicality and adequacy problems for the proposed class representatives (an issue both for Rule 23(b)(2) classes and Rule 23(b)(3) classes); and (3) individualized issues that will predominate no matter what kind of data is at play.

Second, plaintiffs redefine their proposed classes to be limited to people "whose data from visiting [HRBlock.com or TaxAct.com] is in Meta's Hive tables," as opposed to *all* visitors to these websites (the broader class proposed in their motion for certification). Reply 2. This change, plaintiffs argue, fixes the fact that they have no classwide way to prove that each website visitor's data was actually sent to Meta. But this does not clear a path to class certification either. Plaintiffs' retreat does not solve (1) the mismatch between the complaint and the class-certification theory; (2) the typicality and adequacy problems for the named plaintiffs; or (3) numerous individualized questions that the Hive data cannot answer. Plaintiffs' redefinition is also inconsistent with their proposed class periods: the proposed classes stretch back to 2015 (for TaxAct) and 2019 (for H&R Block), but Hive data goes back only to 2022.

Plaintiffs' changes are too little, too late. Whether this Court considers the classes in the complaint, the ones in plaintiffs' motion, or the ones in their reply, class certification should be denied.

## ARGUMENT

**I.  Plaintiffs' pivot to damages classes limited to browsing data cannot fix their class-certification problems.**

Plaintiffs open their reply brief with a striking concession: they are now seeking Rule 23(b)(3)

2

certification and damages *only* for the sharing of "pen register and URL data," *not* for the sharing of data reflecting "traditional tax filing information such as income and return amounts" that formed the basis of their complaint and got them past the pleading stage. Reply 1. For tax-filing information, plaintiffs now seek only Rule 23(b)(2) certification and injunctive relief. Plaintiffs had never before suggested that they were seeking different kinds of certification (under Rule 23(b)(2) versus 23(b)(3)) based on the *types of data* at issue.[1] Their late-breaking retreat does not provide any viable path to class certification for five reasons.

*First*, plaintiffs' proposal to seek damages only in connection with browsing data remains divorced from the allegations in the complaint, which relied on Meta's alleged receipt of sensitive tax-filing data to survive dismissal. As Meta's opposition brief explained, plaintiffs cannot allege one theory in the complaint and a different, broader theory at class certification. Opp. 7–9.

*Second*, plaintiffs cannot sidestep their obligation to prove that Meta received their "embarrassing, invasive, or otherwise private information" from H&R Block and TaxAct—something over and above data that reflects mere "tracking of [their] interactions with the . . . website[s]." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). Plaintiffs' attempt to disclaim any damages for sensitive tax-filing information, while seeking damages for non-sensitive browsing data, is thus backwards—under binding Ninth Circuit precedent, *no one* can bring a claim without showing their "sensitive" data was sent. *Id.*; *see also Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *1, *5 (C.D. Cal. Dec. 29, 2025) (no standing where pixels were used to create data profiles including "IP addresses, browser and device type, screen resolution, installed fonts, color depth, time zone, operating system, pages visited, session duration, scroll depth and/or mouse movement, referring URLs, unique identifiers (such as cookies and ad IDs), and geolocation based on IP"); Opp. 8–9 & n.2 (collecting cases).

*Third*, even putting aside the Article III standing problem, plaintiffs still are not adequate or

---

[1] Plaintiffs suggest that *Meta* "conflat[ed]" the "two categories of data" at issue—non-sensitive pen register and URL browsing data, and allegedly sensitive tax-filing data—in its opposition brief. Reply 1. But it is plaintiffs' proposed class definitions that lumped those things together: each of plaintiffs' proposed classes encompasses "[a]ll individuals who visited" HRBlock.com or TaxAct.com, regardless of what kind of data was shared. Mot. i–ii.

typical class representatives, because they consented to Meta's receipt of their data by agreeing to Meta's policies disclosing that practice. *See* Opp. 9, 11; *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (policies clearly disclose that Meta "maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes"). Every plaintiff is a Facebook user, and is thus subject to this express-consent defense that some class members (*i.e.*, non-users) would not face. Opp. 11. For claims based on non-sensitive browsing data, this defense will foreclose plaintiffs' claims as a matter of law. *Id.* For claims based on allegedly sensitive tax-filing data, although this Court held at the motion-to-dismiss stage that Meta's policies do not *clearly* establish consent, that simply makes the interpretation of Meta's policies a question of fact. *Id.*; *see also, e.g.*, *Bailey Venture Partners XVI, LLC v. Myall*, 2023 WL 3772026, at *4 (N.D. Cal. May 1, 2023) ("interpretation of ambiguous terms in a contract is a question of fact for the jury"); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *15 (N.D. Cal. Mar. 18, 2014) ("a fact-finder needs to interpret the express terms of any agreements to determine whether [those] agreements adequately notify individuals regarding the interceptions"). Plaintiffs' disclaimer that they are now seeking damages only for browsing data changes none of this, because typicality and adequacy are requirements no matter whether plaintiffs seek certification under Rule 23(b)(2) or (b)(3). *See* Fed. R. Civ. P. 23(a), (b).

