**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman (*pro hac vice*)
Michael Liskow (State Bar No. 243899)
200 Park Avenue, Suite 1700
New York, New York 10166
Telephone: (646) 354-6534
lfeldman@4-justice.com
mliskow@4-justice.com

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Ninth Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
ndeckant@bursor.com

*Attorneys for Plaintiffs*
*Additional Attorneys on Signature Page*

# THE UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE META PIXEL TAX FILING CASES<br><br>This document relates to:<br><br>All Actions | Case No.: 5:22-cv-07557-PCP (VKD)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO STRIKE PORTIONS OF REPLY REPORT OF ROBERT ZEIDMAN**<br><br>Date: February 26, 2026<br>Time: 10:00 a.m.<br>Court: Courtroom 8, 4th Floor<br>Honorable P. Casey Pitts |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

An expert must include "all opinions the witness will express and the basis and reasons for them" in an initial report. Fed. Civ. R. P. 26(a)(2)(B)(i). In addition, the expert may "submit a later rebuttal report 'if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another [party's expert].'" *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 12919150, at *2 (N.D. Cal. July 13, 2012) (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)). Courts only strike rebuttal reports that "exceed[] that limitation." *Id*. Even then, a court may refrain from striking the report where "the failure was substantially justified or is harmless." *Id*. (quoting Fed. R. Civ. P. 37(c)(1)). The moving party bears the initial burden to show a discovery violation occurred; upon such a showing, the burden shifts to the nonmoving party to prove the failure was "either justified or harmless." *FTC v. Qualcomm Inc.*, 2018 WL 6522134, at *1 (N.D. Cal. Dec. 11, 2018).

Meta brings this motion seeking to strike portions of the Reply Report of Plaintiffs' expert, Robert Zeidman ("Motion" or "Mot."). Its argument is twofold. First, Meta argues that Zeidman's Reply Report ("Reply Report" or "Reply Rpt." Dkt. No. 259-7) improperly includes new methodologies and analyses. But the purportedly "new methodologies and analyses" Meta cites merely expand on the same subject matter as Zeidman's opening report ("Zeidman Report" or "Zeidman Rpt." Dkt. No. 223-1) in an effort to rebut arguments and data raised by Meta's expert, Dr. Georgios Zervas, in his rebuttal report ("Zervas Rpt." Dkt. No. 257-3). This is the kind of "new analysis, data, and evidence" that "a rebuttal report may properly include." *TFT-LCD*, 2012 WL 12919150, at *2. Second, Meta incorrectly asserts that Zeidman's Reply Report contains impermissible legal arguments and opinions. In doing so, Meta mischaracterizes portions of the Reply Report meant to clarify Zeidman's methodology and qualifications, and not to weigh in on the legal questions.

This Court should deny Meta's motion.

**ARGUMENT**

**I.    Zeidman's Reply Report is a Proper Rebuttal Report.**

Meta asks this Court to strike supposedly "new" methodologies and analyses in the Reply

Report. Mot. at 3-5. But simply characterizing a methodology as "new" is not sufficient to meet Meta's burden. As one court explained, "[t]he test of whether an expert's opinion constitutes rebuttal or a 'new' opinion . . . is not whether a rebuttal expert employs new testing or methodologies, but instead, whether a rebuttal attempts to put forward new theories outside the scope of the report it claims to rebut." *In re MacBook Keyboard Litig.*, 2022 WL 1604753, at *8 (N.D. Cal. Jan. 25, 2022) (quoting *Huawei Techs., Co., Ltd. v. Samsung Elecs. Co., Ltd.*, 340 F. Supp. 3d 934, 995 (N.D. Cal. 2018)). In other words, "[r]ebuttal testimony is proper as long as it addresses the same subject matter" as the opposing report. *Qualcomm*, 2018 WL 6522134, at *1 (quoting *Perez v. State Farm Mut. Auto Ins.*, 2011 WL 8601203, at *8 (N.D. Cal. Dec. 7, 2011)). "[D]istrict courts have been reluctant to narrow the phrase 'same subject matter' beyond its plain language." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (quoting *Allen v. Dairy Farmers of Am., Inc.*, 2013 WL 211303, at *5 (D. Vt. Jan. 18, 2013)).

