| | |
|---|---|
| **LATHAM & WATKINS LLP** | **GIBSON, DUNN & CRUTCHER LLP** |
| MELANIE M. BLUNSCHI, SBN 234264 | LAUREN R. GOLDMAN (*pro hac vice*) |
| melanie.blunschi@lw.com | lgoldman@gibsondunn.com |
| KRISTIN I. SHEFFIELD-WHITEHEAD, SBN 304635 | DARCY C. HARRIS (*pro hac vice*) |
| kristin.whitehead@lw.com | dharris@gibsondunn.com |
| DIANNE KIM, SBN 348367 | 200 Park Avenue |
| dianne.kim@lw.com | New York, NY 10166-0193 |
| 505 Montgomery Street, Suite 2000 | Telephone: (212) 351-4000 |
| San Francisco, CA 94111 | |
| Telephone:    (415) 395-8129 | ELIZABETH K. MCCLOSKEY, SBN 268184 |
| | emccloskey@gibsondunn.com |
| MARISSA ALTER-NELSON (*pro hac vice*) | ABIGAIL A. BARRERA, SBN 301746 |
| marissa.alter-nelson@lw.com | abarrera@gibsondunn.com |
| 1271 Avenue of the Americas | One Embarcadero Center, Suite 2600 |
| New York, NY 10020 | San Francisco, CA 94111-3715 |
| Telephone:    (212) 906-1200 | Telephone: (415) 393-8200 |
| | |
| JESSICA STEBBINS BINA, SBN 248485 | JONATHAN C. BOND (*pro hac vice*) |
| jessica.stebbinsbina@lw.com | jbond@gibsondunn.com |
| 10250 Constellation Blvd., Suite 1100 | 1700 M Street, N.W. |
| Los Angeles, CA 90067 | Washington, D.C. 20036-4504 |
| Telephone:    (424) 653-5500 | Telephone: (202) 955-8500 |

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE META PIXEL TAX FILING CASES | Case No. 5:22-cv-07557-PCP (VKD) |
| This Document Relates To: | **DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF REPLY REPORT OF ROBERT ZEIDMAN** |
| All Actions | |
| | Date: February 26, 2026 |
| | Time: 10:00 a.m. |
| | Court: Courtroom 8, 4th Floor |
| | Honorable P. Casey Pitts |

Plaintiffs claim that Zeidman's new methodologies are proper because they concern the same "subject matter" as his initial report or Dr. Zervas's rebuttal report. Dkt. 275 ("Opp.") at 2.[1] But courts have repeatedly excluded rebuttal testimony—even testimony about the same general subject matter—that offers new methodologies and analyses, including testimony that tries to "account for noted deficiencies." *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 4272430, at *2 (N.D. Cal. Aug. 15, 2016); *see* Mot. at 2-5. Zeidman should not be allowed to sandbag Meta—*after* Meta submitted its opposition to plaintiffs' motion for class certification—with these new methodologies and analyses that could (and should) have been included in his original report. Zeidman's untimely disclosure is neither "justified [n]or harmless," *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008), because Meta had no opportunity to test or rebut Zeidman's new methodologies offered in support of class certification, and plaintiffs offer no substantial justification for these prejudicial, late-breaking opinions. In addition, plaintiffs' attempt to reframe Zeidman's legal conclusions as "clarifications" fails because those opinions address legal issues and parrot legal arguments made by plaintiffs' attorneys. Applying the "self-executing [and] automatic" remedies under Federal Rules of Civil Procedure 26(a) and 37(c)(1), *Goodman v. Staples the Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011), this Court should strike paragraphs 10-14, 40-44, 47-48, 54-55, 58, and 63 and the section headers of §§ IV.B.ii and IV.F of Zeidman's Reply Report (Dkt. 259-7 ("Reply Report" or "Reply Rpt.")).

