IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


IN RE META PIXEL TAX FILING          )   CV-22-07557-PCP
CASES                                )
                                     )   SAN JOSE, CALIFORNIA
                                     )
                                     )   FEBRUARY 26, 2026
                                     )
                                     )   PAGES 1-48
                                     )
                                     )
                                     )
_____    )

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE P. CASEY PITTS
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

FOR THE PLAINTIFF:        BURSOR & FISHER, P.A.
                          1990 NORTH CALIFORNIA BLVD., STE 940
                          WALNUT CREEK, CA 94596
                     BY:  **NEAL DECKANT**


FOR THE DEFENDANT:        GIBSON, DUNN & CRUTCHER, LLP
                          200 PARK AVENUE
                          NEW YORK, NY 10166
                     BY:  **LAUREN R. GOLDMAN**



APPEARANCES CONTINUED ON THE NEXT PAGE



OFFICIAL COURT REPORTER:     SUMMER FISHER, CSR, CRR
                             CERTIFICATE NUMBER 13185


PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

A P P E A R A N C E S:  (CONT'D)

FOR THE DEFENDANT:        GIBSON, DUNN & CRUTCHER, LLP
                          1700 M STREET, N.W.
                          WASHINGTON, D.C. 20036
                     BY:  **TRENTON OSS**


FOR THE DEFENDANT:        GIBSON, DUNN & CRUTCHER, LLP
                          ONE EMBARCADERO CENTER, STE 2600
                          SAN FRANCISCO, CA 94111
                     BY:  **ABIGAIL BARRERA**
                          **ELIZABETH MCCLOSKEY**


FOR THE DEFENDANT:        LATHAM & WATKINS, LLP
                          10250 CONSTELLATION BLVD., STE 1100
                          LOS ANGELES, CA 90067
                     BY:  **JESSICA STEBBINS BINA**

SAN JOSE, CALIFORNIA                    FEBRUARY 26, 2026

P R O C E E D I N G S

(COURT CONVENED AT 9:15 A.M.)

THE CLERK:  CALLING CASE NUMBER 22-CV-7557.  IN RE META PIXEL TAX FILING CASES.  ON TODAY FOR THE MOTIONS TO CERTIFY THE CLASS AND THE MOTIONS TO EXCLUDE AND STRIKE.

WILL THE PARTIES PLEASE APPROACH THE PODIUMS AND STATE YOUR APPEARANCES FOR THE RECORD BEGINNING WITH PLAINTIFF'S COUNSEL.

MR. DECKANT:  GOOD MORNING, YOUR HONOR.

THIS IS NEAL DECKANT FROM BURSOR & FISHER ON BEHALF OF PLAINTIFFS.

THE COURT:  GOOD MORNING.

MS. GOLDMAN:  GOOD MORNING, YOUR HONOR.

LAUREN GOLDMAN FROM GIBSON DUNN ON BEHALF OF DEFENDANT META.  I'M HERE TODAY WITH MY PARTNERS TRENTON VAN OSS, ABI BARRERA AND ELIZABETH MCCLOSKEY.  I'M ALSO HERE WITH JESSICA STEBBINS FROM LATHAM, AND MY CLIENT, NIKKI STITT SOKOL.

THE COURT:  GOOD MORNING.

SO WE ARE HERE FOR -- THERE ARE SEVERAL MOTIONS BEFORE ME. I THINK THE MOTION THAT I WANT TO HEAR ARGUMENT ON PRIMARILY IS THE MOTION TO CERTIFY THE CLASS.  I THINK I CAN ADDRESS THE CHALLENGES TO THE EXPERT DECLARATIONS AND THE LIKE ON THE BASIS OF THE PAPERS, SO I THINK THE APPROPRIATE FOCUS THIS MORNING WOULD BE THE MOTION TO CERTIFY, SO I WILL HEAR FROM PLAINTIFFS

FIRST AND THEN I WILL GIVE DEFENDANTS AN OPPORTUNITY TO RESPOND.

MR. DECKANT:  THANK YOU, YOUR HONOR.

SO I THINK IT WOULD BE USEFUL, SINCE THIS IS A HIGHLY TECHNICAL CASE REGARDING PIXEL TRACKING TECHNOLOGY, TO START WITH A BRIEF OVERVIEW OF THE FACTS.

I KNOW YOUR HONOR HAS READ THE BRIEFING QUITE WELL, I'M SURE, I WILL KEEP THIS BRIEF AND JUST GIVE THE COURT THE KEY INFORMATION IT NEEDS TO KNOW.

AND AS YOU MAY HAVE SEEN, OUR CLASS DEFINITION HASN'T EVOLVED BETWEEN THE MOVING BRIEF AND REPLY BRIEF AND THIS WILL TOUCH UPON THAT.

THE COURT:  SO I MEAN -- I WILL JUMP IN, AS I OFTEN DO.

MR. DECKANT:  PLEASE.

THE COURT:  SO LET ME ASK YOU JUST AS AN INITIAL ISSUE, AM I RIGHT IN MY UNDERSTANDING THAT NONE OF THE NAMED PLAINTIFFS HAD ANY INFORMATION RECORDED IN THE HIVE TABLES THAT WAS RECEIVED FROM TAXACT?

MR. DECKANT:  THAT IS CORRECT BASED ON THE EVIDENCE; HOWEVER, I DO WANT TO NOTE THAT PLAINTIFF CALDERON ALLEGES THAT SHE USED TAXACT, IT WAS DISCUSSED DURING HER DEPOSITION.

THE COURT:  RIGHT.  BUT YOU'VE NOW CHANGED YOUR CLASS DEFINITION FROM THE BEING ONE TIED TO VISITING OR USING THE WEBSITE TO BEING ONE TIED TO THE PLAINTIFF ACTUALLY APPEARING

IN THE HIVE TABLES.

SO WHY IS IT THE CASE THAT I HAVE ANY NAMED PLAINTIFF WHATSOEVER WHO COULD SERVE AS A CLASS REPRESENTATIVE FOR CLAIMS INVOLVING THE RECEIPT OF INFORMATION FROM TAXACT?

**MR. DECKANT:** YEAH.

PLAINTIFF CALDRON IS THE ONLY TAXACT CLIENT, I ACKNOWLEDGE, I'M JUST LOOKING THROUGH THE BRIEFING RIGHT NOW, I WANT TO SAY SOMETHING OUT LOUD BUT I RECOGNIZE THAT THIS IS AN OPEN HEARING AND NEITHER PARTY HAS FILED A MOTION TO SEAL THE HEARING.

META DOES HAVE AN AUTOMATED DATA DELETION POLICY FOR LOGS, LIKE ALL TECH COMPANIES DO.  I CANNOT SAY THE PRECISE NUMBER OF DAYS BECAUSE THAT HAS BEEN DESIGNATED AS CONFIDENTIAL, BUT YES, PLAINTIFF CALDERON, HER DATA IS NOT -- TAXACT DATA IS NOT IN THE HIVE DATA.  WE DO NOT KNOW IF IT WAS SUBJECT TO THE AUTOMATED LONG DELETION POLICY.

**THE COURT:** BUT SHE IS NOT A MEMBER OF THE CLASS AS IT HAS BEEN REFINED, FOR PURPOSES IN YOUR REPLY BRIEF, TRUE?

**MR. DECKANT:** I SUPPOSE IT'S TECHNICALLY TRUE, I WON'T ARGUE WITH THE COURT ON THAT.

**THE COURT:** SO UNLESS THERE IS SOMETHING I'M MISSING, THAT WOULD BE DISPOSITIVE OF WHETHER I COULD CERTIFY ANY CLASS ON THE CLAIMS INVOLVING TAXACT.

**MR. DECKANT:** FOR 12(B)(3) -- EXCUSE ME, 23(B)(3) DAMAGES, FOR INJUNCTIVE RELIEF, I'M NOT SO SURE, BUT

REGARDLESS, I'M NOT GOING TO DIE ON THIS HILL, I WANT TO PICK MY BATTLES.

THE COURT:  LET'S TURN TO THE INJUNCTIVE RELIEF CLASS, AND YOU KNOW OBVIOUSLY THERE'S GOING TO BE A QUESTION ABOUT THE SCOPE, AS IN THE RAVEN CASE, WHAT I ULTIMATELY CONCLUDED WAS THAT I WAS CERTIFYING A CLASS UNDER 23(B)(3) AND THERE WASN'T A NEED UNDER THAT CIRCUMSTANCE TO SEPARATELY CERTIFY A 23(B)(2) CLASS.

AND YOU'VE RAISED ARGUMENTS ABOUT WHETHER THAT IS THE APPROPRIATE ATTACK OR NOT UNDER THE NINTH CIRCUIT LAW AND UNDER THE VARIOUS AUTHORITIES, AND I UNDERSTAND THOSE ARGUMENTS, YOU KNOW, AND I WILL HEAR FROM YOU ON THEM, BUT I HAVE A DEEPER CONCERN WHICH IS, AS I UNDERSTAND IT, THE CLASS REMAINS DEFINED AS MODIFIED AS INDIVIDUALS WHO APPEARED IN THE HIVE TABLES AND BASED ON VISITS BETWEEN 2022 AND 2023, AND THE CLAIM FOR INJUNCTIVE RELIEF IS PRESUMABLY DESIGNED TO PROTECT INDIVIDUALS WHO WILL VISIT THESE WEBSITES IN THE FUTURE.  AND SO THE CLASS MEMBERS WE ARE SEEKING TO PROTECT UNDER 23(B)(2), OR THE GROUP WE ARE SEEKING TO PROTECT UNDER 23(B)(2) ARE INDIVIDUALS WHO VISIT IN THE FUTURE.

I DON'T KNOW THAT I'VE EVER SEEN THIS KIND OF PROPOSED INJUNCTIVE RELIEF CLASS THAT IS DEFINED AS INDIVIDUALS WHO VISITED THE WEBSITE THREE OR MORE YEARS AGO BUT ARE SEEKING INJUNCTIVE RELIEF GOING FORWARD.  I MEAN, WHY IS THAT NOT -- THAT MISMATCH -- A BASIS FOR FINDING THAT I SHOULDN'T GRANT

INJUNCTIVE RELIEF, 23(B)(2) CLASS HERE?

**MR. DECKANT:** YEAH, THAT'S A GREAT QUESTION. AND I THINK WHEN WE WERE DISCUSSING THE INJUNCTIVE RELIEF CLASS, WE WERE INDEED THINKING THAT WOULD BE FORWARD LOOKING TO THE PRESENT AND BEYOND. THIS IS AN ONGOING PRACTICE, THE PIXEL IS STILL --

**THE COURT:** BUT THE DEFINITION, AGAIN THAT YOU HAVE PROPOSED, IS PEOPLE WHO VISITED BETWEEN 2022 AND 2023, CORRECT?

**MR. DECKANT:** YES, BUT UNDER RULE 23, CLASS DEFINITIONS ARE INHERENTLY FLEXIBLE. SO IF THE COURT IS INCLINED TO GRANT AN INJUNCTIVE CLASS, I WOULD JUST ASK THAT IT BE UP TO THE PRESENT.

**THE COURT:** WELL I MEAN, EVEN THEN, USUALLY AN INJUNCTIVE RELIEF CLASS IS GOING TO BE THOSE WHO VISIT IN THE FUTURE. I MEAN, IT'S GOING -- IT DOESN'T MATTER UP TO THE PRESENT, THAT'S WHAT RETROSPECTIVE RELIEF IS ABOUT, A GOING FORWARD GROUP OF PEOPLE. THERE IS SOME BURDEN ON YOU AS PLAINTIFFS TO SORT OF PUT THE PROPER CLASS DEFINITION BEFORE ME AS OPPOSED TO SORT OF CONSTANTLY HAVING TO SHIFT AROUND, AND I'M CONCERNED THAT -- YOU KNOW, I UNDERSTAND THERE IS KIND OF A DISPUTE BETWEEN THE PARTIES ON WHETHER THE EXISTING MECHANISMS ARE SUFFICIENT OR WHETHER THEY ARE NOT, BUT WHAT EVIDENCE DO WE HAVE ABOUT ANY OF YOUR NAMED PLAINTIFFS VISITING THE WEBSITES IN THE TIME SINCE 2023, WHETHER THE VISITS HAVE RESULTED IN THE SHARING OF SENSITIVE FINANCIAL INFORMATION OR OTHER SORT OF

INJURIES THAT WOULD TRIGGER A NEED FOR INJUNCTIVE RELIEF AS FOR THE NAMED PLAINTIFFS?

