United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE META PIXEL TAX FILING CASES META PLATFORMS, INC. | Case No.  22-cv-07557-PCP |
| | **ORDER DENYING MOTION TO CERTIFY CLASS** |
| | Re: Dkt. Nos. 214, 218, 230, 233, 270 |

In this consolidated putative class action, plaintiffs claim that defendant Meta Platforms, Inc. unlawfully collected private user data from the websites of two tax-filing services, TaxAct and H&R Block, in violation of various provisions of the California Invasion of Privacy Act (CIPA) and California's Unfair Competition Law (UCL). Now before the Court is plaintiffs' motion for class certification. On the record currently before the Court, the motion must be denied.

**BACKGROUND**

This case is about Meta's collection of data from tax-filing services' websites using the Meta Pixel. The Pixel is a tool that third-party web developers can install on their websites to track the actions users take on those sites. When a website user takes an action that a developer has decided to track, the Pixel sends "event data" about that action to Meta, which compiles the data and provides analytics to the developer. Meta also attempts to match the event data it receives to users of Meta platforms, like Facebook and Instagram, so that web developers can target advertisements toward those users based on the event data.

Among the many web developers that use the Pixel are TaxAct and H&R Block, both of which are tax-filing services. The named plaintiffs—Kayla Housman, Tiffany Bryant, Katrina Calderon, and Jane Doe—are users of one or both services.

Plaintiffs commenced this putative class action against Meta in December 2022. Their

operative complaint alleged that Meta used the Pixel to collect "tax filing information" about users of several tax-filing services' websites, including TaxAct and H&R Block. This allegedly included "sensitive financial information … like income, refund amounts, filing status, the names of dependents, and scholarship information." As relevant here, plaintiffs claimed that Meta's collection of their tax-filing data violated CIPA's prohibitions on wiretapping, Cal. Penal Code § 631; eavesdropping, *id.* § 632; use of pen registers, *id.* § 638.51; and manufacturing, selling, or furnishing eavesdropping devices, *id.* § 635. The complaint also included a claim under the UCL based on Meta's "surreptitious[] collecti[on] and us[e]" of plaintiffs' "tax filing and financial information."[1] In the complaint, plaintiffs proposed to represent a "[n]ationwide [c]lass" consisting of "[a]ll people in the United States whose tax filing information was obtained by Meta from an online tax preparation provider such as H&R Block" or "Tax Act." Plaintiffs also sought to represent "corresponding state subclasses that include[d] the same people in the [n]ationwide class, but limited to residents of … California" and three other states.

Meta then moved to dismiss the complaint. The Court denied the motion in substantial part and permitted plaintiffs' CIPA and UCL claims to proceed.

Plaintiffs now move for class certification. But they do not seek to certify the classes defined in the complaint. Instead, they propose the following four classes:

> *Nationwide H&R Block Class:* All individuals in the United States who visited the website H&R Block.com from January 15, 2019 to June 30, 2023, and whose data from visiting H&R Block's website is in Meta's Hive data tables.
>
> *California H&R Block Class:* All individuals in California who visited the website H&R Block.com from January 15, 2019 to June 30, 2023, and whose data from visiting H&R Block's website is in Meta's Hive data tables.
>
> *Nationwide TaxAct Class:* All individuals in the United States who visited the website TaxAct.com from August 25, 2015 to June 30, 2023, and whose data from visiting TaxAct's website is in Meta's Hive data tables.

---

[1] Plaintiffs asserted several additional claims under California common law, federal statutes, or other states' laws.

*California TaxAct Class:* All individuals in California who visited the website TaxAct.com from August 25, 2015 to June 30, 2023, and whose data from visiting TaxAct's website is in Meta's Hive data tables.