Seeking to avoid this issue, plaintiffs falsely assert that Meta "failed to submit any evidence that any class member took affirmative action to demonstrate assent" to Meta's policies. Reply 5 (emphasis omitted). That is simply wrong: plaintiffs entirely ignore the declaration and evidence from Michael Duffey, a Meta employee, who explains that it is impossible to register for and use Facebook and Instagram without agreeing to Meta's policies. Dkt. 239-47 (Duffey Decl.) ¶¶ 3–4; *see also id.* ¶¶ 5–8 (setting out relevant policies). Numerous courts, too, have recognized that Facebook users assent to Meta's policies when they sign up for an account.[2] Contrary to plaintiffs' mischaracterization,

---

[2] *See, e.g.*, *Meta Platforms, Inc. v. Nguyen*, 2023 WL 8686924, at *2 (N.D. Cal. Nov. 21, 2023); *Lloyd v. Facebook, Inc.*, 2023 WL 1802415, at *1 (N.D. Cal. Feb. 7, 2023), *aff'd in relevant part*, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018); *Wise Guys I v. Meta Platforms, Inc.*, 2023 WL 8434452, at *1 (N.D. Tex. Dec. 4, 2023); *Davis v. Meta Platforms, Inc.*, 2023 WL 4670491, at *1–2 (E.D. Tex. July 20, 2023).

Meta's position is not that "the mere existence" of its policies establishes consent, Reply 5; it is plaintiffs' express agreement to those policies that does so. *Smith*, 745 F. App'x at 8–9. Plaintiffs also argue that this is not a typicality or adequacy problem because "billions of people use Facebook." Reply 6. But not all class members are Facebook users who expressly agreed to Meta's policies when they created an account, so every plaintiff here would confront a case-dispositive issue that non-users would not—and "a named plaintiff is not typical or adequate if the jury could realistically rule against them on a basis that wouldn't apply to the rest of the class." *Lineberry v. AddShoppers, Inc.*, 2025 WL 1533136, at *1, *6 (N.D. Cal. May 29, 2025).

*Fourth*, regardless of what type of classes plaintiffs seek to certify, they will still face other typicality and adequacy problems based on their failure to show Meta received their data. *See* Opp. 10–11. Discovery revealed *no* tax-filing data about *any* plaintiff, so no plaintiff can represent a tax-filing-data class (regardless of whether plaintiffs seek certification under Rule 23(b)(2) or Rule 23(b)(3)). *See id.* at 10–11, 24. Discovery likewise revealed *no data whatsoever* from TaxAct about the sole proposed class representative for the TaxAct classes (Ms. Calderon), so there is no typical or adequate representative for those classes (again, regardless of whether plaintiffs seek injunctive relief or damages). *Id.*

*Fifth*, even if plaintiffs could pursue damages for non-sensitive browsing data, many of the other arguments and individualized issues Meta raised in its opposition brief apply equally to sensitive and non-sensitive data. *See, e.g.*, Opp. 13–14 (whether H&R Block or TaxAct sent *any* data about a class member to Meta); *id.* at 15–16 (whether Meta matched such data to a Facebook account); *id.* at 16–17 (whether such data actually pertained to the class member whose account it was matched to); *id.* at 17–18 (whether the class member treated such data as sensitive or separately shared it with Meta); *id.* at 18–20 (whether the class member impliedly consented to share such data); *id.* at 20–22 (whether such data was sent from or received in California); *id.* at 23–24 (whether data included "contents" of a communication); *id.* at 25 (superiority). Plaintiffs' retreat to browsing-data-only damages classes solves none of those issues.

## II. Limiting the proposed classes to people whose data appears in Meta's "Hive" tables does not clear the way to class certification.

In another late-breaking change, plaintiffs redefine their proposed classes. In their motion, plaintiffs sought certification of classes including "[a]ll individuals" in the United States or California "who visited the website H&RBlock.com from January 15, 2019 to June 30, 2023," or "who visited the website TaxAct.com from August 25, 2015 to June 30, 2023." Mot. i–ii. In their reply, plaintiffs propose "adding the following words to the end of each class definition: ' . . . and whose data from visiting [Tax Preparers'] website is in Meta's Hive tables.' " Reply 2 (ellipsis and brackets in original). The new language is an attempt to paper over individualized issues that affect whether Meta received any data at all about a given class member. But this last-minute Band-Aid cannot rescue plaintiffs because numerous class-certification problems persist even under the newly proposed class definitions.

*First*, the revised class definitions remain broader than the ones defined in the complaint and do not address the concerns related to standing and consent. *See supra* 3; Opp. 7–9. Even if the class members are limited to those whose data sits in Meta's Hive tables, there remains a significant mismatch between the classes defined in the complaint (individuals whose tax-filing information was shared) and the broader classes of website visitors plaintiffs now want to certify.