It is also not dispositive whether a rebuttal point could have been raised in an expert's opening report. *See Benedict v. United States*, 822 F.2d 1426, 1428 (6th Cir. 1987) ("[T]he fact that [rebuttal evidence] might have been offered in chief does not preclude its admission in rebuttal." (quoting *Martin v. Weaver*, 666 F.2d 1013 (6th Cir. 1981, *cert. denied*, 456 U.S. 962 (1982))). Courts recognize that, "to repel other expert testimony," a party "may [be] requir[ed] . . . to marshal evidence and argument in a rebuttal report to explain why the opposing party's expert is wrong." *United States ex rel. Brown v. Celgene Corp.*, 2016 WL 6542730, at *5 (C.D. Cal. June 29, 2016). After all, "[a]n opening expert report is an early salvo in the process of defining issues for trial," making it "understandable . . . that a party may need to include significant elaboration in a rebuttal report." *Bone Care Int'l, LLC v. Pentech Pharm., Inc.*, 2010 WL 3894444, at *15 n.13 (N.D. Ill. 2010).

A.  Zeidman's Supposed "New Methodologies" Regarding Bots and California Visitors Are Part and Parcel With His Visitation Count Opinion.

Zeidman's Reply Report properly responds to criticisms of his visitation count methodology by Meta's expert, Zervas. In his initial report, Zeidman opined on " ███████████ ███████████ " and proposed a methodology to do so. Zeidman Rpt. ¶¶ 51-56. Meta's expert

1  attacked that methodology on various grounds, two of which are relevant here: first, he opined that
2  Zeidman's methodology could not account for "██████████████," Zervas Rpt. ¶¶ 53-
3  54; second, he opined that Zeidman's methodologies "cannot be used to count visits from individuals
4  in California." Id. ¶¶ 56-61. Zeidman responded to these criticisms in his Reply Report. See id.
5  ¶¶ 40-41 (explaining that Meta's data includes a field called ██████ that allows Meta to
6  identify and drop bot traffic data); id. ¶¶ 43-44 (explaining that Meta's field geo_ip_zip, which Meta
7  defines as "[t]he zip code where the pixel is fired," can easily be matched to publicly available zip
8  code data to determine a visitor's state).Yet Meta now complains that Zeidman's so-called "Bot
9  Methodology" and "California Visit Methodology" are "completely new." See Mot. at 2-3.

10      Meta's argument falls short. To start, Zeidman's discussion of how to filter out bots uses the
11  same methodology as his original report: reviewing the data Meta produced and its descriptions of
12  that data, and then determining whether specific data fields should be filtered out or included in a
13  visitation count. Compare Zeidman Rpt. ¶¶ 51-56 (describing how to use Meta's data to determine
14  visit count), with Reply Rpt. ¶¶ 40-41 (describing how to use Meta's data to check for bots). Meta
15  claims that Zeidman "admitted that his methodology did 'not attempt to filter out bots in anyway.'"
16  Mot. at 2. But Zeidman's discussion of bots "falls within the proper scope of rebuttal because it is
17  offered 'to contradict, impeach or defuse the impact of the evidence offered by an adverse party,'"
18  so it is permissible rebuttal testimony. Matthew Enter., Inc. v. Chrysler Grp. LLC, 2016 WL
19  4272430, at *6 (N.D. Cal. Aug. 15, 2016) (quoting Bowman v. Int'l Bus. Mach. Corp., 2013 WL
20  1857192, at *7 (S.D. Ind. May 2, 2013)) (denying motion to strike where plaintiff's expert attempted
21  to "defuse[] the impact of [the opposing expert's] challenge" to his methodology).[1]

22      It was also permissible for Zeidman to discuss how to use geo_ip_zip to identify visitors from
23  California. Meta takes issue with the "brand-new 'SQL script'" that Zeidman used to demonstrate
24  that geo_ip_zip could be used to determine a visitor's state, and that zip codes from California