## I.  ZEIDMAN'S NEW METHODOLOGIES AND ANALYSES SHOULD BE STRICKEN.

Plaintiffs argue that Zeidman's new opinions are proper because they broadly concern the same subject matter as his initial report or Dr. Zervas's rebuttal report. Opp. at 1-2, 4, 6. But plaintiffs and Zeidman do "not have free reign to produce a rebuttal report containing additional analysis just because it is the same subject matter." *Hyundai Motor Co. v. Hyundai Tech. Grp., Inc.*, 2025 WL 1711440, at *2 (C.D. Cal. May 14, 2025). Even if rebuttal testimony is about the same subject matter, "[u]sing a rebuttal report as a backdoor to introduce analysis that could have been included in the opening report is squarely foreclosed by Rule 26." *Synergy Hematology-*

---

[1] Unless noted, all emphasis is added and internal citations and quotation marks are omitted.

*Oncology Med. Assocs. Inc. v. Abbott Labs., Inc.*, 2023 WL 3319218, at *7 (C.D. Cal. Mar. 15, 2023); *see also Int'l Swimming League, Ltd. v. World Aquatics*, 2025 WL 3257200, at *10 (N.D. Cal. Nov. 21, 2025) ("new methodologies, opinions, and theories absent from [expert's] opening report" are "improper rebuttal"). As such, Zeidman's Reply Report may not "offer new bases for an old opinion," *Chrysler*, 2016 WL 4272430, at *4, and may not propose new methodologies and analyses in response to criticisms from Meta or its experts, *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 2022 WL 1203075, at *1 (N.D. Cal. Apr. 22, 2022).[2]

### A. Zeidman's New Bot And California Visit Methodologies Should Be Stricken.

Plaintiffs argue that Zeidman's Bot and California Visit Methodologies relate to the same subject matter as his opening report and Dr. Zervas's report, and are thus proper. Opp. at 2-4. But plaintiffs do not dispute that these are entirely new methodologies—not disclosed in Zeidman's original report—offered to address deficiencies in Zeidman's original methodologies, not new opinions or methodologies presented by Dr. Zervas. This is improper rebuttal. Further, it is fundamentally unfair because the new methodologies were not disclosed until after Meta deposed Zeidman and opposed class certification and, as a result, had no opportunity to test them. *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 501 (N.D. Cal. 2008) ("Slipping these new arguments into a rebuttal report [is] a clear-cut form of sandbagging and [is] simply unfair.").[3]

**Bot Methodology.** Plaintiffs admit that Zeidman's Bot Methodology is offered to respond to Dr. Zervas's criticism that Zeidman's original methodology did not filter out bots. Opp. at 3.

---

[2] Plaintiffs cite *FTC v. Qualcomm Inc.*, 2018 WL 6522134, at *1 (N.D. Cal. Dec. 11, 2018), which in turn cites *Perez v. State Farm Mutual Auto Insurance Co.*, 2011 WL 6401203, at *8 (N.D. Cal. Dec. 7, 2011), for the proposition that rebuttal testimony need only address the "same subject matter" as the opposing report. Opp. at 2. But *Qualcomm* acknowledges that a rebuttal report "cannot be used to advance new arguments or new evidence," 2018 WL 6522134, at *1, and *Qualcomm*'s quotation of *Perez* is incomplete, *see Perez*, 2011 WL 6401203, at *8 ("Rebuttal testimony is proper as long as it addresses the same subject matter that the initial experts address *and does not introduce new arguments*.").

[3] Plaintiffs' attempt to distinguish Meta's cited cases is unavailing, Opp. at 4, because the rebuttal reports in those cases added "new, previously undisclosed analyses and calculations" not included in the opening report, which is precisely what Zeidman has done here. *Pac. Steel Grp. v. Com. Metals Co.*, 2024 WL 3171832, at *5 (N.D. Cal. June 25, 2024); *Young v. Cree Inc.*, 2021 WL 292549, at *12 (N.D. Cal. Jan. 28, 2021) (striking new methodology not "raised or disclosed in [expert's] opening brief"); *Purdue Pharma*, 2022 WL 1203075, at *1 ("Responding to an identified omission with new analysis is not proper rebuttal opinion.").