**MR. DECKANT:**  I WILL BE A STRAIGHT SHOOTER, FOR THE NAMED PLAINTIFFS, THAT'S NOT IN THE RECORD.  THE MOVING BRIEF DOES DISCUSS THE FILTERING MECHANISMS THAT WERE ENACTED IN 2023, I WON'T GET INTO DETAIL AS THAT'S CONFIDENTIAL, BUT IT DISCUSSES OUR CONCERNS WITH THE FILTERING MECHANISMS.

I DO RECOGNIZE THAT IT'S OUR BURDEN TO PROPOSE AN ADEQUATE AND PROPER CLASS DEFINITION.  I DO WANT THE COURT TO UNDERSTAND THIS ISSUE WITH THE CHANGE BETWEEN THE MOVING BRIEF AND THE REPLY BRIEF, WE HAD BASICALLY CONTEMPLATED ALREADY IN THE MOVING BRIEF THAT IT WOULD INCLUDE PEOPLE WHO ARE ALREADY IN THE HIVE DATA.  WE ACTUALLY CLARIFIED THAT IN THE REPLY BRIEF.  SO NOMINALLY, IT CHANGED, SURE, BUT THAT WAS OUR INTENTION WHEN WE ORIGINALLY FILED OUR MOTION.

**THE COURT:**  OKAY.  THEN THAT'S -- FOR THIS PURPOSE, IT SEEMS IT'S NEITHER HERE NOR THERE BECAUSE THE DEEPER PROBLEM SEEMS TO BE WHO IS THE ADEQUATE CLASS REPRESENTATIVE, WHO IS BEFORE ME TO REPRESENT THE CLASS OF PEOPLE WHO MAY VISIT THESE WEBSITES IN THE FUTURE AND MAY HAVE WHATEVER INJURY WE ARE NOW DEALING WITH FOR PURPOSES OF CLASS CERTIFICATION OCCUR TO THEM, LIKE WHICH OF THESE NAMED PLAINTIFFS HAVE -- DO I HAVE THE EVIDENCE BEFORE ME TO SAY THAT THEY ARE LIKELY TO FACE THE KIND OF INJURY THAT IS OF CONCERN AND THUS ENTITLED TO PURSUE INJUNCTIVE RELIEF PROHIBITING THAT INJURY.

MR. DECKANT:  WELL IN THE COMPLAINT ON PARAGRAPHS 5, 7, 11, AND 10, WE HAVE OUR FOUR NAMED PLAINTIFFS AND WE HAVE THIS TYPICAL ALLEGATION --

THE COURT:  WELL WE ARE NOT THE COMPLAINT ANYMORE, RIGHT?

MR. DECKANT:  SURE.

THE COURT:  SO THIS IS AN EVIDENTIARY MOTION SO IT'S YOUR BURDEN TO SHOW ME THAT YOU HAVE SOMEONE WHO IS APPROPRIATELY SITUATED TO REPRESENT A CLASS OF PEOPLE WHO VISITED THESE WEBSITES IN THE FUTURE AND FACE THE HARM YOU WERE CONCERNED ABOUT BASED ON YOUR FEELING THAT FILTERING MECHANISMS ARE INADEQUATE.

MR. DECKANT:  I WILL BE CANDID WITH THE COURT.  WE DO NOT HAVE A NAMED PLAINTIFF OR AN INDIVIDUAL POST-JUNE 30TH, 2023 WHERE THE CLASS CUTS OFF.

THE COURT:  OKAY.

SO LET'S TURN TO WHAT I UNDERSTAND TO BE -- THAT SORT OF GETS US TO THE TWO CLASSES THAT I WOULD LIKE TO HEAR FROM YOU, AND I WOULD CERTAINLY LIKE TO HEAR FROM META ON WHICH I THINK ARE THE PEN REGISTER AND WIRE TAP NATIONWIDE PEN REGISTER AND WIRE TAP CLASS AS TO HRBLOCK.COM AND THE CALIFORNIA EAVESDROPPING CLASS AS TO H&R BLOCK.

MR. DECKANT:  CORRECT, YES.

THE COURT:  SO STARTING WITH THE SECOND CLASS, THE SECOND CLASS, WHY ISN'T IT THE CASE THAT, AS THEY SUGGEST, THAT

CLASS DEPENDS UPON THE, AS I UNDERSTAND IT, EAVESDROPPING ON CONFIDENTIAL COMMUNICATIONS, AND THAT THEIR ARGUMENT IS THAT IN ORDER TO DETERMINE WHETHER ANY PARTICULAR CLASS MEMBER HAD CONFIDENTIAL COMMUNICATIONS EAVESDROPPED UPON, THAT WE WILL HAVE TO LOOK ESSENTIALLY ON A LINE-BY-LINE BASIS THROUGH THE HIVE RECORDS AS TO EVERY SINGLE CLASS MEMBER TO SEE IF THERE HAPPENS TO BE THE KIND OF URL INFORMATION, FOR EXAMPLE, THAT DOESN'T MERELY REFLECT THE ADDRESS OF A WEB PAGE BUT IN FACT SAYS SOMETHING ABOUT COMMUNICATIONS THAT THOSE INDIVIDUALS HAD WITH THE WEBSITE AND WHY IS THAT NOT THE KIND OF INDIVIDUALIZED INQUIRY THAT PREDOMINATES OVER THE COMMON QUESTIONS AS THEY EXIST?

**MR. DECKANT:**  I THINK THAT'S CONFLATING TWO ISSUES, THOSE ARE THE TWO ISSUES OF CONFIDENTIAL COMMUNICATIONS AND SENSITIVE FINANCIAL DATA.

SO TO BE CLEAR, WE DON'T NEED TO SHOW THAT THERE MUST BE SENSITIVE FINANCIAL DATA TO CONSTITUTE A WIRE TAP.

**THE COURT:**  NO, BUT THE ANALYSIS THAT HAS COME DOWN AND THE COURTS THAT HAVE CONSTRUED 631 HAVE SAID THE REASON IT CAN APPLY TO, FOR EXAMPLE THE TRANSMISSION OF A URL, THE TRANSMISSION TO META OF THE FACT THAT SOMEONE VISITED A PARTICULAR URL IS BECAUSE, FOR EXAMPLE, THE URL MAY BE FORMATTED IN A WAY THAT REVEALS THE QUESTION THEY TYPED IN TO ASK THE WEBSITE, RIGHT.

SO SETTING ASIDE WHETHER IT CONTAINS SENSITIVE FINANCIAL

INFORMATION, IT'S STILL -- THE ANALYSIS GENERALLY HAS BEEN THAT YOU HAVE TO -- THAT IS THE KIND OF INFORMATION THAT POTENTIALLY CONSTITUTES A CONFIDENTIAL COMMUNICATION.

AND IT SEEMS TO ME -- IS IT THE CASE THAT TO DETERMINE WHO IS ENTITLED TO DAMAGES AT THE END OF THE DAY IN THIS CASE, WE ARE GOING TO HAVE TO GO THROUGH ON A CLASS MEMBER BY CLASS MEMBER BASIS, THE HIVE DATA FOR EACH INDIVIDUAL CLASS MEMBER AND DETERMINE WHETHER THE INFORMATION THERE, IT MAY BE HERE ARE THE FIFTY URL'S THIS PERSON VISITED AT HRBLOCK.COM AND WE HAVE TO GO THROUGH THOSE FIFTY URL'S AND DETERMINE WHETHER ANY OF THEM HAVE THE KIND OF COMMUNICATION-LIKE INFORMATION THAT WE HAVE RECOGNIZED AS POTENTIALLY INVOLVING A CONFIDENTIAL COMMUNICATION AS OPPOSED TO BEING THE KIND OF MERE ADDRESS INFORMATION THAT GENERALLY IS NOT RECOGNIZED AS A COMMUNICATION.

**MR. DECKANT:** I WOULD LIKE TO SQUARELY ANSWER THAT QUESTION, BOTH IN THE CONTEXT OF THE WIRE TAP CLAIMS AND THE PEN REGISTER CLAIMS, I BELIEVE MY ANSWERS WILL BE DIFFERENT.

SO STARTING WITH THE WIRE TAP CLAIMS, AS THE COURT KNOWS, THE HIVE DATA CONTAINS BASICALLY TWO BUCKETS OF INFORMATION. ONE BUCKET IS A LITTLE MORE RELEVANT TO PEN REGISTER BUT IT'S ALSO RELEVANT TO WIRE TAP. IT CAPTURES THE IP ADDRESS, THE DATES IT WAS ACCESSED, BROWSER SESSION INFO AND GEO LOCATED ZIP CODE.

AND THAT DATA IS IN THE HIVE DATA FOR PLAINTIFF CALDERON,

DOE, BRYANT AND TIFFANY BRYANT.

IN ADDITION, THE HIVE DATA CONTAINS SPECIFIC FORM FIELDS ON THE TAX WEBSITES.  I'M NOT ALLOWED TO SAY THOSE OUT LOUD BECAUSE IT'S CONFIDENTIAL, THAT'S ON PAGE 4 OF OUR MOTION.  OUR EXPERT PERFORMED AN ANALYSIS OF THE HIVE DATA AND HE PULLED THE TOTAL NUMBER OF RECORDS THAT CONTAINED THOSE SPECIFIC TAX FORM FIELDS WHICH ARE UNDOUBTEDLY SENSITIVE FINANCIAL INFORMATION, THAT'S ON PAGE 17 OF OUR OPPOSITION OF THE MOTION TO STRIKE ZEIDMAN'S TESTIMONY.  WE HAVE THE EXACT NUMBER OF ROWS THAT HE DETERMINED USING ANALYSIS OF SPECIFIC TAX INFORMATION BUT I CANNOT SAY THAT NUMBER OUT LOUD.

SO I WOULD SAY -- AND ALSO IN ADDITION, PLAINTIFF JANE DOE WAS UNDOUBTEDLY INJURED.  THE HIVE DATA SHOWS THAT SHE RAN A VERY SPECIFIC SEARCH AND THE URL SHOWS A SPECIFIC TAX QUESTION THAT SHE WAS TRYING TO HAVE RESOLVED.  THAT'S ON PAGE 3 OF OUR MOTION.  I'M NOT ALLOWED TO SAY WHAT EXACT TAX ISSUE SHE WAS SEARCHING BUT THAT IS TWO IN THE HIVE DATA FOR HER.

SO WE HAVE AN ADEQUATE CLASS REPRESENTATIVE.  AND FOR OUR WIRE TAP CLAIMS, WE KNOW THE EXACT NUMBER OF PEOPLE WHO HAVE HAD SPECIFIC FORM FIELDS FROM THEIR TAX RETURN PUT INTO THE HIVE DATA.  THAT RESOLVES YOUR QUESTION ABOUT THE WIRE TAP.

FOR YOUR QUESTION ABOUT THE PEN REGISTER, YES, WE WOULD NEED TO LOOK AT THE URL'S.  BUT THE IN RE FACEBOOK CASE FROM THE NINTH CIRCUIT, HOLDS THAT URL'S CAN INDEED BE SENSITIVE INFORMATION.  BUT I DON'T BELIEVE THE WIRE TAP CLAIM ACTUALLY

HAS REQUIREMENT OF SENSITIVITY -- EXCUSE ME, THE PEN REGISTER CLAIM.  THE WIRE TAP CLAIM, YOU SAID UNDER 631 MIGHT, BUT THE PEN REGISTER CLAIM UNDER 638.51 JUST REQUIRES PEN REGISTER BEING TRANSFERRED.  IT'S BLIND TO THE CONTENTS OF THE COMMUNICATION, I DON'T NEED TO SHOW ANY DEGREE OF SENSITIVITY SO WE DON'T NEED TO GET INTO THE ISSUE OF WHETHER THE URL'S WERE INDICATIVE OF SENSITIVE FINANCIAL INFORMATION FOR THE PEN REGISTER CLAIMS.

THE COURT:  JUST SO I UNDERSTAND, AND I REALIZE WE HAVE A NUMBER OF STATUTES, SO THERE IS 638.51.

MR. DECKANT:  YES.

THE COURT:  YOUR PEN REGISTER CLAIM.  YOU HAVE THE 632 AND 635 WHICH ARE REALLY THE EAVESDROPPING CLAIMS, AND THEN WE HAVE 631.

MR. DECKANT:  YES.

THE COURT:  IS THAT WHAT WE ARE CALLING THE WIRE TAP CLAIM?

MR. DECKANT:  YES, YOUR HONOR.

THE COURT:  OKAY.  AND YOUR VIEW IS ESSENTIALLY THAT THE EXPERTS CAN LOOK IN THE HIVE DATA AND FIGURE OUT WHICH OF THE -- WHICH ENTRIES IN THE HIVE DATA ARE THE KIND OF ENTRIES THAT WOULD CONSTITUTE COMMUNICATIONS, THE COMMUNICATION FOR PURPOSES OF 631(A).