"Hive data tables" refers to Meta's "database of data collected by the Meta Pixel." Plaintiffs received a sample of this data, including event data for each of the named plaintiffs, in discovery.[2]

Plaintiffs Housman, Bryant, Calderon, and Doe all seek to represent the nationwide H&R Block class in pursuing claims under CIPA §§ 632, 635, and 638.51 and the UCL. Calderon and Doe seek to represent the California H&R Block class, on behalf of which they assert a claim under CIPA § 631. And plaintiffs propose Calderon as the only representative of the nationwide and California TaxAct classes, with the nationwide class pursuing relief under CIPA §§ 632, 635, and 638.51 and the UCL and the California class pursuing relief under CIPA § 631. Plaintiffs ask the Court to certify all four classes under Rule 23(b)(3) for the purpose of seeking monetary relief and to certify the nationwide classes under Rule 23(b)(2) for the purpose of seeking injunctive relief.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs class certification. The party seeking class certification must first satisfy the requirements of Rule 23(a) by demonstrating that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to making this showing, "the proposed class must satisfy at least

---

[2] In plaintiffs' motion, they proposed class definitions that omit the language specifying that class members are those "whose data from visiting" H&R Block or TaxAct's website "is in Meta's Hive data tables." Plaintiffs clarified in their reply that this limiting language "was already implied" in the definition proposed in the motion. The Court granted Meta leave to file a surreply in response to plaintiffs' reply-brief request to add the language to the proposed class definitions, and Meta did not object to its addition. The language also obviates certain of Meta's concerns about the motion's proposed class definitions. Accordingly, the Court includes this limiting language in its Rule 23 analysis.

one of the three requirements listed in Rule 23(b)." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

Plaintiffs seek certification under both Rule 23(b)(3) and Rule 23(b)(2). Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Under Rule 23(b)(2), certification is appropriate where the "party opposing the class has acted or refused to act on grounds that apply generally to the class." In such a scenario, "final injunctive relief or corresponding declaratory relief is appropriate [as to] the class as a whole." *Id.*

The party seeking class certification "must affirmatively demonstrate [its] compliance with Rule 23." *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1192 (9th Cir. 2024) (citation modified). Thus, plaintiffs "must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23, including ... the predominance requirement of Rule 23(b)(3)." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (emphasis in original).

## ANALYSIS

As detailed above, plaintiffs move for certification of classes consisting of "all individuals" in either the United States or California "who visited the website H&RBlock.com" or "TaxAct.com" during specified periods ending in June 2023 "and whose data from visiting [that] website is in Meta's Hive data tables." Because no named plaintiff has standing to pursue prospective relief or to pursue claims against TaxAct, the Court cannot certify the proposed classes under Rule 23(b)(2) and cannot certify either of the TaxAct classes under Rule 23(b)(3). And because proposed class members' claims would be subject to individualized statute-of-limitations defenses and plaintiffs have not demonstrated that adjudication of those defenses would not overwhelm the efficient resolution of common questions, certification under Rule 23(b)(3) of the H&R Block classes would be improper at this time.

United States District Court
Northern District of California

4

**I.      Plaintiffs have standing only to pursue damages claims related to Meta's alleged collection of data from H&R Block.**

Meta argues that plaintiffs lack standing to pursue any of their claims. While Meta is correct that plaintiffs have not established standing to seek injunctive relief or to pursue claims related to the collection of data from TaxAct, plaintiffs have established their standing to seek damages related to Meta's collection of data from H&R Block.

"In a class action, the plaintiff class bears the burden of showing that Article III standing exists." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011). "Standing requires that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently concrete and particularized and actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." *Id.* (citation modified). Because "[a] plaintiff must demonstrate standing separately for each form of relief sought ... a plaintiff who has standing to seek damages for a past injury ... does not necessarily have standing to seek prospective relief." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Serv., Inc.*, 528 U.S. 167, 185 (2000)). "Standing must be proven, 'with the manner and degree of evidence required at the successive stages of the litigation.'" *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1240 (9th Cir. 2024) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "Thus, although standing may be established at the pleading stage through allegations in the complaint … [b]ecause the preponderance of the evidence standard applies at the class certification stage, standing at the time of class certification must be established by a preponderance of the evidence." *Id.* (citing *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664–65 (9th Cir. 2022) (en banc)).

Meta first argues that certification of any proposed class is improper because too few class members have injuries in fact that could support individual standing. That is incorrect. As noted above, only one named plaintiff need have standing, and the Ninth Circuit has squarely "reject[ed] the … argument that Rule 23 does not permit the certification of a class that potentially includes more than a de minimis number of uninjured class members." *Olean*, 31 F.4th at 669. While a court may award damages only to class members who have standing, *see TransUnion LLC v.*

United States District Court
Northern District of California

*Ramirez*, 594 U.S. 413, 431 (2021), that limitation on ultimate relief does not prevent certification of a class including some (or many) members who lack individual standing.