*Second*, the revised class definitions do not fix plaintiffs' typicality or adequacy problems. Again, discovery revealed *no tax-filing data* for any plaintiff, and *no data whatsoever* from TaxAct for the sole proposed representative of the TaxAct classes, in Hive or otherwise—so plaintiffs still have no typical or adequate representatives to pursue claims based on tax-filing data or claims based on any data from TaxAct. *Supra* 5. And (again) plaintiffs' agreement to Meta's policies subjects them to an express-consent defense that many other class members would not face. *Supra* 3–5. Limiting the classes to Hive data changes none of that.

*Third*, the revised class definitions suffer from many of the exact same predominance problems as the old ones. Limiting the classes to Hive data may avoid questions about whether Meta received *any* data and associated it with a Facebook account, but many other individualized questions remain about whether that data is *actionable*. In particular, plaintiffs still must show that: the data Meta received was sensitive enough to confer standing, *see* Opp. 14; the data was not filtered, *see id.* at 14–15; the data actually reflects information about the class member whose account it was matched to,

6

rather than someone else's activity or information, *see id.* at 16–17; the class member treated that information as sensitive and did not already share it with Meta, *see id.* at 17–18; the class member did not impliedly consent to share such data with Meta, *see id.* at 18–20; such data was sent to or from California, *see id.* at 20–22; and the data reveals the "contents" of a communication, *see id.* at 23–24. The Hive data does not supply classwide answers—or, in many cases, *any* answers—to those questions.

Plaintiffs do not even argue that limiting their classes to Hive data solves all of the issues above. They do argue that it solves the matching issue, the location issue, and the contents issue. But even that is wrong.

On the matching issue, plaintiffs argue that Meta cannot "question[] the reliability of its own Hive data." Reply 7–8 (capitalization omitted). But the problem isn't that the data is unreliable; the problem is that the data doesn't establish the facts that plaintiffs need to show. Data matched to a Facebook account may not reflect that Facebook accountholder's own activity—for example, when people use a shared device to browse the internet. So here, when individuals use a shared device to visit HRBlock.com or TaxAct.com, that activity could have been matched to someone else's Facebook account. That does not make the data *unreliable*, because it can still help to serve relevant ads to the accountholder: a person whose friend or family member used a shared device to search for a product may also be interested in the product (as a gift, or because they share similar interests), even though the person did not conduct the search themselves. That is why another court rejected the exact same argument plaintiffs raise here. Order Denying Class Certification at 17, *McDaniel v. Meta Platforms, Inc.*, Case No. 21-cv-383231 (Cal. Super. Ct. Dec. 30, 2024) (Barrera Decl., Ex. 40) ("[T]his does not make the Event Data 'inaccurate,' it simply demonstrates that there are limits as to what that data shows."). Plaintiffs brush off this problem as "speculation." Reply 7. But Meta supplied concrete evidence of how class members' behavior would create this problem, including evidence from the named plaintiffs here. Opp. 16–17. Plaintiffs' objection that Meta did not provide *additional* examples of this "occurring in [the] Event Data," or the "rate" at which this issue occurs, Reply 7, misses the mark and actually underscores the entire problem: the data alone does not answer this question, and it would take individualized testimony from each class member to do so.

On the location issue, plaintiffs assert that "the Hive data clearly identifies geolocation data of

class members." Reply 10. But that is wrong for the reasons Meta explained in its opposition brief—Hive data reflects *predicted* location, not *actual* location, and can be affected by a number of individualized variables. Opp. 22.

Finally, on the "contents" issue, plaintiffs say the Hive data "dispenses with this argument." Reply 12. Not so. Determining whether information reflects "contents" is a context-dependent inquiry, and the data in Hive does not supply the necessary context—for example, whether the text in a URL reflects a search query (which may be contents) or simply a generic webpage address (which is not). *See* Opp. 23–24; *In re Google Inc. Cookie Placement Consumer Priv.*, 806 F.3d 125, 137 (3d Cir. 2015) ("[T]he line between contents and metadata is not abstract but contextual with respect to each communication."). And even if the data *did* supply the necessary context, it would still take individualized analysis of each piece of data to make that determination; plaintiffs propose no classwide method to do that. Recognizing this problem, another court recently denied class certification because determining "whether URLs constitute 'contents'" was not appropriate "for classwide resolution." *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *7 (C.D. Cal. Sept. 9, 2024). So too here.

Separately, on top of all these problems, plaintiffs' new Hive-data limitation effectively truncates their proposed class periods. Even under their new definitions, plaintiffs' proposed classes stretch back to 2015 (for TaxAct) and 2019 (for H&R Block). But the initial complaint was filed in December 2022, and Meta's general practice then was to store Pixel Event Data for ads personalization purposes only for up to 180 days. Opp. 14 n.8. So plaintiffs have effectively conceded that there is no basis for certifying a class reaching back before mid-2022.

## CONCLUSION

The Court should deny plaintiffs' motion for class certification.

DATED: January 23, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Lauren R. Goldman*
   Lauren R. Goldman