---

[1] Meta cites Chrysler, but the case does not support Meta's argument. See Mot. at 3. Meta focuses on one portion of an expert report that "offered new argument based on new evidence" and was therefore stricken. See Chrysler, 2016 WL 4272430, at *4. Here, Zeidman uses the same evidence and same methodology to address bots; he merely provides additional analysis. The Chrysler court denied the motion with regard to the expert's application of a prior methodology in a new way to address an opposing expert's criticism. See id. at *6.

appeared in the Meta Hive database. *See* Mot. at 2-3; Reply Rpt. ¶¶ 43-44. But Zeidman used the script to address the same subject matter Zervas raised in his report. *See* Zeidman Rpt. ¶ 29 (discussing the Meta Pixel's collection of location data like geo_ip_zip); Zervas Rpt. ¶ 56-61 (criticizing Zeidman's ability to determine California users with the data available); Reply Rpt. ¶¶ 43-44 (addressing ability to determine California users by using geo_ip_zip). And "courts have permitted additional data to be used in a rebuttal report so long as it is of the same subject matter." *Macbook Keyboard*, 2022 WL 1604753, at *8 (denying motion to strike where plaintiffs' expert's reply report included new analysis—and thus new evidence—but no new theories outside of those discussed in his original report and the opposing expert's rebuttal).

Meta's cases are inapposite. Unlike Zeidman, the experts in those cases included wholly new theories that exceeded the subject matter of the original and rebuttal reports. *See Pac. Steel Grp. v. Com. Metals Co.*, 2024 WL 3171832, at *5 (N.D. Cal. June 25, 2024) (criticizing reply report that introduced "significant new . . . analyses" based on different valuation formulas not included in expert's original report); *Young v. Cree Inc.*, 2021 WL 292549, at *12-13 (N.D. Cal. Jan. 28, 2021) (striking opinions that were never raised in opening report and that the expert "concede[d]" the opposing expert witnesses "did not address"); *Int'l Swimming League, Ltd. v. World Aquatics*, 2025 WL 3257200, at *10 (N.D. Cal. Nov. 21, 2025) (excluding reply report where it exceeded criticisms raised by opposing expert's rebuttal report and instead developed wholly new theories).

B. *Zeidman's Supposed "New Analyses" Address Evidence Raised by Meta's Own Expert.*

Similarly, Meta asserts that Zeidman provided "new analyses" related to counting encrypted IP addresses in Meta's Hive data and quantifying tax information ("Tax Information") collected by the Meta Pixel. Mot. at 3-5. But again, Meta mischaracterizes Zeidman's Reply Report, where Zeidman discussed encrypted IP addresses and Tax Information to rebut evidence and criticisms raised by Meta's own expert, so neither subject should be stricken. *See Chrysler*, 2016 WL 4272430, at *1 ("The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." (internal citations omitted)).

Start with the unique encrypted IP address count. In his initial report, Zeidman opined on how the number of unique encrypted IP addresses informed his opinion about the number of visitors to

PLAINTIFFS' OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO STRIKE PORTIONS OF REPLY REPORT OF ROBERT ZEIDMAN - CASE NO. 5:22-CV-07557-PCP

4

the Tax Preparers' websites. *See* Zeidman Rpt. ¶ 43. Meta's expert attacked this opinion as unreliable because "IP addresses cannot always be used to track a specific user or device." Zervas Rpt. ¶ 63 (citing Zeidman Rpt. ¶ 43). To rebut this attack, Zeidman demonstrated that, even assuming each encrypted IP address corresponded to not one, but 270 visits, the data still supports his opinion (as stated in his initial report) that more than 40 individuals visited the Tax Preparers' Websites. *See* Reply Rpt. ¶ 47 (dividing the number of unique encrypted IP addresses by 270 to find at least "55 unique visitors from TaxAct and 173 unique visitors from H&R Block").

This discussion is proper rebuttal evidence, contrary to Meta's claims. *See* Mot. at 3 (calling Zeidman's analysis of encrypted IP addresses "completely new analysis and new evidence"). Rather than present new evidence or new analysis, Zeidman responded to direct evidence offered by an adverse expert to show that his methodology is still valid. This is permissible testimony in a reply report. *See Van Alfen v. Toyota Motor Sales, U.S.A., Inc.*, 2012 WL 12930456, at *2 (C.D. Cal. Nov. 9, 2012) (acknowledging that "an expert may need to include significant elaboration in a rebuttal report to challenge the asserts of the opponent's expert reports" (internal citations omitted)); *see also Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, 2019 WL 4727939, at *2 (S.D. Cal. Sept. 27, 2019) (declining to strike a rebuttal report that responded to a "fundamental flaw" in the affirmative report).