Plaintiffs also agree that this methodology is new and was not included in his initial report, *see id.*, despite the fact that the information was available to him previously and could have been included. "[R]esponding to an identified omission in [his] report by performing a new analysis in an attempt to fill the hole" is improper rebuttal testimony, and this new methodology and analysis should be stricken. *Purdue Pharma*, 2022 WL 1203075, *1-2; *see also Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *7 (N.D. Cal. Dec. 15, 2014) (excluding supplemental report that tried to correct for incorrect assumption using "information that was available to him at the time of his opening report").[4]

As a fallback argument, plaintiffs claim that Zeidman's Bot Methodology is nonetheless proper because he "uses the same methodology as his original report," *i.e.*, reviewing Meta's sample data and using data fields to filter out data points. Opp. at 3. Plaintiffs cast "methodology" at a high level of generality in an attempt to smuggle in new opinions. But they do not contest that (1) Zeidman's initial Visitation Count opinion made no mention of bot traffic whatsoever, *see* Mot. at 2, and (2) Zeidman expressly admitted at his deposition that his visitation count "*methodology*" did "not attempt to filter out bots in any way." Dkt. 233-2 at 179:17-24. Only on reply, **for the first time**, did Zeidman identify new data fields and methods for filtering bot traffic, and provide a brand-new calculation for the percentage of bots in the sample data. Reply Rpt. ¶ 40. These are new methodologies and analyses, not proper rebuttal. *Pac. Steel*, 2024 WL 3171832, at *5 (striking new "calculations that were not included in the opening report"). Zeidman's late disclosure is not harmless, because Meta was not able to test these new methodologies through deposition or a rebuttal report. *See infra* § I.C.

***California Visit Methodology.*** Plaintiffs similarly argue that Zeidman's California Visit Methodology, which uses a brand-new SQL script, is permissible rebuttal because it addresses "the same subject matter [Dr.] Zervas raised in his report." Opp. at 4. But again, merely addressing

---

[4] Contrary to plaintiffs' contention, *Chrysler* supports exclusion. Opp. at 3 n.1. There, the court declined to strike a rebuttal opinion that "defuse[d] the impact" of the opposing expert's report by "[c]hallenging the reasonableness of" a source on which the opposing expert relied, but granted the motion to strike other rebuttal opinions that, like Zeidman's Bot Methodology, introduced new estimates and methodologies to account for factors that he failed to address in his initial report. *Chrysler*, 2016 WL 4272430, at *3-4.

1  the same subject matter as Dr. Zervas's report is insufficient. *Hyundai*, 2025 WL 1711440, at *2-
2  3 (striking new opinions despite same subject matter). In his initial report, Zeidman merely stated
3  that he "review[ed] the number of unique (encrypted) IP addresses and associated zip codes" and
4  "determined that there are numerous (and more than 40) people who visited" the Tax Preparer
5  Websites "both nationally and in California." Zeidman Rpt. ¶ 43. He provided **no** explanation for
6  how to use encrypted IP addresses to count the number of people who visited these websites in
7  California, let alone create any SQL scripts for this task. Mot. at 2. On reply, Zeidman wrote a new
8  SQL script, described for the first time a methodology to purportedly calculate users from
9  California using certain data fields, and, using this brand-new methodology, provided brand-new
10 calculations of the number of unique users from California. Reply Rpt. ¶¶ 43-44. These new
11 California Visit Methodology and calculations are impermissible and should be stricken. *Pac.*
12 *Steel*, 2024 WL 3171832, at *5; *Ruiz v. Walmart Inc.*, 2021 WL 4796960, at *8 (C.D. Cal. Apr.
13 27, 2021) (striking "new calculations" that were not included in initial report).

   **B.   Zeidman's New Visitor Estimate And Tax Information Analyses Should Be Stricken.**

16 Plaintiffs contend that Zeidman's Visitor Estimate and Tax Information Analyses are
17 proper because they "rebut evidence and criticisms raised by Meta's own expert." Opp. at 4. In
18 fact, these analyses do not respond to new evidence; rather, they attempt to create "new bases for
19 an old opinion," which is impermissible for rebuttal testimony. *Chrysler*, 2016 WL 4272430, at
20 *2, 4.