MR. DECKANT:  YES.  I MEAN, LIKE I SAID, IT'S ON PAGE 17 OF OUR OPPOSITION, THE MOTION TO STRIKE ZEIDMAN.  WE

KNOW THE EXACT NUMBER OF INDIVIDUALS IN THE HIVE DATA FOR WHOM THERE IS SPECIFIC INFORMATION THAT THEY ENTERED ON THEIR TAX FORMS, IT'S RIGHT THERE ON THEIR PAPERS.

**THE COURT:** THAT'S A SUBSET ARGUABLY, RIGHT? AS WE HAVE UNDERSTOOD AS 631 HAS BEEN CONSTRUED, WE ARE NOT TALKING ABOUT JUST THE INDIVIDUALS WHO PUT IN TAX INFORMATION, IT SHOULD INCLUDE ANYONE WHO MADE AN INQUIRY, FOR EXAMPLE. IF THEY MADE AN INQUIRY OF THE WEBSITE, WHETHER ABOUT THEIR TAXES OR OTHERWISE, THAT THAT COULD CONSTITUTE -- THAT COULD CONSTITUTE A COMMUNICATION, AND DEPENDING ON ITS CONTENT, IT COULD BE CONFIDENTIAL, CORRECT?

**MR. DECKANT:** YES. AND WE ALSO KNOW A PRECISE COUNT OF THE SAMPLE HIVE DATA PRODUCED THE NUMBER OF INDIVIDUALS WHO HAVE HAD THE PEN REGISTER TYPE OF INFORMATION.

**THE COURT:** RIGHT. BUT WE ARE NOT TALKING ABOUT THE PEN REGISTER RIGHT NOW. I'M THINKING IN PARTICULAR ON THE ISSUE OF THE REQUIREMENT UNDER SECTION 631 THAT THE INFORMATION TRANSMITTED HAVE CONSTITUTED A CONFIDENTIAL COMMUNICATION.

AND SO TELL ME WHAT PERCENTAGE -- AND I APOLOGIZE THAT I DON'T HAPPEN TO KNOW THIS OFF THE TOP OF MY HEAD -- WHAT WAS THE SAMPLE THAT YOU RECEIVED?

**MR. DECKANT:** THE SAMPLE WAS PICKING A DAY ON THE 26TH OF EACH MONTH, THAT WAS A RANDOMLY CHOSEN DATE, BETWEEN 2022 AND 2023. I THINK APRIL 2022 TO APRIL 2023, I MAY BE INCORRECT ON THAT, BUT WE PICKED THE 26TH DAY OF EACH MONTH AS

JUST A RANDOMLY CHOSEN DATE, SO WE HAVE APPROXIMATELY 1/30TH OF THE TOTAL SAMPLE.

THE COURT:  OKAY.  AND HOW MANY ENTRIES WERE GENERATED FROM THE SAMPLE?

MR. DECKANT:  I KNOW THE FILE SIZE, I DO NOT BELIEVE I CAN TELL YOU THE FILE SIZE OUT LOUD BUT IT IS ON OUR OPPOSITION TO THE MOTION TO STRIKE WEIR.  I CAN POINT YOU TO THE PAGE NUMBER.  IT'S VERY VOLUMINOUS, EXTRAORDINARILY VOLUMINOUS, BUT APART FROM FILE SIZE, I DO NOT HAVE A RECORD COUNT.

THE COURT:  IS THERE ANY OBJECTION TO A DISCLOSURE OF THE MERE FILE SIZE?  (PAUSE IN PROCEEDINGS.)

MR. DECKANT:  IT'S APPROXIMATELY 300 GIGABYTES.

THE COURT:  SO ROUGHLY -- WE COULD ROUGHLY THINK THERE WILL BE 9 TERABYTES OF DATA WE WILL NEED TO BE LOOKING THROUGH IN ORDER TO DETERMINE WHICH OF THESE ENTRIES INCLUDE CONFIDENTIAL INFORMATION; IS THAT RIGHT?

MR. DECKANT:  THAT SEEMS RIGHT, THE MATH, TIMES 30.

THE COURT:  OKAY.  LET ME -- IS THERE ANYTHING ELSE THAT YOU WANTED TO OFFER ON THIS MOTION?

MR. DECKANT:  YOU HAD SPECIFIC QUESTIONS.  I DON'T NEED TO GIVE YOU A SLIDE SHOW, IT'S ALL RIGHT.

THE COURT:  THANK YOU.

LET ME HEAR FROM DEFENSE COUNSEL.

MS. GOLDMAN:  GOOD MORNING, YOUR HONOR.

IT'S ABUNDANTLY CLEAR THAT THE COURT IS FAMILIAR WITH THE PAPERS SO I'M NOT GOING TO GIVE A SPEECH EITHER BUT I WANTED TO CLEAR UP A COUPLE OF THINGS BEFORE I GET INTO THE COURT'S QUESTIONS.

LET'S TAKE A STEP BACK.  WE ARE THREE YEARS INTO THIS LITIGATION.  WE HAVE HAD NINE PLAINTIFFS TO DATE, WE PRODUCED ALL OF THEIR DATA IN JUNE OF 2024, SO ABOUT TWO YEARS AGO.

THEY HAVE NO EVIDENCE OF A SINGLE PLAINTIFF IN THIS CASE AS TO WHOM THERE IS ANY SORT OF SENSITIVE TAX DATA IN HIVE, NOTHING.

**THE COURT:**  WELL THERE'S A DISPUTE ABOUT WHETHER THE PARTICULAR INQUIRY -- THAT THERE IS INFORMATION ABOUT ONE PERSON AND IT'S UNDER SEAL, ABOUT THE DEPENDENT'S STATUS OF SOMEONE, AN INQUIRY.

**MS. GOLDMAN:**  NO.  MY FRIEND ON THE OTHER SIDE WAS ACTUALLY MISCHARACTERIZING THE RECORD OF WHAT'S IN HIVE.

THAT PLAINTIFF, JANE DOE, TESTIFIED THAT SHE RAN A SEARCH ABOUT WHETHER SHE COULD CLAIM A PARTICULAR DEPENDENT -- I ALWAYS SAY "DEFENDANT" WHEN I MEAN "DEPENDENT" -- WHETHER SHE COULD CLAIM A PARTICULAR DEPENDENT ON HER TAX RETURN, BUT WHEN WE LOOK AT THE HIVE DATA FOR THAT PLAINTIFF, THE SEARCH TERM ISN'T THERE.  THE ONLY THING THAT'S THERE IS THAT SHE WENT TO A WEB PAGE, A GENERIC WEB PAGE ABOUT CLAIMING THAT TYPE OF DEPENDENT, THAT'S EXHIBIT 13.  I CAN GIVE YOU THE EXACT CITE.

THE URL IS EXHIBIT 13 AT PAGE 16 AND ALL YOU SEE IS THE

PAGE BECAUSE H&R BLOCK'S WEBSITE HAS A GENERIC PAGE ON THAT PARTICULAR TOPIC.  SO WE KNOW SHE WENT TO THAT PAGE.  HER SEARCH QUERY IS NOT THERE.

THE COURT:  OKAY.  AND I GUESS THERE'S A COUPLE OF ISSUES THAT THAT GOES TO.  SO THAT MAY BEAR ON THE QUESTION OF WHETHER -- THERE WAS A QUESTION ON WHETHER THERE WAS A SEARCH QUERY THAT WAS INQUIRED.  IT DOES SEEM THAT AT LEAST THE FACTUAL RECORD DOES APPEAR TO SHOW THAT META WAS INFORMED THROUGH THE PIXEL THAT SHE HAD VISITED THIS PARTICULAR WEBSITE, SHE HAD SOUGHT INFORMATION --

MS. GOLDMAN:  NOT THAT SHE SOUGHT INFORMATION.

THE COURT:  THAT SHE VISITED A WEBSITE.

MS. GOLDMAN:  THAT SHE VISITED A WEBSITE.  THAT'S ALL YOU HAVE.

THE COURT:  WHICH USUALLY IF YOU ARE GOING AROUND A WEBSITE, I SUPPOSE SHE COULD HAVE ACTUALLY CLICKED ON THE LINK TO THAT WEBSITE, BUT THE MORE LOGICAL INFERENCE WAS THAT SHE WAS LOOKING FOR THAT INFORMATION WHICH IS WHY SHE WAS VISITING THAT WEBSITE; IS THAT THE MORE LOGICAL INFERENCE?

MS. GOLDMAN:  PERHAPS.  BUT LET'S TALK ABOUT A COUPLE OF REASONS WHY THAT DOES NOT GET THEM TO CLASS CERTIFICATION ON ANY OF THESE CLAIMS.

SO WE'VE GOT ONE PLAINTIFF, MS. BRYANT, NO SEARCH TERMS, NO URL'S, JUST INDICATION THAT IS SHE MAY HAVE VISITED THIS PARTICULAR H&R BLOCK WEBSITE.  WE'VE GOT MS. CALDERON,

ESSENTIALLY THE SAME THING.  MR. HOUSMAN, THERE IS NO DATA AT ALL; AND MS. DOE, THE BEST THEY HAVE IS THAT SHE VISITED A PARTICULAR PAGE, NOT THAT SHE DID ANY SEARCHING.

THE COURT:  RIGHT.

MS. GOLDMAN:  AND I WANT TO COMPARE THAT TO WHAT THE NINTH CIRCUIT SAID IN POPA ABOUT WHAT A PLAINTIFF NEEDS FOR ARTICLE III STANDING.

SO IN POPA, THE ISSUE WAS SESSION REPLAY TECHNOLOGY WHICH RECORDS EVERYTHING THAT YOU DO ON A WEBSITE AND PLAYS IT BACK ESSENTIALLY IN THE FORM OF A VIDEO.  SO LITERALLY EVERY MOUSE CLICK, EVERYTHING THAT YOU DO ON THAT WEBSITE, EVERY URL, EVERY QUERY, EVERYTHING, MICROSOFT'S TECHNOLOGY IN THAT CASE, CLARITY, COLLECTED EVERY SINGLE ACTION THAT EVERYBODY MADE ON A WEBSITE AND DELIVERED THAT IN VIDEO FORM BACK TO THE WEBSITE ALLEGEDLY WITHOUT CONSENT.  AND THE NINTH CIRCUIT SAID THAT DOESN'T GIVE RISE TO STANDING BECAUSE IT'S NOT EMBARRASSING, INVASIVE OR OTHERWISE PRIVATE.

SO THAT'S WHAT YOU NEED TO SHOW IN THE NINTH CIRCUIT TO HAVE ARTICLE III STANDING.  SO NONE OF THESE PLAINTIFFS HAS ARTICLE III STANDING.  AND AS A RESULT, THE COURT HAS TO DENY CERTIFICATION AND DISMISS THE CASE.

THE COURT:  WELL --

MS. GOLDMAN:  THERE IS NOTHING HERE --

THE COURT:  IT WAS DEALING WITH A PARTICULAR CIRCUMSTANCE THERE, IT DISTINGUISHED THE PRIOR FACEBOOK CASE

FROM THE NINTH CIRCUIT WHICH TALKED ABOUT FINDING ARTICLE III STANDING ON THE BASIS OF THE SORT OF OVERALL COLLECTION OF INFORMATION, THE CREATION OF THIS CRADLE TO GRAVE INFORMATION ABOUT INDIVIDUALS.

I MEAN, SO THE QUESTION IS PERHAPS THAT MIGHT BE ENOUGH FOR THE PEN REGISTER CLAIMS, FOR EXAMPLE, WHICH SEEM TO INVOLVE A BROADER RANGE OF INFORMATION, ARGUABLY, THAN THAT'S AT ISSUE HERE.

SO WHY -- SO THAT'S ONE QUESTION.  THE OTHER QUESTION IS IF I DISAGREE WITH YOU THAT THERE IS AT LEAST A POTENTIAL SENSITIVITY TO THE REVELATION THAT JANE DOE VISITED THAT PARTICULAR WEBSITE, WHY ISN'T THAT ENOUGH EVEN UNDER THE POPA ANALYSIS TO FIND THAT THAT PLAINTIFF HAS ARTICLE III STANDING AND SO WE SORT OF GET PAST THE INITIAL BARRIER OF THERE BEING AT LEAST A PROPOSED CLASS REPRESENTATIVE WHO HAS ARTICLE III STANDING AND THEN WE MOVE ON TO THE OTHER ISSUES?

I MEAN, THE SEPARATE QUESTION ON WHETHER UNDER NINTH CIRCUIT LAW I CAN CERTIFY A CLASS THAT INCLUDES UNINJURED CLASS MEMBERS, AS IT STANDS, THE SUPREME COURT DIDN'T OVERTURN THAT LAW.  THERE IS A SEPARATE QUESTION ABOUT WHETHER THERE IS MANAGEABLE MEANS AT THE END OF THE DAY OF DETERMINING WHO IS INJURED AND WHO IS NOT INJURED.  AND I CAN'T GRANT DAMAGES RELIEF TO ANYONE WHO IS NOT INJURED, THAT'S ALSO CLEAR.