Meta next argues that the named plaintiffs lack standing because none has established an injury in fact. This argument succeeds only in part.

As Meta argues, plaintiffs have not demonstrated standing to pursue prospective relief. That is because a plaintiff seeking forward-looking relief must show that they are "immediately in danger of sustaining some direct injury." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02 (1983) (citation omitted). Here, plaintiffs offer evidence only of Meta's past collection of the named plaintiffs' data. But "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Lujan,* 504 U.S. at 564 (citation modified). Plaintiffs' counsel conceded at the hearing that the record contains no evidence showing that Meta has collected any named plaintiff's data since 2023, let alone any evidence that Meta is likely to do so in the future. While plaintiffs suggest that Meta may collect *some* class members' data in the future, "[a]llegations that a defendant's conduct will subject unnamed class members to the alleged harm [are] insufficient to establish standing to seek injunctive relief on behalf of the class." *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045–45 (9th Cir. 1999). Because no named plaintiff has established a likelihood of future injury, plaintiffs lack standing to pursue injunctive relief. The Court therefore denies certification of the proposed classes under Rule 23(b)(2).

Plaintiffs also fail to demonstrate standing to bring damages claims on behalf of the TaxAct classes, as they offer no evidence that any named plaintiff suffered an injury in fact traceable to Meta's collection of data from TaxAct.com. The only named plaintiff who used TaxAct is Calderon. As plaintiffs conceded at the hearing, there is no evidence in the record that Meta collected any data about Calderon from TaxAct. Instead, all of the entries for Calderon in Meta's Hive data tables are from H&R Block or other websites. While plaintiffs initially asserted that data is transmitted to Meta every time a person visits a website in which the Pixel is embedded (like TaxAct.com), they abandon that assertion in their reply. In any case, the lack of TaxAct data for Calderon in the Hive tables belies the assertion that her data was collected.

6

Because Calderon lacks standing to sue based on Meta's collection of data from TaxAct, the Court must deny certification of the TaxAct classes.[3]

At least one named plaintiff, however, has demonstrated standing to assert claims against Meta based on its collection of data from H&R Block. To establish an "injury in fact" sufficient to give rise to Article III standing, plaintiffs asserting claims based on intangible harms to privacy interests must show that the specific harms they allege are similar in kind to a harm that has traditionally been protected by one of the common-law privacy torts. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 790–91 (9th Cir. 2025). Meta argues that doing so requires plaintiffs here to show that Meta collected "embarrassing, invasive, or otherwise private information" about them. *Id.* at 791. Even assuming Meta is correct, plaintiff Doe has satisfied that requirement. Meta's Hive data tables reflect that Meta collected URL data showing that Doe searched for information about claiming her boyfriend as a dependent.[4] And Doe indicated in her deposition that she "consider[s] the fact that [she] looked at certain pages on H&R Block's website to be sensitive information" because "considering [her] fiancé as a dependent is embarrassing." As Doe explained, that is because her search about claiming her boyfriend as a dependent reveals that her boyfriend "makes a lot less money than [her]," which is "really private" and which many people might think is "not a normal situation." "So it was embarrassing for [Doe] that [Meta] brought that up, and [she] would definitely consider that private" information. The URL data that Meta collected for Doe thus disclosed "embarrassing, invasive, or otherwise private information" protected by common-law privacy torts. *See id.* at 791. As a result, plaintiffs have established that Doe has standing to pursue class claims related to Meta's collection of data from H&R Block.

Because plaintiffs have not established standing to pursue injunctive relief or to represent

---

[3] Even if Calderon had standing, the Court would deny certification of the TaxAct classes because Calderon is not an adequate representative of the TaxAct classes, which are defined based on the appearance of members' data in the Hive tables. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) (explaining that to satisfy the adequacy requirement, "a class representative must be part of the class").