Meta cites two cases that purportedly support its arguments but do not. Meta first invokes *Chrysler* to paint Zeidman's discussion of encrypted IP addresses as impermissible. *See* Mot. at 4. But the *Chrysler* court did not strike the expert opinion at issue in full; critically, it denied the motion to strike with regard to portions of the report that responded to an opposing expert's criticisms. *See id.* at *3 (finding rebuttal testimony permissible where expert "did not anticipate . . . that Dr. Woroch would question the entire concept of intra-brand competition"). Similarly, in *Cook v. County of Los Angeles*, Meta's selective citation to stricken language fails to reflect the full context of the court's ruling and overlooks the most analogous portion of the decision. 2022 WL 1470574, at *5 (C.D. Cal. Mar. 21, 2022) ("[T]o the extent Mr. Clark's opinion is offered in direct response to Mr. Stabio's assessment of Mr. Cook's conduct, the Court concludes this is an appropriate rebuttal opinion."). As in *Chrysler* and *Cook*, Zeidman's reply discussion of encrypted IP addresses should be admitted because it is a direct response to criticism offered by an adverse expert.

Zeidman also offered proper rebuttal testimony regarding his Tax Information opinion. Meta claims that, because Zeidman acknowledged he was "not asked to" quantify the amount of tax information in his initial report, any attempt to do so in rebuttal is improper "sandbagging." *See* Mot. at 4-5. This argument is meritless. In his opening report, Zeidman provided an analysis that identified the contours of Tax Information and characterized the amount of Tax Information Meta collected as "enormous." *See* Zeidman Rpt. ¶ 57(2). Meta's expert criticized this opinion at length. *See* Zervas Rpt. ¶¶ 69-80. Paramount among these criticisms were: (1) the confusion Zervas expressed about the categories of data identified as Tax Information, *see id*. ¶¶ 71-77; and (2) the evidence Zervas offered to show that the Tax Information Zeidman identified "appear[ed] infrequently," *id*. ¶¶ 78-80 ( ██████████████████████████████████████████████ but failing to quantify the number of events the percentage represented).

In his Reply Report, Zeidman responded directly to these criticisms. He clarified his definition of Tax Information and identified specific fields that met his "common sense" definition. Reply Rpt. ¶ 24. He then responded to Zervas's criticisms of his inclusion of specific fields. *See id*. Reply Rpt. ¶¶ 50-53. Finally, he offered additional data to rebut Zervas's opinion that Tax Information "appeared infrequently" by quantifying the exact number of events where the identified tax data was transmitted to Meta in some form—a number in the tens of thousands. *See id*. ¶¶ 48-49, 54-55. Therefore, rather than provide improper "new analysis," Zeidman instead rebutted evidence and criticism on the same subject matter. *See Bone Care*, 2010 WL 3894444, at *15 n.13 (allowing even "significant elaboration" if such additional detail remains within the proper scope of rebuttal).

Zeidman did not "sandbag" Meta by responding to these criticisms. *See* Mot. at 4. As discussed above, the core of Zeidman's opinion that Meta collected an "enormous" amount of Tax Information was present in his original report, and he further clarified (and quantified) this amount in his Reply Report solely to contradict evidence offered by an adverse party. Courts allow experts "to marshal evidence and argument in a rebuttal report to explain why the opposing party's expert is wrong." *Celgene*, 2016 WL 6542730, at *5. Zeidman did just that, so this portion of his Reply Report should not be stricken.