21 ***Visitor Estimate.*** Plaintiffs argue Zeidman's Visitor Estimate is proper rebuttal because it
22 rebuts Dr. Zervas's opinion that "IP addresses cannot always be used to track a specific user or
23 device." Opp. at 4-5 (quoting Dkt. No. 257-3 ("Zervas Rpt.") ¶ 63). But Zeidman's Visitor
24 Estimate does not *rebut* Dr. Zervas's opinion—rather, Zeidman abandons his own original opinion
25 and provides a whole new analysis to support a newly adopted alternative opinion in light of Dr.
26 Zervas's critique. *See* Zeidman Rpt. ¶ 43 (stating each user was associated with a "unique"
27 encrypted IP address); Zervas Rpt. ¶ 63 (pointing out that "a single user may have multiple IP
28 addresses"); Reply Rpt. ¶ 47 (agreeing with Dr. Zervas that "a user may have more than one

encrypted IP address" and providing new calculation based on an unfounded assumption that a user is associated with exactly 270 IP addresses). Zeidman's Visitor Estimate is thus a new opinion designed to account for admitted flaws in his old one, not a rebuttal. *See* Opp. at 5; *see also Chrysler*, 2016 WL 4272430, at *7 ("[R]ebuttal report is not the time to change methodologies to account for noted deficiencies."). This is impermissible, *Toomey v. Nextel Comms., Inc.*, 2004 WL 5512967, at *12 (N.D. Cal. Sept. 23, 2004) (striking calculations based on "new assumptions" not included in initial report),[5] and prejudicial because Meta had no opportunity to test Zeidman on this new opinion—for example, his assumption that "each encrypted IP address corresponded to not one, but 270 visits." Opp. at 5. The Visitor Estimate should be stricken.

***Tax Information Analysis.*** Similarly, plaintiffs claim Zeidman's new Tax Information Analysis merely responds to Dr. Zervas's criticisms. Opp. at 6. Again, however, Zeidman is not merely rebutting Dr. Zervas; he is offering new opinions entirely. First, Zeidman's alleged "clarification" of what he considered to be "tax information" is a new opinion. *Id.* In his initial report, for example, Zeidman stated that "tax information" received by Meta included a data field labeled "numChildButtons." Zeidman Rpt.¶ 47; *see also id.* ¶ 57(2). But on reply, he no longer lists that parameter as data he considered to be "tax information." Reply Rpt. ¶ 54. Zeidman's explanation for what he meant by "tax information" is thus different from his original opinions. This is precisely the conduct courts have condemned as "improper use of rebuttal testimony." *Synergy*, 2023 WL 3319218, at *7 (striking reply opinion that was different from initial opinion).

Second, plaintiffs argue Zeidman's belated attempt to quantify the supposed "enormous amount" of tax information is permissible because he may "marshal evidence and argument in a rebuttal report to explain why the opposing party's expert is wrong." Opp. at 6. But again, performing a new analysis using previously available information to fill a hole Dr. Zervas identified is "not proper rebuttal testimony." *Purdue Pharma*, 2022 WL 1203075, at *1-2

---

[5] Plaintiffs' citation of *Quidel Corp. v. Siemens Medical Solutions USA, Inc.*, 2019 WL 4727939, at *2 (S.D. Cal. Sept. 27, 2019), is inapposite: the rebuttal report there permissibly identified a flaw in a source on which the opposing expert's report relied. And in *Van Alfen v. Toyota Motor Sales, U.S.A., Inc.*, 2012 WL 12930456, at *2 (C.D. Cal. Nov. 9, 2012), the court acknowledged that "a supplemental expert report that states additional opinions or seeks to strengthen or deepen opinions expressed in the original expert report," like Zeidman's Reply Report, "is beyond the scope of proper supplementation and subject to exclusion under Rule 37(c)."

(excluding analysis that tried to "quantify" an undefined term for the first time on rebuttal). Zeidman's attempt to "offer new bases for [his] old opinion on rebuttal" is improper, and his Tax Information Analysis should be stricken. *Chrysler*, 2016 WL 4272430, at *4, 8 (rebuttal report cannot offer new "analysis to support an argument previously made").[6]