SO WHY ISN'T THAT PLAINTIFF ENOUGH TO GET OVER THE ARTICLE III ARGUMENT THAT YOU'VE RAISED AND MOVE US ON TO THE REST OF

THE ISSUES?

MS. GOLDMAN: OKAY. SO LET ME ADDRESS THAT BRIEFLY AND THEN YOU WILL TURN TO THE COURT'S OTHER QUESTIONS, BUT IF I MESS UP, YOU WILL TELL ME.

THE COURT: IT'S FINE, I SAY A LOT VERY QUICKLY, MY POOR COURT REPORTER HAS TO SUFFER THROUGH IT.

MS. GOLDMAN: OKAY. SO LET'S TALK ABOUT FACEBOOK INTERNET TRACKING, BECAUSE I ACTUALLY THINK THAT THE ANALYSIS THERE TIES INTO SOME OF THE THINGS THAT THIS COURT HAS SAID IN YOUR POST-POPA STANDING DECISIONS, OKAY.

SO WHAT HAPPENED IN FACEBOOK INTERNET TRACKING IS THAT FACEBOOK -- AND WHAT WAS ALLEGED BECAUSE THAT CASE WAS AT THE MOTION TO DISMISS STAGE, AND AS THE COURT HAS OBSERVED, WE ARE AT THE CLASS CERT STAGE. WHAT WAS ALLEGED THERE WAS THAT META HAD TOLD PEOPLE THAT IT WAS NOT RECEIVING INFORMATION ABOUT THEIR BROWSING WHILE THEY WERE LOGGED OUT OF FACEBOOK, IT HAD INDICATED THAT IN ITS COMMUNICATIONS TO USERS. DUE TO A TECHNICAL GLITCH OVER AN 11-MONTH PERIOD, META WAS RECEIVING THAT INFORMATION THAT IT SAID IT WASN'T GOING TO GET.

WHAT THE NINTH CIRCUIT SAID IN POPA ABOUT FACEBOOK INTERNET TRACKING WAS MAYBE IT'S OVERRULED BY TRANSUNION MAYBE IT'S NOT, BUT TO THE EXTENT IT SURVIVES, IT SURVIVES ONLY BECAUSE IT WAS SENSITIVE, BECAUSE PEOPLE THOUGHT THEY HAD A REASONABLE BELIEF THAT THEY WERE NOT BEING WHAT THE PLAINTIFFS THERE CALLED "TRACKED" WHEN THEY WERE LOGGED OUT, BUT IN FACT

THEY WERE.  SO WHAT THE NINTH CIRCUIT SAID IN POPA IS MAYBE FACEBOOK INTERNET TRACKING SURVIVES TO THAT EXTENT.  WE DON'T HAVE THAT HERE.

THE COURT:  I MEAN, UNLESS THEY CONCLUDED IT NECESSARILY SURVIVES UNLESS THE POPA COURT SPECIFICALLY SAID IT IS OVERRULED BY TRANSUNION.

MS. GOLDMAN:  FAIR ENOUGH.

THE COURT:  THE RULES SAY, THEY CAN ONLY SAY IT'S NOT GOOD LAW IF THEY SPECIFICALLY SAY SUPERSEDING SUPREME COURT AUTHORITY RENDERS IT NO LONGER GOOD LAW.

MS. GOLDMAN:  CORRECT, YOUR HONOR.

BUT --

THE COURT:  BUT THEY DIDN'T SAY THAT, SO I THINK IT --

MS. GOLDMAN:  WHAT THEY SAID WAS THAT IT SURVIVED TO THE EXTENT IT WAS ABOUT SENSITIVE DATA.  AND THE FACT THAT MS. DOE VISITED A WEBSITE ABOUT CLAIMING A PARTICULAR DEPENDENT IS NOT, AS A MATTER OF LAW, SENSITIVE.  IT'S NOT EMBARRASSING, IT'S NOT INVASIVE, IT'S NOT PRIVATE.

AND THE REASON WHY WE KNOW THAT IS WE KNOW THAT FROM THE NINTH CIRCUIT'S DECISION IN SMITH WHERE THE NINTH CIRCUIT SAID THE FACT THAT YOU VISITED A HEALTHCARE WEBSITE ISN'T SENSITIVE, IT IS SOMETHING THAT EVERY FACEBOOK USER GIVES CONSENT TO.  AND AGAIN, WE ARE AT THE CLASS CERTIFICATION STAGE, WE HAVE A FULL RECORD.

I KNOW THAT THE COURT AT THE MOTION TO DISMISS STAGE SAID IT WASN'T GOING TO CONSIDER META'S USER POLICIES BECAUSE WE HADN'T PUT IN EVIDENCE OF ALL THE POLICIES OVER TIME, THAT WE HADN'T PUT IN EVIDENCE THAT THE PLAINTIFFS AGREED TO THOSE POLICIES.  WE HAVE NOW DONE THAT.  WE HAVE THE DUFFY DECLARATION WHICH SAYS THAT EVERYBODY WHO SIGNS UP FOR THESE ACCOUNTS AGREES TO META'S POLICIES, WE HAVE ALL OF THE POLICIES IN THE RECORD ATTACHED TO THAT DECLARATION, PLAINTIFFS DON'T DISPUTE THIS.

SO AS A MATTER OF LAW UNDER THE NINTH CIRCUIT'S DECISION IN SMITH, AND UNDER FACEBOOK INTERNET TRACKING WHICH SAID THAT THAT DATA WAS ONLY SENSITIVE BECAUSE META HAD SAID WE ARE NOT TRACKING YOU WHEN YOU ARE LOGGED OUT.  THESE PEOPLE WERE LOGGED OUT, THERE IS NOTHING LIKE THAT HERE.  THIS PLAINTIFF AGREED TO META'S TERMS, SHE WAS ON NOTICE THAT IT WOULD RECEIVE INFORMATION ABOUT THE WEBSITE SHE VISITED, THE TERMS OF THAT EXPLICITLY AT ALL TIMES.

**THE COURT:**  WHAT I'M STRUGGLING WITH IS WE ARE KIND OF MOVING BETWEEN THE ISSUE OF CONSENT AND THE ISSUE OF WHETHER AS A MATTER OF LAW, THE KIND OF VISITING OF THE WEBSITE THAT WAS AT ISSUE IS NOT SENSITIVE, AND THOSE ARE -- I UNDERSTAND YOUR ARGUMENT IS THAT THOSE ARE TWO -- IT'S POSSIBLE, IT JUST CATEGORICALLY CAN NEVER BE SENSITIVE.

THERE IS A SEPARATE ARGUMENT WHICH IS UNDER THE CIRCUMSTANCES OF THIS CASE, BASED ON THE CONSENT, IT'S NOT

SENSITIVE.  AND I GUESS I'M TRYING TO PIECE THOSE TWO PIECES OUT.

THE OTHER THING I WILL SAY AS I READ POPA, THE KEY THING IN POPA, APPLYING TRANSUNION AND SPOKEO IS TO SAY THAT FOR ARTICLE III PURPOSES IT NEEDS TO BE ANALOGOUS TO A COMMON LAW TORT, AN INJURY THAT WAS RECOGNIZED BY A COMMON LAW TORT.  AND IN THAT CASE THE ARGUMENT WAS THAT IT WAS ANALOGOUS TO THESE INFORMATIONAL PRIVACY TORTS, AND THE COURT SAID IT WASN'T.

NOW I'M NOT SURE THAT THAT IS THE CORE HOLDING AND THE WAY IT'S INTERPRETING THE SUPREME COURT'S DECISIONS IN TRANSUNION AND SPOKEO WHICH IS WHAT THE SUPREME COURT SAYS, NOW I'M NOT SURE THAT IS INCLUSIVE OF THE WORLD TO SAY THAT ANY OF THESE CLAIMS COULD ONLY EVER ESTABLISH ARTICLE III STANDING ON THE BASIS OF THAT ANALYSIS, THERE MAY BE -- IT JUST REQUIRES YOU TO GO TO THE QUESTION OF IS THERE A COMMON LAW TORT THAT IS ANALOGOUS THERE?

SO I DON'T THINK THEY TRIED TO SURVEY THE FIELD.  IN THE CONTEXT OF THAT CASE, THE ARGUMENT THAT WAS MADE ABOUT THE ANALOGOUS COMMON LAW TORT WAS UNSUCCESSFUL AND IT WAS REJECTED.

BUT I GUESS THERE IS A SEPARATE QUESTION WHICH YOU ARE PROBABLY AWARE I HAVE BEEN STRUGGLING THROUGH IN OTHER CASES TO THINK ABOUT, THERE MAY BE OTHER COMMON LAW ANALOGUE THAT DO PROVIDE A BASIS FOR ARTICLE III STANDING.

MS. GOLDMAN:  I LOVE THESE COMMON LAW LAWS, THIS IS FUN.

OKAY.  SO THERE ARE A COUPLE OF PROBLEMS HERE.  ONE, I WILL START WITH THE OBVIOUS, PLAINTIFFS HERE HAVEN'T EVEN TRIED TO HELP THE COURT BY IDENTIFYING THE COMMON LAW ANALOGUE, AND THAT'S BECAUSE THEY CANNOT DO SO.

SO WHAT TRANSUNION SAID IS YOU LOOK AT SPECIFIC HARM TO THIS PLAINTIFF.  AND THIS WAS EXPLICITLY TRAN-SUBSTANTIVE, AND THAT KIND OF SOUNDS I THINK MORE WOO WOO THAN IT IS, WHAT IT'S SAYING IS WE DON'T LOOK AT WHAT THE CLAIM IS, IT DOESN'T MATTER WHETHER IT'S PENNSYLVANIA LAW OR CALIFORNIA LAW OR FEDERAL LAW, YOU LOOK AT WHAT HAPPENED TO THE PERSON.  AND IS THAT A THING, THE INJURY, IS IT ANALOGOUS TO A COMMON LAW TORT?

AND THERE'S FOUR COMMON LAW PRIVACY TORTS, AS I KNOW THE COURT IS AWARE, RIGHT.  THERE'S FALSE LIGHT PUBLICITY, AND THAT'S NOT APPLICABLE HERE.  THERE'S APPROPRIATION OF A NAME OR LIKENESS.  NOT APPLICABLE HERE.  THERE IS PUBLIC DISCLOSURE OF PRIVATE FACTS WHICH AT COMMON LAW UNDER THE RESTATEMENT WHICH REQUIRES BROAD PUBLICATION AND SENSITIVE INFORMATION.  SO THE FACT THAT SOMEBODY VISITED A WEBSITE DOESN'T QUALIFY.

AND THERE'S INTRUSION ON SECLUSION WHICH ALSO REQUIRES SENSITIVE INFORMATION, AND THE COURT EMPHASIZED A SERIOUSLY HIGHLY OFFENSIVE INTRUSION, LIKE LOOKING INTO SOMEBODY'S HOSPITAL ROOM OR STEALING LETTERS FROM THEIR BEDROOM.

AND THE COURT IN BOTH -- LET'S ALSO TALK ABOUT THE --

**THE COURT:**  I MEAN, I GUESS AGAIN, IT'S ALSO THE CASE THAT THAT'S OFTEN -- IT'S A HIGHLY FACTUALLY SPECIFIC ISSUE AND

THAT MIGHT HELP FOR YOUR ISSUE OF PREDOMINANCE.

**MS. GOLDMAN:**  RIGHT.

**THE COURT:**  BUT FOR THE QUESTION OF STANDING, YOU KNOW, I GUESS YOU THINK INTRUSION UPON SECLUSION.  IF I WERE TO EAVESDROP ON SOMEONE'S CONVERSATIONS WITH THEIR ACCOUNTANT ABOUT WHETHER THEY COULD CLAIM A PARTICULAR PERSON AS A DEPENDENT, I'M NOT CERTAIN THAT THAT WOULDN'T BE SUFFICIENT TO, UNDER THE COMMON LAW, TO SATISFY THE ELEMENTS OF INTRUSION UPON SECLUSION; AND ARGUABLY, THEY WOULD SAY THAT'S ANALOGOUS TO WHAT HAPPENED HERE WITH RESPECT TO THIS PARTICULAR PERSON.

SO THAT'S --

**MS. GOLDMAN:**  IN POPA THE COURT SAID THAT GETTING THIS SESSION REPLAY, WHICH WAS A LITERAL VIDEO OF EVERYTHING THAT SOMEBODY DID ON A WEBSITE, THE COURT SAID THE REAL WORLD ANALOGUE TO THAT WOULD BE A STORE CLERK WHO LOOKS DOWN VARIOUS ISLES OF A STORE TO SEE WHETHER THERE ARE ANY PRODUCTS OR WHAT PRODUCTS PEOPLE WERE INTERESTED IN.