[4] Meta argues that the Hive data shows only that Doe *viewed* a webpage about claiming one's boyfriend as a dependent, not that Doe actively searched for such information. But the natural inference upon learning that an individual visited a particular webpage is that they intended to do so, as Doe confirmed was the case here.

7

the TaxAct classes, the remainder of the Court's order will consider only whether the H&R Block classes satisfy the requirements for certification under Rule 23(b)(3).

## II.     Plaintiffs satisfy the Rule 23(a) prerequisites.

Before addressing the requirements of Rule 23(b)(3), the Court must assess whether the proposed H&R Block classes satisfy the Rule 23(a) prerequisites.

### A.     Numerosity

Plaintiffs have demonstrated that their proposed class and subclass are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "[t]he Ninth Circuit has not offered a precise numerical standard[,] district courts generally hold … 'that the numerosity requirement is usually satisfied where the class comprises 40 or more members, and generally not satisfied when the class comprises 21 or fewer members.'" *J.L. v. Cissna*, No. 18-CV-04914-NC, 2019 WL 415579, at *8 (N.D. Cal. Feb. 1, 2019) (quoting *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, No. 12-cv-5080-CRB, 2013 WL 3802807, at *2 (N.D. Cal. July 17, 2013)). Here, it is undisputed that each of the proposed classes includes far more than 40 members.

### B.     Commonality

Plaintiffs have also demonstrated commonality. "Commonality mandates there be a common question of law or fact among the class members where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1198 (9th Cir. 2024) (citation modified). In other words, commonality exists where "the evidence establishes that a common question is capable of class-wide resolution." *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 863 (9th Cir. 2025). "To satisfy commonality, even a single common question is enough." *Small*, 122 F.4th at 1198 (citation modified) (quoting *Wal-Mart Stores*, 564 U.S. at 359). Each of the proposed H&R Block classes' CIPA claims turns on a common question, the answer to which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. And because Plaintiffs' UCL claim is derivative of their CIPA claims, it involves the same common questions.

United States District Court
Northern District of California

### 1.    CIPA § 631

Section 631, in relevant part, imposes liability on "[a]ny person who, by means of any machine, instrument, or contrivance, or in any other manner," either:

> (1) willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within [California]; or
>
> (2) who uses or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained.

Cal. Penal Code § 631(a).

Several of these elements are subject to class-wide resolution. First, whether the Pixel is a "machine, instrument, … contrivance, or … other manner" is a common question that will not differ among class members. Similarly, whether Meta's use of the Pixel to collect class members' data was willful does not turn on differences among class members and is therefore a common question. *See Meyer v. Bebe Stores, Inc.*, No. 14-CV-267-YGR, 2016 WL 8933624, at *7 (N.D. Cal. Aug. 22, 2016) ("[A] determination of whether [a defendant's] conduct was willful would appear to depend on [the defendant's] intent, not any unique or particular characteristics related to potential class members.").

### 2.    CIPA § 632

Section 632 imposes liability on any "person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Cal. Penal Code § 632(a). As plaintiffs argue, whether Meta acted "intentionally" in collecting individuals' data from H&R Block and whether the Pixel constitutes "an electronic amplifying or recording device to eavesdrop" are common questions that do not turn on any differences among individual class members. Meta has not argued otherwise.

### 3.    CIPA § 635

Section 635 imposes liability on "[e]very person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any

device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another." Cal. Penal Code § 635(a). As with the claims above, liability under § 635 therefore turns on common questions about Meta's conduct (i.e., whether it manufactures, offers for sale, or furnishes the Pixel) and the inherent nature of the Pixel as a device (i.e., whether it "is primarily or exclusively designed or intended for eavesdropping upon the communication of another").

### 4.    CIPA § 638.51

Section § 638.51 prohibits any person from "install[ing] or us[ing] a pen register … without first obtaining a court order." Cal. Penal Code § 638.51. At least the first two elements of § 638.51 involve questions common to every class member: Either Meta "install[ed]" and "use[d]" the Pixel on H&R Block's website, or it did not. Either the Pixel is "a pen register" or not. *See Walsh v. Dollar Tree Stores, Inc.*, No. 25-CV-01601-SVK, 2025 WL 2939229, at *17 (N.D. Cal. Oct. 16, 2025) (explaining that whether a device is a "pen register" turns on the nature of the device itself).