Once again, Meta relies on an inapposite case, *City & County of San Francisco v. Purdue*

*Pharma L.P.*, 2022 WL 1203075 (N.D. Cal. Apr. 22, 2022). *See* Mot. at 4. In *Purdue Pharma*, the court struck an expert's reply opinion that attempted to define a key term at the crux of the plaintiffs' case for the first time. 2022 WL 1203075 at *1. This comparison is flawed. Here, Zeidman's opinion that Meta collected an "enormous" amount of Tax Information, as outlined in his initial report, provided sufficient information for the scope of his report; nevertheless, he chose to elaborate on this same theory in his Reply Report to respond to evidence offered by an adverse party. Zeidman Rpt. ¶ 57.2; Reply Rpt. ¶ 55. More importantly, and unlike *Purdue Pharma*, Plaintiffs' claims do not require Zeidman to quantify the total amount of data collected and transmitted by Meta at this stage of the litigation.

For the reasons stated above, the Court should not strike the sections of Zeidman's Reply Report discussing encrypted IP addresses and quantifying tax information.

*C. In the Alternative, Any Untimely Initial Disclosure Here is Harmless.*

Even if this Court finds that Zeidman's Reply Report exceeds the bounds of permissible rebuttal testimony in some way (which it should not), Meta has suffered no prejudicial harm. "Harmlessness may be established if an untimely initial disclosure under Rule 26(a)(1)(A)(iii) is made sufficiently in advance of the discovery cut-off date to permit the opposing party to conduct discovery and defend against the damages claims." *Celgene*, 2016 WL 6542730, at *6 (brackets omitted) (quoting *Frontline Med. Assocs., Inc. v. Coventry Health Care*, 263 F.R.D. 567, 570 (C.D. Cal. 2009)). Here, there is no operative cut-off date that would prejudice Meta. If the Court makes such a finding of harm, Meta may still supplement its rebuttal report or depose Zeidman on the "new" methodologies and analyses—leaving "ample opportunity to cure any possible prejudice." *Id.* (declining to strike portions of a report in favor of allowing defendant to produce sur-rebuttal report and depose the expert); *see also Amos v. Makita U.S.A.*, 2011 WL 43092, at *4 (D. Nev. Jan. 6, 2011) ("A party is not harmed where, even though an expert disclosure fails to satisfy Fed. R. Civ. P. 26, the party knew about the expert, knew about the content of the expert's testimony, and had an opportunity to depose the expert."); *Calvert v. Ellis*, 2014 WL 3897949, at *5 (D. Nev. Aug. 8. 2014) (opting to remedy harm rather than excluding untimely disclosed rebuttal expert testimony).

## II. Zeidman Does Not Offer Legal Opinions in his Reply Report.

Meta finally argues that Zeidman offered three improper "legal opinions" in his Reply Report that should be stricken, *two* of which are merely *headers* of sections of the report. *See* Mot. at 5-7. But Zeidman has not offered any legal opinions, and the Court should reject Meta's attempt to misconstrue valid portions of the Reply Report.

Meta first claims that the Reply Report offers a legal conclusion because a section header states that "[i]t is irrelevant that [his] proposed method for counting visits to the H&R Block and TaxAct Websites cannot be used to exclude visits from users who provided consent." *Id.* at 18. Meta misconstrues this header as arguing that "certain arguments made by Meta are 'irrelevant' *to class certification*," Mot. at 6 (emphasis added), but the header makes no such claim. Instead, Zeidman is explaining that the fact Zeidman's proposed method cannot determine who did or did not provide consent is irrelevant to Zeidman's *initial opinion* on how to calculate visits. And as Meta concedes, Zeidman makes this crystal clear in his paragraph below the header where he explains that he "understand[s]" that whether users consented or not is "a legal issue, not a technical issue," and therefore he "do[es] not address it." Reply Rpt. ¶ 42; *see also* Mot. at 5.