### C. Zeidman's Improper Rebuttal Is Not Harmless.

Once the Court finds that a discovery violation has occurred, the burden shifts and plaintiffs must prove that their failure to comply with Rule 26 was "substantially justified or is harmless." *Hoffman*, 541 F.3d at 1179. Plaintiffs do not even attempt to justify their improper and untimely disclosure, but rather claim that it was "harmless" because "no operative [discovery] cut-off date" has been set, and "Meta may still supplement its rebuttal report or depose Zeidman on the 'new' methodologies and analyses." Opp. at 7. But plaintiffs ignore that Zeidman's new opinions offered in support of their motion for class certification were not disclosed until after Meta had (1) deposed Zeidman on his initial report, Dkt. 233-2, (2) submitted a rebuttal expert report from Dr. Zervas, Dkt. 239-54, and (3) prepared and filed its opposition to plaintiffs' motion for class certification, Dkt. 239. This untimely disclosure deprived Meta of the opportunity to address Zeidman's late-breaking opinions in its opposition brief, where it was expected and entitled to do so. *Pac. Steel*, 2024 WL 3171832, at *5 (new analysis in reply reports "makes a fair response impossible"). Plaintiffs' late disclosure was thus not harmless, and these new opinions should be stricken. *Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 983-84 (N.D. Cal. 2014) (disclosure not harmless where defendant could "not address the substance of the [reply report] when it moved for summary judgment because those opinions had not been disclosed").

---

[6] Plaintiffs' reliance on *Bone Care International, LLC v. Pentech Pharmaceuticals, Inc.*, 2010 WL 3894444, at *15 n.13 (N.D. Ill. Sept. 30, 2010), an out-of-circuit case, is inapposite because Zeidman's Tax Information Analysis is not merely "significant elaboration" on his opening report; it contradicts and attempts to replace it. Moreover, plaintiffs' contention that *Purdue Pharma* is inapposite because plaintiffs' claims "do not require Zeidman to quantify the total amount of data collected and transmitted by Meta at this stage of the litigation," Opp. at 7, makes no sense. The question here is not whether Zeidman's opinion goes to an essential element of plaintiffs' claims, but whether it is improper rebuttal testimony that should be stricken.

## II. ZEIDMAN'S LEGAL OPINIONS ARE IMPROPER.

Plaintiffs claim that Meta "mischaracterizes" the Reply Report and that the legal opinions offered by Zeidman are just "meant to clarify [his] methodology and qualifications." Opp. at 1. But a plain reading of the report makes clear that Zeidman is offering legal conclusions and responses to legal arguments raised by Meta's counsel. Both are impermissible.

***Relevance of Consent (Reply Rpt. ¶ 42 and § IV.B.ii section header).***[7] In his Reply Report, Zeidman states that consent is "a legal issue, not a technical issue," and therefore "do[es] not address it." Reply Rpt. ¶ 42. But he then *does* address consent (*i.e.*, the legal issue) by concluding that it is "irrelevant" either to his "initial opinion on how to calculate visits," as plaintiffs claim, Opp. at 8, or to class certification, Mot. at 5. Zeidman is thus offering a conclusion on a legal issue by his own admission. That is not permissible. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008).

***Relevance of User Controls And Meta's Technical Measures (Reply Rpt. ¶ 58 and § IV.F section header).*** Plaintiffs argue that Zeidman does not opine that user controls and Meta's technical measures are "irrelevant" to class certification (which they do not dispute would be a legal conclusion), but rather that they were "irrelevant to his initial factual opinions" because the class definitions had been modified. Opp. at 8-9. But plaintiffs' explanation of Zeidman's reply opinion is inconsistent with Zeidman's report itself: Zeidman's initial report did not mention any user controls or Meta's technical measures, and neither Zeidman nor plaintiffs identify any "factual opinions" from Zeidman's initial report to which Meta's technical measures and user controls have purportedly become "irrelevant." *See id.* Nor does Zeidman engage in any technical analysis of such user controls or Meta's technical measures in his Reply Report. Reply Rpt. ¶ 58. Rather, Zeidman's reply concludes that Meta's technical measures and user controls are "irrelevant" *to class certification* because he was told by plaintiffs' counsel that the class definitions were

---

[7] Plaintiffs take issue with the fact that two of Zeidman's legal opinions are "merely headers of sections of the report." Opp. at 8. If section headers are not part of Zeidman's substantive opinions, as plaintiffs seem to suggest, then this Court should disregard all section headers in Zeidman's reports. But Zeidman clearly relies on the headers as conveying substantive opinions. *See, e.g.*, Reply Rpt. ¶ 45 ("The section header in my report on page 14 clearly states, 'Calculating Visits to the Tax Preparer Websites.'"). The rule prohibiting legal conclusions by experts should apply equally to Zeidman's section headers.