SO WHAT I WOULD RESPOND TO THAT IS THAT THE REAL WORLD ANALOGUE OF WHAT HAPPENED TO JANE DOE -- REMEMBER, THE FACT THAT HE HAS TO QUESTION DIDN'T GET TO META, THE ONLY THING THAT GOT TO META IS SHE VISITED A PAGE.

WHAT THIS IS LIKE IS IF I WALK UP BEHIND SOMEBODY AT THE AIRPORT AND I SEE ON THEIR IPAD THAT THEY ARE ON A PARTICULAR PAGE OF THE H&R BLOCK SITE.  AND THAT FACT IS NOT INVASIVE OR EMBARRASSING.

**THE COURT:** OR THAT YOU GOT A LIST OF ALL OF THE VIDEOS THAT THEY WERE INTERESTED IN LOOKING AT AT A VIDEO STORE.

**MS. GOLDMAN:** THAT'S NOT THE WORLD WE ARE IN THOUGH BECAUSE CONGRESS SAID THAT WHAT VIDEOS YOU ARE INTERESTED IN IN A STORE, AS A MATTER OF LAW, UNDER CERTAIN CIRCUMSTANCES CAN BE SENSITIVE. THERE IS JUST NOTHING SENSITIVE ABOUT SOMEBODY ANALYZING THEIR CIVIC DUTY TO PAY THEIR TAXES, IT'S NOT EMBARRASSING, INVASIVE OR OTHERWISE PRIVATE.

BUT I CAN ALSO MOVE ON TO SOME OF THE OTHER -- I MEAN, I'M ARGUING WITH THE COURT WHICH I DON'T WANT TO DO. I CAN MOVE ON TO SOME OF THE OTHER PROBLEMS THEY HAVE THAT ARE POINTED OUT BY THEIR RELIANCE ON HIVE DATA HERE.

AND I WANTED TO START WITH OLEAN, BECAUSE HIVE DATA IS NOT CLASSIFIED PROOF, AS THE COURT IS CLEARLY AWARE. THEY HAVE THE BURDEN TO COME IN HERE AND SAY COMMON ISSUES PREDOMINATE BECAUSE WE CAN GO INTO THE COURTROOM AND PROVE THINGS IN ONE FELL SWOOP USING CLASS-WIDE PROOF. AS OTHER COURT ALREADY ESTABLISHED, HIVE DATA DOESN'T DO THAT, YOU NEED TONS OF DISCOVERY.

SO LET'S JUST TALK ABOUT STANDING. THEIR ARGUMENT IS UNDER OLEAN YOU CAN CERTIFY A CLASS IF SOME CLASS MEMBERS DON'T HAVE STANDING. BUT EVERYBODY AGREES ON A COUPLE OF THINGS. BOTH, THAT'S TRUE, IF THERE'S A FEW PEOPLE. HERE THEIR CLASS DEFINITION IS DEFINED BY REFERENCE TO PEOPLE WHO DON'T HAVE

STANDING, THEY HAVE ABANDONED ANY CLAIM BASED ON SENSITIVE TAX INFORMATION AND THEY ARE JUST SAYING ANYBODY WHOSE PEN REGISTER DATA AND URL'S APPEAR IN HIVE IS THEIR CLASS DEFINITION.

SO THERE'S TONS OF UNINJURED PEOPLE THERE, LIKE AS THE COURT SEEMS TO BELIEVE SEVERAL OF THEIR HAND-PICKED CLASS REPRESENTATIVES.

SO THAT CREATES A PROBLEM UNDER OLEAN, THE COURTS CAN'T CERTIFY A CLASS WHEN A GREAT MANY CLASS MEMBERS WON'T HAVE STANDING, AND HERE WE WOULD SUBMIT ALMOST EVERYBODY DOESN'T HAVE STANDING.

**THE COURT:** I THINK IT'S UNCLEAR TO ME WHETHER THE RULE IS THE COURT CAN'T CERTIFY THE CLASS IF THERE ARE A NUMBER OR IF THE RULE IS THE COURT CAN'T CERTIFY THE CLASS UNLESS THERE IS A REASONABLE MEANS OF DETERMINING WHICH OF THE CLASS MEMBERS WERE INJURED AND WHICH WERE NOT.

THOSE ARE ALTERNATELY DIFFERENT RULES, AND I UNDERSTAND RECENTLY MY COLLEAGUES HAVE TAKEN THE APPROACH THAT YOU MAY BE ABLE TO CERTIFY BASED UPON A REPRESENTATION OF CERTIFICATION, THAT IT IS POSSIBLE TO DO THAT AND TO KEEP OPEN THE POSSIBILITY OF DECERTIFICATION DOWN THE ROAD IF IN FACT THE PLAINTIFF IS ULTIMATELY UNABLE TO PROVIDE A MEANS WHEN YOU GET FARTHER DOWN THE ROAD IF IT TURNS OUT THEIR REPRESENTATIONS ABOUT THEIR ABILITY TO DO THAT IN A REASONABLE FASHION OR NOT DIDN'T WORK OUT, I WON'T SAY WEREN'T TRUE, BUT WERE NOT ULTIMATELY SUCCESSFUL AND THE COURT CONCLUDED THAT IT IS ACTUALLY NOT ABLE

TO DO THAT IN A REASONABLE FASHION AND WILL DECERTIFY THE CLASS AT THAT POINT.

I MEAN, THAT'S ONE APPROACH THAT SOME COURTS HAVE TAKEN AS TO THIS QUESTION OF THE PRESENCE OF UNINJURED CLASS MEMBERS IN A CERTIFIED CLASS.

MS. GOLDMAN:  WE WOULD SUBMIT ACTUALLY THAT THAT'S NOT CORRECT.  WELL, THERE IS A FEW PROBLEMS WITH THAT.

OLEAN SAYS YOU CAN'T CERTIFY THE CLASS IF THERE ARE A GREAT MANY UNINJURED CLASS MEMBERS.  AND HERE, WE JUST KNOW FROM THE DISCOVERY THAT WE DID ON THE NINE NAMED PLAINTIFFS, EIGHT OF WHOM DON'T HAVE STANDING, THAT THIS IS GOING TO BE, WE WOULD SAY NINE OF WHOM DON'T HAVE STANDING, THE COURT MAY CONCLUDE THAT ONE OF THEM HAS STANDING, FINE, BUT EIGHT OUT OF NINE DON'T.  SO WE WOULD SUBMIT AS A MATTER OF LAW UNDER OLEAN, THE COURT CAN'T CERTIFY THE CLASS.

WE WOULD ALSO SAY --

THE COURT:  AND I GUESS -- SORRY TO I KEEP INTERRUPTING YOU.

MS. GOLDMAN:  NO, NO, YOU ARE THE COURT.

THE COURT:  I GUESS I'M STILL NOT CERTAIN ABOUT WE ARE NOW TALKING ABOUT THE TWO CLASSES, NATIONWIDE PEN REGISTER AND EAVESDROPPING CLASS AND THEN THE CALIFORNIA 631 WIRE TAP CLASS, AND SO WHY ISN'T IT THE CASE THAT EVEN SEPARATE AND APART, I GUESS YOUR VIEW IS THAT THE CREATION OF A CRADLE TO GRAVE PROFILE OF INDIVIDUALS DOESN'T GIVE RISE TO STANDING

UNLESS THERE IS THIS SORT OF SENSITIVE INFORMATION, THAT'S YOUR READING ON POPA, SO THAT I COULDN'T CONCLUDE THAT AS TO THE PEN REGISTER CLAIM THAT THE PLAINTIFFS MAY HAVE STANDING TO PURSUE THAT CLAIM BECAUSE THERE WAS THIS SORT OF CREATION, GATHERING OF AN INFORMATION THAT'S USED TO CREATE A CRADLE TO GRAVE BIOGRAPHY OF THOSE INDIVIDUALS AT META SERVERS, AND THAT THAT, ITSELF, WAS A DIFFERENT KIND OF INJURY FROM THE SORT OF SENSITIVITY INJURY THAT WAS AT ISSUE IN POPA.

MS. GOLDMAN: YOUR HONOR, THIS CRADLE TO GRAVE IDEA IS NOT IN THIS CASE. THIS CASE IS ABOUT SPECIFIC PLAINTIFFS ALLEGING THAT META RECEIVED SPECIFIC INFORMATION ABOUT THEM FROM SPECIFIC WEBSITES. THERE IS NO CRADLE TO GRAVE. THIS IS EXACTLY LIKE POPA. POPA, THE ISSUE WAS SESSION REPLAY TECHNOLOGY ON A WEBSITE. THIS IS ABOUT META RECEIVING INFORMATION ABOUT THESE PEOPLE FROM THESE TWO WEBSITES, THAT'S ALL THAT IS ALLEGED IN THE COMPLAINT, THERE IS NO CRADLE TO GRAVE DOSSIER IN THIS CASE, THIS CASE IS JUST ABOUT THESE SPECIFIC PLAINTIFFS. AND THE PHRASE THAT APPEARS SIX OR SEVEN TIMES IN POPA IS "SPECIFIC PLAINTIFF."

WE HAVE EVIDENCE NOW, THIS IS NOT A MOTION TO DISMISS, AND WE WOULD SUBMIT, RESPECTFULLY, THAT THE COURT HAS TO LOOK AT THEIR EVIDENCE ABOUT THEIR CLIENTS. AND THEY CAME IN WITH A COMPLAINT THAT SAID THAT META WAS RECEIVING THEIR SENSITIVE TAX INFORMATION, THEY HAVEN'T PROVED THAT.

WHEN MY OPPONENT WAS TALKING ABOUT ALL OF THIS

INFORMATION, I THINK AT PAGE 4 OR 5 OF THE COMPLAINT WHERE HE WAS POINTING THE COURT TO THAT SEALED INFORMATION.  FIRST OF ALL, THAT WASN'T H&R BLOCK, IT WAS TAXACT.

SECOND OF ALL, IT WASN'T ANY OF THE PLAINTIFFS HERE.  SO THIS IS NOT ABOUT SOME SORT OF CRADLE TO GRAVE BIOGRAPHY OF THESE PEOPLE, THAT DOESN'T EVEN APPEAR IN THE COMPLAINT AND IT CERTAINLY DOESN'T APPEAR IN THE RECORD.  THE CLAIM HERE IS REALLY SIMPLE, THE CLAIM HERE IS THAT THESE PARTICULAR PIECES OF EVENT DATA THAT ARE IN HIVE ABOUT THESE THREE OF THE FOUR NAMED PLAINTIFFS, ONE OF THE FOUR NAMED PLAINTIFFS, MR. HOUSMAN, WE DON'T EVEN HAVE HIVE DATA FOR, SO HE'S NOT A MEMBER OF THE CLASS.  THE OTHER THREE, THE CLAIM IS JUST THESE PARTICULAR PIECES OF EVENT DATA THAT ARE IN HIVE, VIOLATED THEIR RIGHTS UNDER THESE VARIOUS PROVISIONS OF CIPA.

AND FOR THIS PURPOSE, THE COURT HAS TO LOOK AT THE INJURY, NOT THE CLAIM, NOT -- BECAUSE BOTH TRANSUNION AND POPA SAID CONGRESS, AND CERTAINLY THE CALIFORNIA LEGISLATURE, CAN'T ENACT AN ARTICLE III INJURY INTO EXISTENCE.

SO I CAN'T ENACT AN INJURY BY SAYING THAT THE TRANSMISSION OF ADDRESSING INFORMATION IN THE CONTEXT OF A PEN REGISTER CLAIM CREATES AN INJURY, IT HAS TO BE ANALOGOUS TO A COMMON LAW CLAIM.

AND THEN IN TERMS OF THE PRACTICAL PROBLEMS --

**THE COURT:**  I DID WANT TO GET BACK.  I MEAN, I GUESS THE QUESTION -- YOU WERE TALKING ABOUT THE ABILITY TO USE

CLASS-WIDE DATA TO DETERMINE THE MERITS AND DAMAGES, AND IT'S NOT UNUSUAL SAY IN AN EMPLOYMENT CASE THAT TECHNICALLY IT'S INDIVIDUALIZED DATA BECAUSE YOU'RE GOING TO HAVE ONE DATABASE THAT HAS ALL OF THE PAY RECORDS FOR EACH INDIVIDUAL PERSON BUT IT IS POSSIBLE TO USE THOSE INDIVIDUALIZED RECORDS IN ONE FELL SWOOP TO SORT OF GENERATE A DAMAGES MODEL AND TO COME UP WITH WHO WASN'T PAID OVER TIME, WHO DIDN'T GET THE REST BREAKS, ALL OF THAT KIND OF STUFF.  AND IN SOME WAYS I THINK THAT'S SORT OF WHAT THEY ARE ARGUING THAT THEIR EXPERT CAN DO WITH THIS DATA.