The H&R Block classes therefore satisfy the commonality requirement.

### C.    Typicality

Plaintiffs have also established that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Under Rule 23's "permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). "Typicality focuses on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative aligns with the interests of the class." *Small*, 122 F.4th at 1201–02. "Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* at 1202.

Here, each of the named plaintiffs asserts that Meta used the Pixel to collect their data without their consent while they were visiting H&R Block's website. They therefore "allege the

10

same or a similar injury as the rest of the putative class [i.e., disclosure of private data]; they allege that this injury is a result of a course of conduct that is not unique to any of them [i.e., Meta's use of the Pixel to collect data from H&R Block]; and they allege that the injury follows from the course of conduct at the center of the class claims." *Parsons*, 754 F.3d at 685. That is sufficient to establish typicality.

Meta's counterarguments are unavailing.

First, Meta argues that the named plaintiffs are not typical because none of their sensitive information was disclosed to Meta and they therefore lack standing. As explained above, however, at least Doe has standing based on the disclosure of embarrassing private information to Meta. That the other named plaintiffs may lack standing does not make them atypical—in Meta's view, plaintiffs' proposed class definitions "sweep a huge number of uninjured people into the classes," such that *most* class members would lack standing. If anything, the named plaintiffs' failure to show the disclosure of their sensitive information makes them more typical. Cases holding that named plaintiffs who experienced no injury cannot represent class members who suffered an injury are inapposite given Meta's argument that neither the named plaintiffs nor the class members here suffered any injury. *See Farley v. Lincoln Benefit Life Co.*, 150 F.4th 1197, 1203 (9th Cir. 2025); *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *8 (C.D. Cal. Sep. 9, 2024).

Next, Meta argues that the named plaintiffs are not typical because they are each Facebook users and therefore subject to Meta's "defense that they expressly consented to Meta's receipt of information about them." Because Meta raises consent as an affirmative defense, it bears the burden of providing sufficient evidence that the defense applies so differently as to the named plaintiffs and class members that it destroys typicality. *See Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 575 (N.D. Cal. 2025) (citing *Van v. LLR , Inc.*, 61 F.4th 1053, 1067 (9th Cir. 2023)). Meta has not offered any evidence that most proposed class members are not Facebook users who would therefore not be subject to a consent defense. Common sense suggests the opposite— Facebook has billions of users, and many class members are presumably among them.

### D.    Adequacy

Bryant, Calderon, and Doe have established that they "will fairly and adequately protect

11

United States District Court
Northern District of California

the interests of the class." Fed. R. Civ. P. 23(a)(4). Housman has not.

"The adequacy inquiry is addressed by answering two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? If either answer is no, the representative is inadequate." *Small*, 122 F.4th at 1202 (citation modified). To satisfy these criteria, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).

As to proposed class counsel, plaintiffs assert that counsel has no conflicts with the interests of the proposed H&R Block classes and is competent to vigorously prosecute the action on behalf of the classes. Meta does not argue otherwise.

As to the proposed class representatives, each asserts that they are a member of the H&R Block classes they seek to represent, have no conflicts with the classes' interests, and will vigorously prosecute this action on behalf of the classes. There is no reason to doubt that this is true for Bryant, Calderon, and Doe. But Housman appears to not be a member of the H&R Block classes, which are limited to individuals whose data appears in Meta's Hive data tables. Plaintiffs have identified no evidence in the record showing that Housman's data from H&R Block is in the Hive tables. As a result, she is not an adequate representative of class interests.

Accordingly, the proposed H&R Block classes and all proposed representatives except Housman satisfy Rule 23(a).

### III.    Plaintiffs have not satisfied Rule 23(b)(3)'s predominance requirement.

Rule 23(b)(3) requires that the common questions of law or fact identified above "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." On the record currently before the Court, plaintiffs have not satisfied this requirement.