Meta also mischaracterizes this header by claiming Plaintiffs "make the *same argument* in their reply brief in support of their motion for class certification." Mot. at 5 n. 2 (emphasis added) (citing Dkt. 260 at 5). But the cited argument in Plaintiff's Reply Brief (which is *also* only a section header) is *not* the same, because there Plaintiffs raise the legal argument that Meta's consent defense was "irrelevant to Rule 23(a)." Dkt. 260 at 5. By contrast, Zeidman's header again in no way states that consent is irrelevant to *class certification. See* Reply Rpt. ¶ 42.[2]

Meta next similarly misconstrues another header stating that "Meta's Detection and Filtration Code is Irrelevant, as are User Controls." Reply Rpt. at 24. Meta again claims that Zeidman is arguing that these aspects of Meta's systems are "'irrelevant' *to class certification*." Mot. at 6 (emphasis added). But again, here Zeidman merely states that the aspects at issue are now irrelevant to his initial *factual* opinions after he was informed by Plaintiffs' counsel that the revised class

---

[2] Meta's argument that Plaintiffs are "trying to advance their class certification and Daubert arguments" through the Reply Report, *see* Mot. at 6, makes no sense here because Plaintiffs do not cite to this portion of the Reply Report in support of their argument.

definitions specifically exclude anyone without data in Meta's systems. *See* Reply Rpt. ¶ 58.[3]

Meta seeks to strike certain paragraphs of Zeidman's Reply Report "defen[ding] his qualifications" and ability to opine on the Meta Pixel as improper expert rebuttal. Mot. at 6 (citing Reply Report, ¶¶ 10-14, 63). But paragraphs 10-14 of the Reply Report merely reiterate points made in Zeidman's initial report, or cite to portions of the Zeidman deposition discussing the same points Zeidman made in his initial report concerning his qualifications. Likewise, paragraph 63 does not seek to state a legal conclusion; it simply reiterates the points made in paragraphs 10-14.

Meta's cited cases on this point are inapposite. For example, in *Moussouris v. Microsoft Corp.*, 2018 WL 3328418 (W.D. Wash. June 25, 2018), the Court struck an entire reply report because it "center[ed]" on rebutting the defendant's arguments, and not the arguments of the defendant's expert. *Id.* at *11 n.5. Here, by contrast, Meta has only identified six of the 64 paragraphs in the Reply Report that purportedly focus on arguments by Meta's counsel. *See* Mot. at 6-7. Similarly, in *HM Elecs., Inc. v. R.F. Techs., Inc.*, 2015 WL 1879428 (S.D. Cal. Apr. 17, 2015), the "bulk" of the rebuttal report was not responsive to the opening expert report. *Id.* at *1.

In sum, the Court should reject Meta's contention that any of the purported "legal conclusions" above are improper "opinions regarding the standards set by Rule 702." Mot. at 7.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request the Court to deny Meta's motion to strike portions of Zeidman's Reply Report.

---

[3] Plaintiffs' Reply again does not cite to this portion of the Reply Report to support this point.

| | | |
|---|---|---|
| Dated: January 28, 2026 | By: | /s/ *Michael Liskow* |
| | | Michael Liskow |

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman (*pro hac vice*)
Michael Liskow (State Bar No. 243899)
200 Park Avenue, Suite 1700
New York, New York 10166
Telephone: (646) 354-6534
lfeldman@4-justice.com
mliskow@4-justice.com

**BURSOR & FISHER, P.A**.
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
ndeckant@bursor.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Kate M. Baxter-Kauf (*pro hac vice*)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
kmbaxter-kauf@locklaw.com

**SMITH KRIVOSHEY, P.C.**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, #1520
Boston, MA 02116
Telephone: (617) 377-7404
joel@skclassactions.com

**GEORGE FELDMAN MCDONALD, PLLC**
Rebecca A. Peterson (241858)
1650 West 82nd Street, Suite 880
Bloomington, MN 55431
Telephone: (612) 778-9595
Facsimile: (888) 421-4173
rpeterson@4-Justice.com

**THE HODA LAW FIRM, PLLC**
Marshal J. Hoda, Esq. (*pro hac vice*)
12333 Sowden Road, Suite B
Houston, TX 77080
Telephone: (832) 848-0036
marshal@thehodalawfirm.com

**FOSTER YARBOROUGH PLLC**
Patrick Yarborough, Esq. (*pro hac vice*)
917 Franklin Street, Suite 220
Houston, TX 77002
Telephone: (713) 331-5254
patrick@fosteryarborough.com

**EMERSON FIRM, PLLC**
John G. Emerson (*pro hac vice*)
2500 Wilcrest, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
jemerson@emersonfirm.com

*Attorneys for Plaintiffs*