modified. *Id.* That is a legal opinion, not a technical one. *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 174 (N.D. Cal. 2015) (relevance to class certification is question of law); *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) (interpretation of class definition is question of law). Zeidman's improper legal opinion should be excluded. *Liaw v. United Airlines, Inc.*, 2019 WL 6251204, at *4 (N.D. Cal. Nov. 22, 2019) (excluding expert opinion that "parrot[ed] attorney argument").[8]

***Zeidman's Qualifications (Reply Rpt. ¶¶ 10-14, 63).*** Zeidman's defense of his qualifications as an expert is also impermissible legal argument. "[T]he issue of whether an expert is qualified . . . is a legal issue" to "be determined by the trial court." *Synergy*, 2023 WL 3319218, at *8 (citing *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000)). Zeidman's opinion that he is "well-qualified to opine on the matters in [his] original report and in [his] reply" report (Reply Rpt. ¶ 63) is thus an impermissible legal conclusion. *Synergy*, 2023 WL 3319218, at *8 (striking expert's "legal conclusions" regarding whether expert was qualified). Further, plaintiffs do not dispute that Zeidman is responding to legal arguments raised by Meta's counsel, not arguments raised by Meta's experts. Opp. at 9; Reply Rpt. ¶¶ 10-14 (stating that Zeidman is responding to "Meta['s] claims" and assertions in its *Daubert* motion). Zeidman's statements are improper legal argument "dressed up as expert opinion" and should be stricken. *Avila v. Ford Motor Co.*, 796 F. Supp. 3d 593, 598 (N.D. Cal. 2025) (striking opinion that "largely reiterate[d]" prior analysis and presented legal argument); *see also Johnson v. Hartford Cas. Ins. Co.*, 2017 WL 2224828, at *3 (N.D. Cal. May 22, 2017) (striking expert report that did "not rebut any expert of" opposing party and "simply attempt[ed] to augment [party's] reply by attacking legal argument from [opposing] counsel").[9]

---

[8] Plaintiffs' contention that Zeidman is not offering a legal conclusion because plaintiffs did not cite these portions of the Reply Report in their class certification and *Daubert* briefs has no merit. Opp. at 8-9 nn. 2-3. Whether plaintiffs relied on Zeidman's opinions in their briefs is irrelevant to whether Zeidman's opinions themselves are legal conclusions.

[9] Plaintiffs' attempt to distinguish Meta's cited cases on the basis that the courts there struck either the "bulk" of or the "entire" reply report misses the mark, Opp. at 9, because Meta is not seeking to strike the entire Reply Report here.

### III. CONCLUSION

For the reasons stated above and in the Motion, the Court should strike paragraphs 10-14, 40-44, 47-48, 54-55, 58, and 63 and the section headers of §§ IV.B.ii and IV.F of Zeidman's Reply Report.

DATED: February 4, 2026

LATHAM & WATKINS LLP

By: /s/ *Jessica Stebbins Bina*
    Jessica Stebbins Bina

**LATHAM & WATKINS LLP**
JESSICA STEBBINS BINA, SBN 248485
jessica.stebbinsbina@lw.com
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500

MELANIE M. BLUNSCHI, SBN 234264
melanie.blunschi@lw.com
KRISTIN I. SHEFFIELD-WHITEHEAD, SBN 304635
kristin.whitehead@lw.com
DIANNE KIM, SBN 348367
dianne.kim@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-8129

MARISSA ALTER-NELSON (*pro hac vice*)
marissa.alter-nelson@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200

**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000

| | |
|---|---|
| 1 | ELIZABETH K. MCCLOSKEY, SBN 268184 |
| 2 | emccloskey@gibsondunn.com |
| | ABIGAIL A. BARRERA, SBN 301746 |
| 3 | abarrera@gibsondunn.com |
| | One Embarcadero Center, Suite 2600 |
| 4 | San Francisco, CA 94111-3715 |
| | Telephone: (415) 393-8200 |
| 5 | |
| 6 | JONATHAN C. BOND (*pro hac vice*) |
| | jbond@gibsondunn.com |
| 7 | 1700 M Street, N.W. |
| | Washington, D.C. 20036-4504 |
| 8 | Telephone: (202) 955-8500 |
| 9 | *Attorneys for Defendant Meta Platforms, Inc.* |