SO WHY IS THAT NOT AN APPROPRIATE WAY TO THINK ABOUT SORT OF THE WAY THAT THE -- IF WE WERE TO GET TO THE POINT, LET'S SAY ON THE 631 CLAIM, WHY IS THAT NOT AN APPROPRIATE WAY TO THINK ABOUT HOW THE ABILITY TO RESOLVE THIS ON A CLASS-WIDE BASIS, YES THERE'S -- THE DATA IS INDIVIDUALIZED, BUT IF IT CAN BE DONE, ANALYZED REASONABLY TO GENERATE RESULTS, SO YEAH, WHY IS THAT THE WRONG WAY TO THINK ABOUT THE EVIDENCE HERE?

MS. GOLDMAN:  BECAUSE THAT'S NOT HOW HIVE WORKS.

I MEAN, THE PLAINTIFFS REALLY WANT TO SAY THAT HIVE IS THIS PANOPLY AND THAT THEY CAN COME IN AND OH, META CAN PUSH A BUTTON AND WE CAN FIGURE -- IT DOESN'T WORK LIKE THAT.  IT REQUIRES LINE-BY-LINE ANALYSIS OF TERABYTES AND TERABYTES OF DATA.  IT TOOK YEARS TO DO DISCOVERY ON THESE NINE PEOPLE, THREE OF THEM DROPPED OUT OVER THE COURSE OF THAT, ANOTHER ONE THE PLAINTIFFS DROPPED BECAUSE I THINK THEY DIDN'T LIKE HIS DEPOSITION TESTIMONY.  I MEAN, LOOK AT HOW LONG IT'S TAKEN JUST

TO GET DOWN TO THE DATA FOR THESE NINE PEOPLE.  DOING THEM ON A CLASS-WIDE BASIS IS, PER SE, NOT SOMETHING THAT WOULD BE MANAGEABLE.

IN ADDITION, I WOULD REFER THE COURT TO THE VERY RECENT NINTH CIRCUIT DECISION IN HEALY V. MILLIMAN.  THE PLAINTIFFS ARE GOING TO HAVE THE BURDEN AT THE SUMMARY JUDGEMENT STAGE TO SHOW -- TO SURVIVE SUMMARY JUDGEMENT BY SHOWING THAT EACH PERSON IN THE CLASS HAS STANDING.

THEY ARE NOT GOING TO BE ABLE TO DO THAT.  THEY ARE NOT GOING TO BE ABLE TO COME IN AND SAY FOR EACH OF THESE PEOPLE THERE IS A GENUINE ISSUE OF MATERIAL FACT ABOUT WHETHER META RECEIVED SENSITIVE DATA ABOUT THEM.

AND ALL OF THESE CLAIMS, WE SUBMIT FOR PURPOSES OF STANDING, HAVE TO REST ON SENSITIVE DATA.  IT CANNOT BE THE CASE THAT THE COURT CAN CERTIFY A CLASS OF EVERYBODY IN THE UNITED STATES WHOSE URLS AND PEN REGISTER DATA WAS RECEIVED BY META BECAUSE THE ENTIRE ECONOMY WORKS ON THE TRANSFER OF THAT TYPE OF INFORMATION.  IT JUST CANNOT BE THE CASE THAT THE COURT IS GOING TO CERTIFY A CLASS SAYING THAT ANY TRANSFER ADDRESSING DATA BETWEEN H&R BLOCK AND META GIVES RISE TO A CLAIM.

**THE COURT:**  WELL I MEAN -- THERE ARE TWO ISSUES THERE.  IT COULD BE THE CLASS IS CERTIFIABLE AND IT COULD BE THAT YOU WIN.  SO WE ARE NOT ON THE MERITS NOW, THERE IS A DIFFERENT ISSUE -- I MEAN IN SOME WAYS MAYBE IT'S IN YOUR BEST INTEREST TO CERTIFY THIS CLASS AND THEN WIN ON SUMMARY

JUDGEMENT, THAT THIS INFORMATION DOESN'T CONSTITUTE ADDRESSING INFORMATION WHICH I THINK IS AN ISSUE THAT HAS NEVER REALLY BEEN RAISED SO FAR IN THIS CASE BECAUSE IT DIDN'T COME UP, I DON'T THINK WE HAVE DEALT WITH THIS QUESTION OF WHETHER THE PARTICULAR TYPES OF INFORMATION THAT THEY ARE ALLEGING ARE ACTUALLY THE KINDS OF INFORMATION THAT THE PEN REGISTER OR TRACE AND TRAP STATUTES TARGET.  THAT'S A SEPARATE ISSUE.

MS. GOLDMAN:  I WOULD NOTE FOR THE COURT, ACTUALLY THIS IS AN OFFHAND THING, BUT THE CALIFORNIA COURT OF APPEAL JUST TOOK A WRIT PETITION ON THAT ISSUE IN THE VARIETY MEDIA CASE, SO THAT ISSUE IS LIKELY GOING TO BE -- OR CALLED FOR A RESPONSE TO -- I THINK IT'S PRETTY CLEAR FROM THE CALIFORNIA STATE COURTS THAT THERE IS NO LIABILITY FOR THIS TYPE OF ANODYNE PASSING OF DATA BECAUSE IF THERE WERE, THE WORLD WOULD SHUT DOWN OR AT LEAST THE TIME THE WORLD WOULD SHUT DOWN.

BUT JUST GOING BACK TO THE QUESTIONS BEFORE THE COURT, IT'S THE PLAINTIFF'S BURDEN TO COME IN HERE AND PROVE TO COURT BY THE PREPONDERANCE OF THE EVIDENCE THAT THEY CAN SATISFY THE ELEMENTS OF RULE 23, THAT THEY CAN GIVE THE COURT A MANAGEABLE CLASS TO DEAL WITH, THAT THEY CAN COME UP WITH A TRIAL PLAN TO RESOLVE COMMON ISSUES THROUGH COMMON PROOF, THAT THE REMAINING INDIVIDUALIZED ISSUES CAN BE RESOLVED IN A MANAGEABLE WAY, AND THEY HAVE DONE NONE OF THESE THINGS.  THEY CAME IN AND THEY SAID ALL OF THESE PEOPLE HAD THEIR SENSITIVE DATA RECEIVED BY META.  THEY NOW CAN SEE THAT NONE OF THESE PEOPLE HAD THEIR

SENSITIVE DATA RECEIVED BY META.

AS THE COURT SAID IN ANOTHER CONTEXT, IT JUST DIDN'T WORK OUT THAT WAY, RIGHT, THE PROOF DIDN'T SHOW WHAT THEY CAME IN HERE AND ALLEGED.

I WANT TO MAKE A DIFFERENT POINT -- ACTUALLY TWO THINGS, IF THE COURT WILL INDULGE ME.

ONE IS AS A MATTER OF LAW, THE OTHER THING THE COURT CANNOT DO, WE CITED A COUPLE OF CASES, THERE'S MANY MORE BUT THE TURNER CASE AND THE GUZMAN CASE THAT ARE CITED IN OUR BRIEFS, THE COURT CAN'T CERTIFY A CLASS THAT IS VASTLY BROADER THAN THE CLASSES IN THEIR COMPLAINT.  ALL OF THE CLASSES IN THEIR COMPLAINT WERE FILED ON BEHALF OF PEOPLE WHOSE SENSITIVE TAX FILING INFORMATION WAS RECEIVED BY META.  THEY NEVER SOUGHT TO AMEND TO CHANGE THAT CLASS DEFINITION, OKAY.  SO THAT'S THE CLASS DEFINITION.

AS A MATTER OF LAW THEY CAN'T -- OF COURSE A COURT CAN ALWAYS NARROW A CLASS DEFINITION AT CLASS CERTIFICATION, BUT IT CAN'T BROADEN ONE, RIGHT.

**THE COURT:**  WHAT ARE THE -- I MEAN, THERE IS A QUESTION ABOUT WHETHER THERE WAS SUFFICIENT ALLEGATIONS IN THE COMPLAINT TO TRIGGER THIS, AND I WILL TAKE A LOOK AT THE COMPLAINT.  YOU ARE RIGHT ABOUT THE CLASS DEFINITION, THERE MAY BE OTHER THINGS IN THE COMPLAINT THAT I MIGHT CONCLUDE WOULD HAVE PUT YOU ON NOTICE OF THIS, SO THAT'S AN ISSUE I NEED TO LOOK THROUGH.

WHEN YOU SAY AS A MATTER OF LAW, I MEAN, I THINK THAT BOTH OF THE CASES YOU CITED ARE DISTRICT COURT DECISIONS, RIGHT?

**MS. GOLDMAN:**  YES.

**THE COURT:**  SO WHAT IS THE NINTH CIRCUIT OR SUPREME COURT PRECEDENT THAT --

**MS. GOLDMAN:**  THERE IS NONE, YOUR HONOR.

BUT I WANT TO EXPLAIN WHY THIS ISN'T JUST A TECHNICALITY. THE CLASS DEFINITION IS THE CLASS DEFINITION, WHATEVER ELSE THE PLAINTIFFS MAY SAY ABOUT VARIOUS ALLEGATIONS ON THE COMPLAINT IT'S NOT A QUESTION OF NOTICED PLEADING, THE CLASS DEFINITION DEFINES THE GROUP OF PEOPLE ON BEHALF OF WHOM THESE PLAINTIFFS FILED SUIT WHEN THEY FILED THEIR COMPLAINT, OKAY.

SO THE PEOPLE ON BEHALF OF WHOM THEY FILED CLAIMS, TIMELY CLAIMS, IS THE UNIVERSE OF PEOPLE ABOUT WHOM META RECEIVED SENSITIVE TAX INFORMATION.

SO LET'S JUST TAKE AN EXAMPLE.  LET'S SAY THERE IS A HUNDRED PEOPLE OUT THERE FOR WHOM META RECEIVES SENSITIVE TAX INFORMATION, OKAY, THAT THE ORIGINAL COMPLAINT -- AND I DON'T EVEN KNOW THAT THERE ARE, BUT LET'S SAY THAT THERE ARE -- LET'S SAY THERE IS A HUNDRED THOUSAND MORE -- 10,000 MORE AS TO WHOM META RECEIVED THIS PEN REGISTER AND URL DATA.  THOSE PEOPLE DIDN'T FILE TIMELY CLAIMS, RIGHT, BECAUSE UNDER THE NINTH CIRCUIT'S DECISION IN THE <u>SYNTAX</u> CASE, <u>AMERICAN PIPE</u> TOLLING ONLY APPLIES TO PEOPLE WITHIN THE ORIGINAL CLASS DEFINITION.

SO THEY CAN'T COME IN HERE AND SAY, WELL NOW WE ARE SUING ON BEHALF OF THOSE OTHER 10,000 OR 100,000 PEOPLE, THOSE PEOPLE DIDN'T FILE TIMELY CLAIMS FOR THINGS THAT HAPPENED IN 2022 AND EARLIER, THOSE PEOPLE DON'T -- NO LAWSUIT WAS EVER FILED ON BEHALF OF THOSE PEOPLE.

THE COURT:  RIGHT.  BUT I GUESS RIGHT NOW WE ARE DEALING WITH A '22 TO '23 CLASS, RIGHT?

MS. GOLDMAN:  RIGHT.  AND CIPA HAS A ONE YEAR STATUTE OF LIMITATIONS.

THE COURT:  SO IS IT YOUR VIEW THAT -- I'M TRYING TO FIGURE OUT WHEN YOUR VIEW IS THAT INDIVIDUALS IN -- IS YOUR VIEW THAT INDIVIDUALS IN THAT GROUP NEVER FILED TIMELY CLAIMS.

MS. GOLDMAN:  YES.  THE PEOPLE WHOSE SENSITIVE TAX DATA WAS NOT SENT TO META, RIGHT, THE PEOPLE WHO JUST HAD THEIR URL'S AND PEN REGISTER DATA, WHAT THE PLAINTIFFS ARE CALLING THAT, THAT STUFF WENT TO META, THOSE PEOPLE DON'T HAVE TIMELY CLAIMS UNDER THE NINTH CIRCUIT'S DECISION IN SYNTAX AND THE U.S. SUPREME COURT'S DECISION IN AMERICAN PIPE AND THE SUBSEQUENT CASES ON CLASS TOLLING.