Rule 23(b)(3)'s predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. "The commonality and predominance inquiries overlap." *White*, 104 F.4th at 1191. After separating

12

United States District Court
Northern District of California

questions common to the legal claims of the class from those that "present individualized issues," courts "analyze whether the common questions predominate over the individual questions." *DZ Rsrv.*, 96 F.4th at 1233. In essence, this inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

Meta argues that individual, aggregation-defeating issues proliferate as to each of plaintiffs' claims on behalf of the proposed H&R Block classes. These include, among others, questions about whether any particular class member's intercepted communications were "confidential" within the meaning of CIPA § 632; whether the data Meta read or attempted to read included "the contents or meaning" of particular class members' communications within the meaning of CIPA § 631; and whether particular class members consented to Meta's collection of their data by continuing to use H&R Block after viewing articles discussing H&R Block's disclosure of user data to Meta. Many of the issues Meta casts as individualized may in reality be resolved on a classwide basis or relate to only one of the four CIPA claims plaintiffs assert. But at least one issue relates to each of the H&R Block classes' claims and would require individualized evidence to adjudicate: Meta's statute-of-limitations defense.

The limitations period for all CIPA claims is one year. *See* Cal. Civ. Proc. Code § 340(a). The class claims in this case are based on Meta's data collection prior to June 2023, well over one year ago. So to the extent plaintiffs or unnamed putative class members assert such claims for the first time in their motion for class certification, the claims would be time-barred. Of course, the class-certification motion is not plaintiffs' first filing to assert CIPA claims against Meta—every complaint in this action, including the operative complaint, has included CIPA claims. And the Supreme Court held in *American Pipe & Construction Company v. Utah* that the filing of a class-action complaint "suspends the applicable statute of limitations as to all asserted members of the class." 414 U.S. 538, 554 (1974). Thus, as Meta appears to recognize, the claims of putative class members who were included in the class definition in the original complaint have been tolled, and those individuals are unlikely to face any statute-of-limitations defense.

The problem here is that plaintiffs do not move to certify the class defined in the complaint

but instead seek certification of significantly broader classes. As already explained, plaintiffs' operative complaint proposed classes composed of "[a]ll people in" the United States or California "whose tax filing information was obtained by Meta from an online tax preparation provider such as H&R Block." Consistent with that class definition, the allegations in the complaint focus on Meta's collection of "sensitive financial information" or "confidential tax filing information" about visitors to H&R Block's website, "like income, refund amounts, filing status, the names of dependents, and scholarship information."

Yet plaintiffs abandon that focus on tax-filing information in their motion and reply, widening the scope of the proposed H&R Block classes to include anyone "who visited the website H&R Block.com" during the relevant period "and whose data from visiting H&R Block's website is in Meta's Hive data tables." As Meta argues, that broader definition sweeps in many individuals from whom Meta collected only information unrelated to finances or tax filings, such as IP addresses, browser information, geolocation, or the URLs of the H&R Block pages they visited. The Hive data tables in the record confirm as much: They include no data about the named plaintiffs' income, refund amounts, or other tax-filing information. And because individuals for whom Meta collected no tax-filing data do not fall within the class as defined in the complaint, *American Pipe* tolling may not apply to their claims and the claims may be time barred. *See DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1099 (9th Cir. 2024) (explaining that individuals are "entitled to *American Pipe* tolling" only if "the scope of the class definition in [the] complaint arguably includes" them) (citation modified), *cert. denied,* 145 S. Ct. 1426 (2025).[5]

The expansion of the proposed classes to include all individuals for whom Meta collected any data from H&R Block, rather than only those whose tax-filing data was collected, necessarily raises individualized questions as to what information was collected from each class member. To

---

[5] Such tolling problems do not arise when plaintiffs seek certification of a class that is narrower than those defined in a complaint. In that circumstance, no claims or members are added to the putative class, so there is no unfair surprise to the defendant. (While some claims or putative class members may be removed, that is generally a welcome surprise for defendants, not an unfair one.) That is, perhaps, why district courts in this circuit "agree that plaintiffs cannot *broaden* the class definition" but "also generally agree that plaintiffs may *narrow* the class definition." *Hawkins v. Kroger Co.*, 337 F.R.D. 518, 526 (S.D. Cal. 2020).

determine whether a particular class member's claim is timely, the Court would need to assess whether Meta collected any tax-filing information about them from H&R Block such that they fall within the complaint's class definition and are entitled to *American Pipe* tolling. That, in turn, would appear to require reviewing the Hive entries for every class member, which plaintiffs confirmed at the hearing involve roughly nine terabytes of total data.