THE COURT:  SO I GUESS WHAT I'M TRYING TO THINK ABOUT HOW THAT PLAYS INTO THIS CLASS, I MEAN ARE THEY NOT IN THE CLASS AS A RESULT OF THAT OR IS IT YOUR VIEW JUST THAT IF I WERE TO DENY CLASS CERTIFICATION AT THIS POINT AND THEY WERE TO TRY AND COME FORTH AND ASSERT INDIVIDUAL CLAIMS, THAT THEY WOULDN'T BE ABLE TO DO SO?  HOW DOES THE AMERICAN PIPE TOLLING

ANALYSIS AFFECT WHAT I DO ON THE CLASS CERT, IS THE QUESTION I'M GETTING AT.

MS. GOLDMAN:  WELL I'M BRINGING IT UP AS ILLUSTRATIVE OF WHY THE COURT CAN'T CERTIFY A BROADER CLASS THAN THE CLASS IN THE COMPLAINT, BECAUSE YOU CAN'T SWEEP IN POTENTIALLY MILLIONS OF PEOPLE WHO DON'T HAVE TIMELY CLAIMS WHO DIDN'T FILE SUITS IN 2022 OR 2023 FOR THE STUFF THAT HAPPENED AT THAT TIME.

WHETHER THOSE PEOPLE COULD BRING INDIVIDUAL CLAIMS UNDER THE RECENT -- I'M BLANKING ON THE RECENT SUPREME COURT DECISION THAT CONSTRUES AMERICAN PIPE, THAT'S A SEPARATE QUESTION, BUT WE KNOW THAT UNDER SYNTAX, I DON'T THINK THEY CAN BECAUSE UNDER THE SYNTAX DECISION, AND I CAN GIVE THE COURT A CITE FOR THAT, IT'S 95 F.3D 922 AT 936, ACTUALLY NO, THEY CAN'T BRING INDIVIDUAL SUITS BECAUSE AMERICAN PIPE ONLY TOLLED THE STATUTE OF LIMITATIONS FOR ASSERTED CLASS MEMBERS.

SO THESE WERE NOT ASSERTED CLASS MEMBERS.  IF THEY THOUGHT THAT THEIR SENSITIVE DATA WAS RECEIVED IN THE LAST COUPLE OF YEARS, WHICH I THINK PLAINTIFFS CONCEDE PEOPLE WOULDN'T BE ABLE TO DO BECAUSE OF THE CHANGES THAT HAVE BEEN MADE, MAYBE -- NONE OF THIS IS A QUESTION BEFORE THE COURT ON THIS CLASS CERTIFICATION MOTION.

THE COURT:  OKAY.  I GUESS I'M JUST TRYING TO THINK THROUGH THE RULE THAT'S BEING OFFERED.  IS THE QUESTION, SAY THEY FILE A COMPLAINT WITH A CLASS DEFINITION AND THEN THEY FILE A MOTION FOR CLASS CERTIFICATION WITH A BROADER PROPOSED

CLASS DEFINITION TWO MONTHS LATER, IS IT ONLY -- IS THE RULE YOU ONLY NEED TO EXCLUDE TWO MONTHS OF PEOPLE WHO NOW ARE TIMED OUT BECAUSE THE FILING OF THE MOTION FOR CLASS CERTIFICATION SORT OF SIGNIFIES THE ASSERTION OF THAT GROUP'S CLAIMS ON A CLASS BASIS?

MS. GOLDMAN:  THESE ARE TRICKY QUESTIONS YOUR HONOR BUT I WOULD SUBMIT THAT THEY ARE NOT QUESTIONS THAT ARE BEFORE THE COURT.  THEY HAD RULE 15 A, EVERYBODY KNOWS RULE 15 A, THEY COULD HAVE AMENDED THEIR COMPLAINT.  THEY DIDN'T AMEND THEIR COMPLAINT THEY DIDN'T CHANGE THEIR CLASS DEFINITIONS UNTIL WE FILED OUR OPPOSITION BRIEF.  THIS HAS BEEN A MOVING TARGET THROUGHOUT-HAD.

THE COURT:  WELL THAT CHANGES IT IN ONE WAY IN THEIR OPENING BRIEF AND THEY CHANGED IT ANOTHER WAY TO CLARIFY.

MS. GOLDMAN:  RIGHT.  BUT THEIR MULTIPLE PIVOTS IS NOT GIVING THE COURT WHAT THE COURT NEEDS TO CERTIFY THE CLASS.

I'M BRINGING UP THE TOLLING BECAUSE THE COURT ASKED ME WHAT THE NINTH CIRCUIT AUTHORITY IS FOR WHY THEY CAN'T CERTIFY A BROADER CLASS.  THE COURT CAN'T CERTIFY THIS MASSIVELY BROADER CLASS NOT ONLY BECAUSE IT WOULD VIOLATE THE RULES ENABLING ACT AND DUE PROCESS BECAUSE CLASS CERTIFICATION IS A METHOD FOR AGGREGATING CLAIMS, NOT FOR RELIEVING PLAINTIFFS OF PLEADING THINGS AND THEN PROVING THINGS RIGHT, WE KNOW THAT FROM SHADY GROVE, BUT ALSO BECAUSE OF A PRACTICAL MATTER THEY CAN'T SWEEP IN A WHOLE BUNCH OF PEOPLE WHO NEVER FILED TIMELY

CLAIMS TO BEGIN WITH UNDER THE NINTH CIRCUIT'S DECISION IN THE SYNTAX CASE.

I BELIEVE THOSE PEOPLE WOULD BE UNTIMELY EVEN IF THEY FILED INDIVIDUAL CLAIMS NOW, BUT CERTAINLY THEY CAN'T BRING CLAIMS NOW FOR THINGS THAT HAPPENED IN 2022 WITH A STATUTE OF LIMITATIONS OF ONE YEAR, THEY CANNOT DO THAT.

THE COURT: OKAY.  WAS THERE ONE OTHER POINT YOU WANTED TO MAKE?

MS. GOLDMAN: OH, YES.

I WANTED TO MAKE THE POINT, THIS IS THE LIERBOE CASE FROM THE NINTH CIRCUIT THAT BECAUSE THE NAMED PLAINTIFFS HAVE NO STANDING, THE COURT DOESN'T HAVE JURISDICTION TO ALLOW THEM TO SUBSTITUTE IN OTHER PEOPLE WHO MIGHT HAVE STANDING.  AND LIERBOE V. STATE FARM THE NINTH CIRCUIT SAID YOU CAN'T DO THAT, WHEN THE NAMED PLAINTIFFS DON'T HAVE STANDING, THE ONLY COURSE IS TO DENY CLASS CERTIFICATION AND DISMISS THE CASE.

THE COURT: I DON'T THINK THEY HAVE PROPOSED THAT, HAVE THEY HERE?

MS. GOLDMAN: NO, BUT I'M JUST OFFERING THAT UP.

THE COURT: OKAY.  THANK YOU.

MS. GOLDMAN: THANK YOU, YOUR HONOR.

THE COURT: I WILL GIVE PLAINTIFFS AN OPPORTUNITY TO PROVIDE A LITTLE REBUTTAL.

MR. DECKANT: AS DEFENSE COUNSEL HAS ACKNOWLEDGED, IT'S CLEAR THE COURT IS VERY FAMILIAR WITH THE PAPERS AND I

APPRECIATE THE TARGETED QUESTIONS FOR BOTH SIDES.

THERE'S REALLY JUST TWO POINTS THAT I WANT TO TOUCH UPON. THE FIRST IS THE ISSUE OF TOLLING IN THE CLASS DEFINITION AND THE SECOND IS THE COMMENTS OF THE HIVE DATA IS HOW IT IS NOT, IN THEIR VIEW NOT REASONABLY SUBJECT TO ANALYSIS AND IT'S PURPORTEDLY SO DIFFICULT TO GET THROUGH.

NOW AS TO THE FIRST ISSUE, TOLLING, AND THE BROADNESS OF THE CLASS, I ACTUALLY BELIEVE UNDER AMERICAN PIPE AND ITS PROGENY THAT TOLLING APPLIES IF AN ABSENT CLASS MEMBER REASONABLY BELIEVES BASED ON CLASS DEFINITION THAT THEY ARE PART OF A CLASS.

HERE I JUST FAIL TO SEE THE MISMATCH.  SENSITIVE FINANCIAL INFORMATION, IT'S OUR POSITION URL'S ARE SENSITIVE FINANCIAL INFORMATION.  TO THE EXTENT THAT THE FORM FIELDS OF TAX RETURNS WERE COLLECTED BY THE HIVE DATA, IT'S ALSO OUR POSITION THAT'S SENSITIVE FINANCIAL INFORMATION.

I'M NOT REALLY SEEING THE CONFLICT HERE, TOLLING PLAINLY APPLIES.

**THE COURT:**  THE ARGUMENT WOULD BE THAT THEY HAVE SAID THERE MAY BE SOMEONE WHOSE HIVE DATA -- SO IT'S A CLASS MEMBER BUT IT'S SIMPLY THAT A PERSON WITH THIS IP ADDRESS VISITED HRBLOCK.COM.  THAT'S THE ENTRY.  YOU KNOW, WOULD YOU SAY THAT THAT PERSON IS IN THE CLASS AS ORIGINALLY DEFINED IN THE COMPLAINT?

**MR. DECKANT:**  IF THEY ARE IN THE HIVE DATA AS DEFINED

IN THE COMPLAINT, YES.  AND I WOULD A SAY EAVESDROPPING ON THE DISCUSSION OF AN ACCOUNTANT IS SENSITIVE.  I WOULD NOT WANT SOMEBODY EAVESDROPPING ON ME IF I WALKED INTO H&R BLOCK.

THE COURT:  EFFECTIVELY, YOU WOULD SAY THAT SOMEONE ON THE STREET SAW YOU WALK INTO H&R BLOCK, WHICH IS ARGUABLY WHAT WAS RECORDED HERE.

MR. DECKANT:  OKAY.

THE COURT:  AND I'M NOT -- AND YOU KNOW, THIS IS PART OF A REASON THAT THIS -- AS I UNDERSTAND THE COURTS HAVE DRAWN THIS ANALOGY, WHICH IS THAT AT THE VERY LEAST YOU MIGHT SAY HRBLOCK.COM, THE OPENING WEBSITE, IS ANALOGOUS TO THE PUBLIC STOREFRONT AND YOU DON'T HAVE A PRIVACY RIGHT TO NOT HAVE SOMEONE WHO HAPPENS TO BE ON THE STREET KNOW THAT YOU WALKED UP TO OR IN THE FRONT DOOR, WHICH IS EFFECTIVELY ALL THAT THAT PERSON DID.

SO I GUESS WHAT DO I DO WITH THE FACT THAT IF I DON'T THINK THAT PERSON WOULD HAVE A REASONABLE BELIEF THAT THEY WERE IN THE CLASS, THEY MIGHT NOT BE ENTITLED TO AMERICAN PIPE TOLLING, AND BY VIRTUE OF THIS MODIFICATION THERE ARE SOME GROUP OF PEOPLE WHO HAD ALREADY LOST THEIR CLAIMS BY VIRTUE OF THE STATUTE OF LIMITATIONS WHO WOULD BE BROUGHT BACK IN AND POTENTIALLY ABLE TO ASSERT A CLAIM.

MR. DECKANT:  WELL THAT ONLY APPLIES, AS YOU'VE ACKNOWLEDGED, TO A PORTION OF THE CLASS.  NOT ALL CLAIMS ARE TIME BARRED.

ALSO I THINK A BETTER ANALOGY WOULD BE WATCHING SOMEONE WALK INTO THE OFFICE OF A SPECIFIC LAW FIRM.  SO YEAH, WALKING INTO THE LOBBY OF SPECIFIC PROFESSIONAL BUILDINGS WOULD BE CONSIDERED A CONFIDENTIAL TRANSACTION.  I WOULDN'T WANT SOMEONE TO KNOW IF I WALKED INTO A --

**THE COURT:**  YOU MAY NOT WANT TO KNOW IT, BUT THE PROBLEM IS IF YOU DO SO BY WALKING IN FROM A PUBLIC STREET, YOU GENERALLY DON'T HAVE THAT EXPECTATION OF PRIVACY.

NOW IF IT'S OVER THE COURSE OF TIME AND YOU WERE TRACKING -- THAT'S NOT THE CASE HERE, IT'S SPECIFIC TO THIS PARTICULAR WEBSITE AT THIS POINT.  SO WE ARE NOT TALKING ABOUT THE CASE THAT MIGHT BE LOOKING AT CREATING A PROFILE OF THE HUNDREDS OF DIFFERENT WEBSITES THAT YOU VISITED, WE ARE TALKING ABOUT ONE WEBSITE.