While the existence of "[d]efenses that must be litigated on an individual basis can defeat class certification," that is not always the case. *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018). Common questions "can be said to predominate" and "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as some affirmative defenses." *Id.* (citation modified). The key question is "whether individualized questions will *overwhelm* common ones." *Van v. LLR, Inc.*, 61 F.4th 1053, 1067 (9th Cir. 2023) (citation modified) (quoting *Olean*, 31 F.4th at 669). To answer that question, the Court "must assess the necessity and manageability of the potential class-member-by-class-member discovery process and trial." *Id.* at 1067 n.11. As the Ninth Circuit has explained:

> [I]f the discovery and trial process must assess thousands of claims one claim at a time, then the individualized issue will weigh heavy in the predominance balancing. … [But] if the district court determines that the individualized issue is limited to a small number of class members or will otherwise be simple to investigate and present at trial, the district court might reasonably certify the class in the face of the individualized issue.

*Id.*

As noted above, it appears on the record currently before the Court that resolving Meta's statute-of-limitations defense as to each proposed class member would require extensive individual inquiries, including a line-by-line review of thousands or millions of lines of data in the Hive tables. Such individualized inquiries would likely overwhelm the adjudication of the common questions involved in plaintiffs' CIPA claims. *See id.* It is of course possible that plaintiffs could propose a "simple" or more efficient way to identify class members from whom Meta did not collect tax-filing data, which "might reasonably" permit certification even "in the face of the individualized issue." *Id.* But they have yet to do so. That failure is understandable—

15

Meta's statute-of-limitations defense was not a focus of any party's briefing or expert reports on class certification, and it was first addressed in depth at the hearing. Still, "[i]t is the plaintiff[s'] burden to prove that class issues predominate." *Id.* at 1066.[6]

Rather than propose a way to efficiently resolve Meta's individualized statute-of-limitations defenses, plaintiffs argued at the hearing that such defenses are unlikely to succeed for two reasons. Both arguments fail.

Plaintiffs first suggested that even individuals for whom Meta collected only web-browsing data fall within the class proposed in the complaint, as URLs necessarily disclose sensitive financial or other tax-filing information. To be sure, URLs sometimes reveal private information about users' search histories, such as when a URL lists the search terms a user entered. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014). Such search histories on H&R Block's website might include a user's tax-filing information. But the fact that URLs might disclose financial or tax-filing information in isolated cases does not establish that URL data reveals such information in every instance. Plaintiffs offer no evidence to support that assertion, and the available Hive data suggests the opposite. So plaintiffs' argument that there is no daylight between the class proposed in the complaint and the classes for which they now seek certification falls flat.

Second, plaintiffs argued at the hearing that *American Pipe* tolling applies whenever an individual reasonably believes they were a member of the class defined in a class-action complaint. Because H&R Block users for whom Meta collected no tax-filing data may have believed they were part of the class, plaintiffs contend that those individuals are also entitled to *American Pipe* tolling. If true, that might obviate the potential for individualized statute-of-limitations defenses.

---

[6] Plaintiffs suggest in their reply that, to the extent their proposed classes are broader than those defined in the complaint, the Court should certify a narrower class rather than deny certification. That may be appropriate in some cases but it is not a workable solution here. Were the Court to narrow the proposed H&R Block classes to reflect the classes proposed in the complaint, the narrowed classes would be left without an adequate representative because the record contains no evidence that Meta collected tax-filing information about any named plaintiff from H&R Block. *See Amchem Prods.*, 521 U.S. at 625 (holding that "a class representative must be part of the class").

The problem with this argument is that *American Pipe* tolling is unavailable where the class definition on which an individual relies to invoke that doctrine unambiguously excluded the individual. *See DeFries*, 104 F.4th at 1099 (holding that *American Pipe* tolling is unavailable on the basis of a class definition that "unambiguously excludes" the plaintiff). Here, plaintiffs' original class definition unambiguously excluded individuals whose tax information was not shared with Meta. As a result, those individuals cannot have reasonably believed that they were class members. *See Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 581 (D.N.J. 2002) (concluding that "*American Pipe* tolling … does not apply where a party may have thought he was a purported class member but was, in reality, excluded from the class definition").