AND SO YES, I MEAN, THE POLICE FOLLOWING YOU FROM LAW FIRM A, TO LAW FIRM B, TO LAW FIRM C, EVEN IF YOU DID ALL OF THAT IN A PUBLIC SPACE, THAT'S A WHOLE FOURTH AMENDMENT DISPUTE ABOUT THE EXTENT TO WHICH YOU HAVE A REASONABLE RIGHT OF PRIVACY AND EXPECTATION OF PRIVACY AND THAT SORT OF TRACKING.  BUT WE ARE NOT TALKING ABOUT THAT HERE, WE ARE TALKING ABOUT THE POLICE OFFICER IS STANDING ACROSS THE STREET AND SEES YOU WALK INTO LATHAM AND WATKINS, A PUBLIC SPOT.

**MR. DECKANT:**  YEAH.  HERE'S WHERE ANALOGIES START TO BREAK DOWN BECAUSE WE ARE NOT TALKING ABOUT JUST OBSERVING SOMEONE WALKING IN FROM THE STREET, WE ARE TALKING ABOUT AN

ALLEGED WIRE TAP.  SO IT'S LIKE INSTALLING A SPY CAMERA TO RECORD EVERYONE WALKING INTO H&R BLOCK AND THEN ENDEAVORING TO IDENTIFY THEIR NAMES.

THE COURT:  I DON'T WANT TO GO DEEP ON THE 4TH AMENDMENT RIGHT NOW BUT I THINK GENERALLY THEY HAVE NOT SUSTAINED FOURTH AMENDMENT OBJECTIONS TO VIDEO TAPING OF PUBLIC SPACES.

MR. DECKANT:  NOT MY FIELD OF LAW, YOUR HONOR.

THE COURT:  BUT WELL MAYBE IT SHOULD BE BECAUSE THAT ANALYSIS REALLY THINKS ABOUT THE REASONABLE EXPECTATIONS OF PRIVACY WHICH IS WHAT WE ARE TALKING ABOUT HERE.

MR. DECKANT:  BUT WE ARE GETTING A BIT FAR AFIELD. GOING BACK, THE URL'S ARE SENSITIVE FINANCIAL INFORMATION. TOLLING ARGUMENT, AT BEST, RELATES TO ONLY A PORTION OF THE CLASS.

THE COURT:  BUT WHAT URL'S?  AGAIN, IS IT THE FACT THEY VISITED HRBLOCK.COM/FAQ?  DOES THAT INVOLVE SENSITIVE FINANCIAL INFORMATION?

MR. DECKANT:  I WOULD HAVE TO -- I DON'T KNOW OFF THE TOP OF MY HEAD, I WOULD HAVE TO LOOK AT THE FAQ.  WHAT WE DO KNOW IN THE EVIDENCE IS PLAINTIFF JANE DOE'S VISIT AND SPECIFIC INFORMATION ON ANY TYPE OF DEPENDENT SHE WAS TRYING TO CLAIM, THAT'S WHAT'S IN THE EVIDENCE.

THE COURT:  RIGHT.  AND SO THAT GOES TO YOUR ARGUMENT ABOUT HER STANDING BUT THAT DOESN'T DEAL WITH THE ARGUMENT

ABOUT THE SCOPE, THE CLASS BEING SOMEWHAT, OR PERHAPS TO A SUBSTANTIAL EXTENT EXPANDED FROM WHAT WAS ASSERTED AT THE TIME OF THE COMPLAINT.

MR. DECKANT:  YOU KNOW, WHEN WE FILED THE CERTIFICATION MOTION, WE HAD INTENDED IT TO INCLUDE PEOPLE WHO WERE INCLUDED IN THE HIVE DATA.  I'M JUST NOT SEEING THE MISMATCH BETWEEN THE COMPLAINT AND THE MOVING BRIEF.

THE COURT:  OKAY.  THERE WAS A SECOND POINT?

MR. DECKANT:  JUST THE SECOND POINT I WANT TO MAKE IS THE ARGUMENTS MADE ABOUT THE SIZE OF THE HIVE DATA AND THE PURPORTED DIFFICULTY OF GOING THROUGH IT.

I JUST WANTED TO SAY THAT WE ACTUALLY RECEIVED OUR SAMPLING OF THE HIVE DATA, I.E. ON THE 26TH OF EACH MONTH FOR A ONE-YEAR PERIOD FAIRLY LATE INTO THE DISCOVERY PROCESS.  AND I DON'T CARE, THIS IS JUST BACKGROUND, BUT WE HAD A PROTRACTED DISPUTE ABOUT THE METHODOLOGY AND OTHER THINGS.

OUR EXPERTS DID NOT HAVE THAT DATA VERY LONG, THEY DID NOT NEED VERY LONG TO ANALYZE IT.  THEY RECEIVED THE DATA AND ANALYZED IT AND PREPARED THE REPORTS IN A MATTER OF WEEKS, NOT MONTHS.  THEY LOADED IT INTO A DATABASE, THEY LOADED IN THIS DATA, THEY RAN SQL QUERIES, IT WASN'T PARTICULARLY DIFFICULT TO DO, DIDN'T TAKE THEM PARTICULARLY LONG, AND I JUST THINK THAT'S AT ODDS WITH META'S ENTIRE BUSINESS MODEL HERE WHERE WE ARE NOW HEARING THE HIVE DATA IS PURPORTEDLY TOO VOLUMINOUS, NOBODY LOOKS THROUGH IT.  THE ENTIRE PURPOSE OF META IS TO COLLECT

DATA ON PEOPLE AND THEN USE THAT DATA FOR ADVERTISING PURPOSES.

SO I FIND IT UTTERLY IMPLAUSIBLE THAT THE HIVE DATA IS NOT USEFUL AND NOBODY UNDERSTANDS IT AND IT'S NOT SUBJECT TO REASONABLE SEARCH.  IT WAS NOT PARTICULARLY DIFFICULT FOR OUR EXPERT TO DO THIS, IT TOOK THEM ONE WEEK.  I JUST WANT TO MAKE THAT POINT.

THE COURT:  OKAY.  I JUST WANT TO UNDERSTAND, YOUR RESPONSE TO THE -- IF I WERE TO CONCLUDE THAT THIS PROPOSED CLASS DOES INCLUDE AT LEAST SOME PEOPLE WHO WERE UNINJURED, IS YOUR RESPONSE THAT THE WAY IN WHICH I CAN REASONABLY DETERMINE WHO WAS NOT INJURED OR DISTINGUISH WHO WAS INJURED FROM WHO WAS NOT INJURED IS THROUGH EXPERT ANALYSIS OF THE HIVE DATA?

MR. DECKANT:  YEAH, OUR EXPERTS LOAD IT INTO A DATABASE AND THEY RAN QUERIES, YOU THEY CAN DO THAT.

I ALSO NOTE UNDER OLEAN V. BUMBLE BEE, THE NINTH CIRCUIT REJECTED A RULE THAT CLASS CERTIFICATION IS IMPROPER IF IT CONTAINS MORE THAN A DE MINIMUS NUMBER OF UNINJURED CLASS PEOPLE.  I KNOW THAT'S A LOT OF DOUBLE NEGATIVES, THAT'S WHAT THE OPINION SAYS, BUT I KNOW YOU REFERENCED IT, I KNOW YOU KNOW ABOUT THE OPINION.

UNLESS YOU HAVE OTHER QUESTIONS, I THINK I'M ALL SET.

THE COURT:  NO.  THANK YOU.

MS. GOLDMAN:  CAN I HAVE TWO MINUTES, YOUR HONOR?

THE COURT:  SURE.

MS. GOLDMAN:  OKAY.  I JUST WANT TO TAKE THE COURT

BACK TO THE CLASS DEFINITION THAT WAS ORIGINALLY IN THE COMPLAINT. I KNOW THE COURT HAS IT, BUT THE ORIGINAL CLASS DEFINITION WAS INDIVIDUALS WHOSE TAX FILING INFORMATION WAS OBTAINED BY META.

THAT'S PARAGRAPH 92 OF THE COMPLAINT WHICH IS AT DOCKET 180. SO THAT IS VERY, VERY DIFFERENT FROM A CLASS THAT IS MUCH, MUCH NARROWER THAN THE CLASS THEY ARE NOW ASKING THE COURT TO CERTIFY WHICH WOULD BE EVERYBODY WHOSE URL'S OR PEN REGISTER DATA APPEARS IN HIVE.

THAT'S WHY -- AND THERE IS NO SUGGESTION THAT PEOPLE WHOSE PEN REGISTER DATA MAY BE IN HIVE WHICH IS PROBABLY MILLIONS OF PEOPLE WOULD HAVE THOUGHT THAT THEIR SENSITIVE TAX DATA -- EXCUSE ME -- THEIR TAX FILING INFORMATION WAS OBTAINED BY META. CERTAINLY BECAUSE NONE OF THE NINE PLAINTIFFS -- THERE IS A REASON WHY -- FOR PLAINTIFF'S COUNSEL TO GET UP AND REPRESENT TO THE COURT THAT THERE IS NO DIFFERENCE BETWEEN THE DEFINITION IN THE COMPLAINT AND THE DEFINITION IN THEIR MOTION IS SURPRISING BECAUSE THE REASON WHY THEY SWITCHED IT IS THAT THEY DON'T HAVE A CLASS REPRESENTATIVE FOR THE CLASS THEY DEFINED IN THEIR COMPLAINT.

THEY KNOW IT WOULD BE MUCH EASIER TO SATISFY THE ELEMENTS OF THE CLAIMS IF THEIR THEORY OF THE CASE WERE THE THEORY OF THE CASE LAID OUT IN THE COMPLAINT, BUT THEY CAN'T PURSUE THAT BECAUSE THEY DON'T HAVE A CLIENT TO WHOM THOSE THINGS HAPPENED.

AND THAT'S REALLY THE FUNDAMENTAL PROBLEM THAT THE

PLAINTIFFS HAVE TODAY.  THE THEORY THAT THEY BROUGHT THIS LAWSUIT ON, THEY HAVE NO EVIDENCE THAT IT HAPPENED TO ANYONE, IT DIDN'T HAPPEN TO ANY OF THEIR CLIENTS.

THE OTHER PROBLEM WITH THE TOLLING, I JUST WANTED TO CLEAR UP WHAT I SAID EARLIER, THE INDIVIDUAL CLAIMS THAT ARE TOLLED ARE PEOPLE WHO WERE IN THE ORIGINAL CLASS DEFINITION, AND THAT'S THE SYNTAX CASE FROM THE NINTH CIRCUIT.

SO PEOPLE WHOSE TAX FILING INFORMATION WAS OBTAINED BY META.  AND ONLY INDIVIDUAL CLAIMS, NOT CLASS CLAIMS, FOR THOSE PEOPLE ARE TOLLED.  THAT'S CHINA AG TECH THAT WAS THE CASE I COULDN'T REMEMBER THE NAME OF EARLIER.

AND FINALLY ON HIVE, PLAINTIFFS HAVE OFFERED THE COURT NO METHODOLOGY BY WHICH THIS COURT COULD REASONABLY GO LINE BY LINE THROUGH TERABYTES OF DATA AND HAVE THE TYPE OF DEBATE THAT WE JUST HAD OVER JANE DOE'S INFORMATION, RIGHT.

THE COURT ASKED ME ABOUT WHETHER THE FACT THAT SHE WENT TO THIS PARTICULAR PAGE OF H&R BLOCK'S WEBSITE IS SENSITIVE.  AND WE HAD A DISCUSSION ABOUT IT.  THIS COURT WOULD HAVE TO HAVE THAT SAME ANALYSIS FOR EVERYBODY IN THE CLASS, AND THAT'S AN INDIVIDUALIZED ISSUE, BUT THAT'S NOT EVEN ANSWERED BY HIVE, THAT'S SOMETHING THAT A JURY WOULD HAVE TO FIGURE OUT.

AND C, PLAINTIFFS CERTAINLY HAVE NOT OFFERED THE COURT ANY REASONABLE WAY TO DO THAT BY GOING LINE BY LINE THROUGH TERABYTES OF DATA, WHICH IS THEIR BURDEN ON CLASS CERTIFICATION.

THANK YOU, YOUR HONOR.

**THE COURT:**  I WILL TAKE THE MOTION UNDER SUBMISSION AND GET A DECISION OUT FORTHWITH.

I'M GOING TO TAKE A FIVE-MINUTE BREAK TO GET SOME MORE COFFEE BEFORE DOING MY 10:00 HEARING WHICH WILL START AT ABOUT 10:30.  I APOLOGIZE FOR THE DELAY.

THANK YOU.

(THE PROCEEDINGS IN THIS MATTER CONCLUDED AT 10:22 A.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

_____
SUMMER A. FISHER, CSR, CRR
CERTIFICATE NUMBER 13185

DATED:  FEBRUARY 26, 2026

UNITED STATES COURT REPORTERS