In sum, plaintiffs have not yet demonstrated that common questions predominate over individualized inquiries about the tolling of class members' claims. As a result, the Court cannot certify the H&R Block classes under Rule 23(b)(3) at this juncture. The Court therefore need not reach Meta's other predominance arguments or determine whether the classes would satisfy Rule 23(b)(3)'s superiority requirement.

Because plaintiffs lack standing to pursue injunctive relief or to represent the TaxAct classes, and because the remaining H&R Block classes have not satisfied Rule 23(b)(3) on the record before the Court, plaintiffs' motion for class certification is denied. Meta's related motions to exclude or strike the expert testimony and reports of Colin Weir and Robert Zeidman are denied as moot. Because the Court denies certification of the H&R Block classes under Rule 23(b)(3) based on an issue that was not a focus of the parties' briefing, the denial is without prejudice to any possible future motion for class certification as to the H&R Block Rule 23(b)(3) classes.

**IV.    The parties' joint consolidated sealing motion is granted in part and denied in part.**

In connection with the briefing on plaintiffs' motion for class certification and Meta's *Daubert* motions, the parties filed several administrative motions to seal. Pursuant to the Court's order, Dkt. No. 267, the parties filed a joint motion consolidating their sealing requests. The "compelling reasons standard" governs the requests. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

The parties' requests to seal certain exhibits to the briefing in their entirety, or to fully

17

redact most pages, are denied without prejudice on the basis of their overbreadth.[7] Any renewed motion must comply with Local Rule 79-5(a), which requires parties to "minimize the number of documents under seal" and to avoid sealing documents in their entirety. "[O]verly broad requests to seal may result in the denial of the motion." Civ. L. R. 79-5(f)(6). The parties may file a consolidated, narrowly tailored sealing motion addressing these exhibits within 14 days of this order. Failure to limit proposed redactions to genuinely sensitive information will result in denial of the motion and an order that all exhibits be filed on the public docket.

With one exception, the parties' remaining sealing requests are granted. These more limited requests seek to redact personally identifiable information about plaintiffs and other users of tax-filing services, as well as information concerning Meta's proprietary data-storage systems, integrity systems, and confidential source code, disclosure of which would likely result in competitive harm. Compelling reasons support the sealing of such information. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016); *Malan v. Martinez Refin. Co. LLC*, No. 23-cv-04184-HSG, 2025 WL 2780822, at *9 (N.D. Cal. Sep. 30, 2025). Because the Court's analysis as to class certification does not rely on this material, the compelling reasons supporting sealing "outweigh the public's interest in disclosure." *Kamakana*, 447 F.3d at 1178; *see also Network Appliance, Inc. v. Sun Microsystems Inc.*, No. C-07-06053 EDL, 2010 WL 841274, at *2 (N.D. Cal. Mar. 10, 2010) ("[T]he public interest in understanding the judicial system would appear to be less where, as here, the documents in question are irrelevant to the Court's decision.").

But the Court denies plaintiffs' request to redact information from the parties' briefs concerning Jane Doe's use of H&R Block to view information about claiming her boyfriend as a dependent. That Doe is proceeding pseudonymously mitigates any potential harm from disclosure of this information. And because the information is central to the Court's above analysis concerning plaintiffs' standing, the public's interest in accessing the material significantly

---

[7] These documents include exhibits 5–18, 20–23, 25–27, 29–31, 43, 45, 48, 57–59, and 63–70 to the joint consolidated motion.

outweighs any remaining risk of harm to Doe. The parties are ordered to file versions of their briefs on class certification that remove these redactions within 14 days of this order.

**CONCLUSION**

For the foregoing reasons, the Court denies plaintiffs' motion for class certification, Dkt. Nos. 214 and 218, without prejudice. The Court denies as moot the related *Daubert* motions to exclude expert evidence, Dkt. Nos. 230, 233, and 270. *See Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 861 (N.D. Cal. 2020). The Court grants in part and denies in part the parties' joint consolidated sealing motion, Dkt. No. 276.

**IT IS SO ORDERED.**

Dated: March 30, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California

19